Colin Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone:    (602) 640-9000
Facsimile:    (602) 640-9050
Email:        cproksel@omlaw.com

*Attorney for Plaintiffs*
*Additional counsel listed in signature block*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>Plaintiffs,<br>v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>Defendants. | Case No. _____<br><br>**PLAINTIFFS' MOTION TO PROCEED VIA PSEUDONYM** |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    JANE DOE AND MEGAN ROE REASONABLY FEAR SEVERE HARM IF THEIR IDENTITIES WERE TO BECOME PUBLIC ................... 3

    II.   TRANSGENDER YOUTH, LIKE JANE AND MEGAN, ARE PARTICULARLY VULNERABLE TO HARM FROM THE DISCLOSURE OF THEIR IDENTITIES ........................................................... 6

    III.  ALLOWING JANE AND MEGAN TO PROCEED VIA PSEUDONYM WILL NOT PREJUDICE DEFENDANTS AND IS IN THE PUBLIC INTEREST ................................................................................ 6

CONCLUSION ..................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado, Inc. v. Nielsen*, 2017 WL 6541446 (S.D. Cal. Dec. 20, 2017) ................ 6, 7

*Gonzalez v. Nevares*, 305 F. Supp. 3d 327 (D.P.R. 2018) ................................................ 5

*Brnovich v. Biden*, 2021 WL 7630109 (D. Ariz. Dec. 15, 2021) ....................................... 2

*D.T. v. Christ*, 552 F. Supp. 3d 888 (D. Ariz. 2021) ..................................................... 1, 6

*Doe ex rel. Doe 2 v. Elmbrook Sch. Dist.*, 658 F.3d 710 (7th Cir. 2011) .......................... 2

*Doe v. Ayers*, 789 F.3d 944 (9th Cir. 2015) .............................................................. 2, 6, 7

*Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72 (D.R.I. 1992) .......................... 4

*Doe v. City of Detroit*, 2018 WL 3434345 (E.D. Mich. July 17, 2018) ............................. 3

*Doe v. Kamehameha Sch.*, 596 F.3d 1036 (9th Cir. 2010) ............................................ 3, 7

*Doe v. Pa. Dep't of Corr.*, 2019 WL 5683437 (M.D. Pa. Nov. 1, 2019) ........................... 3

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ............................................................ 3, 4, 6

*Doe v. United States*, 2016 WL 3476313 (S.D. Ill. June 27, 2016) .................................. 4

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) .......... *passim*

*EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003) ................................................. 7

*Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020) ................................................. 1, 6

*Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016) ............................................................................................................................ 4

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ........................................................... 3, 4

*Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999) ........................................................ 3, 4

*Publius v. Boyer-Vine*, 321 F.R.D. 358 (E.D. Cal. 2017) ..................................... 1, 2, 7, 8

*R.G. v. Koller*, 415 F. Supp. 2d 1129 (D. Haw. 2006) ................................................. 1, 6

*United States v. Doe*, 655 F.2d 920 (9th Cir. 1980) ......................................................... 3

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) .................................................................................................................. 5

**Other Authorities**

GLSEN, *School Climate for LGBTQ Students in Arizona (2019 State Snapshot)*, GLSEN, 1 (2019), https://www.glsen.org/sites/default/files/2021-01/Arizona-Snapshot-2019.pdf ........................................................................................................................ 5

Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, NAT'L CTR. FOR TRANSGENDER EQUALITY 1 (2011), http://www.transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf.) ... 5

Sandy E. James et al., *The Report of the 2015 U.S. Transgender Survey*, NAT'L CTR. FOR TRANSGENDER EQUALITY 1 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf .... 5

**Rules**

Federal Rule of Civil Procedure 5.2(e) ............................................................................... 1

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 5.2(e), Plaintiffs Jane Doe and Megan Roe, by and through their respective parents, Helen Doe and James Doe, and Kate Roe and Robert Roe, request this Court's leave to proceed using pseudonyms for themselves and their parents to protect their identities from public disclosure.

