D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (314) 562-0031
John.Sauer@james-otis.com

*Attorneys for Proposed Defendant-Intervenors President Petersen and Speaker Toma*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Jane Doe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00185-JGZ <br><br> **Motion to Intervene of the President of the Arizona Senate and Speaker of the Arizona House of Representatives** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

    The Challenged Law ..................................................................................................... 2

    Plaintiffs' Lawsuit ......................................................................................................... 3

    Proposed Intervenors .................................................................................................... 3

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    I.   The President and Speaker are entitled to intervention as of right. .......................... 4

        A.   The motion is timely. ........................................................................................... 4

        B.   The President and Speaker have a significant protectable interest in this matter that may be practically impaired or impeded without their participation. ................ 6

        C.   The Legislative Leaders are not adequately represented. ................................. 10

    II.  In the alternative, the Court should grant permissive intervention. ...................... 12

CONCLUSION .................................................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................................. 14

**TABLE OF AUTHORITIES**

**Cases**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......................................................... 11

*Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269 (D. Ariz. 2020) .................... 10, 11

*Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022)................. 2, 8, 9, 10, 11

*Cal. Ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ................................. 7

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002 (2022) ...................... 9

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) ... 5

*Clairton Sportsmen's Club v. Pa. Turnpike Comm'n*, 882 F. Supp. 455 (W.D. Pa. 1995) 9

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 266 F.R.D. 369 (D. Ariz. 2010) ........................................................................................................................................ 6

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998).......................................................... 4

*Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) 5

*Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242 (11th Cir. 2002) .......................... 6

*Horne v. Flores*, 557 U.S. 433 (2009)................................................................................ 9

*Isaacson v. Mayes*, 2:21-cv-01417-DLR, 2023 WL 2403519 (D. Ariz. Mar. 8, 2023) 2, 11

*Kalbers v. United States Dep't of Just.*, 22 F.4th 816 (9th Cir. 2021) ............................... 6

*Karcher v. May*, 484 U.S. 72 (1987) ................................................................................. 9

*Mi Familia Vota v. Fontes*, 2:22-cv-00509-SRB (D. Ariz. Apr. 26, 2023) .................. 2, 11

*Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994 (8th Cir. 1993)..... 6

*Miracle v. Hobbs*, 333 F.R.D. 151 (D. Ariz. 2019).......................................................... 10

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)................. 6

*Powell v. Ridge*, 247 F.3d 520 (3rd Cir. 2001) .................................................................. 9

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) .............................................................. 4

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016)...................................... 5, 6

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ........................ 13

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ........................... 5

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972)...................................... 12

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ................................... 4

*Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019) ....................................... 9

*Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ............ 5, 7

*Yniguez v. State of Ariz.*, 939 F.2d 727 (9th Cir. 1991) ....................................................... 9

**Statutes**

A.R.S. § 12-1841 ....................................................................................................... 2, 4, 7, 10

A.R.S. § 15-120.02 ............................................................................................................... 3

A.R.S. § 41-192 .................................................................................................................... 2

Ariz. Const. art. 4, pt. 2, § 8 ................................................................................................. 4

**Other Authorities**

Letter from Governor Douglas A. Ducey to Secretary of State Katie Hobbs (Mar. 30, 2022) ............................................................................................................................................ 3

S.B. 1165, § 2 (2022) ............................................................................................................ 3

**Rules**

Ariz. House of Representatives Rule 4(K) ....................................................................... 4, 8

Arizona State Senate Rule 2(N) ........................................................................................ 4, 7

F<span>ed</span>. R. C<span>iv</span>. P. 24 .................................................................................................................... 4

**INTRODUCTION**

Proposed Intervenors Senator Warren Petersen, President of the Arizona State Senate, and Representative Ben Toma, Speaker of the Arizona House of Representatives (together "the Legislative Leaders" or "President" and "Speaker"), seek intervention to defend their interests, which include exercising statutory rights to protect women's sports. The President and Speaker are entitled to intervene as a matter of statutory right, and no other party will adequately represent their unique interests.

