**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810     Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Karl Worthington, #018703
admin@wb-law.com

Maria Syms, Bar No. 023019
Director of Legal Services
Arizona Department of Education
1535 W Jefferson, BIN #50
Phoenix, AZ 85007
602-542-5240
Maria.Syms@azed.gov

*Attorneys for Defendant Thomas C. Horne*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Jane Doe, by her next friends and parents Helen Doe and James Doe; and Megan Roe, by her next friends and parents, Kate Roe and Robert Roe,** | **Case No. 4:23-cv-00185-JGZ** |
| **Plaintiffs,** | **REPLY IN SUPPORT OF MOTION TO TRANSFER** |
| **v.** | |
| **Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene school District; the Gregory School; and Arizona Interscholastic Association, Inc.,** | |
| **Defendants.** | |

**I.      THE NINTH CIRCUIT DEFERS TO STATE STATUTE ON VENUE.**

The Ninth Circuit expressly recognizes, respects, and defers to state statutes that seek to protect their residents from inconvenient venues.  Deferring to a California state venue statute, the Court held "that § 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice in litigating in a non-California venue" (deferring to California statute for purposes of motion to transfer) *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000).  This same Ninth Circuit holding would not change for Arizona.  Because public officials are subject to being sued based on their public service, Arizona codified its strong policy that public officials may only be sued, in a state-court lawsuit, in a venue that is convenient to the public official: "Actions against public officers **shall** be brought in the county in which the officer, or one of several officers, holds office." A.R.S. § 12-401.16 (emphasis added).

**II.     COMMON SENSE AND FAIRNESS REQUIRE TRANSFER OF THIS MATTER
TO THE PHOENIX DIVISION.**

Only Plaintiffs and The Gregory School ("TGS") responded to the Motion to Transfer.  The other four or six defendants (AIA, Toenjes, Kyrene School District, and potential interveners the Legislative Leaders) do not oppose the Motion. That fact alone speaks volumes in favor of transferring the matter to the Phoenix Division.

And even Plaintiffs and TGS do not dispute the key facts demonstrating the basis for the requested transfer.  Neither Plaintiffs nor TGS dispute that:

- Defendants Horne, Toenjes, Kyrene School District, AIA, and potential interveners the Legislative Leaders either reside in and/or are headquartered much closer to the Phoenix Division than the Tucson Division;

- Plaintiff Jane Doe, whose interests are as worthy of consideration as Plaintiff Megan Roe, resides in Maricopa County;

1    • Seven[1] of the parties reside in and/or are headquartered near Phoenix, and only two

2       parties reside in and/or are headquartered in Tucson.  Plaintiffs and TGS speak

3       anecdotally and without any actual numbers.

4    Nevertheless, Plaintiffs and TGS insist in imposing unwarranted inconvenience and

5  expense on all the other parties to this lawsuit without any basis.  Common sense and fairness

6  require transfer of this matter to the Phoenix Division.

7    **A.    TGS Is a Nominal Defendant.**

8    This is a major case of substantial import concerning whether biological boys can compete

9  against girls.  TGS is a nominal defendant, taking the side of the Plaintiff. It is not defending, nor

10  does it appear that it will act as a Plaintiff.  It is being a little bit narcissistic and elevating the

11  obscure and unimportant question of whether it receives tax monies.  If there is a judgment for the

12  Plaintiffs, TGS will comply, because that is TGS's opinion. In view of that, the Plaintiffs would

13  have no reason to contest it. This case is about whether biological boys should compete with girls

14  in sports, not whether TGS receives tax money. TGS is a nominal, defendant.

15    TGS will not be party to the overwhelming dispute at issue in this lawsuit—the legality

16  and enforceability of the Act.  Because TGS chooses not to engage with the primary issues in the

17  lawsuit, TGS's role in this lawsuit is minimal.  It will not be taking discovery or filing briefs

18  related to the primary issues in the lawsuit.  In short, it is not sensible to base a decision regarding

19  transfer on the convenience of a single, minimal party to the lawsuit while ignoring the

20  convenience of multiple, much-more-central, parties to the lawsuit.

21    **B.    The Convenience of the Parties Favors Transfer.**

22    Plaintiffs first argue "the convenience of the parties does not favor transfer." *See* Plaintiffs'

23  Opposition to Defendant Horne's Motion to Transfer ("Plaintiffs' Response") at 3:1. Plaintiffs'

24  argument defies common sense.  Plaintiffs concede that substantially more parties would be

25

26  [1] The number of Phoenix-based parties should be seven because the Legislative Leaders should
    be permitted to intervene.  That is because the legislature should have a right to defend its own
27  statute and because the Attorney General has ignored her duty to defend and refused to fund the
    defense of the Act, thereby unfairly hamstringing Defendant Horne's ability to fully and fairly
28  defend the Act.

