Colin Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone:    (602) 640-9000
Facsimile:    (602) 640-9050
Email:        cproksel@omlaw.com
*Attorney for Plaintiffs*
*Additional counsel listed in signature block*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# TUCSON DIVISION

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>           Plaintiffs,<br><br>    v.<br><br>Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>           Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' OPPOSITION TO THE GREGORY SCHOOL'S MOTION TO DISMISS AND PROPOSED INTERVENORS' PROPOSED MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

I.  Defendant TGS's Motion to Dismiss Should Be Denied......................................... 4

    A.  Defendant TGS Receives Federal Financial Assistance. .............................. 4

        1.  Defendant TGS's Tax-Exempt Status Qualifies as Federal Financial Assistance. ........................................................................... 4

        2.  Defendant TGS's Receipt of a PPP Loan Independently Qualifies as Federal Financial Assistance. ......................................... 6

    B.  Defendant TGS Is Liable Under the ADA. .................................................. 7

II. The Proposed Intervenors' Proposed Motion to Dismiss Should Also Be Denied. ...................................................................................................................... 9

    A.  Plaintiffs Have Plausibly Alleged That the Ban Violates the Constitution and Title IX. ............................................................................. 9

    B.  Plaintiffs Have Stated a Claim Under the ADA. ......................................... 9

        1.  Gender Dysphoria Is a Disability Under the ADA. .......................... 9

        2.  Plaintiffs Have Alleged That Their Gender Dysphoria Results from "Physical Impairments." ........................................................... 11

        3.  Plaintiffs Have Alleged that Playing Sports Qualifies as a "Major Life Activity" in Their Particular Circumstances ................. 11

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) .................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 3

*Brooke v. Airport Hotel, LLC*,
  2015 WL 5444286 (D. Ariz. Sept. 16, 2015) .......................................................... 8

*Buettner-Hartsoe v. Balt. Lutheran High Sch. Ass'n*,
  2022 WL 2869041 (D. Md. July 21, 2022) ...................................................... 4, 5, 6

*Buettner-Hartsoe v. Balt. Lutheran High Sch. Ass'n*,
  2022 WL 4080294 (D. Md. Sept. 6, 2022) ............................................................ 5, 6

*Campen v. Portland Adventist Med. Ctr.*,
  2016 WL 5853736 (D. Or. Sept. 2, 2016) ................................................................ 4

*Castle v. Eurofresh, Inc.*,
  731 F.3d 901 (9th Cir. 2013) .................................................................................. 8

*Doe v. Abington Friends Sch.*,
  2022 WL 16722322 (E.D. Pa. Nov. 4, 2022) .......................................................... 6

*E.H. by & through Herrera v. Valley Christian Acad.*,
  616 F. Supp. 3d 1040 (C.D. Cal. 2022) ................................................................ 4, 6

*Edmo v. Corizon, Inc.*,
  935 F.3d 757 (9th Cir. 2019) ................................................................................ 10

*Fernandez v. Bruno Northfleet, Inc.*,
  568 F. Supp. 3d 1294 (S.D. Fla. 2021) .................................................................... 6

*Fulani v. League of Women Voters Educ. Fund*,
  684 F. Supp. 1185 (S.D.N.Y. 1988) ........................................................................ 5

*Griffith v. El Paso Cnty.*,
  2023 WL 2242503 (D. Colo. Feb. 27, 2023) .......................................................... 10

*Henry A. v. Willden*,
    678 F.3d 991 (9th Cir. 2012) ................................................................................. 13

*Husbands v. Fin. Mgmt. Sols., LLC*,
    2021 WL 4339436 (D. Md. Sept. 23, 2021) ................................................................ 6

*Jacobson v. Delta Airlines*,
    742 F.2d 1202 (9th Cir. 1984) ................................................................................... 5

*James Erickson Fam. P'ship v. Transamerica Life Ins. Co.*,
    2019 WL 1755858 (D. Ariz. Apr. 19, 2021) ............................................................... 7

*Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Ill.*,
    134 F. Supp. 2d 965 (N.D. Ill. 2001) ..................................................................... 5, 6

*Karanik v. Cape Fear Acad., Inc.*,
    608 F. Supp. 3d 268 (E.D.N.C. 2022) ....................................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..................................................................................... 7

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ..................................................................................... 7

*Lentini v. Cal. Ctr. for the Arts*,
    370 F.3d 837 (9th Cir. 2004) ..................................................................................... 8

*Lesofki v. Lash*,
    2012 WL 4711909 (D. Ariz. Oct. 3, 2012) ................................................................ 8

*Marsh v. Terra Int'l (Okla.), Inc.*,
    122 F. Supp. 3d 1267 (N.D. Okla. 2015) ................................................................ 12

*McGlotten v. Connally*,
    338 F. Supp. 448 (D.D.C. 1972) ............................................................................... 5

*McPherson v. Mich. High Sch. Athletic Ass'n*,
    119 F.3d 453 (6th Cir. 1997) (en banc) ..................................................................... 8

*OSU Student All. v. Ray*,
    699 F.3d 1053 (9th Cir. 2012) ................................................................................... 3

*Pahulu v. Univ. of Kansas*,
    897 F. Supp. 1387 (D. Kan. 1995) .......................................................................... 12

*Pritchard v. Fla. High Sch. Athletic Ass'n, Inc.*,
    2020 WL 3542652 (M.D. Fla. June 30, 2020) ........................................................ 12

iii

*Regan v. Taxation with Representation*,
   461 U.S. 540 (1983) ................................................................................................ 5

*Swarm Tech. LLC v. Amazon.com Inc.*,
   2022 WL 3585835 (D. Ariz. Aug. 22, 2022) ............................................................ 7

*Venson v. Gregson*,
   2021 WL 673371 (S.D. Ill. Feb. 22, 2021) .............................................................. 10

*Walter v. Birdville Indep. Sch. Dist.*,
   2018 WL 3974714 (N.D. Tex. Aug. 20, 2018) ........................................................ 12

*Williams v. Kincaid*,
   45 F.4th 759 (4th Cir. 2022) .............................................................................. 10, 11

**Statutes**

20 U.S.C. § 1681(a) ............................................................................................................ 4

29 U.S.C. § 794(a) ............................................................................................................. 4

42 U.S.C. § 12101 *et seq.* ................................................................................................. 8

42 U.S.C. § 12102(2)(A) ................................................................................................. 12

42 U.S.C. § 12132 .............................................................................................................. 8

42 U.S.C. § 12181(7)(J) .................................................................................................... 8

42 U.S.C. § 12182 .............................................................................................................. 8

42 U.S.C. § 12211(b)(1) ............................................................................................. 9, 11

Ariz. Rev. Stat. § 15-120.02 ............................................................................................ 1

**Other Authorities**

34 C.F.R. § 106.2(g)(5) .................................................................................................... 5

**INTRODUCTION**

Defendant The Gregory School's ("TGS") motion to dismiss should be denied for two reasons. *First*, Defendant TGS receives federal financial assistance and so it must comply with Title IX and the Rehabilitation Act. For over five decades, courts across the country, including in this Circuit, have concluded that 501(c)(3) tax-exempt status—which TGS enjoys—constitutes a significant source of federal financial assistance. Moreover, TGS does not dispute that it received a PPP loan from the federal government or that such a loan qualifies as federal financial assistance; it argues only that the loan was forgiven before the conduct in this case. But Plaintiffs are entitled to test that assertion in discovery. *Second*, Defendant TGS misconstrues the scope of Plaintiffs' claims under the Americans with Disabilities Act ("ADA"). Plaintiffs have properly alleged that TGS violated Title III of the ADA, which applies to TGS irrespective of whether it received federal financial assistance.

