Colin Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone:    (602) 640-9000
Facsimile:     (602) 640-9050
Email:          cproksel@omlaw.com
*Attorney for Plaintiffs*
*Additional counsel listed in signature block*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# TUCSON DIVISION

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>　　　　　Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' REPLY TO DEFENDANT ARIZONA INTERSCHOLASTIC ASSOCIATION INC. IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 1

ARGUMENT .................................................................................................................. 3

CONCLUSION .............................................................................................................. 5

# TABLE OF AUTHORITIES

**Cases**

*Clark v. Arizona Interscholastic Ass'n*,
   695 F.2d 1126 (9th Cir. 1982) .................................................................................. 1, 4

*I.N.S. v. Chadha*,
   462 U.S. 919 (1983) ........................................................................................................ 4

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ......................................................................................... 5

*Mendoza v. Strickler*,
   51 F.4th 346 (9th Cir. 2022) .......................................................................................... 3

*Moore v. Urquhart*,
   899 F.3d 1094 (9th Cir. 2018) .................................................................................... 3, 4

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ....................................................................................... 5

*United States v. Windsor*,
   570 U.S. 744 (2013) ........................................................................................................ 4

*Whole Women's Health v. Jackson*,
   142 S. Ct. 522 (2021) ..................................................................................................... 3

**Statutes**

Ariz. Rev. Stat. § 15-120.02 ................................................................................................ 2, 3

**Other Authorities**

Ariz. House of Representatives, *SB 1165*, 55th Legis. 2d Reg. Sess. (2022),
   https://www.azleg.gov/legtext/55leg/2R/summary/H.SB1165_040522_TRANS
   MITTED.DOCX.htm. ...................................................................................................... 2

Ariz. Interscholastic Ass'n*, About AIA*, https://aiaonline.org/about ................................... 1

*Consideration of Bills: Hearing on S.B. 1165 Before S. Comm. on Judiciary*, Jan.
   20, 2022, 55th Leg., 2d Reg. Sess. (Ariz. 2022), *available at*
   https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022011
   057 ............................................................................................................................ 2, 4, 5

Laura Gómez, *Senate committee approves measure targeting transgender girls in school sports*, ARIZONA MIRROR (Jan. 20, 2022), https://www.azmirror.com/2022/01/20/senate-committee-approves-measure-targeting-transgender-girls-in-school-sports/ ................................................................. 2

## INTRODUCTION

Defendant Arizona Interscholastic Association, Inc. ("AIA") does not argue that the Ban complies with the Equal Protection Clause and Title IX. Rather, it argues that Plaintiffs' motion for a preliminary injunction should be denied only because the AIA is not a proper party to be enjoined since it was not personally responsible for the enactment of the Ban and, absent the Ban, it would allow Plaintiffs to play in interscholastic competitions as girls. But that is not a basis to deny injunctive relief. The Ban compels the AIA to exclude Plaintiffs Jane Doe and Megan Roe from competing on girls' sports teams because they are transgender girls, and it exposes the AIA to substantial liability if it does not. As the AIA even concedes, it does "not have discretion to disregard validly enacted laws of the State of Arizona." (AIA Br. at 4.). Because Defendant AIA is compelled to enforce a law against Plaintiffs that violates their rights under the Equal Protection Clause and Title IX, a preliminary injunction should issue against the AIA.

The Court should therefore grant Plaintiffs' motion for a preliminary injunction. A preliminary injunction binding the AIA is essential to ensure effective relief so that no entity discriminates unlawfully against Plaintiffs, even an entity that is discriminating against its wishes.

## FACTUAL BACKGROUND

The AIA's mission is to "[p]rovide governance and state coordination for interscholastic activities, which enriches the education-based athletics and activities of Arizona high schools, in a fair, diverse and equitable manner."[1] The AIA is responsible for overseeing interscholastic competition for "all public and most private high schools in the state of Arizona." *Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1128 (9th Cir. 1982).

According to its legislative history, the Ban was enacted because "[t]he AIA currently enforces a policy allowing transgender students to participate in activities in a

---

[1] Ariz. Interscholastic Ass'n, *About AIA*, https://aiaonline.org/about.

