David C. Potts, Bar #030550
Ashley E. Caballero-Daltrey, Bar #036449
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-4547
Fax: (602) 200-7829
dpotts@jshfirm.com
adaltrey@jshfirm.com

Lisa Anne Smith, Bar #016762
DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Boulevard, Suite 200
Tucson, Arizona 85716
Telephone: (520) 322-5000
Fax: (520) 322-5585
lasmith@dmyl.com

Attorneys for Defendant The Gregory School

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe, by her next friends and parents Helen Doe and James Doe; and Megan Roe, by her next friends and parents, Kate Roe and Robert Roe,<br><br>Plaintiff,<br><br>v.<br><br>Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association, Inc.,<br><br>Defendants. | No. 4:23-cv-00185-JGZ<br><br>**Defendant The Gregory School's Reply in Support of Motion to Dismiss** |

Plaintiff's Response does not demonstrate that The Gregory School ("TGS") receives federal financial assistance such that it is subject to Title IX or § 504 of the

11757188.1
11767204.1

Rehabilitation Act. Though Plaintiff[1] argues that courts have long held that tax-exempt status constitutes federal financial assistance, she is unable to cite any binding authority supporting this proposition, and such a holding would contradict and upend the contractual underpinnings of Title IX and the Rehabilitation Act, massively expanding the reach of both statutes.[2]

In addition, while Plaintiff claims that she has alleged a claim under Title III of the ADA against TGS, she has not alleged the required elements. TGS will not oppose amendment of the Complaint to add a Title III claim, but because TGS is not a public entity, the Title II claim must be dismissed.

I.  **THE GREGORY SCHOOL DOES NOT RECEIVE FEDERAL FINANCIAL ASSISTANCE.**

Plaintiff Megan Roe's Title IX and Rehabilitation Claims against TGS are not cognizable because TGS does not receive federal financial assistance. Plaintiffs' bare allegation that TGS receives federal financial assistance is insufficient on its own, and TGS's tax-exempt status is not federal financial assistance, either. As a result, Plaintiff Megan Roe's Title IX and Rehabilitation Act claims should be dismissed.

   A.  **Plaintiffs' Mere Allegation That TGS "Receives Federal Financial Assistance" Is Not Entitled To Any Deference**

As a preliminary matter, Plaintiff seems to suggest that by merely alleging that TGS receives federal financial assistance, that alone is sufficient to defeat the motion to dismiss. *See* Plaintiff's Response to The Gregory's School's Motion to Dismiss (Doc. 64) at pg. 9, lns 9–10 ("Plaintiffs allege that Defendant TGS receives federal financial

---

[1] Though framed as a Response by "Plaintiffs," only Plaintiff Megan Roe has a claim against TGS. As a result, TGS will refer only to "Plaintiff" in this Reply, referring to Plaintiff Megan Roe.

[2] Prior to the filing of this Reply, Plaintiff agreed to dismiss, without prejudice, the claim that TGS receives federal funding due to its since-forgiven PPP loan. *See* Notice (Doc. 76).

2

11767204.1

assistance, which is all that is required to conclude that it must comply with Title IX and the Rehabilitation Act.")[3]

Not true. Plaintiffs' mere recitation in their Complaint that TGS receives federal financial assistance – a required element of her Title IX and Rehabilitation Act claims – is not entitled to any weight whatsoever. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] formulaic recitation of a cause of action's elements will not do.")

Plaintiffs' cited case supports this. In *Campen v. Portland Adventist Medical Center*, the plaintiff alleged a claim under the Rehabilitation Act and that the defendant hospital "accepts Medicare and Medicaid patients and therefore receives federal funds." *See Campen v. Portland Adventist Medical Center*, 2016 WL 5853736, at *4 (D. Or. Sept. 2, 2016). In other words, the plaintiff in that matter alleged not only the element itself (that the defendant received federal financial assistance), but also the factual basis underpinning that allegation (that the defendant accepted Medicare and Medicaid patients). This was sufficient to allow the claim to proceed to discovery.

