# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al., | No. CV-23-00185-TUC-JGZ |
|     Plaintiffs, | **ORDER ON MOTION FOR STAY PENDING APPEAL AND REQUEST FOR ADMINISTRATIVE STAY** |
| v. | |
| Thomas C Horne, et al., | |
|     Defendants. | |

Before the Court is Intervenor-Defendants' Motion for Stay Pending Appeal and Request for Administrative Stay. (Doc. 132.) Intervenor-Defendants request that the Court stay its July 20, 2023 preliminary injunction. In the alternative, they request an administrative stay of the injunction for seven days to allow time for the United States Court of Appeals for the Ninth Circuit to consider an emergency motion to stay and request for administrative stay.[1] The preliminary injunction at hand enjoins Defendant Horne from enforcing A.R.S. § 15-120.02 (Save Women's Sports Act) as to 11-year-old Jane Doe and 15-year-old Megan Roe. The injunction allows Plaintiffs to participate in girls' sports at their schools when athletics begin in July 2023. Neither school opposes the injunction.

"The bar for obtaining a stay of a preliminary injunction is higher than the *Winter* standard for obtaining injunctive relief." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020). In deciding whether to grant a stay, "a court considers

---

[1] Intervenor-Defendants request a ruling on their Motion by Monday, July 31, 2023, to allow them time to seek prompt appellate relief, if necessary. (Doc. 132 at 15.)

four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (cleaned up). "The first two factors are the most critical; the last two are reached only once an applicant satisfies the first two factors." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (cleaned up). Applying the *Nken* factors here, the Court denies Intervenor-Defendants' Motion for Stay.

**Failure to Demonstrate Strong Showing of Success on Merits**

Applicants for a stay pending appeal must make a strong showing that they are likely to succeed on the merits. *Al Otro Lado*, 952 F.3d at 1010. Under the Ninth Circuit's sliding scale approach to preliminary injunctions, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, where there is a weak irreparable harm showing, the applicant must make a strong showing of a likelihood of success on the merits. *Al Otro Lado*, 952 F.3d at 1010. This sliding scale approach also applies to stays pending appeal. *Id*. at 1007. It is insufficient that the chance of success is better than negligible; the applicant must demonstrate "more than a mere possibility of relief." *Nken*, 556 U.S. at 434. Intervenor-Defendants fail to make the required showing.

Intervenor-Defendants argue they are likely to succeed on the merits for four reasons. (Doc. 132 at 2.) They argue that the Act is subject to rational basis review "[f]or the reasons stated" in their prior briefing. *Id*. at 9. But binding precedent holds that laws that discriminate against transgender persons are sex-based classifications subject to heightened scrutiny. *See Karnoski v Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019) ("We conclude that the 2018 Policy on its face treats transgender persons differently than other persons, and consequently something more than rational basis but less than strict scrutiny applies."). Therefore, rational-basis review does not apply.

Intervenor-Defendants assert that the Court's finding that transgender females who do not undergo male puberty have no competitive advantage over female athletes is clearly erroneous because "all the competent evidence in the record suggests the opposite." (Doc. 132 at 7.) They also argue that "[t]he evidence of male competitive advantage pre-puberty is overwhelming and effectively uncontradicted." (*Id*.) These arguments misstate the record and the evidence. Experts cited by both parties agree that male physiological advantages are largely the result of circulating testosterone levels in men post-puberty. (Doc. 127 at ¶¶ 97, 100, 112-117.) In addition, Plaintiffs' expert provided persuasive evidence that any prepubertal differences between boys and girls in various athletic measurements are minimal or nonexistent. (*Id*. at ¶¶ 109-110.) Defendants' data regarding differences in prepubescent girls' and boys' physical fitness performance was not credited because the data is observational, does not determine a cause for what is observed, and fails to account for other factors which could explain the data. (*Id*. at ¶¶ 101, 103-106, 109-110.)

