1  Colin Proksel (034133)
2  OSBORN MALEDON, P.A.
   2929 North Central Avenue, 21st Floor
3  Phoenix, Arizona 85012-2793
   State Bar No. 034133
4  Telephone:    (602) 640-9000
5  Facsimile:    (602) 640-9050
   Email:        cproksel@omlaw.com
6  *Attorney for Plaintiffs*
   *Additional counsel listed in signature block*
7

8           **UNITED STATES DISTRICT COURT**
            **FOR THE DISTRICT OF ARIZONA**
9                    **TUCSON DIVISION**

10 | Jane Doe, by her next friend and parents | Case No. 4:23-cv-00185-JGZ |
   | Helen Doe and James Doe; and Megan Roe, | |
11 | by her next friend and parents, Kate Roe and | **PLAINTIFFS' NOTICE OF** |
   | Robert Roe, | **CONSTITUTIONAL QUESTION** |
12 |                    Plaintiffs, | |
13 |        v. | |
14 | Thomas C. Horne, in his official capacity as | |
15 | State Superintendent of Public Instruction; | |
   | Laura Toenjes, in her official capacity as | |
16 | Superintendent of the Kyrene School | |
   | District; Kyrene School District; The | |
17 | Gregory School; and Arizona Interscholastic | |
   | Association Inc., | |
18 | | |
19 |                    Defendants. | |

20

21

22

23

24

25

26

27

28

1   TO THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA:

2          Pursuant to Fed. R. Civ. P. 5.1, please take notice that Plaintiffs Jane Doe, by her

3   next friend and parents Helen Doe and James Doe, and Megan Roe, by her next friend

4   and parents, Kate Roe and Robert Roe, submit this Notice of Constitutional Question.

5          Plaintiffs assert, *inter alia*, that they are being discriminated against based on their

6   gender dysphoria in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101

7   *et seq*. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.   Intervenor-

8   Defendants have moved to dismiss the claim arguing that gender dysphoria is not

9   protected by the Americans with Disabilities Act (the "ADA") or Rehabilitation Act.   In

10  their Opposition to Intervenor-Defendants' Motion to Dismiss, Plaintiffs assert, as a

11  matter of statutory interpretation, that gender dysphoria is not excluded from coverage

12  under the ADA or Rehabilitation Act.   To the extent either statute is read to exclude

13  gender dysphoria, Plaintiffs challenge the constitutionality of the provisions.   As drafted,

14  the ADA and Rehabilitation Act exclude "transvestism, transsexualism, pedophilia,

15  exhibitionism, voyeurism, gender identity disorders not resulting from physical

16  impairments, or other sexual behavior disorders[.]" 42 U.S.C. § 12211(b)(1); *see also* 29

17  U.S.C. § 705(20)(B) (defining "individual disability" as "any person who has a disability

18  as defined in" the ADA, 42 U.S.C. § 12102).   If these provisions are read to exclude

19  gender dysphoria, Plaintiffs assert that they violate the U.S. Constitution because they

20  discriminate based on transgender status, and because being transgender is a sex-based

21  trait, these provisions also discriminate against Plaintiffs based on sex, both in violation

22  of the Fifth Amendment.

23         A copy of the Opposition to Intervenor-Defendants' Motion to Dismiss is attached

24  hereto as **Exhibit A**.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 26, 2023

/s/ Colin M. Proksel
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I further certify that on September 26, 2023, I sent a copy of the attached document by first-class mail to the Honorable Jennifer G. Zipps, United States District Court, Evo A. DeConcini U.S. Courthouse, 405 West Congress Street, Suite 5190, Tucson, Arizona 85701-5053.

I further certify that, in compliance with Rule 5.1(a)(2), on September 26, 2023, I caused a true and correct copy of the Notice of Constitutional Question and attached **Exhibit A** to be served, via certified mail, upon the following:

United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Jolene Ann Lauria
Acting United States Assistant Attorney General for Administration
U.S. Department of Justice, Justice Management Division
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

/s/ Rebecca Aniol

# EXHIBIT A

1   Colin Proksel (034133)
2   OSBORN MALEDON, P.A.
    2929 North Central Avenue, 21st Floor
3   Phoenix, Arizona 85012-2793
    State Bar No. 034133
4   Telephone:    (602) 640-9000
5   Facsimile:    (602) 640-9050
    Email:        cproksel@omlaw.com
6   *Attorney for Plaintiffs*
    *Additional counsel listed in signature block*
7

8              **UNITED STATES DISTRICT COURT**
              **FOR THE DISTRICT OF ARIZONA**
9                    **TUCSON DIVISION**

