**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al., | No. CV-23-00185-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Thomas C Horne, et al., | |
| Defendants. | |

Pending before the Court is a Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure filed by Anna Van Hoek, Lisa Fink, Amber Zenczak, and Arizona Women of Action (Proposed Intervenors). (Doc. 98.) Plaintiffs filed an opposition and the Proposed Intervenors filed a reply. (Docs. 130, 138.) For the following reasons, the Court will deny the Motion to Intervene.

## BACKGROUND

In 2022, the Arizona Legislature and then-Governor Doug Ducey enacted A.R.S. § 15-120.02 (the Statute), which provides that interscholastic or intramural "[a]thletic teams or sports designated for 'females', 'women' or 'girls' may not be open to students of the male sex." The Statute went into effect in on September 23, 2022.

Plaintiffs Jane Doe and Megan Roe are two transgender girls who attend Arizona schools and intend to try out for and participate on girls' sports teams in the current academic year. Plaintiffs allege that the Statute violates the Equal Protection Clause of the Fourteenth Amendment, Title IX, the Americans with Disabilities Act, and Section 504 of

the Rehabilitation Act. (Doc. 1.) In their April 2023 Complaint, Plaintiffs named five defendants: (1) Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; (2) Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; (3) the Kyrene School District; (4) The Gregory School, an independent school organized as a 501(c)(3) non-profit; and (5) the Arizona Interscholastic Association (AIA).[1] (*Id.*) With their Complaint, Plaintiffs filed a Motion for a Preliminary Injunction on their Title IX and Equal Protection claims, seeking to enjoin Defendants from enforcing the Statute against them so that they may have "an equal opportunity to try out for and participate on the girls' volleyball, soccer, basketball, and cross-country teams" during the school year while this case proceeds. (Doc. 3 at 5.)

Before any defendant made an appearance, Senator Warren Peterson, President of the Arizona State Senate, and Representative Ben Toma, Speaker of the Arizona House of Representatives (the Legislators), filed a Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. (Doc. 19.) Though the Court denied the Motion to the extent that Legislators sought to intervene as of right, the Court granted permissive intervention on a limited basis to allow Legislators to present argument and evidence in opposition to Plaintiffs' Motion for Preliminary Injunction. (Doc. 79.) Later, the Court amended its decision and allowed the Legislators to participate as a party to the litigation. (Docs. 111 & 142.)

On June 30, 2023, while Plaintiffs' Motion for Preliminary Injunction was pending before the Court, Anna Van Hoek, Lisa Fink, Amber Zenczak, and Arizona Women of Action filed the pending Motion to Intervene in the action. (Doc. 98.)

On July 10, 2023, the parties to the litigation presented arguments before the Court in a hearing on Plaintiffs' Motion for Preliminary Injunction. (Doc. 115.) The Court subsequently granted Plaintiffs' Motion for Preliminary Injunction. (Doc. 127.)

The Motion to Intervene was fully briefed as of August 4, 2023. (Doc. 138.)

---

[1] Laura Toenjes and the Kyrene School District filed a Stipulation in lieu of Answer, informing the Court that they "will not be an active participant in this case, including filing any response to Motions currently pending before the Court." (Doc. 59 at 2.)

# DISCUSSION

## I. Intervention as of Right

The Federal Rules of Civil Procedure permit a party to intervene as of right under Rule 24(a) and to intervene permissively under Rule 24(b). *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). A party seeking intervention of right under Rule 24(a) must satisfy a four-part test: (1) the application must be timely; (2) the applicant must have a "significantly protectable interest" relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). An applicant seeking intervention bears the burden of proving these requirements are met. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Failure to satisfy any one of the requirements is fatal to the application. *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Proposed Intervenors argue that they are entitled to intervene as of right in this action because their Motion was filed at an early stage in the litigation, their interest in ensuring the equity of athletic opportunity through sex segregation would be impaired if Plaintiffs' relief was granted, and the named Defendants will not adequately represent their interests. (Doc. 98 at 9-16.) Plaintiffs argue that intervention as of right is not appropriate because the Proposed Intervenors' interest is not related to the Plaintiffs' claim and because the Legislators and Defendant Horne are vigorously defending the challenged Statute on behalf of the State. (Doc. 130 at 4-8.)

Because Proposed Intervenors have not proved that the requirements for intervention are met, the Court will deny the application to intervene as of right. The Proposed Intervenors have not satisfied the four-part test required to intervene as a matter of right because: (1) their interest in ensuring the equality of athletic opportunity through sex segregation is not related to Plaintiffs' as-applied challenge; (2) granting Plaintiffs' requested relief would not practically impair Proposed Intervenors' interest; and (3)

Defendant Horne and the Legislators who crafted the bill have expressed their commitment to vigorously defend the Statute.

