**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>Thomas C Horne, et al.,<br><br>            Defendants. | No. CV-23-00185-TUC-JGZ<br><br>**ORDER** |

      Plaintiffs filed this action on April 17, 2023, challenging A.R.S. § 15-120.02, which provides that interscholastic or intramural "[a]thletic teams or sports designated for 'females', 'women' or 'girls' may not be open to students of the male sex." (Doc. 1.) Plaintiffs seek declaratory and injunctive relief and assert claims based on the Equal Protection Clause, Title IX, the Americans With Disabilities Act (ADA), and Section 504 of the Rehabilitation Act. (*Id.*)

      Plaintiffs plead only Title IX, ADA, and Rehabilitation Act claims against Defendant The Gregory School (TGS), a private school organized as a 501(c)(3) non-profit and attended by one of the Plaintiffs. (Doc. 1.) Now pending before the Court is TGS's partial Rule 12(b)(6) Motion to Dismiss. (Doc. 37.) TGS argues that Plaintiffs fail to state a claim against TGS under Title IX and the Rehabilitation Act because these statutes apply only to private entities that receive "federal financial assistance." (Doc. 37 at 2.) TGS argues that Plaintiffs fail to state an ADA claim because Section 12132 of the ADA applies only to public entities, not private ones. (*Id.*) The Motion is fully briefed. (*See* Docs. 37,

64, 77.) For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I. LEGAL STANDARD

A 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Claim dismissal is proper where there is no cognizable legal theory or there are insufficient facts to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## II. REHABILITATION ACT AND TITLE IX CLAIMS

Section 504 of the Rehabilitation Act and Title IX prohibit certain conduct by entities that receive federal financial assistance. *See* 20 U.S.C. § 1681(a) (Title IX applies to "any education program or activity receiving Federal financial assistance"); 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act applies to "any program or activity receiving Federal financial assistance"). TGS does not receive monetary grants or property from the federal government. Plaintiffs contend that TGS is subject to liability under Section 504 and Title IX because the school is recognized as a 501(c)(3) tax-exempt organization. There is no controlling authority on point, and the courts that have addressed this issue have reached contrary conclusions.

Plaintiffs cite *E.H. by & through Herrera v. Valley Christian Academy*, 616 F. Supp. 3d 1040, 1050 (C.D. Cal. 2022), *Buettner-Hartsoe v. Baltimore Lutheran High School Ass'n*, No. CV RDB-20-3132, 2022 WL 2869041, at *3 (D. Md. July 21, 2022), *reconsideration denied, motion to certify appeal granted,* No. CV RDB-20-3132, 2022 WL 4080294 (D. Md. Sept. 6, 2022), *Fulani v. League of Women Voters Education Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988), *aff'd,* 882 F.2d 621 (2d Cir. 1989), and *McGlotten v. Connally*, 338 F. Supp. 448, 461 (D.D.C. 1972), for the proposition that an organization's § 501(c)(3) tax-exempt designation constitutes the receipt of federal financial assistance. (Doc. 64 at 9-11.) TGS cites *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Illinois, Inc.*, 134 F. Supp. 2d 965, 972 (N.D. Ill. 2001), to support its position that non-profit tax-exempt status is not the equivalent of federal financial assistance. (Doc. 37 at 6.) TGS also relies

on the reasoning of certain decisions of the Supreme Court and Ninth Circuit Court of Appeals addressing the receipt of financial assistance. (Doc. 77 at 4.) Both parties argue the applicability of Department of Education regulations defining federal financial assistance. The Court begins its analysis with these regulations.

Although neither Title IX nor the Rehabilitation Act define federal financial assistance, Department of Education regulations define "federal financial assistance" for purposes of Title IX as follows:

> ***Federal financial assistance*** means any of the following, when authorized or extended under a law administered by the Department:
>
> **(1)** A grant or loan of Federal financial assistance, including funds made available for:
>
> > **(i)** The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
> >
> > **(ii)** Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>
> **(2)** A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>
> **(3)** Provision of the services of Federal personnel.
>
> **(4)** Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
>
> **(5)** Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2(g) (emphasis in original). "Tax-exempt status" is not listed as a form of federal financial assistance in the Department of Education's definition and tax-exempt

status is not assistance "authorized or extended under a law administered by the Department," as the introductory phrase of the regulatory definition requires. *Id*.

