Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050
Email:       cproksel@omlaw.com

*Attorney for Plaintiffs*
*Additional counsel listed in signature block*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>　　　　　　　Defendants,<br><br>Warren Petersen, in his official capacity as President of the Arizona State Senate, and Ben Toma, in his official capacity as Speaker of the Arizona House of Representatives,<br><br>　　　　　　　Intervenor-Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' MOTION TO COMPEL DISCOVERY AS TO INTERVENOR-DEFENDANTS** |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

LEGAL STANDARD ..................................................................................................... 4

    I.    Legislative Privilege............................................................................................ 4

    II.    Deliberative Process Privilege ........................................................................... 4

ARGUMENT .................................................................................................................. 5

    I.    Intervenor-Defendants Have Waived Legislative Privilege. .......................... 5

    II.    Even If Intervenor-Defendants Had Not Waived Legislative Privilege, It Would Be Easily Overcome. ....................................................... 9

    III.    The Deliberative Process Privilege Is Inapplicable. .................................... 11

    IV.    The Deliberative Process Privilege Is Easily Overcome. ............................ 12

CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Ariz. Dream Act. Coal. v. Brewer*,
　2014 WL 171923 (D. Ariz. Jan. 15, 2014) .................................................................. 13

*Ariz. Rehabilitation Hosp., Inc. v. Shalala*,
　185 F.R.D. 263 (D. Ariz. 1998) ..................................................................................... 5

*Assembly of State of Cal. v. U.S. Dep't of Com.*,
　968 F.2d 916 (9th Cir. 1992) ................................................................................. 11–12

*Doe v. Snyder*,
　28 F.4th 103 (9th Cir. 2022) ........................................................................................ 10

*EEOC v. Swissport Fueling, Inc.*,
　2012 WL 1648416 (D. Ariz. May 10, 2012) ............................................................... 12

*Favors v. Cuomo*,
　285 F.R.D. 187 (E.D.N.Y. 2012) ............................................................................ 4, 10

*FTC v. Warner Commc'ns, Inc.*,
　742 F.2d 1156 (9th Cir. 1984) .............................................................................. 4, 5, 12

*Harris v. Ariz. Indep. Redistricting Comm'n*,
　993 F. Supp. 2d 1042 (D. Ariz. 2014) ........................................................................... 9

*Hecox v. Little*,
　79 F.4th 1009 (9th Cir. 2023) ..................................................................................... 10

*In re Subpoena Duces Tecum*,
　145 F.3d 1422 (D.C. Cir. 1998) .................................................................................. 11

*In re Toma*,
　2023 WL 8167206 (9th Cir. Nov. 24, 2023) ................................................................. 6

*In re Toma*,
　2023 WL 8167206 (9th Cir. Nov. 24, 2023) ................................................................. 7

*Kay v. City of Rancho Palos Verdes*,
　2003 WL 25294710 (C.D. Cal. Oct. 10, 2003) ...................................................... 4, 12

*Lee v. City of Los Angeles*,
　908 F.3d 1175 (9th Cir. 2018) ..................................................................................... 10

*Marylanders for Fair Representation, Inc. v. Schaefer*,
　144 F.R.D. 292 (D. Md. 1992) ...................................................................................... 4

*Mi Familia Vota v. Hobbs*,
   2023 WL 4595824 (D. Ariz. July 18, 2023) ............................................................. 4, 9

*Mi Familia Vota v. Fontes*,
   2023 WL 8183558 (D. Ariz. Sept. 14, 2023) ....................................................... *passim*

*Miller v. Johnson*,
   515 U.S. 900 (1995) ........................................................................................................ 9

*N. Pacifica, LLC v. City of Pacifica*,
   274 F. Supp. 2d 1118 (N.D. Cal. 2003) ....................................................................... 13

*Powell v. Ridge*,
   247 F.3d 520 (3d Cir. 2001) ........................................................................................... 6

*Puente Ariz. v. Arpaio*,
   314 F.R.D. 664 (D. Ariz. 2016) ..................................................................................... 4

*Rodriguez v. Pataki*,
   280 F. Supp. 2d 89 (S.D.N.Y. 2003) ............................................................................ 10

*Scott v. Bd. of Educ.*,
   219 F.R.D. 333 (D.N.J. 2004) ...................................................................................... 11

*Singleton v. Merrill*,
   576 F. Supp. 3d 931 (N.D. Ala. 2021) ....................................................................... 4, 6

