Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050
Email:       cproksel@omlaw.com
*Attorney for Plaintiffs*
*Additional counsel listed in signature block*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>            Plaintiffs,<br><br>   v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>            Defendants,<br><br>Warren Petersen, in his official capacity as President of the Arizona State Senate, and Ben Toma, in his official capacity as Speaker of the Arizona House of Representatives,<br><br>            Intervenor-Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER** |

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs Jane Doe and Megan Roe move for a protective order preventing Intervenor-Defendants President Warren Petersen and Speaker Ben Toma from noticing depositions of Jane and Megan or, in the alternative, setting reasonable limits on any depositions noticed.

Intervenor-Defendants have requested the depositions of Jane Doe, Helen Doe, Megan Roe, and Kate Roe only if the Court compels Intervenor-Defendants to sit for depositions. Accordingly, this Motion will ripen if the Court grants Plaintiffs' previously-filed Motion to Compel. (*See* Dkt. 191.)

Deposing Jane and Megan, who are twelve and sixteen years old respectively, is unduly burdensome and not proportional to the needs of this litigation. Sitting for a deposition will likely be emotionally harmful to Jane and Megan because they will inevitably involve highly confidential, sensitive, and private topics. Jane's and Megan's testimony will also be redundant of their mothers' testimony and other discovery responses and documents provided in this litigation. To prevent harm and undue burden, Plaintiffs respectfully seek a protective order.

**BACKGROUND**

**I.      Plaintiffs Jane Doe and Megan Roe.**

Plaintiffs Jane Doe and Megan Roe are transgender children who seek to play on girls' sports teams with their friends. Megan and Jane are young girls—Megan is sixteen years old and Jane is just twelve. Because of their status as minors, they are proceeding in this case through their parents. Though both are fortunate to have family and friends who support them, Megan and Jane daily face social stigma and state-imposed discrimination simply for being themselves. Living openly as the girls that they are, including playing on girls' sports teams and receiving essential medical care, has required them to navigate many legal, administrative, and medical hurdles. The intimate details of Plaintiffs' medical treatment related to their gender identity and gender dysphoria are highly confidential, sensitive, and personal.

## II. Depositions of Jane Doe and Megan Roe.

Intervenor-Defendants expressed their intent to depose Jane and Megan on February 8, 2024 as a response to Plaintiffs notifying Intervenor-Defendants that they would be deposed. (Ex. A at 4–5.)[1] Specifically, after Plaintiffs explained that they would serve deposition notices on Intervenor-Defendants, Intervenor-Defendants responded that, "to preserve their interests in the event" they were required to sit for depositions, they "conditionally request[ed] depositions of Jane Doe, Helen Doe, Megan Roe, and Kate Roe." (*Id*.) Plaintiffs objected to this request as to Jane and Megan, noting that deposing Jane and Megan would be unduly burdensome and unnecessary. (*Id.* at 2–3.) In response, Intervenor-Defendants argued that depositions of Megan and Jane would be appropriate because the two girls "fil[ed] a complaint," "signed declarations in support of their preliminary injunction motions," and identified themselves in their initial disclosures. (*Id.* at 1.)

At a meet and confer on February 16, 2024, Plaintiffs informed Intervenor-Defendants that they would seek a protective order to prevent any depositions of Jane and Megan, but that they would not seek a protective order regarding the depositions of Helen Doe and Kate Roe (Jane's and Megan's mothers). (Berg Decl. ¶¶ 3–4.) In the event the Court denies Plaintiffs' motion for a protective order, Plaintiffs also asked all Defendants to agree to certain limitations to minimize the potential harm of such a deposition on Jane and Megan. (Ex. B at 7–8.) Following an email exchange and a second meet and confer on February 29, 2024, Intervenor-Defendants agreed to some but not all of the proposed limitations;[2] Defendant Arizona Interscholastic Association, Inc. (the "AIA") also

---

[1] Citations to "Ex.___" refer to the exhibits attached to the accompanying Declaration of Rachel H. Berg ("Berg Decl.").

[2] All Parties have already agreed to the following limitations: (1) Intervenor-Defendants/Defendants agree to refer to the minor Plaintiffs using their pseudonyms in this case and to not use any pronouns; (2) Intervenor-Defendants/Defendants agree to not use minor Plaintiffs' birth names; (3) Intervenor-Defendants/Defendants agree to redact minor Plaintiffs' birth names on any documents used in their depositions; (4) In the room for the depositions of the minor Plaintiffs, Intervenor-Defendants/Defendants agree that there will not be more than one attorney per Party in the room; (5) In the room for the depositions of the minor Plaintiffs, Intervenor-Defendants/Defendants agree that the minor Plaintiffs can be accompanied by one of their parents; (6) Intervenor-

objected to one of the limitations, though it currently does not intend to notice any deposition of Jane and Megan. (Berg Decl. ¶¶ 6–11; Ex. C. at 1.)[3] All other Defendants have agreed to all of the proposed limitations. (Berg Decl. ¶¶ 6–10; Ex. C. at 2.)

