D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (314) 562-0031
John.Sauer@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Toma*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*,<br><br>Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**Intervenor-Defendants President Petersen's and Speaker Toma's Opposition to Plaintiffs' Motion to Compel Discovery**<br><br>**Oral Argument Requested** |

Plaintiffs seek to pierce an indispensable privilege and subject high-ranking government officials to intrusive depositions in search of irrelevant legislative motives. But defending institutional interests does not come at the high price of other institutional interests. Plaintiffs also have failed to demonstrate the "extraordinary circumstances" necessary to obtain the discovery they seek. At the same time, Plaintiffs seek to prevent their own depositions and exploration of claims they put at issue. The Court should deny Plaintiffs' motion to compel, which then moots Plaintiffs' motion for a protective order.

**FACTUAL BACKGROUND**

President Warren Petersen and Speaker Ben Toma are the elected leaders of Arizona's legislative branch.  After the Arizona Attorney General declined to defend the law challenged by Plaintiffs, Doc. 19-1, the Legislative Leaders sought intervention under the authority granted by chamber rules and state law to defend institutional interests and the constitutionality of a state law.  Doc. 19.  Plaintiffs opposed, arguing the Legislative Leaders' interests were adequately represented by Defendant Horne.  Doc. 35, 5.  Plaintiffs did not allege discriminatory motives or factual issues relating to the Legislature in their Complaint, Motion for Preliminary Injunction, or intervention briefing.  *See* Docs. 1, 3, 35.

The Legislative Leaders have diligently complied with their discovery obligations. The Legislative Leaders thoroughly answered every interrogatory and request for production propounded by Plaintiffs.  Doc. 191-2, Exs. 3, 4.  Plaintiffs' motion to compel does not raise any issues relating to the Legislative Leaders' interrogatory responses or written responses to the requests for production.  Plaintiffs have not used 16 of their interrogatories.  *Compare* Doc. 191-2, Ex. 3 *with* Fed. R. Civ. P. 33(a)(1).

The Legislative Leaders have produced more than 400 documents and 1,100 pages of records.  Declaration of Justin D. Smith ("Smith Decl."), ¶ 2.  The Legislative Leaders have withheld as privileged only five documents—totaling just 14 pages.  *Id.* at ¶ 7.

Plaintiffs have not taken any depositions in this case.  *Id.* at ¶ 14.  Plaintiffs informed all parties that they did not "plan to take any depositions of any fact witnesses from any of the Defendants in this litigation."  Doc. 191-2, Ex. 9.  At the same time, Plaintiffs demanded to depose President Petersen and Speaker Toma.  *Id.*  Exploring legislative motives underlying the challenged law appears to be Plaintiffs' only basis for these depositions. Doc. 191, at 9.

Shortly after requesting the depositions, Plaintiffs served the Legislative Leaders with requests for admission.  Smith Decl., ¶ 10.  Beyond these requests for admission, Plaintiffs "do not presently believe they need" any further written discovery from the Legislative Leaders.  Doc. 191-2, Ex. 9, at 2 (PDF p. 95).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.      The Legislative Privilege Applies.**

**A.      The legislative privilege protects legislative independence.**

The legislative privilege has been an indispensable part of legislative independence for more than 300 years.  "Since the Glorious Revolution in Britain, and throughout United States history, the [legislative] privilege has been recognized as an important protection of the independence and integrity of the legislature." *United States v. Johnson*, 383 U.S. 169, 178 (1966) (internal citations omitted).  James Wilson, a drafter of the Constitution and one of America's first Supreme Court justices, explained the privilege's importance: "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense." *Tenney v. Brandhove*, 341 U.S. 367, 373 (1951) (internal citation omitted).

Enshrining the legislative privilege in our Constitution is the Speech or Debate Clause, which the framers approved "without discussion and without opposition." *Johnson*, 383 U.S. at 177 (1966) (internal citations omitted)).  Almost all states, including Arizona, have adopted comparable privileges in their constitutions.  *Tenney*, 341 U.S. at 375 n.5 (citing state constitutions); ARIZ. CONST. art. IV, Pt. 2 § 7.  Courts have extended the legislative privilege to state legislators.  *Tenney*, 341 U.S. at 377.

The protections provided by the legislative privilege exist "to protect the integrity of the legislative process by insuring [*sic*] the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972).  The legislative privilege also maintains confidentiality within the legislature and protects the legislative process itself. *Mi Familia Vota v. Hobbs*, No. CV-21-01423, 2023 WL 4595824, at *5 (D. Ariz. July 18, 2023); *see also In re N. Dakota Legislative Assembly*, 70 F.4th 460, 464 (8th Cir. 2023) ("The privilege is not designed merely to protect the confidentiality of deliberations within a legislative body; it protects the functioning of the legislature more broadly.").