As discussed below, Jane and Megan satisfy each element of the Ninth Circuit's standard for allowing a plaintiff to proceed pseudonymously. Jane and Megan, as transgender children, are especially vulnerable to severe harm if required to disclose their identities in light of their youth and the sensitivity of their transgender status, including the prospect that they will face harassment if their true identities become known. Their "need for anonymity outweighs" any "prejudice to the opposing party" or to the public caused by allowing them to proceed pseudonymously. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000); *see also Publius v. Boyer-Vine*, 321 F.R.D. 358, 361 (E.D. Cal. 2017); *D.T. v. Christ*, 552 F. Supp. 3d 888, 892 n.5 (D. Ariz. 2021) ("The Court notes that all of the Plaintiffs"—minors and their parents—"are proceeding in this case under pseudonyms to protect them from harassment stemming from their transgender status."); *R.G. v. Koller*, 415 F. Supp. 2d 1129, 1133 (D. Haw. 2006) (allowing a transgender teenager to proceed under a pseudonym); *Hecox v. Little*, 479 F. Supp. 3d 930, 946 n.3 (D. Idaho 2020) (allowing transgender plaintiff and her parents to proceed under pseudonyms).

# ARGUMENT

The Ninth Circuit permits "parties to use pseudonyms . . . when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Advanced Textile Corp.*, 214 F.3d at 1067–68 (internal citations and quotation marks omitted). Whether to permit a party to proceed under a pseudonym requires balancing three factors: "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation"—against "the general presumption that parties' identities are public information." *Doe v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015)

(quoting *Advanced Textile Corp.*, 214 F.3d at 1068). "Applying this balancing test, courts have permitted plaintiffs to use pseudonyms . . . when identification creates a risk of retaliatory physical or mental harm" or "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature." *Advanced Textile Corp.*, 214 F.3d at 1068 (internal citation and quotation marks omitted); see also *Brnovich v. Biden*, 2021 WL 7630109, at *1 (D. Ariz. Dec. 15, 2021).

"[W]hen the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity," that party may proceed anonymously. *Publius*, 321 F.R.D. at 361. "The decision of whether or not to allow a party to remain anonymous is within" a district court's "discretion and will not be reversed unless the [district court] relies on an erroneous view of the law, makes an erroneous assessment of the evidence, or strikes an unreasonable balance of the relevant factors." *Id*.

Here, Jane and Megan reasonably fear severe harm in the form of lost privacy, discrimination, and harassment if forced to publicly disclose their names and consequently their transgender identity as part of this litigation. They are particularly vulnerable to this type of harm as transgender youth. Defendants will suffer no prejudice by allowing Jane and Megan to proceed anonymously because they do not intend to withhold their identities from Defendants (which will be disclosed under an appropriate protective order) or the Court (which may be disclosed in sealed submissions), and allowing them to proceed anonymously is in the public interest. As such, the Court should exercise its discretion to grant Jane and Megan, and their parents Helen and James Doe and Kate and Robert Roe, leave to proceed under pseudonyms.[1]

---

[1] The Court should also grant Helen and James Doe and Kate and Robert Roe leave to proceed under pseudonyms because identifying them would inexorably expose the identities of their children. (H. Doe Decl. ¶ 18; M. Roe Decl. ¶ 13.) Therefore, Doe's and Roe's parents should remain anonymous for the same reasons that their daughters, Jane and Megan, warrant the protection of pseudonyms. *See Doe ex rel. Doe 2 v. Elmbrook Sch. Dist.*, 658 F.3d 710, 724 (7th Cir. 2011), *vacated on other grounds*, 687 F.3d 840, 842–43 (7th Cir. 2012).

## I. JANE DOE AND MEGAN ROE REASONABLY FEAR SEVERE HARM IF THEIR IDENTITIES WERE TO BECOME PUBLIC

"In order to proceed anonymously, a plaintiff must show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1043 (9th Cir. 2010) (emphasis omitted). These two showings are "intricately related and should be addressed together." *Id.* A harm is sufficiently "severe" to allow a plaintiff to proceed anonymously where she "face[s] greater threats of retaliation than the typical [] plaintiff" in civil litigation would. *Advanced Textile Corp.*, 214 F.3d at 1070–71 (alterations omitted). The threatened retaliatory harm does not need to be physical in nature. For example, the Ninth Circuit has recognized the loss of privacy "in a matter of [a] sensitive and highly personal nature" as a harm that can necessitate allowing a plaintiff to proceed anonymously. *Id.* at 1068 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)); *see also United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) ("Where it is necessary, however, to protect a person from harassment, . . . ridicule or personal embarrassment, courts have permitted the use of pseudonyms."). A loss of privacy harm is likely to be especially severe where, as here, the plaintiff is "compelled . . . to disclose information of the utmost intimacy." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (internal quotation marks omitted).