An Arizona law expressly permits the Legislative Leaders to intervene in cases challenging the constitutionality of state statutes. *See* A.R.S. § 12-1841. The Supreme Court of the United States recently held that such state laws plainly authorize intervention by legislative leaders. *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022). Here, Plaintiffs challenge the constitutionality of a state statute that prohibits biological males from competing in women's athletic events at Arizona public schools, colleges, and universities. A.R.S. § 15-120.02. Intervention has been granted recently to the Legislative Leaders in two other cases to defend state laws. *See Isaacson v. Mayes*, 2:21-cv-01417-DLR, 2023 WL 2403519, at *2 (D. Ariz. Mar. 8, 2023); *Mi Familia Vota v. Fontes*, 2:22-cv-00509-SRB (D. Ariz. Apr. 26, 2023).

Plaintiffs have informed counsel for the Proposed Intervenors that they oppose this motion to intervene. As of the time of filing, counsel have not appeared for any defendant.

The President and Speaker have a unique interest in defending the constitutionality of laws duly enacted by the Arizona Legislature. This is especially true when the laws' usual defenders are not available to defend them. Arizona Attorney General Kris Mayes has determined she is disqualified from defending this law. *See* A.R.S. § 41-192(E). Because Attorney General Mayes will not defend the constitutionality of the challenged law, the existing parties do not adequately represent the Legislative Leaders' interests, and the Court should grant their motion to intervene.[1]

---

[1] Consistent with the Ninth Circuit's practical approach to interpreting Rule 24(c), and the fact that the Defendants' answer is not yet due, the Legislative Leaders have not included

# FACTUAL BACKGROUND

**The Challenged Law**

Arizona enacted S.B. 1165, the "Save Women's Sports Act," more than one year ago. On March 30, 2022, then-Governor Doug Ducey signed S.B. 1165 into law.

The key provision to the Save Women's Sports Act provides: "Athletic teams or sports designated for 'females,' 'women' or 'girls' may not be open to students of the male sex." A.R.S. § 15-120.02(B). The Act applies to all public schools or private schools whose students or teams compete against a public school. *Id.* at § 15-120.02(A). The Act covers all educational age levels, applying from kindergarten through grade twelve and to all institutions of higher education. *Id.* at § 15-120.02(I).

When the law passed S.B. 1165, the Arizona legislature made a series of legislative findings that inherent, physiological differences between biological males and females create a "sports performance gap" between males and females. *See* S.B. 1165, § 2(1), (5), (7), and (9) (2022). The legislature further found that "[h]aving separate sex-specific teams furthers efforts to promote sex equality by providing opportunities for female athletes to demonstrate their skill, strength and athletic abilities while also providing them with opportunities to obtain recognition, accolades, college scholarships and the numerous other long-term benefits that flow from success in athletic endeavors." *Id.* at § 2(14). When he signed S.B. 1165, Governor Ducey recognized that S.B. 1165 creates a "level playing field" and "simply ensures that the girls and young women who have dedicated themselves to their sport do not miss out on hard-earned opportunities including their titles, standings and scholarships due to unfair competition." Letter from Governor Douglas A. Ducey to Secretary of State Katie Hobbs (Mar. 30, 2022), *at* https://www.azleg.gov/govlettr/55leg/2r/sb1165.pdf.

---

a proposed pleading with their motion, which itself notifies the existing parties of the Leaders' interests in the litigation.

**Plaintiffs' Lawsuit**

On April 17, 2023, over a year after the law was passed, Plaintiffs filed a complaint seeking injunctive and declaratory relief. Doc. 1. On the same day, Plaintiffs filed a motion for preliminary injunction. Doc. 3. Plaintiffs allege that the Save Women's Sports Act violates the Equal Protection Clause, Title IX, and the Americans with Disabilities Act. Doc. 1 at 16-20.