3

1    required to travel to Tucson (if the case were not transferred) than would be required to travel to

2    Phoenix (if the case were transferred). *See* Plaintiffs' Response at 3:3-6.  And, although Plaintiffs

3    determinedly ignore the math, seven parties is more than two parties.

4          Plaintiffs never even attempt to explain why the convenience of one minimal defendant

5    and one plaintiff outweighs the convenience of six other defendants and one other plaintiff.

6          The failure to even attempt to provide such an explanation is understandable because

7    Plaintiffs' position regarding the convenience of the parties defies reason.  Indeed, Plaintiffs argue

8    that it would be burdensome for Plaintiff Megan Roe and her parents to travel to Phoenix. *See*

9    Plaintiffs' Response at 4:1-3.  But, of course, the same is true for Plaintiff Jane Doe and four or

10   six Defendants having to travel to Tucson.  And, again, seven is greater than two.

11         Plaintiffs' only argument regarding the convenience of the parties is that Defendant Horne

12   and AIA have state-wide authority.  But that is irrelevant to the question of the convenience of a

13   venue for litigation.  AIA and Horne reside and/or are headquartered in Phoenix.  They live and

14   operate in Phoenix.  That is the reason a Phoenix venue is more appropriate.  The state statute

15   requires that venue be in Phoenix and the Ninth Circuit respects such state statutes.

16         **C.      The Convenience of the Witnesses Favors Transfer.**

17         "The convenience of witnesses 'is often the most important factor in resolving a motion to

18   transfer.'" *Airbus DS Optronics GmbH, v. Nivisys, LLC,* 2015 WL 3439143, *4 (D. Ariz.) *quoting*

19   *Park v. Dole Fresh Vegetables, Inc.,* 964 F.Supp.2d 1088, 1095, (N.D. Cal. 2013).  In defiance of

20   the facts, Plaintiffs also argue—contrary to common sense—that the convenience of the witnesses

21   does not favor transfer.  *See* Plaintiffs' Response at 4:15. But if five of seven of the parties are

22   located in or near Phoenix, and only two parties are located in Tucson, it is nearly certain that the

23   majority of the witnesses in this lawsuit will also be located in or near Phoenix.  Indeed, and

24   dispositively on this point, Plaintiffs do not even argue an equal or greater number of parties or

25   witnesses will be found in Tucson than Phoenix (nor can they make that baseless argument).

26   Plaintiffs having failed to even attempt to rebut Horne's argument about the convenience of parties

27   or witnesses, it is respectfully requested that Plaintiffs should not prevail on that point.

28

1    Plaintiffs, without ever alleging that the same number or <u>more</u> parties or witnesses will be

2   found in Tucson, and without identifying <u>any</u> of those witnesses, simply say "*all* the potential fact

3   witnesses regarding Megan Roe and the hardship that Arizona Revised Statutes § 15-120.02 (the

4   'Ban') would impose upon her are likely in Tucson.  The same is true with regards to TGS."  *See*

5   Plaintiffs' Response at 5:1-3.  But the same can be said of the other parties to this litigation with

6   regard to Phoenix as the more convenient forum for witnesses.

- Defendant Horne, and the Arizona Department of Education which he heads, are
  located in Phoenix as are the largest percentage of employees of the Department
  who are potential witnesses;

- Defendant Toenjes and the Kyrene School District which she heads are located in
  the Phoenix area as are the employees of Kyrene School District who are potential
  witnesses;

- Defendant AIA is headquartered in Phoenix as are the officers and employees of
  AIA who are potential witnesses;

- Plaintiff Jane Doe lives in Phoenix and would suffer the hardship that travel to
  Tucson would impose.

17    Because the most important factor—the convenience of the parties and witnesses—

18   overwhelmingly favors Phoenix as the venue for this action, it is respectfully requested that the

19   Court grant the Motion to Transfer.

20    **D.    The *Jones* Factors Favor Transfer.**

21    Six of the eight Jones factors favor Horne, while just one factor (plaintiff's choice of forum)

22   favors Plaintiffs.  One factor (familiarity with governing law) is neutral.  TGS admits that two

23   factors are at least "even," as compared to six factors favoring a change in venue.