Proposed Intervenors—who are not parties to the case—have also filed a proposed motion to dismiss, arguing that Ariz. Rev. Stat. § 15-120.02 (the "Ban") does not violate the Constitution, Title IX, or the ADA.[1] While Plaintiffs have moved to strike Proposed Intervenors' proposed motion for violating the Local Rules and an order of this Court, Proposed Intervenors' arguments also fail on the merits. As explained in more detail in Plaintiffs' Reply in Support of their Motion for Preliminary Injunction, the facts alleged in Plaintiffs' Complaint are more than sufficient to state Equal Protection and Title IX claims. As for the ADA claim, this Court should follow the well-reasoned decision of the Fourth Circuit concluding that gender dysphoria is a cognizable disability under the ADA; indeed, Proposed Intervenors cite no circuit authority to the contrary. Likewise, excluding Plaintiffs from playing on the sports teams consistent with their gender identity is a qualifying injury under the ADA, particularly given the many academic and social benefits that Plaintiffs allege that playing sports provides them.

---

[1] Proposed Intervenors do not move to dismiss Plaintiffs' Rehabilitation Act claim.

For these reasons, this Court should deny Defendant TGS's motion to dismiss. In the event the Court permits Proposed Intervenors to intervene—and does not strike their proposed motion for failure to comply with the rules—the Court should deny their motion to dismiss as well.

## FACTUAL BACKGROUND

Jane Doe and Megan Roe are transgender girls who want nothing more than to play on the sports teams consistent with their gender identity as other girls are able to do. (Compl. ¶ 2.) Their friends, families, teammates, and schools have accepted them as the girls that they are. (*Id.* ¶¶ 45, 61.) Yet the Ban requires that Arizona schools exclude transgender girls like Jane and Megan from competing on girls' sports teams simply because they are transgender. (*Id.* ¶ 25.) Unless enjoined by this Court, the Ban will prohibit Jane—an 11-year-old girl—from trying out for and competing in her public middle school's soccer, basketball, and cross-country teams in the coming school year. (*Id.* ¶¶ 49–50.) The Ban will also prohibit Megan, a 15-year-old girl, from competing on the girls' volleyball team at TGS, a private educational institution. (*Id.* ¶¶ 12, 63–64.) Plaintiffs allege that TGS receives federal financial assistance. (*Id.* ¶ 12.)

Both Jane and Megan have been diagnosed with gender dysphoria, which is "the distress caused by incongruence between a person's gender identity and their designated sex at birth." (*Id.* ¶¶ 32, 45, 57.) Gender dysphoria "results from physical impairments" and is recognized by the American Psychiatric Association and the Diagnostic and Statistical Manual. (*Id.* ¶ 32.) Gender dysphoria in adolescents is highly treatable by permitting them to live consistent with their gender identity in all aspects of their lives. (*Id.* ¶ 33.)

Jane has not yet begun puberty, and thus has not experienced any of the physiological changes associated with male puberty. (*Id.* ¶ 46.) Her doctors are carefully monitoring her for signs of the onset of puberty. (*Id.*) Megan began taking puberty-blocking medications when she was 11 years old, which prevented her from undergoing male puberty. (*Id.* ¶ 59.) Megan has also received hormone therapy that has caused her to

develop many of the physiological changes associated with female puberty. (*Id.*) Transgender girls like Jane and Megan—who have not undergone male puberty and who have taken or intend to take female hormones—do not have any athletic advantage over non-transgender girls. (*Id.* ¶¶ 34–36.)

Athletic programs are a central part of education, and both Jane and Megan would benefit significantly from playing on sports teams. Like all student athletes, playing school sports would give them an opportunity to develop social bonds with their teammates and become part of an important school community. (*Id.* ¶ 39.) Playing sports also has a well-documented positive effect on academic performance. (*Id.* ¶ 38.) And school sports provide an opportunity to make friends, work as a team, and improve student athletes' physical and emotional health. (*Id.* ¶¶ 40–43.) Excluding Jane and Megan—who live as girls in all aspects of their lives—would only cause them to suffer without any benefit to their teammates or competitors, who have always welcomed them as the girls that they are. (*Id.* ¶¶ 45, 61.) Playing on the boys' teams is not an option for Jane or Megan, as doing so would exacerbate their gender dysphoria and directly conflict with their medically supervised transitions. (*Id.* ¶¶ 52, 65.) But for the Ban, Jane's and Megan's schools would permit them to play on the girls' teams, as would the interscholastic sports league that regulates inter-school competition. (*Id.* ¶¶ 21, 54, 64.)