1

manner consistent with their gender identity[.]"[2]  Under the AIA's pre-Ban policy, students were permitted to play on the sports teams "consistent with their gender identity" so long as the student followed the process set forth in the "AIA's Gender Identity" policy.  (Dkt. 51-1 at 23.)  That policy required transgender students both to coordinate with their schools and to submit certain documentation to the AIA.  (*Id.*)  The AIA would then schedule a meeting with the "Gender Identity Eligibility Committee," which was responsible for recommending to the AIA's Executive Board whether that transgender student athlete would be permitted to play in interscholastic competitions.  (*Id.*)  That decision was based on the AIA's determination of whether "the student's request is appropriate and is not motivated by an improper purpose and there are no adverse health risks to the athlete[.]"  (*Id.*)

The Legislature was dissatisfied with the AIA's policy because it permitted transgender students to undergo an individualized assessment to determine if they could play on the teams consistent with their gender identity.  Arizona State Sen. Sonny Borrelli stated at a hearing that the AIA's rules were "victimizing young ladies that are out there trying to compete for scholarships."[3]  The AIA recognized at a January 2022 hearing before the State Senate that the Ban would affect its operations: its representative testified that "we will adapt our policies to comply with state law, regardless of what that state law is." *Consideration of Bills: Hearing on S.B. 1165 Before S. Comm. on Judiciary*, Jan. 20, 2022, 55th Leg., 2d Reg. Sess. 50:34–50:41 (Ariz. 2022).[4]

The Ban regulates the AIA in multiple ways.  *First*, it prohibits the case-by-case adjudication under the AIA's prior policy, requiring "interscholastic" teams or sports to exclude transgender girls from competing on male teams.  Ariz. Rev. Stat. § 15-120.02(A)–(B).  *Second*, the Ban further prohibits "any licensing or accrediting organization or any

---

[2] Ariz. House of Representatives, *SB 1165*, 55th Legis. 2d Reg. Sess. (2022), https://www.azleg.gov/legtext/55leg/2R/summary/H.SB1165_040522_TRANSMITTED.DOCX.htm.
[3] Laura Gómez, *Senate committee approves measure targeting transgender girls in school sports*, ARIZONA MIRROR (Jan. 20, 2022), https://www.azmirror.com/2022/01/20/senate-committee-approves-measure-targeting-transgender-girls-in-school-sports/.
[4] *Available at* https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022011057.

athletic association or organization" from "entertain[ing] a complaint, open[ing] an investigation or tak[ing] any other adverse action against a school for maintaining separate interscholastic or intramural athletic teams or sports for students of the female sex." *Id.* § 15-120.02(D). *Third*, it creates private causes of action for students or schools to sue athletic associations like the AIA if the AIA violates the Ban. *See id.* § 15-120.02(F)–(G). The Ban thus regulates and imposes duties on the AIA, requiring the AIA to exclude transgender girls like Plaintiffs from interscholastic competitions.

## ARGUMENT

As the AIA has admitted, it is required to enforce the Ban (AIA Br. at 4)—and that alone is a sufficient reason to enjoin it. The Supreme Court has held that equitable relief is authorized against those officials or entities that "possess authority to enforce a challenged state law." *Whole Women's Health v. Jackson*, 142 S. Ct. 522, 536 (2021). The Ninth Circuit has held that officials who are responsible for enforcing state law can be enjoined even when those defendants could point to others who also have a role in enforcing the law. *Mendoza v. Strickler*, 51 F.4th 346, 353 (9th Cir. 2022). Furthermore, even those who are not statewide officials—and thus did not enact the challenged state law—can be enjoined, so long as they have a role in enforcing the law. *See, e.g.*, *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("Actions under *Ex parte Young* can be brought against both state and county officials[.]"). "The only issue is whether [the defendant] has at least some connection to enforcement of the allegedly unconstitutional" state law. *Id.* (internal quotation marks omitted).