However, where a plaintiff merely alleges that the defendant receives federal financial assistance without any explanation as to why, the allegation alone is insufficient. In *Castle v. Eurofresh, Inc.*, the Ninth Circuit upheld the District of Arizona's dismissal of a plaintiff's claims under the Rehabilitation Act because he "could not plausibly allege that [the defendant] received federal financial assistance, either directly or indirectly." 731 F.3d 901, 908–09 (9th Cir. 2013). As in this case, the bare allegation that TGS receives federal financial assistance is not enough to survive a motion to dismiss.

---

[3] Importantly, in the parties' meet-and-confer regarding the motion to dismiss, counsel for Plaintiffs raised the tax-exempt status and PPP loan issues. At no point did they raise the fact that the mere allegation that TGS received federal financial assistance – without any factual basis whatsoever – was sufficient to defeat the motion to dismiss. *See* May 1, 2023 E-Mail from Counsel for TGS to Counsel for Plaintiffs, attached as **Exhibit 1**.

11767204.1

### B. Tax-Exempt Status Does Not Qualify As Federal Financial Assistance.

The actual issue before the Court, then, is whether a non-profit entity's tax-exempt status is "federal financial assistance" under Title IX and § 504 of the Rehabilitation Act. The answer is no.

Though the Ninth Circuit has never directly addressed whether a non-profit entity's tax-exempt status is "federal financial assistance" under Title IX or the Rehabilitation Act, both the United States Supreme Court and the Ninth Circuit have explained at length that, because both statutes were enacted pursuant to the Spending Clause, the legislation is "much in the nature of a contract" and "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981).

As the Supreme Court explained in *U.S. Dept. of Transp. v. Paralyzed Veterans of America*, "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." 477 U.S. 597, 605 (1986).

Likewise, in *Gebser v. Lago Vista Independent School Dist.*, the Supreme Court recognized that Title IX "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." 524 U.S. 274, 286 (1998).

In either instance, the Court imposes the obligations of these statutes on "those who are in a position to accept or reject those obligations as a part of a decision whether or not to 'receive' federal funds." *Paralyzed Veterans of America*, 477 U.S. at 606. And as the Ninth Circuit has recognized in interpreting federal financial assistance under the Rehabilitation Act, "while those who affirmatively choose to receive financial aid may be held liable under the RA, liability will 'not extend as far as those who benefit from it,'

11767204.1

because application of § 504 to all who benefit economically from federal assistance would yield almost 'limitless coverage.'" *Castle*, 731 F.3d at 908-09 (9th Cir. 2013).

Finally, in all of these instances, the Supreme Court and the Ninth Circuit equate federal financial assistance to actual money, whether framed as "federal funds" (*Paralyzed Veterans of America*, 477 U.S. at 605), "federal funding" (*Gebser*, 524 U.S. at 286), or "financial aid" (*Castle*, 731 F.3d at 908-09).

Tax-exempt status is none of these. It is, at most, an indirect financial benefit. It does not at all lend itself to the contractual framework of Title IX and the Rehabilitation Act through which an entity can decide to "accept or reject those obligations as a part of a decision whether or not to 'receive' federal funds." And as far back as *Grove City College v. Bell*, the Supreme Court has required the receipt of actual federal funds – whether provided directly or indirectly – in order to impose the obligations of Title IX. *See Grove City College*, 465 U.S. 555, 569–70 (1984) (holding that a "longstanding and coherent administrative construction of the phrase 'receiving Federal financial assistance'" includes student aid programs whose benefits flow to the school).[4]

In fact, despite years of appellate court rulings regarding federal financial assistance, Plaintiffs are unable to identify a single decision from any federal appellate court holding that tax-exempt status constitutes the receipt of federal financial assistance. Nor are they able to even identify a regulation that directly holds as much. For example, in 34 C.F.R. § 106.2(g), the Department of Education defines "federal financial assistance" as: (1) a grant or loan of federal assistance; (2) a grant of Federal real or personal property or any interest therein; (3) provision of the services of Federal personnel; (4) sale or lease of Federal property or any interest therein at nominal consideration; or (5) any other

---

[4] Despite having at least two opportunities to rule against a non-profit and conclude that tax-exempt status is federal financial assistance under Title IX – *Grove City College v. Bell*, 465 U.S. 555 (1984) and *NCAA v. Smith*, 525 U.S. 459 (1999) – the Supreme Court has not done so.