Intervenor-Defendants argue that the Court misapplied heightened scrutiny. (Doc. 132 at 3-7.) To withstand heightened scrutiny, a classification by sex "must serve important governmental objectives and must be substantially related to achievement of those objectives." (Doc. 127 at ¶ 145) (quoting *Craig v. Boren*, 429 U.S. 190, 197 (1976)). According to Intervenor-Defendants, the Court required perfect tailoring of the Act to Plaintiffs rather than assessing the validity of the classification as a whole. (Doc. 132 at 5-7.) Intervenor-Defendants argue that the Court disregarded extensive evidence of the competitive advantages for the large majority of transgender–female athletes, *i.e.*, those that transition after undergoing male puberty, simply because the individual Plaintiffs claim they did not, or will not, undergo male puberty.[2] (*Id*. at 4.)

This argument is unpersuasive. First, it imagines facts that were not presented. Intervenor-Defendants did not introduce any evidence, let alone extensive evidence, that

---

[2] Although Intervenor-Defendants disparage Plaintiffs' "claims" that they have not, and will not, undergo male puberty, Plaintiffs provide evidentiary support for their statements. *See* Doc. 127 at ¶¶ 24-27, 48-51.

the majority of transgender-female athletes have undergone male puberty. The evidence at the hearing showed only that in the past ten to twelve years, the Arizona Interscholastic Association (AIA) fielded twelve requests and approved seven students to play on a team consistent with their gender identity. (Doc. 127 at ¶ 66.) No evidence was presented as to whether any of those seven students were transgender females, and no evidence was presented as to whether any of those seven students had undergone puberty. This lack of evidence suggests that the Act's categorical bar against transgender female athletes is unrelated to the purpose of the Act.

In addition, Intervenor-Defendants' argument disregards much of the Court's heightened scrutiny analysis. In applying heightened scrutiny, the Court examined the Act's "actual purposes and carefully consider[ed] the resulting inequality." *SmithKline Beecham Corp. v. Abbott Lab'ys*, 740 F.3d 471, 483 (9th Cir. 2014). The Court found that Defendant Horne and Intervenors failed to produce "persuasive evidence at the preliminary injunction stage to show that the Act is substantially related to the legitimate goals of ensuring equal opportunity for girls to play sports and to prevent safety risks," and cited the breadth of the Act and its effect on individuals other than Plaintiffs as support. (*Id.* at ¶¶ 158-161.) Intervenor-Defendants claim in their Motion for Stay that the State's purpose is to regulate unfair advantages caused by transgender-female athletes who have undergone male puberty, but the Act broadly and categorically prohibits all transgender athletes, including prepubescent transgender athletes. The Act bans all education levels of transgender athletes—from kindergarten through college—although there is no evidence of injuries or unfair competitive advantages occurring at the kindergarten level. And despite the State's claim that the Act is intended to protect girls, the Act only bans "biological boys" from girls' teams, without prohibiting "biological girls" from playing on boys' teams, including teams made up of boys who have undergone puberty. (Doc. 127 at ¶¶ 157-160.) Given the Act's overbreadth, it cannot be said that the Court required a "perfect fit." Rather, the State failed to show "an exceedingly persuasive justification" for its discriminatory treatment, *United States v. Virginia*, 518 U.S. 515, 531 (1996), or a

- 4 -

justification that is genuine and not reliant on overbroad generalizations, *id.* at 533.

Finally, Intervenor-Defendants argue that the Court's conclusion that the Act violates Title IX is unlikely to be upheld on appeal because Title IX specifically authorizes separation of sports teams based on biological sex which *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), and *Grabowski v. Arizona Board of Regents*, 69 F.4th 1110 (9th Cir. 2023), do not change. (Doc. 132 at 10.) Whether legislation that prohibits all transgender athletes from participating in competitive sports violates Title IX is currently subject to debate. A mere "possibility of relief," however, fails to demonstrate a strong showing of likely success on the merits, particularly in light of Plaintiffs' equal protection claim.

The Court concludes that Intervenor-Defendants fail to make a strong showing that they are likely to succeed on the merits of their claim. This failure is particularly detrimental because, as discussed below, Intervenor-Defendants' showing of irreparable harm is weak. *See Al Otro Lado*, 952 F.3d at 1010 (where there is a weak irreparable harm showing, the applicant must make a strong showing of a likelihood of success on the merits). Thus, the first *Nken* factor favors Plaintiffs.