10  | Jane Doe, by her next friend and parents | Case No. 4:23-cv-00185-JGZ |
    | Helen Doe and James Doe; and Megan Roe, | |
11  | by her next friend and parents, Kate Roe and | **PLAINTIFFS' OPPOSITION TO** |
    | Robert Roe, | **INTERVENOR-DEFENDANTS' MOTION** |
12  | | **TO DISMISS** |
    |                     Plaintiffs, | |
13  |         v. | |
14  | Thomas C. Horne, in his official capacity as | |
15  | State Superintendent of Public Instruction; | |
    | Laura Toenjes, in her official capacity as | |
16  | Superintendent of the Kyrene School | |
    | District; Kyrene School District; The | |
17  | Gregory School; and Arizona Interscholastic | |
    | Association Inc., | |
18  | | |
    |                  Defendants. | |
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT ................................................................................................................... 3

    I.       Plaintiffs Have Plausibly Alleged That the Sports Ban Violates the

             Equal Protection Clause and Title IX .............................................................. 3

    II.      Plaintiffs Have Also Stated a Claim Under the ADA and

             Rehabilitation Act. .......................................................................................... 3

          A.     Gender Dysphoria Is a Disability Under the ADA and

               Rehabilitation Act. ................................................................................ 3

          B.     Plaintiffs Have Adequately Alleged That Their Gender

               Dysphoria Results from "Physical Impairments." ............................. 6

          C.     Excluding Gender Dysphoria Under the ADA and

               Rehabilitation Act Would Violate the Constitution ........................... 7

          D.     Plaintiffs Have Otherwise Properly Alleged That They Have

               a Disability Under the ADA and Rehabilitation Act. ........................ 7

CONCLUSION ................................................................................................................ 8

# **TABLE OF AUTHORITIES**

**Cases**

*Armstrong v. Wilson*, 942 F. Supp. 1252 (N.D. Cal. 1996) .................................. 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 3

*Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002) ...................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................... 3

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).................................. 4

*Doe v. Horne*, 2023 WL 4661831 (D. Ariz. July 20, 2023) .......................... 7

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019)............................. 4, 5

*Fox TV Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002 (9th Cir. 2017)....... 7

*Griffith v. El Paso Cnty.*, 2023 WL 2242503 (D. Colo. Feb. 27, 2023) ........... 5

*Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) .............. 4

*Hecox v. Little*, 2023 WL 5283127 (9th Cir. Aug. 17, 2023) ..................... 7

*Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012) .............................. 8

*Iglesias v. True*, 403 F. Supp. 3d 680 (S.D. Ill. 2019) ........................ 8

*Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019).............................. 7

*Kozak v. CSX Transportation, Inc.*, 2023 WL 4906148 (W.D.N.Y. Aug. 1, 2023) .................................................................................... 5, 6

*OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ....................... 3

*Venson v. Gregson*, 2021 WL 673371 (S.D. Ill. Feb. 22, 2021) ................. 5

*Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022) ........................*passim*

**Statutes**

A.R.S. § 15-120.02 ............................................................... 1

29 U.S.C. § 705(20)(B) ......................................................... 4, 8

29 U.S.C. § 794 .................................................................. 8

42 U.S.C. § 12102 ..........................................................*passim*

1

42 U.S.C. § 12211(b)(1) ............................................................................................... 4, 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs, two transgender girls with gender dysphoria who are banned from playing school sports on girls' teams, bring this action to vindicate their rights under the Equal Protection Clause, Title IX, the Americans with Disabilities Act (the "ADA"), and the Rehabilitation Act.

Although Intervenor-Defendants concede that this Court has found Plaintiffs are likely to succeed on their Equal Protection Clause and Title IX claims (Counts I and II), Intervenor-Defendants now move to dismiss those two claims based on the same arguments this Court has already heard and rejected. Accordingly, their motion to dismiss Counts I and II fails.

Intervenor-Defendants also move to dismiss Plaintiffs' ADA and Rehabilitation Act claims (Count III); however, these arguments fare no better. This Court should follow the well-reasoned decision of the Fourth Circuit in *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022) concluding that gender dysphoria is a cognizable disability under the ADA; indeed, Intervenor-Defendants cite no circuit authority to the contrary. Moreover, Plaintiffs have adequately alleged that a major life activity has been substantially limited.

For these reasons, the Court should deny the motion to dismiss.