### A. Timeliness of Motion

"Courts weigh three factors in determining whether a motion to intervene is timely: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay.'" *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted). "The 'crucial date' for determining timeliness is when the proposed intervenor 'should have been aware that their interests would not be adequately protected by the existing parties.'" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)). "When considering prejudice to other parties, the Ninth Circuit has held that the only 'prejudice' that is relevant . . . is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021).

As to the timing of the motion to intervene, Proposed Intervenors cite Ninth Circuit case law that concluded "an intervention motion was timely when it was filed 'less than three months after the complaint was filed and less than two weeks after the [defendant] filed its answer to the complaint.'" (Doc. 98 at 9-10); *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). Proposed Intervenors argue that their motion to intervene meets the Ninth Circuit's "timeliness standard" because it was filed "less than eleven weeks after the complaint was filed … about six weeks after Defendant Superintendent Horne filed his answer to the complaint …." (Doc. 98 at 10.) However, the "timeliness standard" that Proposed Intervenors extrapolate from Ninth Circuit case law is relative and, as Plaintiffs correctly point out, this particular case progressed significantly within the first three months. Specifically, all parties appeared, the Legislators were granted limited permissive intervention, and the parties addressed and briefed substantive issues with regard to

Plaintiffs' motion for preliminary injunction. (Doc. 79, 80.) The quick progression of this case is relevant.

The Proposed Intervenors would or should have known whether their interests would be adequately protected by existing defendants. By their own account, prior to passage of the Statute, Proposed Intervenors spent substantial time and energy garnering support for the Statute, including giving a speech to the Arizona Senate committee, seeking witnesses to support the bill, and lobbying legislators. (Doc. 98 at 7-8). In light of their advocacy efforts, it is likely that Proposed Intervenors would have remained abreast of challenges to the Statute, particularly those made soon after the Statute's implementation. Presumably, Proposed Intervenors would have determined whether their interests were adequately represented well before the three-month mark.

Despite Proposed Intervenors' delay in filing their motion, the Court finds that no substantial prejudice to the other parties would result from Proposed Intervenors' involvement at this point in the litigation. Though Plaintiffs' request for a preliminary injunction was granted, the merits of the case have yet to be briefed or argued. Additionally, Proposed Intervenors have stated that, if their motion is granted, they will collaborate with Defendants and take steps to avoid duplicative filings. (Doc. 138 at 10.) As such, the Court finds that the timeliness factor weighs slightly in favor of Plaintiffs, but is not dispositive.

### B. Significantly Protectable Interest

Plaintiffs assert that because Jane Doe and Megan Roe bring an as-applied challenge to the Statute, Proposed Intervenors' daughters will not suffer any "direct, non-contingent, and substantial" harm if the Court grants Plaintiffs' requested relief. (Doc. 138 at 4.) The Court agrees and finds that Proposed Intervenors have failed to establish that they would be concretely affected if Plaintiffs are allowed to play on the girls' sports teams at their school.

Rule 24(a)(2) requires that the asserted interest be "protectable under some law" and that there exist "a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). "If these

two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2)." *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022). "[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *S. California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998)).

Proposed Intervenors assert that, under Title IX, their interest in ensuring equality of athletic opportunity through sex segregation is a protectable interest. (Doc. 98 at 12.) Relying on *California ex rel. Lockyer v. U.S.,* 450 F.3d 436 (9th Cir. 2006), they argue that their protectable interest relates to Plaintiffs' claims because, as the "intended beneficiaries" of the Statute (biological girls), their interest would be harmed if they were required to play with or against biological males in scholastic athletic competition. (Doc. 138 at 2.)

In *California ex rel. Lockyer*, health care providers moved to intervene in an action brought by the state of California challenging the constitutionality of a federal appropriations rider enacted to protect the health care providers' interests. 450 F.3d at 439. In holding that the health care workers had the right to intervene, the Ninth Circuit explained, "if the Amendment is declared unconstitutional … [health care providers] will be more likely to be forced to choose between adhering to their beliefs and losing their professional licenses. Such an interest is sufficiently 'direct, non-contingent, [and] substantial.'" *Id.* at 441.

Unlike *Lockyer*, which dealt with a facial challenge to the constitutionality of a state statute, here Plaintiffs bring an as-applied challenge to the Statute. When the constitutionality of a statute on its face is at issue, it necessarily follows that the intended beneficiaries of the statute would have a protectable interest in the outcome. Because this case involves an as-applied challenge, the outcome of the litigation will solely impact whether Jane Doe and Megan Roe can play school sports on girls' teams. (*See* Doc. 1.) Significantly, if Plaintiffs prevail, Proposed Intervenors' daughters will not be affected.