Plaintiffs assert that the § 106.2(g)(5) "catchall" provision is so broad as to include tax exempt status. Plaintiffs argue that tax exempt status is a "subsidy" that constitutes an "arrangement" which has as one of its purposes the provision of assistance to an education program. (Doc. 64 at 10.) Section 106(g)(5) is broad indeed; however, a catchall provision must be read as, "bringing within a statute categories similar in type to those specifically enumerated within the statute." *Paroline v. United States*, 572 U.S. 434, 447 (2014). None of the categories of "financial assistance" described in subparts (1)-(5) of the regulation are similar to 501(c)(3) status. Rather, the enumerated categories consist of affirmative grants of federal resources, such as federal funds, federal property, and federal personnel.[1] In contrast, tax-exempt status is a designation provided by the Internal Revenue Service to certain organizations, typically nonprofit entities, that meet specific criteria outlined in the tax code. 26 U.S.C. §§ 170, 501(c)(3). This status exempts the designated entity from federal income taxes for most types of revenue. *Id.* at § 501(a). In addition, many donations to 501(c)(3) organizations are tax deductible by the donor. *See Charitable Contribution Deductions,* INTERNAL REVENUE SERVICE, https://www.irs.gov/charities-non-profits/charitable-organizations/charitable-contribution-deductions (June 5, 2023). Tax exempt status is distinguishable from an affirmative grant of federal resources because the bestowment of 501(c)(3) status does not, by and in itself, provide the 501(c)(3) organization with federal money, property, or services. In fact, the benefit of not having to pay certain taxes is realized only if the tax-exempt organization earns income which would otherwise be taxed. *See Exemption Requirements - 501(c)(3) Organizations,* INTERNAL REVENUE SERVICE, https://www.irs.gov/charities-non-profits/charitable-organizations/exemption-requirements-501c3-organizations (Feb. 6, 2023). An entity with

---

[1] In *United States Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597, 607 (1986), the Supreme Court acknowledged that, "although 'financial' usually indicates 'money,' federal financial assistance may take nonmoney form." In so stating, however, the court referred only to an airport runway, which is a similarly tangible benefit, and also a benefit specifically included in the Department of Education definition.

501(c)(3) status may or may not have taxable income. Thus, while the IRS designation *may* allow a tax-exempt entity to allocate more resources toward its mission rather than to the payment of taxes, the entity may not be assisted by that benefit if the entity does not have otherwise taxable income.  In other words, the IRS's designation does not ensure an organization will receive  any benefit.

Plaintiffs also argue that tax exempt status is comparable to the lease of federal property at nominal or reduced consideration—a category of assistance described in the fourth paragraph of the regulatory definition, 34 C.F.R. § 106.2(g)(4). (Doc. 131 at 16 ¶¶ 1-13.) The Court concludes the two are not comparable. In the lease of government property, even at nominal consideration, the government directly provides to the recipient a tangible federal resource. In contrast, in granting tax-exempt status to an organization, the organization does not receive a direct or certain benefit; the organization will be "assisted financially" only if it receives certain independent donations or earns taxable income that is related to its exempt purpose. 26 U.S.C.A. §§ 170, 501(c)(3).

The Court finds *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Illinois, Inc.,* 134 F. Supp. 2d 965 (N.D. Ill. 2001), persuasive.  There the district court in a Title IX case concluded that "the comprehensive definition of 'federal financial assistance' set out in the Department of Education's regulation" did not include tax-exempt status because the benefit of such status was simply too indirect to constitute federal financial assistance. *Id.* at 972.  According to the court, "'federal financial assistance' encompasses only direct transfers of federal money, property or services from the government to a program. Exemption from taxation just does not equate to such direct transfers." *Id.* at 972 (internal citation omitted). The court noted that its conclusion was consistent with the Spending Clause foundation for Title IX which is contractual in nature, and explained, "[w]hen the government offers to transfer money or property to an entity to support an educational program or activity, the intended recipient has the choice whether or not to accept the assistance and the concomitant obligation not to discriminate on the basis of sex." *Id.*

The Supreme Court has repeatedly focused on the contractual nature of Spending

Clause legislation. S*ee Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (emphasizing that legislation enacted under the Spending Clause has a contractual nature: in return for federal funds, the recipient agrees to comply with federally imposed conditions); *Paralyzed Veterans of America*, 477 U.S. at 605 (explaining that under Title VI, Title IX, and § 504, Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision); *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 286 (1998) (noting that Title IX operates in the same manner as Title VI, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds). Yet there is no indication that Congress intended to condition the receipt of 501(c)(3) tax exempt status on an entity's promise to comply with federal antidiscrimination statutes. As the *Johnny's Icehouse* court stated, "Congress may condition tax-exempt status on an organization conforming to specific categories in Section 501(c)(3), [but] that was not the power that Congress invoked to subject entities to the nondiscrimination requirements of Title IX." 134 F.Supp.2d at 972.

Plaintiffs cite *Grove City College v. Ball,* 465 U.S. 555, 564 (1984), in arguing that both direct and indirect financial assistance trigger coverage under Title IX and that "financial assistance" should be construed broadly to include tax-exempt status. In *Ball*, the Supreme Court held that Grove City College was required to comply with Title IX because it accepted federal financial assistance indirectly through its students, who financed their educations with federal grants. *Id.* at 570. But *Ball* is distinguishable. Although *Ball* recognizes that financial assistance may be indirect, the indirect benefit received by the college was itself an actual tangible financial benefit – money. Tax-exempt status does not necessarily provide an actual or certain benefit. And, unlike the college in *Ball,* TGS has not received or accepted federal funds, either directly or through an intermediary.