*Sol v. Whiting*,
   2013 WL 12098752 (D. Ariz. Dec. 11, 2013) ............................................................... 9

*Stone v. Trump*,
   335 F. Supp. 3d 749 (D. Md. 2018) ............................................................................. 11

*Tohono O'odham Nation v. Ducey*,
   2016 WL 3402391 (D. Ariz. June 21, 2016) ............................................................... 12

*Toma v. U.S. Dist. Ct. for Dist. of Ariz.*,
   144 S. Ct. 443 (2023) ..................................................................................................... 6

*Toomey v. Arizona*,
   2022 WL 1452747 (D. Ariz. May 9, 2022) ............................................................. 5, 12

*Tornay v. United States*,
   840 F.2d 1424 (9th Cir. 1988) ....................................................................................... 5

*U.S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973) ....................................................................................................... 7

*U.S. v. ex rel. Poehling v. UnitedHealth Grp, Inc.*,
 2018 WL 8459926 (C.D. Cal. Dec. 14, 2018) ............................................................. 12

*U.S. v. Lake Cnty. Bd. Of Comm'rs*,
 233 F.R.D. 523 (N.D. Ind. 2005) ............................................................................... 11

*U.S. v. Virginia*,
 518 U.S. 515 (1996) ..................................................................................................... 7

**Statutes**

A.R.S. § 12-1841(A) ............................................................................................................ 7

A.R.S. § 15-120.02 ..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 30(b)(1) ........................................................................................................ 3

**INTRODUCTION**

Despite personally advocating and voting for A.R.S. § 15-120.02 (the "Ban"), voluntarily intervening in this action to defend the Ban, and seeking broad discovery from Plaintiffs and Defendant Arizona Interscholastic Association Inc. ("AIA"), Intervenor-Defendants now seek to shield certain documents from discovery and immunize themselves from depositions based on the legislative and deliberative process privileges. Legislative privilege has been waived, deliberative process privilege does not apply, and, in any event, both privileges would be easily overcome in this case. Intervenor-Defendants cannot enjoy all of the rights and privileges of party status while also refusing to be subject to the same discovery obligations as every other party in this action.

After this Court granted Intervenor-Defendants permissive intervention to defend the Ban, Intervenor-Defendants have taken an active role in defending this litigation. They filed an opposition to Plaintiffs' motion for a preliminary injunction with supporting expert declarations, took a central role at oral argument, filed a motion to dismiss all of Plaintiffs' claims, and served twenty-one Requests for Admission, ten Interrogatories, and five Requests for Production on each Plaintiff. Despite this zealous advocacy, however, Intervenor-Defendants now invoke the legislative and deliberative process privileges over several documents and communications and in response to Plaintiffs' intention to depose them.

Neither the legislative privilege nor the deliberative process privilege is properly asserted here. Intervenor-Defendants waived the legislative privilege when they voluntarily intervened as parties and proceeded to actively defend the Ban. Even if their intervention was not a waiver of that privilege, the legislative privilege is easily overcome because all five relevant factors favor Plaintiffs. Nor can the deliberative process privilege shield Intervenor-Defendants from producing relevant documents or testifying. Courts across the country have found that the privilege does not apply where, as here, the legislature's motive for the Ban is at issue. Moreover, the deliberative

process privilege envisions the protection of *executive* decision-making processes, not legislative ones. Finally, it too is a qualified privilege that can be, and is, overcome in this case.

Plaintiffs respectfully request that the Court compel Intervenor-Defendants to (1) produce documents and information improperly withheld on the basis of the purported legislative or deliberative process privilege; (2) revise their privilege log accordingly; and (3) sit for depositions.

## **FACTUAL BACKGROUND**

Plaintiffs Jane Doe and Megan Roe filed this lawsuit on April 17, 2023, challenging the Ban as applied to them for violating the Constitution and various federal statutes. (*See* Dkt. 1.) Plaintiffs named five defendants: (1) Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; (2) Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; (3) the Kyrene School District; (4) The Gregory School; and (5) AIA.