## ARGUMENT

### I. Good Cause Exists to Issue a Protective Order to Prevent the Depositions of Jane Doe and Megan Roe.

Under Federal Rule of Civil Procedure 26(c)(1), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process, including an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." This provision "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368–69 (9th Cir. 1982). To demonstrate good cause, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

Plaintiffs have met that burden here. Megan and Jane are young transgender girls—Megan is sixteen years old and Jane is just twelve. Though both are fortunate to have family and friends who support them, Megan and Jane daily face social stigma and

---

Defendants/Defendants agree to not ask any questions regarding the minor Plaintiffs' genitalia or that focus on their bodies; (7) Intervenor-Defendants/Defendants agree there will not be questions that attempt to probe whether serious issues of trauma have occurred in the minor Plaintiffs' lives; (8) Intervenor-Defendants/Defendants agree to not ask questions that attack or undermine the minor Plaintiffs' parents or family members; and (9) Intervenor-Defendants/Defendants agree that they will not reference the minor Plaintiffs as a "male" or "boy." (Berg Decl. ¶ 8.)

[3] As discussed in greater detail below, Intervenor-Defendants objected to the following limitations: (1) Intervenor-Defendants/Defendants agree there will not be questioning concerning either the legitimacy or appropriateness of the minor Plaintiffs' medical and/or mental health treatment; (2) Intervenor-Defendants/Defendants agree there will not be references to the minor Plaintiffs' medical records and letters from mental health providers or questions about the contents of those records/letters; and (3) Intervenor-Defendants/Defendants agree that they will not ask questions referencing sexual abuse, assault, or misconduct. The AIA objected to the second of these limitations. (*See* Berg Decl. ¶¶ 9–10.)

1  state-imposed discrimination simply for being themselves. Living openly as the girls that
2  they are, including playing on girls' sports teams and receiving essential medical care,
3  has required them to navigate many legal, administrative, and medical issues. In addition
4  to other topics, Intervenor-Defendants plan to ask Megan and Jane questions about their
5  gender dysphoria and related medical treatment, including the legitimacy and
6  appropriateness of such treatment. (Berg Decl. ¶ 9; *see also* Ex. B at 4.) They also plan
7  to ask them questions about the impact of gender dysphoria on their lives, which would
8  necessarily include their mental health history. (Berg Decl. ¶ 9; *see also* Ex. B at 4.)
9  This is a substantial burden to place on any two young girls, and particularly two girls
10 who are transgender. For this reason alone, the Court should exercise its power under
11 Rule 26(c) to issue an order protecting them from "embarrassment, oppression, or undue
12 burden." *Cf. Najera-Aguirre v. Riverside*, No. 18-CV-762, 2019 WL 3249613, at *4
13 (C.D. Cal. Apr. 16, 2019) (noting the "burden and potential trauma to the minor plaintiffs
14 that would be caused by their depositions" and denying the defendants' request to take
15 their depositions).

16    A protective order is also warranted because Intervenor-Defendants have
17 alternative, less intrusive ways to obtain any relevant information through depositions of
18 Jane's and Megan's mothers, Helen Doe and Kate Roe. Helen and Kate are well-
19 positioned to answer any questions Intervenor-Defendants may direct toward Megan and
20 Jane. For example, both Helen and Kate can provide information about their daughters'
21 gender identity, gender dysphoria, social transition, medical transition, medical records,
22 mental health history, involvement in school sports, the impact that playing on girls'
23 sports teams has had on their daughters' lives, and their daughters' inability to play on
24 boys' sports teams. Intervenor-Defendants have failed to identify a single topic that they
25 would ask Jane and Megan that could not be answered by Helen and Kate instead. Thus,
26 while Jane and Megan would suffer significant harm from being deposed, Intervenor-
27 Defendants will not be prejudiced by not deposing them.[4] *Cf. Najera-Aguierre*,
28

---

[4] The lack of prejudice is further confirmed by the fact that Intervenor-Defendants do not even seek to depose Plaintiffs unless the Court grants Plaintiffs' motion to

4

2019 WL 3249613, at *4 ("Defendants also fail to explain what additional information the minor plaintiffs could provide in their depositions that their mother and guardian ad litem, Lucia Salgado, or their step-sister, Saira Armenta, could not have provided in their depositions already taken.").