3

**B.      The legislative privilege prevents exploration of legislator motives.**

According to Plaintiffs, they seek the Legislative Leaders' depositions and privileged documents "to uncover '[w]hat motivated the Arizona legislature to act.'"  Doc. 191, at 9.  Well-settled precedent bars this effort, rendering this evidence both privileged and irrelevant, and thus impermissible under Rule 26(b)(1).

The Supreme Court has repeatedly ruled that courts may not inquire into legislative motives, including of state legislators.  The Court has been clear: "no inquiry may be made concerning the motives or wisdom of a state Legislature acting within its proper powers." *State of Arizona v. State of California*, 283 U.S. 423, 455 (1931) n.7 (citing cases).  The Court has prevented inquiries into legislative motives because they "are a hazardous matter." *United States v. O'Brien*, 391 U.S. 367, 383 (1968).

Inquiries into legislative motives are prohibited even when, like here, a party alleges discrimination violated the Equal Protection Clause.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *Tenney*, 341 U.S. at 788-89.  The Ninth Circuit has specifically rejected attempts in equal protection cases to depose legislators about their motives.  *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984).  As the *City of Las Vegas* decision noted, "[a]llowing discovery of legislative motives" would "create a major departure from the precedent rejecting the use of legislative motives . . . ." *City of Las Vegas*, 747 F.2d at 1298.  Plaintiffs argue that legislative motives are the "heart" of constitutional cases like this one, Doc. 191, at 7, but the Ninth Circuit already rejected such an exception to the legislative privilege: "Although Plaintiffs call for a categorical exception whenever a constitutional claim directly implicates the government's intent, that exception would render the privilege 'of little value.'" *Lee*, 908 F.3d at 1188 (internal citation omitted).[1]

Important policy justifications underlie these decisions.  The public is best served

---

[1] The *Mi Familia* decision, upon which Plaintiffs' argument hinges, did not address this binding precedent. *See Mi Familia Vota v. Fontes*, No. CV-22-00509, 2023 WL 8183557, at *2 (D. Ariz. Sept. 14, 2023).

4

by legislators who are not concerned about subsequent litigation and discovery. As the Court explained with respect to a comparable privilege, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705 (1974). Legislative privilege protects "the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney*, 341 U.S. at 377. Piercing the legislative privilege by compelling discovery will have a chilling effect on the legislative process and thus hurt the public. Moreover, ballot boxes, not courtrooms, are where legislative motives should be judged: "In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses." *Id.* at 378.

Finally, discovery from individual legislators does not provide information the court can use. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *O'Brien*, 391 U.S. at 384. Thus, "[e]ven when an argument about legislative motive is backed by statements made by legislators who voted for a law, [the Court has] been reluctant to attribute those motives to the legislative body as a whole." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253–54 (2022). Courts have characterized inquiries into legislative motives as "impracticable and futile." *City of Las Vegas*, 747 F.2d at 1297 (quoting *Soon Hing v. Crowley,* 113 U.S. 703, 710–11 (1885)). Accordingly, "the statements of a handful of lawmakers" are generally insufficient to show discriminatory intent because they "may not be probative of the intent of the legislature as a whole." *United States v. Carillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023).

Plaintiffs' only stated basis for the discovery from the Legislative Leaders is barred because legislative motivations are privileged and not relevant.

**C.    The legislative privilege has not been waived.**

1   Plaintiffs incorrectly assert that the Legislative Leaders waived their legislative

2   privilege by intervening in this case.  Doc. 191, at 5-9.  But acting to protect institutional

3   interests does not simultaneously waive protection of other institutional interests.

4   **1.      The Legislative Leaders intervened by state law and legislative rules**

5   **to protect institutional interests.**

6   The Arizona Constitution expressly provides that the Arizona Senate and House of

7   Representatives shall each "choose its own officers" and "determine its own rules of

8   procedure."  ARIZ. CONST. art. IV, Pt. 2 § 8.  Pursuant to this constitutional authority, the

9   Arizona Senate and House of Representatives have empowered their elected leaders to

10  defend institutional interests on behalf of their respective legislative chambers.  Ariz. State

11  Senate Rule 2(N); Ariz. House of Representatives Rule 4(K).  State law specifically

12  designates the Legislative Leaders with the authority to defend the constitutionality of a

13  state statute enacted by the Arizona Legislature.  ARIZ. REV. STAT. § 12-1841(A), (D).  So