Courts "have long recognized that the harms arising from disclosing a person's transgender status are among those that make protection by pseudonym appropriate." *Doe v. Pa. Dep't of Corr.*, 2019 WL 5683437, at *2 & nn.12–13 (M.D. Pa. Nov. 1, 2019) (collecting cases); *see also Doe v. City of Detroit*, 2018 WL 3434345, at *2 (E.D. Mich. July 17, 2018) ("Several courts have held that an individual's transgender identity can carry enough of a social stigma to overcome the presumption in favor of disclosure."). This is so because "[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). Courts also regularly extend this protection to guardians and next of kin in cases involving transgender youth. *See, e.g.*, *Roe v. Herrington*, No. 4:20-cv-00484-JAS, ECF Nos. 8, 49 (D. Ariz.) (granting motions for

3

transgender minors and their parents to proceed via pseudonym); *Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016); *Doe v. United States*, 2016 WL 3476313, at *1 (S.D. Ill. June 27, 2016).

Jane and Megan understandably hope to control to whom they disclose that they are transgender, and they have an acute interest in avoiding the harassment that could arise if their participation in this lawsuit became publicly known. (J. Doe Decl. ¶ 3, M. Roe Decl. ¶ 11.) Moreover, having to share that they are transgender and the intimate details of their gender dysphoria in the public record will only exacerbate the emotional distress that Jane and Megan already face. (J. Doe Decl. ¶¶ 12–13; M. Roe Decl. ¶¶ 10–11; *see also* Budge Decl. ¶ 34.) They also fear the response from members of the public. (J. Doe Decl. ¶ 13; M. Roe Decl. ¶ 11; H. Doe Decl. ¶ 17; K. Roe Decl. ¶ 12.)

Being a party to this lawsuit may also require Jane and Megan to disclose private information about their medical care, amplifying the importance of proceeding under a pseudonym. *See Powell*, 175 F.3d at 111 (recognizing "[t]he excruciatingly private and intimate nature of transsexualism"); *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992) (concluding that transgender "plaintiff's privacy interest is both precious and fragile, and this [c]ourt will not cavalierly permit its invasion"). Jane and Megan—who are fighting for their right to play on the sports teams that align with their gender identity—may be subjected to requests by Defendants of their private medical information. Without prejudice to any objections Plaintiffs may make in respect of any such requests, that information is "of the utmost intimacy," *Stegall*, 653 F.2d at 185, and thus "anonymity is necessary to preserve privacy in" this matter of a "sensitive and highly personal nature," *Advanced Textile Corp.*, 214 F.3d at 1068 (quoting *James*, 6 F.3d at 238).

Moreover, Jane and Megan's fear of lost privacy, discrimination, and harassment is reasonable. As the Seventh Circuit has observed, "[t]here is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,

4

858 F.3d 1034, 1051 (7th Cir. 2017); *Gonzalez v. Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (finding that forcing transgender people "to disclose their transgender status . . . . exposes [them] to a substantial risk of stigma, discrimination, intimidation, violence, and danger"). Numerous studies support the *Whitaker* court's observation. For example, the *Whitaker* court itself cited a 2011 survey which found that "78% of students who identify as transgender or as gender non-conformant[] report being harassed while in grades K-12." 858 F.3d at 1051 (citing Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, NAT'L CTR. FOR TRANSGENDER EQUALITY 1, 33 (2011), http://www.transequality.org/sites/default/files/docs/resources/NTDS_Report.pdf.). Likewise, a 2019 national school climate survey found that more than 55% of respondents in Arizona reported verbal harassment based on gender expression and more than 20% reported experiencing physical harassment. GLSEN, *School Climate for LGBTQ Students in Arizona (2019 State Snapshot)*, GLSEN, 1, 1 (2019), https://www.glsen.org/sites/default/files/2021-01/Arizona-Snapshot-2019.pdf; *see also*, Sandy E. James et al., *The Report of the 2015 U.S. Transgender Survey*, NAT'L CTR. FOR TRANSGENDER EQUALITY 1, 4 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf (survey of nearly 28,000 transgender individuals from across the United States found "high levels of mistreatment, harassment, and violence in every aspect of life").

In sum, Jane and Megan reasonably fear discrimination and harassment directed at them and their families if their identities are disclosed to the public. (J. Doe Decl. ¶¶ 13–14; M. Roe Decl. ¶¶ 11–12.)  The attendant loss of privacy will also cause Jane and Megan significant psychological harm and distress if the intimate details of their medical care are connected to them in any publicly available documents. (J. Doe Decl. ¶¶ 12–13, M. Roe Decl. ¶¶ 10–11; *see also* Budge Decl. ¶ 34.)