**Proposed Intervenors**

The President and Speaker, on behalf of their respective legislative Houses, are entitled to intervene and be heard in this case. *See* Ariz. Const. art. 4, pt. 2, § 8 (authorizing each house of the Legislature to "determine its own rules of procedure"); A.R.S. § 12-1841(A), (D) (granting the President and Speaker "the right to be heard" and the right to "intervene as a party" in "any proceeding in which a state statute . . . is alleged to be unconstitutional"); Ariz. House of Representatives Rule 4(K); Arizona State Senate Rule 2(N). President Petersen was a co-sponsor of S.B. 1165, and personally advocated and voted for the Save Women's Sports Act. Speaker Toma also personally advocated and voted for S.B. 1165, and seeks to defend the law challenged in this action.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a), a court must permit intervention when (1) the application is timely; (2) the applicant has a significant protectable interest in the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *See* FED. R. CIV. P. 24(a)(2); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Courts may also grant permissive intervention when an applicant has a claim or defense that shares common questions of law or fact with the main action. FED. R. CIV. P. 24(b)(1)(B).

"[T]he requirements for intervention are broadly interpreted in favor of intervention," *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004),

3

precisely because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (internal citation omitted) (abrogated by further broadening of intervention under a specific statute in *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)). In evaluating this motion, this Court should "take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declaration[] supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

## ARGUMENT

**I.    The President and Speaker are entitled to intervention as of right.**

    **A.    The motion is timely.**

Courts evaluate three factors when assessing timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). The "crucial date" for determining timeliness is when the proposed intervenor "should have been aware that their interests would not be adequately protected by the existing parties." *Id.* (citation omitted). Here, the President and Speaker first became aware that their interests would not be adequately represented on April 21, 2023, when Attorney General Kris Mayes informed Defendant Horne that the Attorney General's Office was disqualified from representing him in this case under A.R.S. § 41-192(E). *See* Ex. A, Letter from Kevin D. Ray to Defendant Horne, Apr. 21, 2023. Because this proceeding just began and the Legislative Leaders only recently learned of their need to intervene, all relevant factors demonstrate that their motion is timely.

First, the motion is timely because the case just began. Plaintiffs filed this lawsuit just a few weeks ago, on April 17, 2023. Defendants' answers to the Complaint and opposition to the Motion for Preliminary Injunction are not yet due. Under these circumstances, timeliness is satisfied. *See, e.g.*, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding timely a motion to intervene

4

filed ten days after the defendant's answer); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (finding timely a motion to intervene filed less than one week after the complaint and before the defendants had filed an answer).

Second, the existing parties will not suffer any prejudice from the Legislative Leaders' intervention. The Ninth Circuit has emphasized that "one key principle guides our prejudice analysis: The only 'prejudice' that is relevant . . . is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) (quoting *Smith*, 830 F.3d at 857). In other words, courts may only consider the proposed intervenors' delay in filing a motion, and "the fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Id*. The Legislative Leaders' motion is not prejudicial to the parties because the litigation just began, and the President and Speaker filed this motion just days after learning that Attorney General Mayes would not defend the law.

Finally, the President and Speaker did not delay in filing this motion. The Legislative Leaders first learned that their interests may no longer be adequately represented when they learned that Attorney General Mayes had determined her office was disqualified from defending the law on April 21, 2023. The Legislative Leaders promptly retained counsel and began work to intervene. Because this case just began, there can be little question that this motion is timely, and courts have granted intervention much later in cases. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 266 F.R.D. 369, 373 (D. Ariz. 2010) (finding that motion to intervene as of right was timely when filed "approximately nine months after the case was filed and six months after the Amended Complaint"); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) (finding motion to intervene as of right was timely even though intervenor knew of case for six months before moving to intervene, at which time "discovery was largely complete"); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993) (finding motion to intervene timely even though filed "some eighteen

months after suit had been commenced and nine months after the deadline for filing motions to add parties").

### B. The President and Speaker have a significant protectable interest in this matter that may be practically impaired or impeded without their participation.