24    Plaintiffs and TGS both contend that the first *Jones* factor ("Factor One") does not apply

25   because this is not a contract case.  The Arizona District has repeatedly interpreted Factor One—

26   not as being limited to contract cases—but as "the location where the relevant [events took

27   place]".  *Barrera v. United States,* 2011 WL 13047392, 1 (D. Ariz.) (brackets in original, replacing

28   *Jones'* phrase "agreements were negotiated and executed.").  Similarly, the District of Arizona

1  has repeatedly interpreted Factor One to apply to non-contract actions. *Grabham v. American*

2  *Airlines, Inc.,* 2019 WL 316213, *1-2 (D. Ariz.) (analyzing Factor One as "Location of Relevant

3  Events" in non-contract action).[2]  Factor One should not be ignored.  The relevant events that have

4  thus far occurred—i.e., the debate, passage, and enactment of the Save Women's Sports Act—

5  have all occurred in the Phoenix area.  And the largest portion of relevant events yet to occur—

6  i.e., enforcement of the Act—will occur in Maricopa County, which has a larger population than

7  Pima County (meaning there is a higher likelihood of impact in Maricopa County).  Moreover,

8  Plaintiff Jane Doe resides in Maricopa County, so as concerns the relevant events impacting these

9  Plaintiffs, at least as many of those events will occur in the Phoenix area as in Tucson.  Factor

10  One thus cuts in favor of transfer.

11       The parties agree that factor two—venue most familiar with the governing law—is neutral

12  and favors neither venue.

13       Factor three—plaintiffs' choice of venue—favors Plaintiffs, but is overwhelmed by the

14  other factors.

15       The fourth and fifth *Jones* factors, are similar to Factor One and focus on the parties'

16  contacts with the forum and the relevant events.  Those factors favor transfer for the same reason

17  that Factor One favors transfer—i.e., the majority of the parties and witnesses are located in the

18  Phoenix area and the relevant events have a greater relationship to the Phoenix area than to

19  Tucson.

20       The sixth factor is the "differences in the costs of litigation in the two forums."  Because

21  five or seven of the parties are located in Maricopa County, and only two parties are located in

22  Pima County, it will necessarily be more expensive (as well as more inconvenient) to litigate this

23

24  [2] *Bowling v. Westport Ins. Corp.,* 2015 WL 13203369, *9 (D. Ariz.) (applying Factor One as
location of the relevant events: "Defendants argue that venue is proper in the Phoenix Division
25  because all claims decisions for Glen Bowlings workers' compensation claim were made in
26  Maricopa County. (Doc 4 at 2). Plaintiffs contend that Glen Bowling was working and injured in
Tucson and received all of this workers' compensation benefits and medical treatment in Tucson,
27  where Mr. Bowling resides. (Doc. 23 at 4). The Court finds that even if Defendants made decisions
about Glen Bowling's workers' compensation claim in Maricopa County, the injury that Mr.
28  Bowling suffered due to Defendants' alleged bad faith occurred in Tucson.").

1  matter in Tucson, requiring many more Phoenix-based parties and witnesses to travel to Tuscon

2  than the number of Tucson-based parties and witnesses to travel to Phoenix.  Again, by seven to

3  two.

4      The seventh and eighth *Jones* factor also relates to the location of witnesses and evidence,

5  and those factors also favors Phoenix as the appropriate venue.  Because six of the eight *Jones*

6  factors favor transfer, it is respectfully requested that the Court grant the Motion to Transfer.

7      **E.      TGS Role in this Litigation is More Limited than Other Defendants.**

8      TGS's motion to dismiss is likely to succeed and TGS is likely to no longer be a party to

9  this case beyond its early stages.  TGS is unlikely to even be present as a party for much of this

10 litigation, and its location in Tucson therefore is less important than the location of other parties.

11 Should the seven Phoenix parties repeatedly drive to Tucson because of TGS's desire to litigate

12 its taxes?

13                                    **CONCLUSION**

14     It is respectfully requested that the Court grant the Motion to Transfer.

15     **RESPECTFULLY SUBMITTED** on May 23, 2023.

16                                    **WILENCHIK & BARTNESS, P.C.**

17

18                                    */s/ Dennis I. Wilenchik*
                                      Dennis I. Wilenchik, Esq.
19                                    Karl Worthington, Esq.
                                      The Wilenchik & Bartness Building
20                                    2810 North Third Street
21                                    Phoenix, Arizona 85004
                                      admin@wb-law.com
22                                    *Attorneys for Defendant Thomas C. Horne*

23

24                                    */s/ Maria Syms, Esq.*
                                      Director of Legal Services
25                                    Arizona Department of Education
                                      1535 W Jefferson, BIN #50
26                                    Phoenix, Arizoa 85007
27                                    Maria.Syms@azed.gov
                                      *Attorneys for Defendant Thomas C. Horne*
28

                                            7

CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

By:*/s/ Hilary Myers*

8