## **LEGAL STANDARD**

A complaint survives a motion to dismiss so long as it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "All that matters at this stage is that the allegations nudge this inference 'across the line from conceivable to plausible.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 680).

**ARGUMENT**

**I. DEFENDANT TGS'S MOTION TO DISMISS SHOULD BE DENIED.**

Defendant TGS's motion to dismiss should be denied for two simple reasons. *First*, Plaintiffs have adequately alleged that TGS receives federal financial assistance, such that Title IX and the Rehabilitation Act apply to it. *Second*, Plaintiffs have alleged that TGS is subject to and has violated Title III of the ADA, which applies whether or not TGS receives federal financial assistance.

**A.   Defendant TGS Receives Federal Financial Assistance.**

Plaintiffs allege that Defendant TGS receives federal financial assistance, which is all that is required to conclude that it must comply with Title IX and the Rehabilitation Act. (Compl. ¶ 12.) "[C]ourts have held that a complaint simply alleging, as [Plaintiff] does, that a defendant receives 'federal financial assistance' is sufficient." *Campen v. Portland Adventist Med. Ctr.*, 2016 WL 5853736, at *4 (D. Or. Sept. 2, 2016) (collecting cases), *report & recommendation adopted*, 2016 WL 5858670 (D. Or. Oct. 5, 2016). Even if more were required, TGS concedes that it receives federal tax-exempt status as a 501(c)(3) organization and that it accepted federal financial assistance in the form of a PPP loan. (Dkt. 37 at 2.) Both are sufficient to trigger the application of Title IX and the Rehabilitation Act to TGS. *See* 20 U.S.C. § 1681(a) (Title IX applies to "any education program or activity receiving Federal financial assistance"); 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act applies to "any program or activity receiving Federal financial assistance").

**1.   Defendant TGS's Tax-Exempt Status Qualifies as Federal Financial Assistance.**

Courts, including in this Circuit, have repeatedly held that a defendant's "tax-exempt status confers a federal financial benefit that obligates compliance with Title IX." *E.H. by & through Herrera v. Valley Christian Acad.*, 616 F. Supp. 3d 1040, 1050 (C.D. Cal. 2022); *see also Buettner-Hartsoe v. Balt. Lutheran High Sch. Ass'n*, 2022 WL 2869041, at *5 (D. Md. July 21, 2022) ("[T]his Court holds that § 501(c)(3) tax exemption

constitutes federal financial assistance for the purposes of Title IX."), *adhered to on reconsideration*, 2022 WL 4080294 (D. Md. Sept. 6, 2022); *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988) (noting that an entity was subject to Title IX because it "receive[d] federal assistance indirectly through its tax exemption"); *McGlotten v. Connally*, 338 F. Supp. 448, 462 (D.D.C. 1972) ("We think there is little question that the provision of a tax deduction for charitable contributions is a grant of federal financial assistance within the scope of the 1964 Civil Rights Act.").[2] These courts have correctly recognized that even "indirect" sources of aid constitute federal financial assistance, and that the Supreme Court has found that tax exemptions are "a form of Congressional subsidy and the equivalent of a cash grant." *Buettner-Hartsoe*, 2022 WL 2869041, at \*4 (citing *Regan v. Taxation with Representation*, 461 U.S. 540, 544 (1983)).