The AIA easily qualifies under this standard. The Ban was enacted to overturn the AIA's prior policy and forbids the AIA from allowing transgender girls to play on interscholastic teams. *See* Ariz. Rev. Stat. § 15-120.02(A)–(B). It threatens damages if the AIA fails to comply. Ariz. Rev. Stat. § 15-120.02 (F)–(G). It forbids the AIA from taking any action against a school that prohibits transgender girls from playing on girls' teams. *Id.* § 15-120.02(D). And the AIA acknowledges in its opposition that "organizations like the AIA do not have discretion to disregard validly enacted laws of the

State of Arizona" (AIA Br. at 4), conceding that it has complied and will continue to comply with the Ban, as it also confirmed in testimony to the State Senate. *Consideration of Bills: Hearing on S.B. 1165 Before S. Comm. on Judiciary*, Jan. 20, 2022, 55th Leg., 2d Reg. Sess. 50:34–50:41. That is a sufficient "connection to enforcement of the allegedly unconstitutional" law to permit suit against the AIA, *Moore*, 899 F.3d at 1103, which the Ninth Circuit has held is a state actor subject to the Equal Protection Clause. *See Clark*, 695 F.2d at 1128. Accordingly, it is irrelevant that the AIA was not responsible for enacting the Ban into law. (AIA Br. at 1, 4.) Likewise, the AIA's argument that each school's principal is responsible in all matters pertaining to interscholastic activities fails. (*Id.* at 2.) As discussed above, the AIA has a role in enforcing the Ban and therefore is properly subject to an injunction.

Nor does it matter for the availability of relief against the AIA that the AIA would, but for the Ban, allow Plaintiffs to play on girls' teams, or that it has no discretion to ignore the Ban. (*Id.* at 4.) The Supreme Court has repeatedly held that there is an Article III case or controversy so long as the defendant enforces a challenged law or policy, even when the defendant agrees with the plaintiffs' position. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 758 (2013) (finding an Article III case or controversy even though "the Executive may welcome" an order against the challenged law, because the government was still enforcing it); *I.N.S. v. Chadha*, 462 U.S. 919, 940 n.12 (1983) (noting that the Court had Article III jurisdiction "[e]ven though the government largely agreed with the opposing party on the merits of the controversy" because "the government intended to enforce the challenged law against that party"). That the AIA had a history of permitting transgender athletes to play on the team consistent with their gender identity is not relevant to this issue. It is equally irrelevant that the AIA has not amended its Transgender Policy (other than adding "a prefatory statement acknowledging its awareness of the new law"). (AIA Br. at 3 & n.1.) What matters is that the AIA is currently enforcing the Ban, which overrides the AIA's policy. Indeed, the AIA acknowledged as much at the Senate hearing on the Ban, when its representative confirmed that the AIA will "comply with state law, regardless of what that

state law is." *Consideration of Bills: Hearing on S.B. 1165 Before S. Comm. on Judiciary*, Jan. 20, 2022, 55th Leg., 2d Reg. Sess., 50:34–50:41.

The AIA next argues—incorrectly—that Plaintiffs would not suffer irreparable harm absent an injunction against the AIA. (AIA Br. at 5.) However, as Plaintiffs have already explained, the Ban violates their rights under the Constitution and Title IX, which is sufficient to establish irreparable harm. (*See* Dkt. 3 at 12–13.) The AIA is also wrong to suggest that Plaintiffs will suffer no harm because they can play on boys' teams (AIA Br. at 5 n.3). Plaintiffs have previously explained in detail why they cannot play on boys' teams and incorporate those argument by reference herein. (*See* Dkt. 3 at 4–6; Dkt. 6 ¶ 11; Dkt. 8 ¶ 9; Dkt. 65 at 12–13; Dkt. 4 ¶¶ 40–41; Dkt. 65-1 at ¶¶ 9–12.) Finally, the balance of harms and public interest likewise tip heavily in Plaintiffs' favor, as Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' motion for a preliminary injunction against Defendant AIA.

Respectfully submitted this 6th day of June, 2023.

s/Colin M. Proksel
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

Jyotin Hamid\*
Justin R. Rassi\*
Amy C. Zimmerman\*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan\*
Rachel Berg\*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*\*Admitted pro hac vice.*