5

contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

Again, tax-exempt status is none of these. To try to salvage their claim, Plaintiff argues that the final catch-all ("[a]ny other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity") includes tax-exempt status, as tax-exempt status is a "subsidy" and thus an "arrangement" for purposes of that provision. But a catch-all provision must be read "as bringing within a statute categories similar in type to those specifically enumerated." *Paroline v. United States*, 572 U.S. 434, 447 (2014) (cleaned up). As TGS argued in its Motion to Dismiss, none of the definitions of federal financial assistance are subsidies or passive arrangements like a tax-exemption – they are all affirmative grants, where "the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision." *See Paralyzed Veterns of Am.*, 477 U.S. at 605.

Plaintiff's cited cases do not change this answer. For example, Plaintiff claims that, in *Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988), the district court held that an entity was subject to Title IX because it received federal assistance indirectly through its tax exemption. Plaintiffs omitted the actual holding: that the defendant "receive[d] federal assistance indirectly through its tax exemption and *directly through grants from the Department of Energy and the EPA*." *Id.* (emphasis added). In other words: the defendant in that case received grants directly from the federal government. The tax-exempt status language is dicta at best.

*E.H. v. Valley Christian Academy*, 616 F. Supp. 3d 1040 (C.D. Cal. 2022) and *Buettner-Hartsoe v. Baltimore Lutheran High School Association*, 2022 WL 2869041 (D. Mary. July 21, 2022), meanwhile, are simply wrongly decided and are not binding on this Court. In both instances, the district court held that enforcing Title IX at schools with 501(c)(3) status aligns with the principal objectives of Title IX: eliminating discrimination.

6

11767204.1

*E.H.*, 616 F. Supp. 3d at 1050 and *Buettner-Hartsoe*, 2022 WL 2869041 at *5. Neither court, though, addressed the Supreme Court's repeated explanation of the contractual structure of Title IX and the Rehabilitation Act, which requires that the recipient be "on notice that, by accepting federal funding, it exposes itself liability of that nature." *Barnes v. Gorman*, 536 U.S. 181, 187 (2002).

Under Plaintiffs' interpretation, any school with tax-exempt status is, right now, subject to Title IX and § 504 of the Rehabilitation Act. Moreover, this holding would not be limited to Title IX and § 504 of the Rehabilitation Act – it would also mandate that nonprofit organizations be subject to Title VI and the Age Discrimination Act, both of which are also triggered by the receipt of federal financial assistance. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.) *and* 42 U.S.C. § 6102 ("[N]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance.")

Plaintiff's interpretation would give all of these statutes "almost limitless coverage," and because this is not consistent with the text or with Supreme Court precedent, this interpretation should be rejected.

## II.   PLAINTIFF MEGAN ROE CAN ONLY PROCEED UNDER TITLE III OF THE ADA.

Plaintiffs have clarified that they have asserted claims under Title II and Title III of the ADA. [Doc. 64 at 8.]  If so, they should amend their Complaint to say as much – as pled, the Complaint alleges only a Title II claim against TGS, and TGS is not a public

7

11767204.1

entity, so that claim fails.[5] TGS would not oppose amendment of the Complaint to remove that claim and add a Title III claim against it.

### III. CONCLUSION

Plaintiffs ask this Court to massively increase the coverage of Title IX and § 504 of the Rehabilitation Act in a manner inconsistent with both Ninth Circuit and Supreme Court precedent. This Court should decline the opportunity. TGS respectfully requests that Plaintiff's Title IX, Rehabilitation Act, and Title II ADA claims be dismissed.

DATED this 8th day of June, 2023.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/David C. Potts
    David C. Potts
    Ashley E. Caballero-Daltrey
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Defendant The Gregory School

DECONCINI MCDONALD YETWIN & LACY, P.C.


By /s/Lisa Anne Smith (with permission)
    Lisa Anne Smith
    2525 East Broadway Boulevard, Suite 200
    Tucson, Arizona 85716
    Attorney for Defendant The Gregory School

---

[5] Plaintiff has not, for example, alleged that TGS is a public accommodation or that she was denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182. Though similar in some respects, the elements of a Title III claim are not the same as a Title II claim, hence the need for amendment. *Compare* 42 U.S.C. § 12182 (Title III of the ADA) *with* 42 U.S.C. § 12132 (Title II of the ADA).

8

11767204.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2023, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/D. Potts

11767204.1