**Intervenor-Defendants Will Not Suffer Irreparable Harm Absent Stay**

An applicant for stay pending appeal must demonstrate that a stay is necessary to avoid likely irreparable injury to the applicant while an appeal is pending. *Al Otro Lado*, 952 F.3d at 1007. Showing a possibility of irreparable injury is insufficient. *Id*. The applicant is required to show that irreparable harm is likely to occur before the appeal is decided. *Id*. The applicant's irreparable harm burden "is higher than it is on the likelihood of success prong, as [it] must show that an irreparable injury is the more probable or likely outcome." *Id*.

In its Order granting the preliminary injunction, the Court concluded, "There is no evidence that any Defendant will be harmed by allowing Plaintiffs to continuing playing with their peers as they have done until now." (Doc. 127 at ¶ 184.) Intervenor-Defendants advance little argument as to their irreparable harm, citing only "the sovereign interest of the State of Arizona in enforcing its valid statutes." (Doc. 132 at 14.). Clearly, however,

there is no irreparable harm if the statute is not valid. Intervenor-Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). The second *Nken* factor favors Plaintiffs.

### **Substantial Injury to Other Parties**

Because Intervenor-Defendants fail to establish the first two *Nken* factors, the Court need not address the last two factors. *See Al Otro Lado*, 952 F.3d at 1007 ("The first two factors are the most critical; the last two are reached only once an applicant satisfies the first two factors.") (cleaned up). However, factors three and four also do not support Intervenor-Defendants' request for stay.

The third factor, "whether issuance of the stay will substantially injure the other parties interested in the proceeding," weighs against granting a stay. Plaintiffs will suffer injury in the absence of a stay. Prior to the Act, there were no bars to Plaintiffs participating in girls' sports at their schools. If a stay is granted, Plaintiffs will suffer severe and irreparable mental, physical, and emotional harm if the Act applies to them because they cannot play on boys' sports teams; the Act will effectively exclude Plaintiffs from school sports and deprive them of the social, educational, physical, and emotional health benefits that both sides acknowledge come from school sports; and Plaintiffs will suffer the shame and humiliation of being unable to participate in a school activity simply because they are transgender—a personal characteristic over which they have no control. (Doc. 127 at ¶¶ 174-176.) The school year has started, and Plaintiffs want to participate in girls' sports. The issuance of a stay would deprive Plaintiffs the opportunity to participate in girls' first quarter sports—which are currently in progress—including the first cross-country meet scheduled for August 14, 2023. (Doc. 127 at ¶¶ 32, 35, 38, 41, 55, 57-60.)

Intervenor-Defendants argue that the preliminary injunction imposes irreparable harm on other interested parties. (Doc. 132 at 12-14.) They argue that, absent a stay, "biological girls" will be unfairly displaced from participation in girls' sports by Plaintiffs, whose involvement will necessarily exclude "biological girls" who try out for the team, and that Plaintiffs' involvement will reduce the other girls' playing time and success. (*Id.*

at 12-13.) However, there is no evidence that Plaintiffs' participation will cause such harms to other participants. There is no evidence that the schools limit the number of girls who participate in any of the sports at issue and there is no evidence that either Plaintiff would present an advantage, let alone an unfair advantage, if allowed to participate.

### Public Interest Lies in Plaintiffs' Favor

Intervenor-Defendants argue that the public interest favors a stay because the public has an interest in upholding the laws passed by their elected officials. (Doc. 132 at 15.) However, as discussed above, a state cannot suffer harm from an injunction that merely ends a discriminatory practice. *Rodriguez*, 715 F.3d at 1145. Thus, it follows that, "it is always in the public interest to prevent the violation of a party's constitutional rights." (Doc. 127 at ¶ 180) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The fourth *Nken* factor supports denial of the Motion for Stay.

### Administrative Stay Would Disrupt Status Quo

As an alternative to their request for a stay pending appeal, Intervenor-Defendants request a seven-day administrative stay to allow the Circuit Court of Appeals time to consider their emergency motion to stay the preliminary injunction order. (Doc. 132 at 15.) An administrative stay "is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019). The *Nken* factors do not support imposition of an administrative stay. Moreover, prohibiting Plaintiffs from participating in girls' athletics would disrupt the status quo. Accordingly,

////
////
////
////
////
////
////

**IT IS ORDERED** that Intervenor-Defendants' Motion for Stay Pending Appeal and Request for Administrative Stay (Doc. 132) is DENIED.

Dated this 31st day of July, 2023.

_____
Honorable Jennifer G. Zipps
United States District Judge