**FACTUAL BACKGROUND**

Jane Doe and Megan Roe are transgender girls who want to play on girls' sports teams. (Compl. ¶ 2.) Their friends, families, teammates, and schools have accepted them as the girls they are. (*Id*. ¶¶ 45, 61.) Yet, A.R.S. § 15-120.02 (the "Ban") requires that transgender girls like Jane and Megan be excluded from competing on girls' sports teams simply because they are transgender. (*Id.* ¶ 25.) Absent this Court's preliminary injunction, the Ban would prohibit Jane, an 11-year-old girl, from trying out for and competing in her public middle school's soccer, basketball, and cross-country teams, and Megan, a 15-year-old girl, from competing on the girls' volleyball team at TGS, a private educational institution. (*Id.* ¶¶ 12, 49–50, 63–64.)

Both Jane and Megan have been diagnosed with gender dysphoria, which is "the distress caused by incongruence between a person's gender identity and their designated sex at birth." (*Id.* ¶¶ 32, 45, 57.)  Gender dysphoria "results from physical impairments" and is recognized by the American Psychiatric Association and the Diagnostic and Statistical Manual of Mental Disorders. (*Id.* ¶ 32.)  Gender dysphoria in adolescents is highly treatable by permitting them to live consistent with their gender identity in all aspects of their lives. (*Id.* ¶ 33.)  Forcing a transgender girl to be treated as male contradicts the medical standards of care and can result in serious negative health consequences, including, for example, severe anxiety, depression, substance abuse, self-harm, and suicidality. (*Id.*)

Jane has recently started taking puberty-blocking medication. (Dkt. No. 97-1.) Megan began taking puberty-blocking medications when she was 11 years old, which prevented her from undergoing male puberty. (Compl. ¶ 59.)  Megan has also received hormone therapy that has caused her to develop many of the physiological changes associated with female puberty. (*Id.*)  Transgender girls like Jane and Megan—who have not undergone male puberty and who have taken or intend to take female hormones—do not have any athletic advantage over non-transgender girls. (*Id.* ¶¶ 34–36.)

Athletic programs are a central part of education, and both Jane and Megan would benefit significantly from playing on sports teams.  Like all student athletes, playing school sports would give them an opportunity to develop social bonds with their teammates and become part of an important school community. (*Id.* ¶ 39.)  Playing sports also has a well-documented positive effect on academic performance. (*Id.* ¶ 38.) And school sports provide an opportunity to make friends, work as a team, and improve student athletes' physical and emotional health. (*Id.* ¶¶ 40–43.)  Excluding Jane and Megan—who live as girls in all aspects of their lives—would only cause them to suffer without any benefit to their teammates or competitors, who have always welcomed them as the girls that they are. (*Id.* ¶¶ 45, 61.)  Playing on the boys' teams is not an option for Jane or Megan, as doing so would exacerbate their gender dysphoria and directly conflict

with their medically supervised transitions.  (*Id.* ¶¶ 52, 65.)  But for the Ban, Jane and Megan's schools would permit them to play on the girls' teams, as would the interscholastic sports league that regulates inter-school competition.  (*Id.* ¶¶ 21, 54, 64.)

## LEGAL STANDARD

A complaint survives a motion to dismiss so long as it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "All that matters at this stage is that the allegations nudge this inference 'across the line from conceivable to plausible.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 680).

## ARGUMENT

**I.  Plaintiffs Have Plausibly Alleged That the Sports Ban Violates the Equal Protection Clause and Title IX.**

Intervenor-Defendants offer no new arguments for dismissal of Plaintiffs' Equal Protection and Title IX claims.  They merely incorporate the arguments asserted in their preliminary injunction briefing.  Because the Court already granted Plaintiffs' motion for a preliminary injunction (Dkt. No. 127), these arguments are plainly without merit. Accordingly, the Court should deny Intervenor-Defendants' motion to dismiss Counts I and II.

**II.  Plaintiffs Have Also Stated a Claim Under the ADA and Rehabilitation Act.**

    **A.  Gender Dysphoria Is a Disability Under the ADA and Rehabilitation Act.**

Intervenor-Defendants argue that gender dysphoria cannot qualify as a disability under the ADA because of its statutory exclusion for "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from

physical impairments, or other sexual behavior disorders[.]"  42 U.S.C. § 12211(b)(1).[1] Specifically, they argue that gender dysphoria is either a "gender identity disorder" or "other sexual behavior disorder."  Not so.

First, gender dysphoria is not a "gender identity disorder."  As an initial matter, Congress has expressly instructed that courts construe the ADA in favor of maximum protection for those with disabilities.  *See* 42 U.S.C. § 12102(4)(A); *see also Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) ("In fact, the ADA must be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." (internal quotation marks and citation omitted)).