None of the Proposed Intervenors' daughters will play on the same team as or compete against Jane Doe or Megan Roe. And the "possibility" that Mrs. Zenczak's daughters will transfer to a school in the Kyrene district and compete with or against Plaintiffs is too attenuated to demonstrate an interest that is sufficiently "direct, non-contingent, [and] substantial." (Doc. 98-4 ¶ 3); *see Lockyer*, 450 F.3d at 451.

As the parents of girls who compete in school sports, and supporters of the Statute, Proposed Intervenors have only demonstrated a generalized interest in the outcome of the ongoing action. Ensuring equality of athletic opportunity is a universal interest held by all parents with children participating in school sports. This interest alone does not warrant intervention as a right in a lawsuit. As such, the Court finds that the Proposed Intervenors' asserted interest does not relate to the Plaintiffs' claims.

### C. Practical Impairment of Interest

Proposed Intervenors state that if the Court grants Plaintiffs' requested relief, Ms. Van Hoek's daughter *may* be forced to play against Jane Doe because she participates on AIA sports teams. (Doc. 98 at 12.) Additionally, Mrs. Zenczak's daughters *may* transfer to a Kyrene school in which case they *may* compete with or against Jane Doe. (*Id.*) Further, Proposed Intervenors claim that the decision on appeal will establish precedent in this case. (*Id.*) The Court concludes that Proposed Intervenors' interest will not be practically impaired if Plaintiffs are granted relief in this action because the alleged harms are too remote and because the decision of a district court does not have binding precedential impact.

A party has a sufficient interest for intervention purposes if it will "suffer a practical impairment of its interests as a result of the pending litigation." *Lockyer,* 450 F.3d at 441. The Ninth Circuit has said that although "a stare decisis effect is an important consideration in determining the extent to which an applicant's interest may be impaired," the precedential impact of a decision must be "clear." *United States v. State of Oregon*, 839 F.2d 635, 638 (9th Cir. 1988); *Green v. United States*, 996 F.2d 973, 977 (9th Cir. 1993).

In the immediate case, it is unlikely that granting Plaintiffs' requested relief would

impair Proposed Intervenors' interests. As noted above, Proposed Intervenors do not allege that their daughters attend the same school as Plaintiffs or compete against Plaintiffs' schools. Van Hoek's younger daughter attends a high school that is part of the AIA, but she plays softball and thus will not compete against either Jane Doe or Megan Roe, who do not. (Doc. 98-2 ¶ 3). And the "possibility" that Mrs. Zenczak's daughters will transfer to a Kyrene school and compete with or against Plaintiffs is too attenuated to constitute an impediment to Proposed Intervenors' interests. (Doc. 98 at 12.) Moreover, while the Court recognizes that stare decisis is an important consideration, Proposed Intervenors fail to establish a clear precedential impact. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Although there remains the possibility that the Ninth Circuit will eventually review this Court's decision (as is the case with any litigation in this circuit), this is too speculative to support Proposed Intervenors' claim that their interest would be impaired without intervention. This is particularly true where the challenge is an as-applied challenge. Thus, Proposed Intervenors have not established that their practical interest would be impaired if the Court granted Plaintiffs' requested relief.

### D.  Adequate Representation

Since Proposed Intervenors filed their motion to intervene, the Court has permitted the Legislators to intervene as a permanent party to the litigation. The Legislators, in addition to Defendant Horne, will adequately represent the interests of the Proposed Intervenors because these parties share the same "ultimate goal" in the litigation. In fact, Defendant Horne and the Legislators have vowed to vigorously defend the constitutionality of the Statute on behalf of their constituents.

In assessing the adequacy of representation, the Ninth Circuit considers three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any

necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. The "most important factor" in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Arakaki,* 324 F.3d at 1086. If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997). "There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents …." *Citizens for Balanced Use*, 647 F.3d at 898. To rebut the presumption, an applicant must make a "compelling showing" of inadequacy of representation. *Arakaki*, 324 F.3d at 1086.

Proposed Intervenors do not dispute that they share the same ultimate objective as Defendants Horne and the Legislators—defending the constitutionality of the Statute being challenged by Plaintiffs. Thus, Proposed Intervenors must rebut the presumption of adequacy with a compelling showing. For this purpose, Proposed Intervenors advance three arguments: (1) Defendants will not make the same arguments as Proposed Intervenors because Defendants represent a broader constituency; (2) Defendant Horne is not capable of making such arguments due to financial constraints; and (3) Defendant Horne will not adequately represent the perspective of biological girls. (Doc. 98 at 14-16; Doc. 138 at 4-6.)