Plaintiffs also rely on *Fulani v. League of Women Voters Education Fund.* But like

*Ball,* in *Fulani*, the defendant non-profit organization received federal funds. In fact, the organization received hundreds of thousands of dollars in direct federal funding from two government agencies. 684 F. Supp. at 1187. There, the plaintiff asserted that the defendant fell under the purview of Title VI and Title IX, "as a recipient of federal funds," *id.* at 1189, and the court concluded that the statutes applied to the defendant, at least in part, based on the organization's receipt of the federal grants, *id.* at 1192. Here, the parties agree that TGS has not received any federal funds.

Plaintiffs cite *Valley Christian* and *Baltimore Lutheran,* both of which hold that 501(c)(3) tax exempt status constitutes federal financial assistance under Title IX in light of the purpose of that statute. *See Valley Christian*, 616 F. Supp. 3d at 1050 (looking to "the plain purpose of the statute," which is "to eliminate discrimination in programs or activities benefitting from federal financial assistance."); *Baltimore Lutheran*, 2022 WL 2869041, at *3 (cleaned up) ("Enforcing the mandates of Title IX in schools with 501(c)(3) status aligns with and protects the principal objectives of Title IX[.]"). Similarly, in *McGlotten*, the D.C. Circuit considered significant the statutory purpose of the Civil Rights Act in determining whether certain tax code provisions constituted federal financial assistance in relation to Title VI of the Civil Rights Act. 338 F. Supp. at 461 (D.C. Cir. 1972).[2] But concluding that a particular "grant" or "arrangement" constitutes "federal financial assistance" if it advances the purpose of an anti-discrimination statute begs the question of what constitutes federal financial assistance. As the Supreme Court has stated, under Title VI, Title IX, and § 504, a recipient's *acceptance* of federal funds triggers coverage under the nondiscrimination provision, not the other way around. *See Paralyzed Veterans of America*, 477 U.S. at 605. Indeed, the Supreme Court's discussion of statutory purpose has always been in the context of the contractual nature of Spending Clause legislation. For example, in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the

---

[2] The *McGlotten* court concluded that the clearly-indicated Congressional policy against racial discrimination required that Internal Revenue Code section 501(c)(8), which allows deduction of contributions to fraternal orders, be construed to disallow the deduction for contributions to fraternal orders that excluded non-whites from membership. *Id.*

- 7 -

court stated that the principal objective of Title IX is "to avoid the *use of federal resources to support discriminatory practices in education programs.*" *Id.* at 704 (emphasis added). In *Paralyzed Veterans*, the court held that Congress would require contractors to "bear the costs of providing employment for the handicapped as a *quid pro quo* for the receipt of federal funds." 477 U.S. at 605. Likewise, in *Grove City College*, the Supreme Court noted that the college was free to terminate participation in the federal grant program and thus avoid the requirements of Title IX. 465 U.S. at 475. As applied here, TGS is subject to Title IX and section 504 only if TGS received federal resources. The purpose of a statute is not determinative of whether 501(c)(3) status is a federal benefit.

Based on the foregoing, the Court concludes that 501(c)(3) tax-exempt status is not the type of grant or arrangement that qualifies as federal financial assistance. Accordingly, the Complaint fails to state cognizable Title IX and Rehabilitation claims against TGS.

### III. TITLE III ADA CLAIM

A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986) (cleaned up). Under Rule 8, Fed. R. Civ. P., a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).

TGS argues that the Complaint fails to allege an ADA claim against TGS because the section of the ADA referenced in the Complaint is Title II, which applies to public entities, not private ones. TGS acknowledges that the ADA applies to TGS under Title III of the ADA, but requests that the Court require Plaintiffs to amend their Complaint to make clear that their claim is brought under Title III. (Docs. 37 at 7; 77 at 7-8.) Plaintiffs argue that the Complaint as written broadly alleges a claim under Title III. The heading for Count III asserts an ADA claim by reference to 42 U.S.C. § 12101 *et seq.* (Doc. 1, ¶19.) 42 U.S.C. § 12101 *et seq.* includes both Title II of the ADA for public entity defendants (42 U.S.C. §

12132) and Title III of the ADA for private defendants operating public accommodations (42 U.S.C. § 12182). TGS, a private school, could only be liable under Title III.

The Complaint gives TGS fair notice of what the Plaintiff's claim is and the grounds upon which it rests. Although the body of the Complaint cites 42 U.S.C. § 12132 rather than 42 U.S.C. § 12182, the Complaint also references 42 U.S.C. § 12101, which includes both Title II and Title III claims. The parties acknowledge in their filings that TGS could only be liable under Title III. Thus, the Court will deny TGS's motion to dismiss Count III for failure to state a claim.

Accordingly,

**IT IS ORDERED** TGS's Motion to Dismiss (Doc. 37) is **granted in part and denied in part.** The Title IX and Rehabilitation claims asserted against TGS are dismissed. TGS's request to dismiss Plaintiffs' Title III ADA claim is **denied**.

Dated this 11th day of December, 2023.

Jennifer G. Zipps
United States District Judge