On May 1, 2023, Intervenor-Defendants moved to intervene to "defend their interests," noting their "unique interest in defending the constitutionality of laws duly enacted by the Arizona Legislature." (Dkt. 19 at 1.) Intervenor-Defendants represented that they both "personally advocated and voted for" the Ban. (*Id.* at 3.) The Court initially granted the motion but limited Intervenors-Defendants to "present[ing] argument and evidence in opposition to Plaintiffs' pending Motion for Preliminary Injunction." (Dkt. 79 at 1.) Intervenor-Defendants fully participated in the preliminary injunction phase, filing a motion in opposition with supporting declarations (Dkt. 82), over thirty exhibits (Dkt. 87), proposed findings of fact and conclusions of law with Defendant Horne (Dkts. 104, 116, 119), and presenting oral argument (Dkt. 115). After granting Plaintiffs' motion for a preliminary injunction, the Court granted Intervenor-Defendants the opportunity to fully "represent their interests in the entirety of this action." (Dkt. 142 at 1.)

On October 30, 2023, Plaintiffs served nine Interrogatories and nine Requests for Production on Intervenor-Defendants. (*See* Exs. 1, 2.)[1] On November 13, 2023, Intervenor-Defendants served twenty-one Requests for Admission, ten Interrogatories, and five Requests for Production on each Plaintiff. (*See id.* at ¶ 11.) They also served three Requests for Production and twelve Interrogatories on Defendant AIA. (*See id.* at ¶ 12.)

On November 29, 2023, Intervenor-Defendants served their Responses and Objections to Plaintiffs' discovery requests, in which they raised legislative and deliberative process privilege objections and withheld documents pursuant to those asserted privileges. (*See* Exs. 3–5.)

On January 2, 2024, Plaintiffs sent Intervenor-Defendants a letter setting out the various deficiencies in Intervenor-Defendants' discovery responses, particularly the improper invocation of the legislative and deliberative process privileges. (*See* Ex. 6.) On January 19, 2024, Intervenor-Defendants responded, withdrawing their privilege claims for most documents in the privilege log because counsel discovered that those documents were publicly available on the websites for the Arizona Legislature and the Center for Arizona Policy. (*See* Ex. 7.) Intervenor-Defendants did not withdraw their privilege claims for Documents Nos. 3, 6, 14, 15, and 18. (*See id.*)

On February 9, 2024, Plaintiffs replied to Intervenor-Defendants, reasserting the deficiencies in Intervenor-Defendants' discovery but stating a willingness to revise the relevant discovery period to August 19, 2019 to the present. (*See* Ex. 8.) Following a meet and confer on February 16, 2024, Intervenor-Defendants confirmed that they were not withholding any responsive documents or information in their responses to Interrogatories Nos. 2, 3, 4, and 5 and agreed to produce responsive documents from August 19, 2019 to the present, although those documents have not yet been produced. (*See* Berg Decl. at ¶ 13.) Intervenor-Defendants continue to assert the legislative and

---

[1] Citations to "Ex.___" refer to the exhibits attached to the accompanying Declaration of Rachel H. Berg ("Berg Decl.").

3

deliberative process privileges over the remaining documents, and have further objected to Rule 30(b)(1) depositions on the same grounds. (*See* Ex. 9; Berg Decl. at ¶ 13.)

## LEGAL STANDARD

### I. Legislative Privilege

The legislative privilege is a qualified privilege that shields legislators from evidentiary inquiries into acts that occur during the legislative process. *Mi Familia Vota v. Hobbs*, 2023 WL 4595824, at *4 (D. Ariz. July 18, 2023) ("*Hobbs*"). It "is a personal [privilege] and may be waived or asserted by each individual legislator." *Marylanders for Fair Representation, Inc. v. Schaefer,* 144 F.R.D. 292, 298 (D. Md. 1992). Waiver need not be explicit; it may occur, for example, "when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders," *Favors v. Cuomo*, 285 F.R.D. 187, 211–12 (E.D.N.Y. 2012), or "implicitly through [a party's] litigation conduct in a civil case," *Singleton v. Merrill*, 576 F. Supp. 3d 931, 939–40 (N.D. Ala. 2021). "To determine whether the legislative privilege precludes disclosure, a court must balance the interests of the party seeking the evidence against the interests of the individual claiming the privilege." *Hobbs*, 2023 WL 4595824, at *9 (citation and quotation marks omitted). Courts consider the following factors to determine if the privilege is overcome: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the purposes of the privilege." *Puente Ariz. v. Arpaio*, 314 F.R.D. 664, 672 (D. Ariz. 2016).