While the reasons not to depose Megan and Jane are significant, Intervenor-Defendants' explanations of why the depositions are necessary are comparably feeble. Intervenor-Defendants have pointed to the fact that Megan and Jane "fil[ed] a complaint," "signed declarations in support of their preliminary injunction motions," and identified themselves in their initial disclosures. (Ex. A at 1.)  But Megan's and Jane's filing of this lawsuit to protect their legal rights, as well as their compliance with federal discovery rules, does not automatically entitle Intervenor-Defendants to depose them. Where good cause is shown to protect "a[ny] party or person," including plaintiffs, from unnecessary, burdensome, or embarrassing forms of discovery, the Federal Rules of Civil Procedure empower courts to prevent that discovery.   Fed. R Civ. P. 26(c)(1). Accordingly, Plaintiffs have met their burden of showing good cause, and the Court should enter a protective order preventing the depositions of Megan and Jane.

**II.      If the Court Declines to Issue a Protective Order, Any Deposition of Jane Doe and Megan Roe Should Be Subject to Reasonable Limitations.**

The Court should prevent the depositions of both Jane and Megan entirely.  In the alternative, if the Court does not prevent the depositions (or prevents the deposition as to the younger Plaintiff (Jane) but not the older Plaintiff (Megan)), Plaintiffs request that Intervenor-Defendants (as well as any other Defendant that notices a deposition of Megan and/or Jane or participates in such depositions) be subject to reasonable limitations. Specifically, Plaintiffs request that the Court order that:

---

compel the depositions of Intervenor-Defendants.  If Jane and Megan truly had information that was necessary to Intervenor-Defendants' defenses, they would not have made their request "conditional." (*See* Ex. A at 4–5.)

5

1. **Intervenor-Defendants/Defendants cannot pursue questioning concerning either the legitimacy or the appropriateness of the minor Plaintiffs' medical and/or mental health treatment.** As the Court already ruled in its decision granting Plaintiffs' Motion for a Preliminary Injunction, the "appropriateness of medical treatment for gender dysphoria is not at issue in this case." (Dkt. 127 at 17.) To the extent Intervenor-Defendants intend to question Plaintiffs about these topics, those questions should be limited to any depositions with Jane's and Megan's mothers. It would be highly inappropriate to question children about the necessity of their medical care, and those questions could also unnecessarily interfere with Jane's and Megan's relationships with their medical providers. This questioning could also involve highly personal and sensitive details regarding the children's mental health and medical history, including the intimate decisions they have made with their parents and doctors.

2. **Intervenor-Defendants/Defendants cannot refer to the minor Plaintiffs' medical records and letters from mental health providers or questions about the contents of those records/letters.** Again, this topic would be extremely harmful for Jane and Megan to discuss because it involves highly sensitive and invasive questions regarding their private medical and mental health histories. Jane and Megan should not be required to discuss such information with adverse parties. This is especially true given that (1) Plaintiffs have answered written discovery regarding their medical treatment; (2) Plaintiffs have produced entirely unredacted copies of their medical records and letters from mental health providers; and (3) Jane's and Megan's mothers can answer any questions related to these records and letters in their depositions.

3. **Intervenor-Defendants/Defendants cannot ask questions referencing sexual abuse, assault, or misconduct**. Plaintiffs included this request in an excess of caution based on their counsel's experience in another case involving depositions of transgender minors' parents. In that case, there were questions suggesting that trauma, such as sexual abuse or other misconduct, caused the plaintiffs' gender dysphoria—a theory with absolutely no basis in science or medicine. Intervenor-Defendants have

agreed to prohibit questions about any acts committed against Jane and Megan. They did not agree, however, to refrain from asking questions about unspecified actions by Jane and Megan. (Ex. B at 5.) When asked what this could mean, Intervenor-Defendants suggested there could be inappropriate actions the minor Plaintiffs may have engaged in, such as in locker rooms or other areas. (Berg Decl. ¶ 10.) There is no evidence or information that minor Plaintiffs have engaged in any improper conduct whatsoever. Moreover, these topics are irrelevant to the issues in this case. Accordingly, if the depositions of Jane and Megan are permitted, Plaintiffs request a protective order prohibiting all questioning related to sexual abuse, assault, or misconduct.[5]

Accordingly, if the depositions of Jane and Megan are permitted, a protective order limiting questioning on these three topics is exactly the sort of reasonable limitation the Court is authorized to issue under Rule 26(c)(1).

## **CONCLUSION**

Because Plaintiffs have shown good cause that deposing Megan and Jane will be both substantially burdensome and unnecessary, Plaintiffs request that this Court issue an order of protection either preventing the depositions or, in the alternative, imposing the limitations articulated above.

Respectfully submitted this 8th day of March, 2024.

/s/ Colin M. Proksel
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

---

[5] These limitations are in addition to those Intervenor-Defendants and Defendants have already agreed to during the Parties' previous exchanges. *See supra* pp. 2–3 n.2.

7

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.