14  important is the ability of the Legislative Leaders to be heard that, if a plaintiff fails to

15  timely serve them with notice of a lawsuit challenging a state statute's constitutionality,

16  "the court shall vacate any finding of unconstitutionality" and provide the Legislative

17  Leaders with a "reasonable opportunity to prepare and be heard."  *Id.* at § 12-1841(C).

18  When President Petersen and Speaker Toma moved to intervene, they did so to

19  exercise their authority under state law and legislative rules to defend the interest of the

20  Arizona Legislature in legislation being found constitutional.  *See Berger v. N.C. State*

21  *Conf. of the NAACP*, 597 U.S. 179, 191 (2022) ("States possess a legitimate interest in the

22  continued enforcement of their own statutes.") (cleaned up).  Unlike in the *Mi Familia* case

23  cited by Plaintiffs, Doc. 191, at 6, the Legislature's interest was heightened in this case

24  because the Arizona Attorney General determined that she was disqualified from defending

25  the statute at issue.  *See Berger*, 597 U.S. at 185.

26  Plaintiffs do not dispute that the Legislative Leaders have a "heightened" interest,

27  Doc. 191, at 8, but they argue the privilege remains waived.  Not so.  The Supreme Court

28  considers it "understandable" that a state may empower its legislative leaders to defend

1   legislation when "[m]ore than once a North Carolina attorney general has opposed laws

2   enacted by the General Assembly and declined to defend them fully in federal litigation."

3   *Id.*   The Supreme Court gave no indication that defending institutional interests,

4   particularly when the attorney general will not, risked waiving an indispensable privilege.[2]

5   *See id.*

6          President Petersen and Speaker Toma retain their legislative privilege when they

7   exercise an institutional interest provided by state law and chamber rules.

8                    **2.    Arizona law did not waive legislative privilege.**

9          Waiver of the legislative privilege must be explicit and unequivocal.  In the context

10  of legislative immunity in a criminal case, the Supreme Court has held that "waiver can be

11  found only after explicit and unequivocal renunciation of the protection.  The ordinary rules

12  for determining the appropriate standard of waiver do not apply in this setting."  *United*

13  *States v. Helstoski*, 442 U.S. 477, 491 (1979).  Because the legislative privilege exists to

14  protect confidentiality and the legislative process, "a waiver should not be lightly inferred."

15  *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997).  Plaintiffs dismiss these decisions

16  as "inapt cases concerning criminal prosecution," Doc. 191, at 8 n.5, but the legislative

17  privilege for state legislators is stronger in civil cases than in criminal cases.  *See United*

18  *States v. Gillock*, 445 U.S. 360, 372 (1980).  Waiver in civil cases thus should at least be

19  as strong as the heightened standard in criminal cases.

20          Plaintiffs make no claim that the legal authority for intervention waived the

21  privilege.  They could not.  The Arizona statute and legislative rules empowering the

22  Legislative Leaders to act do not expressly waive legislative privilege.  *See* Ariz. Rev.

23  Stat. § 12-1841; Ariz. State Senate Rule 2(N); Ariz. House of Representatives Rule 4(K).

24

25  [2] Plaintiffs contend that the Legislative Leaders did not need to intervene "when S.B. 1165 was already being vigorously defended by another government actor," Doc. 191-2, Ex. 9,

26  at 2 (PDF p. 95), but "a plaintiff who chooses to name this or that official defendant does not necessarily and always capture all relevant state interests."  *Berger*, 597 U.S. at 195.

27  Not allowing a State to decide which officials may defend state law "would risk allowing a private plaintiff to pick its preferred defendants and potentially silence those whom the

28  State deems essential to a fair understanding of its interests."  *Id.*

1    Exercising rights permitted by this legal authority should not waive legislative privilege.

2           **3.     The Legislative Leaders' conduct did not waive legislative privilege.**

3           Plaintiffs also do not claim that the Legislative Leaders' conduct in this litigation

4    waived the privilege.   When the Legislative Leaders moved to intervene, Plaintiffs'

5    Complaint and Motion for Preliminary Injunction did not allege discriminatory intent by

6    the Legislature. *See* Docs. 1, 3.  The Legislative Leaders have not filed an answer or made

7    any factual assertions. *Contra Mi Familia Vota v. Fontes*, No. CV-22-00509, 2023 WL

8    8183557, at *2 (D. Ariz. Sept. 14, 2023); *Singleton v. Merrill*, 576 F. Supp. 3d 931, 937

9    (N.D. Ala. 2021).   No party, including Plaintiffs, identified the Legislative Leaders as

10   witnesses in initial disclosures, Smith Decl., ¶ 13, and the Legislative Leaders will not

11   testify in this matter.  Doc. 191-2, Ex. 7, at 13 (PDF p. 81).  The Legislative Leaders have

12   not put themselves or factual matters at issue, and thus even under Plaintiffs' theory have

13   not waived the legislative privilege.  These are not irrelevant "strategic decisions," Doc.