**II. TRANSGENDER YOUTH, LIKE JANE AND MEGAN, ARE PARTICULARLY VULNERABLE TO HARM FROM THE DISCLOSURE OF THEIR IDENTITIES**

"[T]he anonymous party's vulnerability to" the harm they fear is a third factor a court considers in determining whether proceeding anonymously is appropriate. *Ayers*, 789 F.3d at 945 (internal citation omitted). Jane and Megan are particularly vulnerable to the harm they fear for two reasons: their young age and, as discussed above, unlike most litigants, transgender individuals are a target of pervasive harassment and discrimination in our society. *See* Section I, *supra*. Jane is 11 years old and will soon enter middle school, and Megan is 15 years old and in high school. (J. Doe Decl. ¶ 1; M. Roe Decl. ¶¶ 2, 5.) "[T]he youth of" plaintiffs is often "a significant factor in the matrix of considerations arguing for anonymity[.]" *Stegall*, 653 F.2d at 186 (finding the plaintiffs' youth to be an "especially persuasive" factor justifying anonymity); *see also Al Otro Lado, Inc. v. Nielsen*, 2017 WL 6541446, at *5 (S.D. Cal. Dec. 20, 2017) ("[C]hild-plaintiffs are deemed to be especially vulnerable, warranting their anonymity.").

Recognizing the special vulnerability transgender youth face, courts in the Ninth Circuit have allowed transgender children to proceed pseudonymously. *See e.g.*, *Christ*, 552 F. Supp. 3d at 892 n.5 ("The Court notes that all of the Plaintiffs"—minors and their parents—"are proceeding in this case under pseudonyms to protect them from harassment stemming from their transgender status."); *Koller*, 415 F. Supp. 2d at 1133 (allowing a transgender teenager to proceed under a pseudonym); *Hecox*, 479 F. Supp. 3d at 946 n.3 (allowing transgender child-plaintiff and her parents to proceed under pseudonyms.)

That Jane and Megan belong to two groups that are particularly vulnerable to harm weighs strongly in favor of proceeding via pseudonyms in this case.

**III. ALLOWING JANE AND MEGAN TO PROCEED VIA PSEUDONYM WILL NOT PREJUDICE DEFENDANTS AND IS IN THE PUBLIC INTEREST**

Courts must balance the factors in favor of anonymity against the prejudice that a defendant might suffer as a result and determine whether allowing the plaintiff to proceed anonymously serves the public interest. *Ayers*, 789 F.3d at 945; *Publius*, 321 F.R.D. at

6

361. The defendant's knowledge of the plaintiff's identity "lessens" any claims the defendant can make that it is "prejudiced by the use of pseudonyms," *Advanced Textile*, 214 F.3d at 1069 n.11, because this knowledge gives a defendant "the information [it] need[s] to defend against the claims" brought against it, *Al Otro Lado, Inc.*, 2017 WL 6541446, at *6.

Additionally, though the public has a "right to open courts," it also "has an interest in seeing" cases involving important issues "decided on the merits." *Kamehameha Sch.*, 596 F.3d at 1042–43 (quoting *Advanced Textile*, 214 F.3d at 1073). In these cases, "permitting plaintiffs to use pseudonyms" can "serve the public's interest in th[e] lawsuit by enabling it to go forward." *Advanced Textile*, 214 F.3d at 1073. That is especially true in cases "[w]here a plaintiff attacks governmental activity, for example a governmental policy or statute," because "[i]n such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (citation omitted).

Here, Jane and Megan do not object to revealing their identity to Defendants under an appropriate protective order and thereby giving Defendants the information they need to defend against the claims in this suit. As such, Defendants will not be prejudiced if Jane and Megan, and their parents, are permitted to proceed anonymously. *See Advanced Textile*, 214 F.3d at 1069 n.11.

## CONCLUSION

Because Plaintiffs Jane Doe and Megan Roe are especially vulnerable to severe harm in the form of "harassment, . . . ridicule or personal embarrassment," *Advanced Textile Corp.*, 214 F.3d at 1067–68, their "need for anonymity outweighs" any "prejudice to the opposing party" or "the public's interest in knowing" his identity, *Publius*, 321 F.R.D. at 361. The Court should grant them and their parents leave to proceed under pseudonyms.

Respectfully submitted this 17th day of April, 2023.

*/s/ Colin M. Proksel*
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Pro hac vice application forthcoming*