Consistent with courts' liberal policy in favor of intervention, the Ninth Circuit has clarified that Rule 24(a)(2) does not require proposed intervenors to identify any specific statutory, legal, or equitable interest. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citation omitted). "Rather, it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (cleaned up). When a proposed intervenor has a protectable interest, courts often "have little difficulty concluding that the disposition of a case may, as a practical matter, affect" their interest. *Cal. Ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

These standards are readily satisfied here. The State of Arizona has expressly authorized the President of the State Senate and the Speaker of the House of Representatives to intervene and file briefs in any case challenging the constitutionality of a state statute. A.R.S. § 12-1841(D). Simply put, when a state statute is challenged as unconstitutional, the Legislative Leaders "shall be entitled to be heard." *Id.* § 12-1841(A). For this reason, Arizona law requires plaintiffs challenging state statutes to notify the Speaker and President and provide information to facilitate their participation. *Id.* § 12-1841(A) & (B). Accordingly, the Legislative Leaders have a crucial interest—bestowed by the people of Arizona through their elected representatives in the Legislature, duly enacted in state law—in defending the constitutionality of state statutes.

Consistent with the Legislative Leaders' rights under § 12-1841, the Arizona State Senate Rules authorize the President "to bring or assert in any forum on behalf of the Senate any claim or right arising out of any injury to the Senate's powers or duties under the constitution or laws of this state." State of Arizona, *Senate Rules, 56th Legislature 2023-2024*, Rule 2(N), available at https://bit.ly/3WXFLDv. Likewise, the

Arizona House of Representatives Rules authorize the Speaker "to bring or assert in any forum on behalf of the House any claim or right arising out of any injury to the House's powers or duties under the Constitution or Laws of this state." State of Arizona, *Rules of the Ariz. House of Representatives, 56th Legislature 2023-2024*, Rule 4(K), available at https://bit.ly/3HuL9bz. Accordingly, the Legislative Leaders do not merely speak for themselves; they speak on behalf of their respective houses of the Arizona Legislature as a whole.

The Supreme Court of the United States recently held that statutes like § 12-1841 endow legislative leaders with a protectable interest that would be impaired absent intervention. *Berger*, 142 S. Ct. at 2194. Like Arizona, North Carolina has a law that allows the leaders of its legislature to participate in proceedings challenging the constitutionality of state statutes. *Id.* at 2198 (citing N.C. GEN. STAT. ANN. § 1–72.2). The district court and Fourth Circuit denied the legislative leaders' motions to intervene, but the Supreme Court reversed. *Id.*

The Supreme Court began its analysis by reiterating that "States possess a legitimate interest in the continued enforcement of their own statutes," and that "States may organize themselves in a variety of ways." *Id.* at 2201 (cleaned up). When faced with a constitutional challenge, some states have organized themselves to mount a defense through the single voice of an attorney general. *Id.* at 2197. But "not every State has structured itself this way." *Id.* "Some have chosen to authorize multiple officials to defend their practical interests in cases like these." *Id.* Like Arizona, North Carolina "empowered the leaders of its two legislative houses to participate in litigation on the State's behalf under certain circumstances and with counsel of their own choosing." *Id.* The Supreme Court noted that such an approach is "understandable" because, as here, an elected attorney general may "oppose[] laws enacted by the [Legislature] and decline[] to defend them fully in federal litigation." *Id.*

The Supreme Court's teachings on this issue have been "many, clear, and recent." *Id.* at 2202. States are "free to empower multiple officials to defend [their] sovereign

7

interests in federal court." *Id.* (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022)) (cleaned up). A state "must be able to designate agents to represent it in federal court" and may authorize its legislature "to litigate on the State's behalf, either generally or in a defined class of cases." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951–52 (2019) (cleaned up). "The choice belongs to [the sovereign State]." *Id.* at 1952 (cleaned up). "[S]tate law may provide for other officials, besides an attorney general, to speak for the State in federal court as some States have done for their presiding legislative officers." *Id.* (citation omitted).