Defendant TGS does not engage with any of these cases, even though they have held for more than five decades that tax-exempt status qualifies as federal financial assistance. TGS instead relies on a single outlier case which reasoned that tax exemption did not qualify as federal financial assistance because tax exemption did not appear in a regulation defining such assistance. *See Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Ill.*, 134 F. Supp. 2d 965, 971 (N.D. Ill. 2001). But that case ignored that the relevant regulation includes a catchall provision, defining federal financial assistance to include "[a]ny other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity," 34 C.F.R. § 106.2(g)(5). Providing tax-exempt status serves as a federal "subsidy" and thus is an "arrangement" that provides federal financial assistance to schools like TGS. *Buettner-Hartsoe*, 2022 WL 2869041, at \*5 n.9. And in any event, even if the regulation were read more narrowly, "[i]t is questionable that the DOJ regulations may interpret the statute to narrow the scope of the term 'federal financial assistance' in a manner that is inconsistent with its purpose: to

---

[2] The reasoning of these cases applies equally to Plaintiffs' Rehabilitation Act claim. *See Jacobson v. Delta Airlines*, 742 F.2d 1202, 1212 (9th Cir. 1984) ("Congress intended that the terms 'program or activity receiving Federal financial assistance' in the Rehabilitation Act be given the same interpretation as the identical language in Title IX.").

5

eliminate discrimination in programs or activities benefiting from federal financial assistance." *Buettner-Hartsoe*, 2022 WL 4080294, at *3 (internal quotation marks omitted). *Johnny's Icehouse* is thus an outlier that has been explicitly rejected by the weight of authority. *See id.*; *Buettner-Hartsoe*, 2022 WL 2869041, at *5; *E.H.*, 616 F. Supp. 3d at 1050.

Thus, Defendant TGS's tax-exempt status qualifies as a form of "federal financial assistance" such that it is subject to Title IX and the Rehabilitation Act.

### 2. **Defendant TGS's Receipt of a PPP Loan Independently Qualifies as Federal Financial Assistance.**

Defendant TGS does not dispute that, as courts around the country have concluded, its receipt of federal loans from the pandemic Paycheck Protection Program ("PPP") qualifies as federal financial assistance. *See, e.g.*, *E.H.*, 616 F. Supp. 3d at 1049 (agreeing with the "numerous district courts [that] have held that PPP loans constitute federal financial assistance"); *Karanik v. Cape Fear Acad., Inc.*, 608 F. Supp. 3d 268, 281 (E.D.N.C. 2022) (concluding that "[a] PPP loan is 'federal financial assistance' subject to Title IX"); *Doe v. Abington Friends Sch.*, 2022 WL 16722322, at *7 (E.D. Pa. Nov. 4, 2022) (finding that receipt of PPP loan was sufficient to find that school had received federal financial assistance under Rehabilitation Act).

Defendant TGS instead asserts that its PPP loan expired at the end of 2020 and it is therefore no longer subject to federal antidiscrimination laws, citing a declaration from its Head of School. (Dkt. 37 at 5; Dkt. 37-1.) But Plaintiffs are entitled to test TGS's assertion about when precisely its PPP loan was forgiven, which is a factual issue not suited to resolution on a motion to dismiss. *See Husbands v. Fin. Mgmt. Sols., LLC*, 2021 WL 4339436, at *8 (D. Md. Sept. 23, 2021) (concluding that plaintiff had "sufficiently stated a claim" that receipt of PPP loan triggered Rehabilitation Act, and that defendant's argument that it received the PPP loan after the discriminatory conduct would be better addressed "after discovery is completed"); *Fernandez v. Bruno Northfleet, Inc.*, 568 F. Supp. 3d 1294, 1300 (S.D. Fla. 2021) (concluding that "[a]ny doubts as to whether the federal funding

1  Defendant received qualifies as 'federal financial assistance' for purposes of Rehabilitation
2  Act coverage are better addressed after discovery").