With that instruction in mind, the Court should look to the meaning of the ADA's "terms at the time of its enactment" to determine whether "gender identity disorders" include gender dysphoria.  *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020). That examination reveals that in 1990, "the time of the statute's adoption, gender identity disorders did not include gender dysphoria."  *See Williams*, 45 F.4th at 766–70 (holding that gender dysphoria is distinct from "gender identity disorders" and gender dysphoria qualifies as a disability under the ADA) (internal quotation marks and citation omitted).[2] As the Fourth Circuit correctly explained, the medical condition of "gender dysphoria," as defined in the Diagnostic and Statistical Manual 5th Edition ("DSM-5"), focuses on the "'clinically significant distress' felt by some of those who experience 'an incongruence between their gender identity and their assigned sex.'" *Id.* at 767; *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019) (explaining that gender dysphoria "must

---

[1] The ADA is to be judicially interpreted in the same way as the Rehabilitation Act.  *See Armstrong v. Wilson*, 942 F. Supp. 1252, 1258 (N.D. Cal. 1996); *see also* 29 U.S.C. § 705(20)(B) (defining "individual disability" as "any person who has a disability as defined in" the ADA, 42 U.S.C. § 12102).  Accordingly, all the arguments in Part II of this brief also apply to the Rehabilitation Act.

[2] Although Intervenor-Defendants cite *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020) for the proposition that gender dysphoria is not a disability under either the ADA or Rehabilitation Act, *Grimm* does not contain such a statement.

be associated with 'clinically significant distress'").  By contrast, the term "gender identity disorder"—which is no longer in clinical use—referred only to the "incongruence between assigned sex (i.e., the sex that is recorded on the birth certificate) and gender identity." *Williams*, 45 F.4th at 767 (internal quotation marks omitted).  "In short, being trans alone cannot sustain a diagnosis of gender dysphoria under the DSM-5, as it could for a diagnosis of gender identity disorder under earlier versions of the DSM." *Id.* at 768 (internal quotation marks and alterations omitted); *see Edmo*, 935 F.3d at 769 ("Not every transgender person has gender dysphoria[.]").

The Fourth Circuit was thus correct to conclude—in the only appellate decision to address this issue—that "as a matter of statutory construction, gender dysphoria is not a gender identity disorder."  *Williams*, 45 F.4th at 769; *see also Kozak v. CSX Transportation, Inc.*, 2023 WL 4906148, at *4–7 (W.D.N.Y. Aug. 1, 2023) (holding that the ADA does not categorically exclude gender dysphoria); *Griffith v. El Paso Cnty.*, 2023 WL 2242503, at *17 (D. Colo. Feb. 27, 2023) ("[T]he Court finds persuasive a recent thorough and closely-reasoned decision issued by the Fourth Circuit in *Williams v. Kincaid*. . . . [T]he Court is likewise convinced that gender dysphoria is a disability included in the ADA's protections."); *Venson v. Gregson*, 2021 WL 673371, at *2 & n.2 (S.D. Ill. Feb. 22, 2021) (collecting cases holding that gender dysphoria qualifies as a disability under the ADA).

Intervenor-Defendants assert in a conclusory and speculative fashion that the DSM-III-R's definition of "gender identity disorder of childhood" (a type of "gender identity disorder") in effect at the time Congress enacted the ADA's exclusions encompasses Plaintiffs' gender dysphoria.  This argument misses the mark.  Plaintiffs do not meet the characteristics for "gender identity disorder of childhood" because they have both already reached puberty.  (*See* Dkt. 146-1 at 73-74.)  In addition, as discussed above, there are substantial differences between the DSM-III-R's definition of the now-rejected diagnosis of "gender identity disorders" and gender dysphoria.

Second, gender dysphoria does not fall within the ambit of "other sexual behavior disorders" in the ADA exclusion.  As alleged in the Complaint, gender dysphoria clearly is not a "sexual behavior disorder" under the ordinary meaning of the phrase, as gender dysphoria is not a behavior disorder.  *See Kozak*, 2023 WL 4906148, at *7 (holding that gender dysphoria is not a sexual behavior disorder under the ADA).  Thus, Plaintiffs' gender dysphoria is covered under the ADA.