First, there is no basis to find that the Legislators and Defendant Horne will not make the same arguments proposed by the Proposed Intervenors as this case proceeds. Though Proposed Intervenors contend that the Legislators represent a "much broader constituency" which will "factor into how they respond to this action," the Court finds no reason to believe that the Legislators would forgo any argument that Proposed Intervenors would make. (Doc. 138 at 5.) Indeed, as evidenced by the briefing submitted by Defendants, as well as the motion to dismiss submitted by Proposed Intervenors, Proposed Intervenors fail to articulate any argument that Defendant Horne or the State Legislators have not already made. Accordingly, Proposed Intervenors' involvement would be unnecessary and redundant.

Additionally, the Legislators considered the Proposed Intervenors' views when they crafted the Statute at issue. Proposed Intervenors individually, and AWOA as a whole, have been active in their support for the Save Women's Sports Act. Ms. Zenczak "gave a speech to an Arizona Senate committee in favor of the Act," and Ms. Fink has "[sought] witnesses to testify in support of the bill … and also email[ed] and call[ed] legislators in support of the bill." (Doc. 98 at 7). The Legislators have expressed their commitment to vigorously defend the Statute stating "[they] have a crucial interest in … defending the constitutionality of state statutes" on behalf of their constituents. (Doc. 19 at 11.) Proposed Intervenors do not demonstrate that their interest differs from the Legislators or that the Legislators will fail to defend the bill with equal zealousness.

Second, Proposed Intervenors argue that Defendant Horne is not capable of making the parent representatives arguments because he lacks the financial resources to do so. (Doc. 98 at 15.) Plaintiffs assert that this argument has already been disposed of by this Court—and the Court agrees. A.R.S. § 41-192(E) provides that, in the event that the attorney general is disqualified, "the state agency is authorized to make expenditures and incur indebtedness to employ attorneys to provide the representation or services." Indeed, Defendant Horne has retained counsel, filed several motions, answered the complaint, and confirmed his intention to vigorously defend this lawsuit in the press. Moreover, the Legislators have been permitted to intervene. Defendant Horne and the Legislators are capable of adequately representing the Proposed Intervenors' interests, which align with those of Defendant Horne and the Legislators.

Finally, Proposed Intervenors argue that they would "bring to this case the vital perspective of biological females," an element that Defendant Horne would neglect. (Doc. 98 at 16.) The Court is unconvinced that Defendants would neglect the perspective of biological females. On the contrary, this perspective has already been addressed in Defendants' briefing on Plaintiffs' motion for a preliminary injunction. Specifically, the Legislators argued that "[h]aving separate sex specific teams furthers efforts to promote sex equality by providing opportunities for female athletes to demonstrate their skill,

strength and athletic abilities while also providing them with opportunities to obtain recognition, accolades, college scholarships and the numerous other long-term benefits that flow from success in athletic endeavors." (Doc. 82 at 12.) Simply because an individual with a particular *perspective* is not made party to the litigation does not mean that their *interest* will not be adequately protected by existing parties. Here, Defendants have demonstrated that they will represent the perspective of biological girls in the litigation. As such, there is no reason to believe that Defendants would neglect elements that would otherwise be raised by Proposed Intervenors.

In sum, Proposed Intervenors have not made a compelling showing that their interest will not be adequately protected by Defendants. Accordingly, the Court will deny intervention as of right under rule 24(a).

## II.     Permissive Intervention

Unlike intervention as of right, permissive intervention under Rule 24(b) is discretionary. A district court may permit intervention if the movant, "on a timely motion…has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011).

If the initial conditions are met, the court may also consider "whether the intervenors' interests are adequately represented by other parties … and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan v. Brookdale Senior Living Cmtys.*, 38 F.4th 813, 822 (9th Cir. 2022).

Proposed Intervenors have established that they have a claim or defense that shares a common question of law or fact with the main action, and their permissive intervention at this stage in the case would not unduly delay or prejudice the original parties. However, such intervention is unnecessary because, as explained in Section I, the Proposed Intervenors' interests will be adequately represented by the Legislators and Defendant

Horne. Moreover, participation of Proposed Intervenors is not necessary to fully develop the underlying factual issues in the suit. On the contrary, permitting intervention by Proposed Intervenors would likely result in redundant and unnecessary efforts.

Accordingly, the Court will deny Proposed Intervenors application for permissive intervention under Rule 24(b).

## CONCLUSION

For the foregoing reasons, Proposed Intervenors Motion to Intervene (Doc. 98) is **DENIED**.

Dated this 20th day of October, 2023.

Jennifer G. Zipps
United States District Judge