### II. Deliberative Process Privilege

The deliberative process privilege is an executive privilege "[t]he ultimate purpose of [which] is to protect the quality of agency decisions." *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *see also Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *15 (C.D. Cal. Oct. 10, 2003) ("[T]he deliberative process privilege protects decisionmaking processes of the *executive* branch in order to safeguard the quality and integrity of governmental decisions." (emphasis in original) (citation and

quotation marks omitted)). The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Toomey v. Arizona*, 2022 WL 1452747, at *4 (D. Ariz. May 9, 2022) (quoting *Warner*, 742 F.2d at 1161). The deliberative process privilege applies only when the relevant document is both "predecisional—it must have been generated before the adoption of an agency's policy or decision" and "deliberative in nature, containing opinions, recommendations or advice about agency policy." *Ariz. Rehabilitation Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 268 (D. Ariz. 1998). Like the legislative privilege, the deliberative process privilege is qualified. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner*, 742 F.2d at 1161. "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*. "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988).

## ARGUMENT

Intervenor-Defendants assert the legislative privilege and deliberative process privilege in their privilege log and as grounds for objecting to depositions.[2] Neither privilege is properly asserted.

### I. Intervenor-Defendants Have Waived Legislative Privilege.

Intervenor-Defendants have waived the legislative privilege by voluntarily injecting themselves into this lawsuit to assert a "unique interest in defending the

---

[2] At the meet-and-confer, Intervenor-Defendants agreed to produce documents from August 19, 2019 to the present. (Berg Decl. at ¶ 13.) Although Plaintiffs have not yet received an updated production, they anticipate that Intervenor-Defendants will assert similar legislative and deliberative process privilege objections in that production.

constitutionality" of the Ban. (Dkt. 19 at 1.) Intervenor-Defendants cannot have it both ways; they cannot seek the Court's permission to intervene to protect their asserted interests and vigorously defend those interests while simultaneously evading their discovery obligations related to the same. (*See id.* at 3 ("President Petersen was a co-sponsor of S.B. 1165, and personally advocated and voted for the Save Women's Sports Act. Speaker Toma also personally advocated and voted for S.B. 1165, and seeks to defend the law challenged in this action.").) Courts across the country, including in this District, have found that an intervening legislative party waives the legislative privilege when it chooses to intervene to defend a law that it has passed. *See, e.g.*, *Mi Familia Vota v. Fontes* ("*Mi Familia Vota*"), 2023 WL 8183557, at *2–3 (D. Ariz. Sept. 14, 2023), *stay denied sub nom. Toma v. U.S. Dist. Ct. for Dist. of Ariz.*, 144 S. Ct. 443 (2023) (finding that intervening state legislators waived the legislative privilege "by intervening to 'fully defend' the Voting Laws and putting their motives at issue"); *Powell v. Ridge*, 247 F.3d 520, 522–23 (3d Cir. 2001) (rejecting state legislators' claim of legislative privilege, which would have "enable[d] them to seek discovery, but not respond to it; take depositions, but not be deposed; and testify at trial, but not be cross-examined"); *Singleton*, 576 F. Supp. 3d at 940 (finding that intervening state legislators waived the legislative privilege when they improperly sought "to use their unique position as [the bill's] principal drafters as a sword to defend the law on its merits, but intermittently [sought] to retreat behind the shield of legislative privilege when it suit[ed] them").

*Mi Familia Vota* is squarely on point. There, a court in this District rejected the same claim to legislative privilege made by the same Intervenor-Defendants (Speaker Toma and President Peterson), finding that because they intervened "to fully defend the [at-issue voting law]" and "put[] their motives at issue" when denying allegations of discriminatory intent, they waived the legislative privilege.³ *Mi Familia Vota*,

---

³ The United States Supreme Court and the Ninth Circuit both confirmed this ruling. The Ninth Circuit first granted then lifted Intervenor-Defendants' stay application, *In re Toma*, 2023 WL 8183568 (9th Cir. Nov. 16, 2023), and the Supreme Court

6

2023 WL 8183557, at *2. The court found that Intervenor-Defendants could not "actively participate in this litigation yet avoid the burden of discovery regarding their legislative activities" and ordered them to produce documents and to sit for depositions. *Id.* at *2–3 (internal quotations omitted).