14   191, at 8; they completely distinguish this case from *Mi Familia* and the principal case

15   upon which it relied. *See Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir. 2001).

16          Plaintiffs' entire waiver argument rests on the act of intervention.  But courts have

17   found that participating in litigation alone does not waive the legislative privilege. *See,*

18   *e.g.*, *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012) ("the Court nevertheless

19   rejects the notion that the defendants' participation in this lawsuit, standing alone,

20   automatically waives the legislative privilege in all respects").   That is consistent with

21   decisions in other litigation participation contexts, *see, e.g.*, *Zenith Radio Corp. v. United*

22   *States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985) ("A party does not automatically waive [the

23   attorney-client, work product, and executive] privileges, which protect the formulation of

24   legal opinions or litigation strategy, simply by bringing suit."), and the broader federalism

25   principle that counsels against lightly concluding a State waived a privilege it could

26   otherwise invoke, *cf. Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (noting waiver of

27   immunity "to other types of relief does not waive immunity to damages").

28          **4.     Other parties do not waive their privileges by intervening.**

8

1       Reinforcing the conclusion that waiver has not occurred is how courts treat

2   comparable privileges possessed by other government branches.  No court decision has

3   been found in which intervention by an executive branch actor—for example, the United

4   States Department of Justice, a state attorney general, a governor, or government agency—

5   waived the executive privilege or deliberative process privilege.  Instead, executive branch

6   officials can intervene without waiving privileges or immunities.  *See, e.g.*, *Faulk v. Union*

7   *Pac. R. Co.*, 449 F. App'x 357, 363 (5th Cir. 2011) ("If forcing the State to intervene could

8   compel a waiver of sovereign immunity, any plaintiff could 'essentially nullify the

9   Eleventh Amendment' by raising a state constitutional challenge in federal court.")

10  (internal citation omitted); *Union Elec. Co. v. Missouri Dep't of Conservation*, 366 F.3d

11  655, 660 (8th Cir. 2004) (the "effort to cast the Attorney General's application to intervene

12  in this case as a voluntary invocation of federal jurisdiction is fruitless"); *In re Uehling*,

13  No. 1:14-MC-00009, 2014 WL 1577459, at *5 (E.D. Cal. Apr. 17, 2014) (intervention by

14  government in *qui tam* action did not waive work product and attorney client privileges)

15  (citing cases).  Likewise, no court decision has been found in which intervention by a judge

16  waived judicial immunity.  Under separation of powers principles, privileges of the

17  legislative branch are entitled to the same respect.

18      The legislative branch also is entitled to at least as much protection as private

19  parties.  No court decision has been found in which intervention by a private party waived

20  the First Amendment privilege or other privileges.  To the contrary, private parties in both

21  civil and criminal matters may intervene to seek protective orders to prevent the disclosure

22  of privileged information.  *See, e.g.*, *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d

23  Cir. 1979); *Paskenta Band of Nomlaki Indians v. Crosby*, No. 215-CV-00538, 2020 WL

24  2745665, at *3 (E.D. Cal. May 27, 2020).  Indeed, Plaintiffs themselves believe that

25  becoming a party to litigation does not waive privileges, as they continue to assert

26  privileges like the psychotherapist-patient privilege.  Doc. 191-2, Ex. 8, at 3 (PDF. p. 88).

27          **5.       Plaintiffs' cases do not control and are not persuasive.**

28      Plaintiffs rely on three non-precedential cases to argue that the Legislative Leaders

1  waived their legislative privilege.  Doc. 191, at 6 (citing *Mi Familia*, *Powell*, *Singleton*).

2  In addition to not binding this court, none of the cases provide persuasive authority.  None

3  of the cases grappled with precedent prohibiting inquiry into legislative motives because it

4  is intrusive and not relevant.  All of the cases conflated the legislative immunity interest in

5  being free from the burdens of litigation with the litigation privilege interest in protecting

6  the legislative process.  And none of the cases considered the ability of other branches to

7  intervene without waiving applicable privileges.  Given the strong authority supporting the

8  Legislative Leaders, Plaintiffs' cases should be dismissed.

9           **6.      The Legislative Leaders cannot waive the legislative privilege for**

10                  **other legislators.**

11          It is well-established that no legislator can waive the legislative privilege held by a

12  fellow legislator or the chamber as a whole.  *See, e.g.*, *Puente Arizona v. Arpaio*, 314 F.R.D.