The Supreme Court recounted its prior decisions concluding that "state legislative leaders authorized under state law to represent the State's interests in federal court could defend state laws there as parties." *Id.* (citing *Karcher v. May*, 484 U.S. 72, 81–82 (1987)) (cleaned up). Indeed, intervention by legislative leaders is commonplace. *See, e.g.*, *Horne v. Flores*, 557 U.S. 433, 443 (2009) (noting that the President of Arizona State Senate and Speaker of the Arizona House of Representatives were allowed to intervene); *Yniguez v. State of Ariz.*, 939 F.2d 727, 732 (9th Cir. 1991) ("[T]he Supreme Court held that state legislators who intervened in their official capacities to defend a lawsuit challenging the constitutionality of a statute" only lacked standing after they left office); *Powell v. Ridge*, 247 F.3d 520, 522 (3rd Cir. 2001) (granting legislative leaders' motion to intervene as defendants to "articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government"); *Clairton Sportsmen's Club v. Pa. Turnpike Comm'n*, 882 F. Supp. 455, 462-463 (W.D. Pa. 1995) (permitting intervention of state legislators to submit briefs and make arguments concerning the decision to build a highway system).

In *Berger*, the Supreme Court cautioned that "[a]ppropriate respect for these realities suggests that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 142 S. Ct. at 2201. "To hold otherwise," the Court reasoned, would (1) "evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials,"(2) "risk turning a deaf federal

ear to voices the State has deemed crucial to understanding the full range of its interests," (3) "encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court," and (4) "tempt litigants to select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly." *Id.* Taken together, this would "risk a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments." *Id.*

"These principles and precedents are dispositive here." *Id.* at 2202. Like North Carolina, Arizona has expressly authorized the Legislative Leaders to intervene, participate, and file briefs to defend the constitutionality of state statutes. A.R.S. § 12-1841(D). And for good reason. Attorney General Mayes has determined her office is disqualified from defending the law at issue in this litigation. If the Speaker and President are not allowed to intervene, they will not be able to exercise their statutory right to mount a defense, and the duly enacted laws challenged here may receive no adequate defense, or even no defense at all. As the Supreme Court advised, federal courts should not second-guess whom a State selects to represent its interests. *Berger*, 142 S. Ct. at 2201. The Legislative Leaders have a statutorily granted interest in defending the challenged laws as intervenors.

To be sure, prior to *Berger*, one decision in this District held that "A.R.S. § 12-1841 does not confer blanket authority upon [the President of the State Senate and Speaker of the House of Representatives] to defend the constitutionality of a state law—particularly where the attorney general is already defending the law." *Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 2019). But *Miracle* is readily distinguishable because Attorney General Mayes is *not* defending the challenged statute. More importantly, *Miracle* pre-dates the Supreme Court's decision in *Berger* and, to the extent it is inconsistent with *Berger*, it has been superseded. Notably, another decision in this District characterized *Miracle*'s holding as just one side of a then-still-disputed issue, presenting the matter as a "close call" that this Court had not yet "resolve[d]." *See Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 274 (D. Ariz. 2020). That case recounted the plain language of § 12-1841 and noted

9

that there is "force to the argument that, at least under Arizona law, the House Speaker and Senate President possess a unique stature that resembles that of the Attorney General and distinguishes them from a run-of-the-mill individual legislator whose generalized interest in defending the constitutionality of a statute would be insufficient to confer standing." *Id.*

In the last two months, two other courts in this District granted the Legislative Leaders intervention as of right to defend the constitutionality of other state laws. *See Isaacson v. Mayes*, 2:21-cv-01417-DLR, 2023 WL 2403519, at *2 (D. Ariz. Mar. 8, 2023); *Mi Familia Vota v. Fontes*, 2:22-cv-00509-SRB (D. Ariz. Apr. 26, 2023). In *Isaacson*, the Court found that, unlike the *Miracle* and *Arizonans for Fair Elections* cases, in which state legislative leaders' interests were deemed adequately represented, denying the Legislative Leaders' motion to intervene would cause the challenged laws will go undefended, which "risk[s] turning a deaf ear to the voices the State has deemed crucial to understanding the full range of its interests." *Isaacson*, 2023 WL 2403519, at *1 (quoting *Berger*, 142 S.Ct. at 2201).