3        Moreover, the Court should not consider Dr. Sherrill's declaration, attached to
4  Defendant TGS's motion, in deciding TGS's motion to dismiss.  "It is hornbook law that
5  'a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6)
6  motion.'"  *Swarm Tech. LLC v. Amazon.com Inc.*, 2022 WL 3585835, at *7 (D. Ariz. Aug.
7  22, 2022) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)).  Dr. Sherill's
8  conclusory declaration seeks to introduce facts that are not mentioned—and thus not
9  incorporated by reference—anywhere in Plaintiffs' complaint.  *See Lee*, 250 F.3d at 689
10 (concluding that district court erred in considering defendants' declarations on motion to
11 dismiss); *Swarm Tech. LLC*, 2022 WL 3585835, at *7 (holding that declarations were not
12 incorporated by reference or subject to judicial notice).  Nor does Defendant TGS provide
13 any official or public source regarding the expiration of the PPP funds from which this
14 Court could take judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,
15 999 (9th Cir. 2018) (explaining that courts may not take judicial notice of "disputed facts"
16 even if they are contained in public records); *James Erickson Fam. P'ship v. Transamerica*
17 *Life Ins. Co.*, 2019 WL 1755858, at *3 (D. Ariz. Apr. 19, 2021) (concluding that
18 defendant's declaration containing "factual representations" was not subject to judicial
19 notice and "must be ignored at the current stage").  This Court therefore should not consider
20 Dr. Sherill's declaration and should permit Plaintiffs to take discovery on this issue.

21                                   ***

22       In sum, Plaintiffs have adequately alleged that TGS receives federal financial
23 assistance, such that it is subject to Title IX and the Rehabilitation Act.

24       **B.**      **Defendant TGS Is Liable Under the ADA.**

25       Defendant TGS argues that it is not liable under the ADA because it is a private
26 entity. (Dkt. 37 at 7.)  Not so.  Private schools like TGS are subject to Title III of the ADA,
27 which requires that "[n]o individual shall be discriminated against on the basis of disability
28 in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a); *see* 42 U.S.C. § 12181(7)(J) (defining a place of public accommodation to include an "elementary, secondary, undergraduate, or postgraduate private school, or other place of education"). Thus, "as a private school," TGS "qualifies as a 'public accommodation' subject to Title III of the ADA." *Lesofki v. Lash*, 2012 WL 4711909, at *3 (D. Ariz. Oct. 3, 2012). Moreover, unlike Plaintiffs' other causes of action against TGS, the ADA applies regardless of whether TGS receives federal financing. *See Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001) (explaining that "the Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance"); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997) (en banc) (explaining that "coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities").

Defendant TGS suggests that Plaintiffs assert only a claim under Title II of the ADA, but that is incorrect. (Dkt. 37 at 7.) Count III of Plaintiffs' Complaint asserts a claim under 42 U.S.C. § 12101 *et seq.*, which includes Title II of the ADA for public entity defendants (42 U.S.C. § 12132) and Title III for defendants operating public accommodations (42 U.S.C. § 12182). *See Castle v. Eurofresh, Inc.*, 731 F.3d 901, 909 (9th Cir. 2013) (explaining that "plaintiffs often sue multiple defendants under separate titles of the ADA"). Indeed, courts frequently cite to Title III of the ADA in exactly this way. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 841 (9th Cir. 2004) (explaining that plaintiff's "complaint included claims under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*"); *Brooke v. Airport Hotel, LLC*, 2015 WL 5444286, at *1 (D. Ariz. Sept. 16, 2015) ("Plaintiff's verified complaint is founded upon Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*"). Plaintiffs' Complaint was therefore sufficient to place Defendant TGS on notice of the ADA claim against it, and its motion to dismiss should be denied.

## II. PROPOSED INTERVENORS' PROPOSED MOTION TO DISMISS SHOULD ALSO BE DENIED.

If this Court permits Proposed Intervenors to intervene, and declines to strike their proposed motion, the Court should nonetheless deny their motion to dismiss because Plaintiffs have adequately alleged that the Ban violates the Equal Protection Clause, Title IX, and the ADA.[3]

### A. Plaintiffs Have Plausibly Alleged That the Ban Violates the Constitution and Title IX.

Proposed Intervenors offer no new or separate arguments for dismissal of Plaintiffs' constitutional and Title IX claims, other than incorporating by reference the arguments asserted in their preliminary injunction briefing. Thus, Plaintiffs respond to those arguments in their reply in support of their motion for a preliminary injunction, and incorporate by reference their responses here. *See* LRCiv 7.1(d)(2).