### B.    Plaintiffs Have Adequately Alleged That Their Gender Dysphoria Results from "Physical Impairments."

Furthermore, even if the Court were to find that Plaintiffs' gender dysphoria is a "gender identity disorder" (it should not), Plaintiffs still fall under the ADA's protections because the ADA excludes only "gender identity disorders *not resulting from physical impairments*."  42 U.S.C. § 12211(b)(1) (emphasis added).  This is an independent basis to conclude the statutory exclusion does not apply to gender dysphoria.  *See Williams*, 45 F.4th at 770–72.

As in *Williams*, Plaintiffs here have alleged that their gender dysphoria results from physical impairments. (Compl. ¶¶ 32, 84.)  Specifically, they allege their identification as female is longstanding and reflects an innate biological condition that has been manifest since they were very young.  (*Id.* ¶¶ 29, 45, 57.)  In addition, as Plaintiffs' Complaint explains, gender dysphoria can be treated by, among other things, "puberty blocking medication and, for older adolescents, hormone therapy."  (*Id.* ¶ 33; *see id.* ¶¶ 34–36.)  That Plaintiffs receive or will receive puberty blocking medication and hormone therapy to treat their gender dysphoria "indicate[s] that [their] gender dysphoria has some physical basis."  *Williams*, 45 F.4th at 771; (*see* Compl. ¶¶ 46, 59.)  Thus, Plaintiffs have plausibly alleged that their gender dysphoria results from physical impairments, such that they have a qualifying disability under the ADA.

1

2

### C.     Excluding Gender Dysphoria Under the ADA and Rehabilitation Act Would Violate the Constitution.

The conclusion that gender dysphoria falls outside the scope of the ADA exclusion is also necessary under the doctrine of constitutional avoidance, which directs courts not to decide a constitutional question if there is some other ground upon which to address the issue. *See Fox TV Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1013 (9th Cir. 2017).  Intervenor-Defendants' interpretation of the ADA raises a serious doubt as to that statute's constitutionality under the Fifth Amendment's Equal Protection Clause because such an interpretation discriminates against transgender people as a class.  *See Williams*, 45 F.4th at 772.  As the Ninth Circuit and this Court have held, discrimination against transgender people is prohibited as a form of sex discrimination.  *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019); *Hecox v. Little*, 2023 WL 5283127, at *12 (9th Cir. Aug. 17, 2023); *Doe v. Horne*, 2023 WL 4661831, at *16 (D. Ariz. July 20, 2023) (Zipps, J.) ("Laws that discriminate against transgender people are sex-based classifications and, as such, warrant heightened scrutiny.").  Accordingly, Intervenor-Defendants' interpretation must be avoided.  *See Williams*, 45 F.4th at 772.

### D.     Plaintiffs Have Otherwise Properly Alleged That They Have a Disability Under the ADA and Rehabilitation Act.

Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarding as having such an impairment . . ."  42 U.S.C. § 12102(1).  A "major life activity" is defined to include, among other things, "caring for oneself . . . eating, sleeping . . . learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  A major life activity also "includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B).  "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating

measures[,]" such as medication.  *See* 42 U.S.C. § 12102(4)(E)(i).  The Rehabilitation Act contains the same requirements.  *See* 29 U.S.C. § 705(20)(B) (incorporating the ADA's definition for purposes of 29 U.S.C. § 794).

Plaintiffs allege they have been diagnosed with gender dysphoria and their health and well-being depend on being able to follow their medically prescribed treatment, including living as girls in all aspects of their lives.  (Compl. ¶¶ 45, 51, 57, 60.)  Plaintiffs also allege that untreated gender dysphoria causes anxiety, depression, eating disorders, substance abuse, self-harm, and suicide.  (*Id.* ¶ 32.)  Thus, gender dysphoria substantially impairs major life activities, including caring for oneself, eating, sleeping, learning, reading, concentrating, thinking, and communicating, as well as major bodily functions, such as neurological and brain functioning.  Because Plaintiffs have been diagnosed with gender dysphoria, they have a record of a substantially limiting impairment.  *See Iglesias v. True*, 403 F. Supp. 3d 680, 687 (S.D. Ill. 2019) ("Gender dysphoria . . . fall[s] squarely within the realm of limiting major bodily functions[.]").  Therefore, the Court should deny Intervenor-Defendants' motion to dismiss Plaintiffs' ADA and Rehabilitation Act claims.

## CONCLUSION

For the foregoing reasons, the Court should deny Intervenor-Defendants' motion to dismiss.[3]

Dated: September 26, 2023

/s/ Colin M. Proksel
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

---

[3] If this Court finds the Complaint deficient in any respect, Plaintiffs respectfully request leave to amend.  *See Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (explaining that "a district court should grant leave to amend" if any deficiencies can be "cured by amending the complaint").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.