This Court should reach the same result. As in *Mi Familia Vota*, Intervenor-Defendants moved to intervene here citing their "unique interest in defending the constitutionality of laws duly enacted by the Arizona legislature." (Dkt. 19 at 1; *see Mi Familia Vota*, Dkt. 348 at 2.) And as in *Mi Familia Vota*, the "heart" of this case is determining the Ban's constitutionality, which may involve a determination of what the legislators' motives were in passing the Ban. 2023 WL 8183557, at *2. In order to determine whether the Ban can survive heightened scrutiny, Intervenor-Defendants must demonstrate an "exceedingly persuasive justification" that the Ban serves important governmental objectives and that it is substantially related to those objectives. *U.S. v. Virginia*, 518 U.S. 515, 531–33 (1996) (citations and quotation marks omitted). The justification must be "genuine" and cannot be "hypothesized or invented *post hoc* in response to litigation." *Id.* at 533. And even if—as Intervenor-Defendants improperly contend—rational basis review applies, the Court would still need to consider the intent of the Ban because the "bare . . . desire to harm a politically unpopular group cannot constitute a legitimate government interest." *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). As the *Mi Familia Vota* court found, "[m]otive is often most easily discovered by examining the unguarded acts and statements of those who would

---

ultimately denied Intervenor-Defendants' emergency stay application, ensuring that the district court's finding remained intact. *See Toma v. U.S. Dist. Ct. for Dist. of Ariz.*, 144 S. Ct. 443 (2023). In a separate opinion denying Intervenor-Defendants' petition for the issuance of a writ of mandamus, the Ninth Circuit stated that "[t]he district court did not clearly err in determining that Petitioners waived their legislative privilege by voluntarily intervening and putting their intent at issue by denying Plaintiffs' allegations." *In re Toma*, 2023 WL 8167206, at *1 (9th Cir. Nov. 24, 2023).

otherwise attempt to conceal evidence of discriminatory intent"—in this case, Intervenor-Defendants. 2023 WL 8183557, at *2 (citation and quotation marks omitted).[4]

Intervenor-Defendants' arguments in their correspondence to Plaintiffs fail. *First*, contrary to Intervenor-Defendants' assertions, their actions in this litigation do not "differ materially" from those they took in *Mi Familia Vota*. (Ex. 7 at 13.) Intervenor-Defendants' strategic decisions relating to whether to answer the complaint or file a motion to dismiss or whether to testify are not relevant to the waiver analysis, and Intervenor-Defendants have not offered any authority to the contrary. *Second*, Intervenor-Defendants argue that they have a "heightened" interest here because, unlike in *Mi Familia Vota*, the Arizona Attorney General determined that she was disqualified from defending the Ban. (*Id.* at 12.) But Intervenor-Defendants' interest in intervening—"heightened" or not—is similarly irrelevant to whether that intervention functioned as a waiver of privilege.[5] *Third*, Intervenor-Defendants wrongly state that *Mi Familia Vota* identified "avoiding the distraction of litigation" as the "only" purpose for the legislative privilege. (*Id.*) Not so. Instead, *Mi Familia Vota* also considered the legislative privilege's purpose of "allow[ing] duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box." 2023 WL 8183557, at *3. *Fourth*, granting Plaintiffs' motion would not require Intervenor-Defendants to waive the privilege of other legislators. Only "communications *sent or received* by either the Speaker or the President" fall within the scope of Intervenor-Defendants' legislative privilege, which they waived upon intervention. *Id.* at *3 (emphasis added).

---

[4] Nor, as the *Mi Familia Vota* court correctly found, does the statutory authority to intervene under A.R.S. § 12-1841(A) change this result. 2023 WL 8183557, at *2 ("This argument would allow the Arizona Legislature to exercise its self-created right to intervene yet shield its leaders from ever waiving the legislative privilege.").

[5] Intervenor-Defendants' other arguments for a heightened standard of waiver, which analogize to inapt cases concerning criminal prosecution, are also unconvincing. (Ex. 7 at 12.) Intervenor-Defendants point to no cases, and Plaintiffs know of none, where a heightened standard of waiver is applied to the legislative privilege of voluntary intervenors like Intervenor-Defendants.

8

Accordingly, the Court should find that Intervenor-Defendants waived the legislative privilege by voluntarily intervening in this litigation to defend the Ban.

## II. Even If Intervenor-Defendants Had Not Waived Legislative Privilege, It Would Be Easily Overcome.

Even if the legislative privilege were not waived, all five factors that courts assess to determine whether the privilege has been overcome warrant disclosure.