13  664, 671 (D. Ariz. 2016) ("The legislative privilege 'is a personal one and may be waived

14  or asserted by each individual legislator.'") (internal citation omitted).  Agreeing with

15  Judge Campbell's opinion, Judge Bolton found in the case relied upon by Plaintiffs that

16  "the Speaker or President could not waive the privilege for their fellow legislators."  *Mi*

17  *Familia Vota v. Fontes*, 2023 WL 8183557, at *3.  Thus, "[t]o the extent Plaintiffs seek

18  information held by other members of the Arizona Legislature, it remains protected by the

19  legislative privilege."  *Id.*

20          No document withheld by the Legislative Leaders was created or sent by President

21  Petersen or Speaker Toma.  Doc. 191-2, Ex. 7, at 13 (PDF p. 81).  Plaintiffs incorrectly

22  claim that communications received by the Legislative Leaders are within their legislative

23  privilege.  Doc. 191, at 8.  But legislators "may not testify to the legislative acts of

24  legislators who have invoked the privilege or to those of staffers or consultants who are

25  protected by the privilege."  *Cano v. Davis*, 193 F. Supp. 2d 1177, 1179–80 (C.D. Cal.

26  2002).  Indeed, the Second Circuit rejected using one legislator to discover statements he

27  heard from other legislators because the legislative privilege "cannot be waived by another

28  member."  *United States Football League v. National Football League,* 842 F.2d 1335,

1374–75 (2d Cir. 1988).  The "underlying purpose" of the legislative privilege would be "'ill-served' if such waivers were permitted."  *Id.* at 1375.  *Mi Familia*'s decision to grant discovery of communications legislators received from other legislators strayed beyond these principles.

Senators and representatives not participating in this litigation hold the legislative privilege over the documents at issue.  President Petersen and Speaker Toma cannot waive their privilege, by intervening or otherwise.

**D.      The legislative privilege has not been overcome.**

This Court should decline Plaintiffs' invitation to allow a balancing test to overcome the legislative privilege asserted by legislators concerning legislative acts.  Plaintiffs argue that five factors demonstrate the privilege is "easily overcome."  Doc. 191, at 9.  However, Plaintiffs cite no controlling precedent applying factors to "overcome" the legislative privilege.  *Id.* at 9-10.

Controlling precedent requires Plaintiffs to prove "extraordinary circumstances" to compel the Legislative Leaders to testify, and "even in these circumstances the testimony may be barred by privilege."  *City of Las Vegas v. Foley*, 747 F.2d at 1298 (citing *Vill. of Arlington Heights*, 429 U.S. at 268).  This is because for more than 200 years, the Supreme Court has recognized the "substantial intrusion" that judicial inquiry into legislative motivation represents.  *Vill. of Arlington Heights*, 429 U.S. at 268 n.18.  This precedent sets a far higher standard for overcoming the legislative privilege than Plaintiffs' five-factor balancing test.

Plaintiffs have not alleged extraordinary circumstances exist to compel depositions here, let alone proven it.  Even if they had, *Village of Arlington Heights* and *City of Las Vegas* question whether even that showing would pierce the privilege.  This case contains no extraordinary circumstances: it is an as applied challenge; Plaintiffs' Complaint alleged no legislative misconduct; and to date Plaintiffs' only alleged discrimination is one article citation in a statutory preamble and 30 words spoken by two senators during a committee hearing.  Doc. 65, at 6.  Plaintiffs cannot come close to satisfying the extraordinary standard

1    required to even consider whether to pierce the privilege.[3]

2         Besides failing to argue the applicable test, Plaintiffs do not cite a single case that

3    overcame legislative privilege asserted by legislators concerning legislative acts. *See id.*

4    None of Plaintiffs' smattering of district court cases applying Plaintiffs' five-factor test

5    involved legislators performing legislative acts. *See Harris v. Arizona Indep. Redistricting*

6    *Comm'n*, 993 F. Supp. 2d 1042, 1069 (D. Ariz. 2014) (legislative privilege not extended

7    to non-legislator redistricting commissioners); *Sol v. Whiting*, No. CV-10-01061, 2013 WL

8    12098752, at *3 (D. Ariz. Dec. 11, 2013) (legislative privilege not raised because movants

9    were non-profit organizations); *Favors v. Cuomo*, 285 F.R.D. 187, 213 (E.D.N.Y. 2012)

10   (legislative privilege is qualified in redistricting case); *Rodriguez v. Pataki*, 280 F. Supp.