To the extent that this District previously questioned the effect of A.R.S. § 12-1841, *Berger* definitively resolved that question in favor of intervention for legislative leaders. Because Arizona authorizes the Speaker and President to defend state statutes, they have a significant protectable interest that would be impaired if the Plaintiffs were to prevail and the laws are enjoined and declared unconstitutional.

C.    **The Legislative Leaders are not adequately represented.**

Courts consider three factors when determining whether existing parties adequately represent the interests of the proposed intervenor: "(1) whether the interest of a present party is such that it will *undoubtedly* make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). The Speaker and President must only show "that representation of [its] interest '*may be*' inadequate" to satisfy this element for intervention. *Trbovich v. United*

*Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added). And "the burden of making that showing should be treated as minimal." *Id.*

Attorney General Mayes has determined that her office is disqualified from defending the state law at issue in this litigation, and thus it is clear that General Mayes will not adequately represent the Legislative Leaders' interests. Ex. A. Moreover, although Attorney General Mayes has authorized Defendant Horne to retain counsel, no counsel have entered an appearance on behalf of Defendant Horne, despite an imminent briefing deadline on Plaintiffs' motion for preliminary injunction. In fact, no other party has filed an entry of appearance to defend the statutes at issue. Thus, it is clear that no party adequately represents the interests of the Legislative Leaders. Moreover, even if Defendant Horne or another party were to file an appearance, it is unlikely that that party or party would defend the unique *legislative* interests reflected by the Legislative Leaders. Defendant Horne, as an executive officer, necessarily represents different interests than the Legislative Leaders, who have a unique, unqualified interest in defending the validity of the statute enacted by the legislature.

The Supreme Court has confirmed that intervention of right is warranted where, as here, a proposed intervenor has raised "sufficient doubt about the adequacy of representation[.]" *Trbovich*, 404 U.S. at 538. In *Trbovich*, the official prosecuting the law was "performing his duties, broadly conceived, as well as can be expected," but the Supreme Court recognized that the individual whose interests were at stake may have valid concerns about deficiencies in the official's representation and may not take "precisely the same approach to the conduct of the litigation." *Id.* at 539. Intervention is even more appropriate here, where the Attorney General has determined that she is disqualified from defending the law. The Legislative Leaders have a significant protectable interest in defending the constitutionality of state statutes, and that interest will be gravely impaired by an order enjoining the challenged laws. The Speaker and President are entitled to intervention of right.

## II. In the alternative, the Court should grant permissive intervention.

In the alternative, and at a minimum, this Court should exercise its discretion to grant permissive intervention. Under Rule 24(b), courts may grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." A court's discretion in determining whether permissive intervention is appropriate may be guided by factors such as "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). It "may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.*

The Legislative Leaders' anticipated defense—that the challenged laws are constitutional—plainly shares common questions of law and fact with Plaintiffs' action. As explained above, *see supra* Sections I.B. and I.C, the President and Speaker have an important interest in defending the challenged law, and Attorney General Mayes has determined her office is disqualified from defending it. Given these weighty interests and the need for parties willing to defend the challenged laws, the Court should grant permissive intervention.

## CONCLUSION

The Speaker and President have unique interests in defending legislation that the Attorney General will not protect. Intervention is therefore proper. Accordingly, the Legislative Leaders respectfully request that this Court grant them intervention as of right, or in the alternative, permissive intervention.

Dated: May 1, 2023

Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

<u>/s/ Justin D. Smith</u>
D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com

* *pro hac vice*

*Attorneys for Proposed Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

  I hereby certify that, on May 1, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<i>/s/ Justin D. Smith</i>