### B. Plaintiffs Have Stated a Claim Under the ADA.

Plaintiffs have plausibly alleged a claim under the ADA because their gender dysphoria is a qualifying disability and, contrary to Proposed Intervenors' argument, does not fall within any statutory exclusion under the ADA. Proposed Intervenors are also incorrect to argue that playing sports does not fall within the ambit of the ADA, particularly given Plaintiffs' allegations that playing sports offers significant academic and social benefits for them.

#### 1. *Gender Dysphoria Is a Disability Under the ADA.*

Proposed Intervenors' principal argument is that gender dysphoria cannot qualify as a disability under the ADA because of the statutory exclusion for "transvestism, transsexualism, pedophilia, exhibitionism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 42 U.S.C. § 12211(b)(1). But as Proposed Intervenors acknowledge (Dkt. 38-1 at 6), the Fourth Circuit has held in a well-reasoned decision that "gender dysphoria" is distinct from "gender identity disorders"

---

[3] As noted above, Proposed Intervenors have not sought dismissal of Plaintiffs' Rehabilitation Act claim.

and that gender dysphoria qualifies as a disability under the ADA. *Williams v. Kincaid*, 45 F.4th 759, 767–70 (4th Cir. 2022).

As the Fourth Circuit correctly explained, the medical condition of "gender dysphoria," as defined in the Diagnostic and Statistical Manual ("DSM"), focuses on the "'clinically significant distress' felt by some of those who experience 'an incongruence between their gender identity and their assigned sex.'" *Id.* at 767; *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019) (explaining that gender dysphoria "must be associated with 'clinically significant distress'"). By contrast, the term "gender identity disorder"—which is no longer in clinical use—referred only to the "incongruence between assigned sex (i.e., the sex that is recorded on the birth certificate) and gender identity." *Williams*, 45 F.4th at 767 (internal quotation marks omitted). "In short, being trans alone cannot sustain a diagnosis of gender dysphoria under the DSM-5, as it could for a diagnosis of gender identity disorder under earlier versions of the DSM." *Id.* at 768 (internal quotation marks and alterations omitted); *see Edmo*, 935 F.3d at 769 ("Not every transgender person has gender dysphoria[.]"). The Fourth Circuit was thus correct to conclude—in the only appellate decision to address this issue—that "as a matter of statutory construction, gender dysphoria is not a gender identity disorder." *Williams*, 45 F.4th at 769; *see also, e.g.*, *Griffith v. El Paso Cnty.*, 2023 WL 2242503, at *17 (D. Colo. Feb. 27, 2023) ("[T]he Court finds persuasive a recent thorough and closely-reasoned decision issued by the Fourth Circuit in *Williams v. Kincaid*. . . . [T]he Court is likewise convinced that gender dysphoria is a disability included in the ADA's protections."); *Venson v. Gregson*, 2021 WL 673371, at *2 & n.2 (S.D. Ill. Feb. 22, 2021) (collecting cases holding that gender dysphoria qualifies as a disability under the ADA).

2. *Plaintiffs Have Alleged That Their Gender Dysphoria Results from "Physical Impairments."*

Proposed Intervenors' argument fails for an additional, independent reason. Plaintiffs have alleged that their gender dysphoria "results from physical impairments," (Compl. ¶¶ 32, 84), and the ADA excludes only "gender identity disorders not resulting

from physical impairments[.]" 42 U.S.C. § 12211(b)(1).  As the Fourth Circuit correctly held, that is an independent basis to conclude that the statutory exclusion does not apply to gender dysphoria.  *Williams*, 45 F.4th at 770–72.  As in *Williams*, the Plaintiffs here have alleged that their identification as female is longstanding and reflects an innate biological condition that has been manifest since they were very young.  (Compl. ¶¶ 29, 45, 57.)  In addition, as Plaintiffs' Complaint explains, gender dysphoria can be treated by, among other things, "puberty blocking medication and, for older adolescents, hormone therapy."  (*Id*. ¶ 33; *see id.* ¶¶ 34–36.)  That Plaintiffs receive or will receive puberty blockers and hormone therapy to treat their gender dysphoria "indicate[s] that [their] gender dysphoria has some physical basis."  *Williams*, 45 F.4th at 771; (*see* Compl. ¶¶ 46, 59.)  Thus, Plaintiffs have plausibly alleged that their gender dysphoria results from physical impairments, such that they have a qualifying disability under the ADA.