*First*, the evidence sought is highly relevant to Plaintiffs' claims that the Ban is discriminatory and violates the Constitution and multiple federal statutes. *See Sol v. Whiting*, 2013 WL 12098752, at *3 (D. Ariz. Dec. 11, 2013) (ordering the production of communications between legislators and third-party advisors that the court determined were "likely to contain admissible evidence or lead to the discovery of admissible evidence of those legislators' intent in drafting and supporting [the legislation] as contemporary statements by members of the decisionmaking body" (citation and internal quotation marks removed)). The subjects of the emails over which Intervenor-Defendants assert the legislative privilege include "Re: SB 1165," "Womens Sports Talking pts," and "Save Women's Sports Act 2022 Talking Points." (Ex. 5, Doc. Nos. 14, 15, and 18.) A request for these documents is reasonably calculated to uncover "[w]hat motivated the Arizona legislature to act" and pass the Ban, which "is at the heart of this litigation." *Hobbs,* 2023 WL 4595824, at *10; *see also Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1070–71 (D. Ariz. 2014), *aff'd*, 578 U.S. 253 (2016) ("Because what motivated the Commission to deviate from equal district populations is at the heart of this litigation, evidence bearing on what justifies these deviations is highly relevant."). The same is true of Plaintiffs' anticipated questioning at Intervenor-Defendants' depositions.

*Second*, no other evidence is available as there is no substitute for direct legislative evidence in demonstrating legislative intent. If the legislators "were motivated by an impermissible purpose, [they] would likely have kept out of the public record evidence making that purpose apparent." *Harris*, 993 F. Supp. 2d at 1070–71.

9

*Third,* there can be no dispute over the seriousness of the issues in this litigation, which involves the protection of Plaintiffs' constitutional rights and the right to be free from discrimination under federal law. "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class." *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (quotation marks and citation omitted). As this Court and the Ninth Circuit have already concluded, discrimination based on transgender status is discrimination based on sex and impermissible under the Constitution and Title IX. *Hecox v. Little*, 79 F.4th 1009, 1026–27 (9th Cir. 2023) (Constitution); *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (Title IX); (Dkt. 127, Order on Motion for Preliminary Injunction, at 25–32.) The importance of the litigation and the rights at issue cannot be overstated. *See Favors*, 285 F.R.D. at 219 (finding third factor favored disclosure and observing that the factor is "intended to give due consideration to some of the most invidious forms of government malfeasance").

*Fourth,* Intervenor-Defendants are government actors who have a direct role in this litigation, and the intent of these government actors is at the heart of this action, favoring disclosure. Plaintiffs raise "serious charges about the fairness and impartiality of some of the central institutions of [Arizona's] state government." *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 102 (S.D.N.Y. 2003) (finding legislative privilege "should be accorded only limited deference" in redistricting case). And Intervenor-Defendants' involvement in the litigation is hardly a collateral matter; they voluntarily intervened to defend the Ban on the facts. Because Intervenor-Defendants voluntarily intervened, disclosure does not constitute an unwarranted intrusion into the legislative process. The government's "subjective decision-making process remains at the core of [] [P]laintiffs' claims . . . [and] the legislature's direct role in the litigation supports overcoming the privilege." *Favors,* 285 F.R.D. at 220 (finding fourth factor supported disclosure).

*Fifth,* the legislative privilege theoretically serves important purposes including encouraging "the fullest liberty of speech" in legislative debate. *Lee v. City of Los*

*Angeles,* 908 F.3d 1175, 1186 (9th Cir. 2018) (citation and quotation marks omitted). However, Intervenor-Defendants cannot hide behind those purposes when they have put their communications and documents directly at issue through their voluntary intervention and affirmative participation in this case.

Therefore, all factors favor disclosure.

### III.     The Deliberative Process Privilege Is Inapplicable.

Intervenor-Defendants also assert the deliberative process privilege in their discovery responses, but that privilege is inapplicable here for the following reasons.

*First*, the government's intent is central to Plaintiffs' case. Several courts have held that the deliberative process privilege does not apply in actions where the government's decision-making or intent are central to the plaintiff's case. *See, e.g.*, *In re Subpoena Duces Tecum*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), *on rehearing* 156 F.3d 1279 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed to the government's intent . . . it makes no sense to permit the government to use the [deliberative process] privilege as a shield."); *Stone v. Trump*, 335 F. Supp. 3d 749, 755 (D. Md. 2018), *vacated in part on other grounds* 402 F. Supp. 3d 153 (D. Md. 2019) (explaining that the privilege does not protect documents "likely to contain evidence reflecting Defendants' intent" where that intent "is at the very heart of th[e] litigation").