11   2d 89, 100 (S.D.N.Y.) (same).  Notably, *Rodriguez* declined to apply the five-factor test

12   and denied a motion to compel for "information concerning the actual deliberations of the

13   Legislature—or individual legislators—which took place outside [the redistricting

14   advisory group], or after the proposed redistricting plan reached the floor of the Legislature,

15   . . ." *Rodriguez*, 280 F. Supp. 2d at 103.  As the Eleventh Circuit recently explained when

16   it rejected allowing a balancing test to overcome the legislative privilege, "absent the

17   Supreme Court's imprimatur, we are reluctant to adopt a manipulable balancing test, like

18   the one employed by the district court, that links the derogation of the legislative privilege

19   to a subjective judgment of the case's importance. . . .  None of our sister circuits have

20   subjected the privilege to such a test, and at least four of them have rejected this approach."

21   *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1345 (11th Cir. 2023) (citing

22   cases).

23   **II.    High-Ranking Government Officials Are Protected from Depositions.**

24        The *Morgan* doctrine provides independent grounds to deny Plaintiffs' deposition

25   _____
     [3] Because it would be inappropriate to apply Plaintiffs' balancing test here, the Legislative
26   Leaders do not need to argue, and the Court does not need to reach, Plaintiffs' five factors.
     In any event, the Legislative Leaders already contest all five factors: legislative motive
27   evidence is not relevant (§ I.B); Plaintiffs have not sought other available evidence (§ II.3);
     courts have denied discovery of legislative motivations in strict scrutiny cases (§ I.B); the
28   Legislative Leaders are high-ranking government officials (§ II); and piercing the
     legislative privilege could chill future legislative action (§ I.B).

1   requests.[4]   Under this doctrine, high-ranking government officials may not be deposed

2   unless "extraordinary circumstances" exist.  *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701

3   (9th Cir. 2022).  "Although district courts have occasionally ordered such depositions,

4   circuit courts have issued writs of mandamus to stop them when asked to, generally finding

5   that the circumstances before them were not extraordinary."  *Id.* (citing decisions by six

6   circuits); *see also In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1264 (10th Cir. 2022).

7   The doctrine applies whether the high-ranking official is a party or a non-party.  *See id.*

8           The *Morgan* doctrine applies to Plaintiffs' deposition requests of the Legislative

9   Leaders.  "Numerous courts have applied the *Morgan* framework to deposition subpoenas

10   targeted at legislative officials."  *League of United Latin Am. Citizens v. Abbott*, No. 21-

11   cv-00259, 2022 WL 2866673, at *2 (W.D. Tex. July 6, 2022) (citing cases).  After *Abbott*

12   required the United States to show exceptional circumstances to depose the Speaker of the

13   Texas House of Representatives, *id.* at *4, the United States dropped its deposition request.

14   *Abbott*, 21-cv-00259, Doc. 429 (W.D. Tex. July 19, 2022).   Courts have quashed

15   depositions under this doctrine without reaching the legislative privilege issue.  *See, e.g.*,

16   *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 n.16 (S.D.N.Y. 2014).

17           President Petersen and Speaker Toma are the elected leaders of the Arizona Senate

18   and Arizona House of Representatives, respectively.  It cannot be disputed that they are

19   high-ranking government officials.

20           To establish extraordinary circumstances to take a high-ranking government

21   official's deposition, the Ninth Circuit requires Plaintiffs to demonstrate "(1) a showing of

22   agency bad faith; (2) the information sought from the [high-ranking official] is essential to

23   the case; and (3) the information sought from the [high-ranking official] cannot be obtained

24   in any other way."  *In re U.S. Dep't of Educ.*, 25 F.4th at 702.  All three factors must be

25

26   [4] The *Morgan* doctrine "rest[s] on a constitutional foundation," and thus the Ninth Circuit
     views it as "distinct from the 'apex doctrine.'"  *In re U.S. Dep't of Educ.*, 25 F.4th 692,
27   700 n.1 (9th Cir. 2022).  For the same reasons as set forth in this section, the apex doctrine
     also bars Plaintiffs' deposition requests.  *See Topete v. City of Mesa*, No. CV-18-03127,
28   2020 WL 8872800, at *1 (D. Ariz. Apr. 29, 2020).  Neither *Mi Familia* nor the other cases
     relied on by Plaintiffs considered the applicability of the *Morgan* or apex doctrines.

1    satisfied. *Id.*  Plaintiffs have neither argued nor satisfied any factor.