      3. *Plaintiffs Have Alleged That Playing Sports Qualifies as a "Major Life Activity" in Their Particular Circumstances.*

    Finally, Plaintiffs have adequately alleged that the Ban violates the ADA because it affects a "major life activity"—namely, their ability to play on scholastic sports teams and to gain the numerous academic, developmental, and social benefits associated with playing on such teams.  Plaintiffs allege not only that playing team sports is important in its own right, but also that it provides academic benefits (Compl. ¶ 38), improves social skills and students' ability to regulate their emotions (*id.* ¶ 39), fosters discipline and teamwork (*id.* ¶ 40), and improves physical and mental health (*id.* ¶ 43).  A "major life activity" is defined to "include" (but is "not limited to"), among other things, "learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).[4]  Because Plaintiffs allege that excluding them from scholastic sports teams affects their ability to learn, concentrate, communicate, and work together with classmates, they have sufficiently

---

[4] In response to court decisions that too narrowly construed the ADA, Congress amended the ADA in 2008, instructing that the definition of "disability" "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the [ADA's] terms."  *Id.* § 12102(4)(A).

alleged that the Ban affects a "major life activity." *See Pahulu v. Univ. of Kansas*, 897 F. Supp. 1387, 1391–93 (D. Kan. 1995) (collecting cases concluding that playing scholastic sports is a "major life activity" and finding that the plaintiff had demonstrated that playing sports was a "major life activity" because it was "an important component of learning").

Proposed Intervenors' cases, by contrast, focus only on the narrow question of whether playing sports, standing alone, is a qualifying "major life activity," without considering the role of sports in fostering academic and social success. (*See* Dkt. 38 at 5–6 (citing *Marsh v. Terra Int'l (Okla.), Inc.*, 122 F. Supp. 3d 1267, 1279 (N.D. Okla. 2015) (concluding that horse riding was not a major life activity for a 34-year-old)); *Walter v. Birdville Indep. Sch. Dist.*, 2018 WL 3974714, at *4 (N.D. Tex. Aug. 20, 2018) (finding that brief inability to play sports was not a "major life activity" and that plaintiff had failed to "plead[] sufficient facts to show that the impairment substantially affected" any other major life activity); *Pritchard v. Fla. High Sch. Athletic Ass'n*, 2020 WL 3542652, at *4 (M.D. Fla. June 30, 2020) (concluding that an inability to play sports, without more, is not a major life activity but without discussing the academic or social benefits from playing such sports)). These cases simply do not address whether excluding middle and high school students from sports triggers the ADA when the exclusion will negatively affect *other* major life activities. This Court should instead follow *Pahulu* (and the cases it cites), which properly concluded that scholastic sports are a major life activity, especially when, as here, there are sufficient allegations that the exclusion will negatively affect other major life activities.

The Court should thus reject Proposed Intervenors' motion to dismiss Plaintiffs' ADA claim.

## **CONCLUSION**

For the reasons stated above, the Court should deny Defendant TGS's motion to dismiss. If the Court permits the Proposed Intervenors to intervene, and does not strike

their proposed motion to dismiss for failure to comply with this Court's rules, the Court should deny their proposed motion to dismiss on the merits.[5]

        Respectfully submitted this 1st day of June, 2023.

        */s/ Colin M. Proksel*
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.*

---

[5] If this Court finds the Complaint deficient in any respect, Plaintiffs respectfully request leave to amend. *See Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (explaining that "a district court should grant leave to amend" if any deficiencies can be "cured by amending the complaint").