The centrality of the government's intent to Plaintiffs' case bars the deliberative process privilege's application and, thus, obviates the need to proceed to the balancing analysis. *U.S. v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005) ("[T]he deliberative process privilege is vitiated entirely at step one when the government's decisionmaking process is central to the plaintiff's case."); *Scott v. Bd. of Educ.*, 219 F.R.D. 333, 337 (D.N.J. 2004) ("[I]n a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws." (citation and quotation marks omitted)). Because Intervenor-Defendants' "intent to discriminate is at issue," "the deliberative

process privilege simply does not apply" and no further analysis is needed. *Lake Cnty.*, 233 F.R.D. at 526.

*Second*, the deliberative process privilege is widely understood as an executive privilege and, thus, does not extend to Intervenor-Defendants, legislators who intervened "on behalf of their respective legislative Houses" to defend their "unique *legislative* interests." (Dkt. 19 at 3, 11); *see e.g.*, *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 921 (9th Cir. 1992) ("The underlying purpose of the deliberative process privilege is to ensure that *agencies* are not forced to 'operate in a fishbowl.'" (emphasis added)); *EEOC v. Swissport Fueling, Inc.*, 2012 WL 1648416, at *15 (D. Ariz. May 10, 2012) (noting that deliberative process privilege "must be raised by a formal claim made by the head of the agency after she has personally considered the material in question prior to the invocation of the privilege").

*Third*, Intervenor-Defendants have not made the required showing that the relevant documents are both pre-decisional and deliberative. Simply stating that a document was "part of the decision-making process and contributed to the legislative action" (Ex. 5, Doc. No. 15) is insufficient to demonstrate that it contains anything deliberative at all warranting protection. *See U.S. v. ex rel. Poehling v. UnitedHealth Grp., Inc.*, 2018 WL 8459926, at *10 (C.D. Cal. Dec. 14, 2018) ("it is widely accepted that the privilege protects opinions and deliberations, but generally not 'facts and evidence'") (citing *Warner*, 742 F.2d at 1161); *see also Tohono O'odham Nation v. Ducey*, 2016 WL 3402391, at *7, n.3 (D. Ariz. June 21, 2016) (finding that the deliberative process privilege did not apply because "[n]owhere does the Nation show that the documents and testimony at issue are protected by the deliberative process privilege").

### IV. The Deliberative Process Privilege Is Easily Overcome.

Even if the deliberative process privilege applies (it does not), it is overcome for substantially the same reasons the legislative privilege is overcome.[6] Given that "the

---

[6] As discussed above, to assess whether the deliberative process privilege is overcome, courts weigh: "1) the relevance of the evidence; 2) the availability of

common-law deliberative process privilege [is] weaker than, and thus more readily outweighed than" the legislative privilege, the deliberative process privilege is easily overridden by the same considerations articulated above. *Kay*, 2003 WL 25294710, at *18 (emphasis omitted); *see also Toomey*, 2022 WL 1452747, at *5 (finding the factors favored disclosure in case concerning documents about surgery to treat gender dysphoria); *Ariz. Dream Act. Coal. v. Brewer*, 2014 WL 171923, at *3 (D. Ariz. Jan. 15, 2014) (emphasizing Arizona's "policy in favor of full and open disclosure" of government action in finding that the deliberative process privilege did not shield documents concerning the state's policy to deny driver's licenses based on immigration status); *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1125 (N.D. Cal. 2003) (analyzing deliberative process privilege asserted by local legislators, finding it overcome, and permitting the plaintiff to "question the City Council members about the decisionmaking process with respect to [the relevant condition], including the motive and intent behind approval of the condition" where government misconduct was central to the plaintiff's Equal Protection claim).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel Intervenor-Defendants to produce documents and information, both those five documents in the privilege log and any further documents, improperly withheld on the basis of the legislative and deliberative process privileges; to revise their privilege log accordingly; and to sit for depositions.

---

other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner*, 742 F.2d at 1161. These factors overlap with those considered in the legislative privilege analysis.

13

Respectfully submitted this March 1, 2024.

*/s/ Colin M. Proksel*
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.*