2          1.      No Bad Faith.  Plaintiffs must make "a strong showing of bad faith or

3    improper behavior" before they can depose the Legislative Leaders.  *Id.* at 703 (quoting

4    *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  Plaintiffs also

5    have the burden to overcome the "strong 'presumption of good faith' on the part of

6    legislators." *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023) (quoting

7    *Miller v. Johnson*, 515 U.S. 900, 916 (1995)).  Plaintiffs' Complaint contained no

8    allegations of bad faith or improper behavior by the Arizona Legislature.  Doc. 1.  Despite

9    possessing the entire legislative record for the statute, including all public hearings and

10   legislative debate, and virtually all correspondence the Legislative Leaders sent or received

11   about the statute, Plaintiffs have criticized the Legislature for only two benign sentences

12   spoken in hearings and one article citation from the legislative findings.  This does not

13   overcome the strong presumption of good faith or make a strong showing of bad faith.

14         2.      Not essential to case.  "If the information is not absolutely needed for a case,"

15   the Ninth Circuit has ruled that a court "cannot allow a deposition to disrupt the normal

16   governmental balance of powers." *In re U.S. Dep't of Educ.*, 25 F.4th at 703.  It is not

17   enough to show that information is relevant; it must be necessary. *Id.*  Plaintiffs have made

18   no allegation that any information from the Legislative Leaders is essential to their case.

19   In granting a writ of mandamus to block the deposition of a high-ranking government

20   official, the Ninth Circuit heavily weighed the fact that the party seeking the deposition

21   believed it "likely could win relief on the existing record." *Id.* at 704.  Plaintiffs already

22   have obtained preliminary injunctive relief in this case.  Doc. 127.  Plaintiffs have not, and

23   cannot, show that information from the Legislative Leaders is essential to their case.

24         3.      Other sources not exhausted.  The Ninth Circuit requires Plaintiffs to

25   establish that the Legislative Leaders "possess information . . . which is not obtainable from

26   another source." *In re U.S. Dep't of Educ.*, 25 F.4th at 704.  The Ninth Circuit has rejected

27   the argument, which Plaintiffs also have made, Doc. 191-2, Ex. 9, at 2 (PDF p. 95), that a

28   party is "not required to exhaust all other means of discovery before taking [a high-ranking

1   government official's] deposition." *In re U.S. Dep't of Educ.*, 25 F.4th at 704.  In *U.S.*

2   *Department of Education*, the party seeking the deposition "did not use all of their

3   interrogatories and never took a Rule 30(b)(6) deposition."  *Id.*  Plaintiffs here also have

4   not used all of their interrogatories to the Legislative Leaders or any other party.  *See, e.g.*,

5   Doc. 191-2, Ex. 1 (nine interrogatories).  Plaintiffs do not plan to take any further written

6   discovery from the Legislative Leaders.  *Id.* at Ex. 9, at 2 (PDF p. 95).  Not only have

7   Plaintiffs not taken a single deposition, but they also have informed all parties that they

8   "do not plan to take any depositions of any fact witnesses from any Defendants in this

9   litigation."  *Id.* at Ex. 9, at 3 (PDF p. 96).

10           "Exhaustion of all reasonable alternative sources is required, and that requirement

11  was not met here."  *In re U.S. Dep't of Educ.*, 25 F.4th at 704.  Plaintiffs have failed to

12  exhaust all other less intrusive means of discovery, which fails this factor.[5]

13          The Ninth Circuit demands that Plaintiffs establish all three factors.  Plaintiffs have

14  established none.  Plaintiffs' deposition requests must be denied.

15  **III.     The Deliberative Process Privilege Applies.[6]**

16          The deliberative process privilege "permits the government to withhold documents

17  that reflect advisory opinions, recommendations and deliberations comprising part of a

18  process by which government decisions and policies are formulated."  *F.T.C. v. Warner*

19  *Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The privilege exists "to promote

20  frank and independent discussion among those responsible for making government

21  decisions" and thus "to protect the quality of agency decisions."  *Id.*

22          The privilege protects documents that are predecisional and deliberative.  To be

23  predecisional, the document "must have been generated before the adoption of an agency's

24  policy or decision."  *Id.* at 1161.  The only document withheld under deliberative process

---

[5] Just two hours after requesting the Legislative Leaders' depositions, Plaintiffs demonstrated that less intrusive written discovery is available by serving requests for admission on the Legislative Leaders and written discovery requests on Defendants Horne and AIA.  Smith Decl., ¶ 11.
[6] The Court does not need to reach the deliberative process privilege if it finds the legislative privilege applies since the only document withheld under deliberative process privilege is also withheld under legislative privilege.

1    privilege, privilege log Doc. #15, was generated on January 20, 2022.  Doc. 191-2, Ex. 5,

2    at 4 (PDF p. 58).  January 20, 2022 was before either the Arizona Senate or Arizona House

3    of Representatives voted on S.B. 1165.  Thus, Doc. 15 is predecisional.

4            To be deliberative, the document must "contain[] opinions, recommendations, or

5    advice about agency policies."  *Warner Commc'ns Inc.*, 742 F.2d at 1161.  Doc. 15 was

6    "part of the decision-making process and contributed to the legislative action."  Doc. 191-

7    2, Ex. 5, at 4 (PDF p. 58).  In addition, courts have applied the privilege to documents, like

8    Doc. 15, containing talking points about a decision.  *See, e.g.*, *Leopold v. U.S. Dep't of

9    Just.*, 411 F. Supp. 3d 1094, 1106 (C.D. Cal. 2019); *see also Nat. Res. Def. Council v.

10   United States Env't Prot. Agency*, 19 F.4th 177, 185-89 (2d Cir. 2021).

11           Plaintiffs contend that the deliberative process privilege does not apply to

12   legislators.  Doc. 191, at 12.  But Plaintiffs have repeatedly ignored decisions cited by the

13   Legislative Leaders from courts in the Ninth Circuit that reached the contrary conclusion.

14   The Eastern District of California applied the deliberative process privilege to discussions

15   by city council members.  *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099, 2008 WL

16   2523550, at *5 (E.D. Cal. June 19, 2008).  The *Fabbrini* court specifically concluded that

17   the deliberative process privilege applies to any act, including legislative acts.  *Id.*

18   According to another court in the Ninth Circuit, "Many lower courts have also extended

19   the [deliberative process] privilege to protect the decisionmaking processes of local

20   legislators, reasoning that, '[i]n terms of the alleged need for secrecy surrounding

21   deliberations, there is no principled distinction between [local legislators] and those

22   government officials who currently enjoy a deliberative process privilege.'"  *N. Pacifica,

23   LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003) (citing *United States

24   v. Irvin,* 127 F.R.D. 169, 172 (C.D.Cal.1989)).  Plaintiffs do not grapple with any of these

25   on-point cases and instead include scattered quotations containing the word "agency."

26           Finally, Plaintiffs argue that the privilege should not apply because "the

27   government's intent is central to Plaintiffs' case."  Doc. 191, at 11.  But Plaintiffs did not

28   include a single allegation about the Arizona Legislature's intent in their Complaint or

1  Motion for Preliminary Injunction.  *See* Docs. 1, 3.  Plaintiffs cite to no controlling
2  precedent, or any precedent in this Circuit, that allows them to bypass the deliberative
3  process privilege under their theory, particularly in the absence of any allegations against
4  the Legislature.

5  Plaintiffs elide that the principal decision on which they rely was clarified on
6  rehearing to limit its holding "to those circumstances in which the cause of action is
7  directed at the agency's subjective motivation."[7] *In re Subpoena Duces Tecum Served on*
8  *Off. of Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998).  Based on this
9  narrowed holding and the well-settled prohibitions on inquiring into motives of individual
10 legislators, a district court in the Ninth Circuit upheld assertion of the deliberative process
11 privilege even though the plaintiff brought an equal protection claim and alleged improper
12 government motives.  *First Resort, Inc. v. Herrera*, No. CV 11-5534 SBA (KAW), 2014
13 WL 589054, at *4 (N.D. Cal. Feb. 14, 2014).

14 Plaintiffs also claim that all factors to overcome the deliberative process privilege
15 weigh in favor of disclosure.  This is incorrect.  For example, as discussed above, the
16 motives of individual legislators are not relevant; Plaintiffs have not exhausted other
17 discovery methods to search for other available evidence; the Legislative Leaders have
18 intervened to protect institutional interests; and disclosure of communications between
19 individual legislators would hinder frank and independent discussion regarding
20 contemplated policies and decisions.  By failing to establish these factors, Plaintiffs have
21 failed to override the government's interest in non-disclosure.  *Warner Commc'ns Inc.*, 742
22 F.2d at 1161.

23 The Legislative Leaders have properly asserted the deliberative process privilege.

## CONCLUSION

25 The Court should deny Plaintiffs' Motion to Compel.

---

[7] Any attempt by Plaintiffs to explore the Legislative Leaders' subjective, uncommunicated motivations would be barred by the mental process privilege.  *See N. Pacifica, LLC*, 274 F. Supp. 2d at 1122-23, 1125.

Dated: March 18, 2024

Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com
* *pro hac vice*

*Attorneys for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 18, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*