Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone:    (602) 640-9000
Facsimile:    (602) 640-9050
Email:        cproksel@omlaw.com

*Attorney for Plaintiffs*
*Additional counsel listed in signature block*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>    Plaintiffs,<br> v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>    Defendants,<br><br>Warren Petersen, in his official capacity as President of the Arizona State Senate, and Ben Toma, in his official capacity as Speaker of the Arizona House of Representatives,<br><br>    Intervenor-Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY AS TO INTERVENOR-DEFENDANTS** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    I.    Intervenor-Defendants Have Waived Legislative Privilege. ........................ 1

        1.    *Mi Familia Vota* Is Squarely on Point. ............................................... 1

        2.    Intervenor-Defendants' Arguments Regarding Legislator Motives Are Irrelevant. ................................................................... 2

        3.    The Information Requested Is Within The Scope of Intervenor-Defendants' Waived Privilege. ........................................ 4

        4.    Intervenor-Defendants' Additional Arguments Fail. ......................... 5

    II.    The Legislative Privilege Is Otherwise Overcome. ..................................... 5

    III.    The *Morgan* Doctrine Does Not Protect Intervenor-Defendants. ................. 6

    IV.    The Deliberative Process Privilege Is Inapplicable and Otherwise Overcome. ................................................................................................... 9

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Andrich v. Dusek*,
  2019 WL 2775472 (D. Ariz. July 2, 2019) .................................................................. 6, 8, 9

*Bagley v. Blagojevich*,
  486 F. Supp. 2d 786 (C.D. Ill. 2007) ................................................................................ 7

*Bank v. Saxon*,
  209 F. Supp. 319 (D.D.C. 1962) ....................................................................................... 7

*Barlow v. Washington*,
  2021 WL 5910485 (W.D. Wash. Jan 4, 2021) ........................................................... 6, 7, 8

*Benisek v. Lamone*,
  263 F. Supp. 3d 551 (D. Md. 2017) .................................................................................. 6

*Bethune-Hill v. Va. State Bd. of Elections*,
  114 F. Supp. 3d 323 (E.D. Va. May 26, 2015) ................................................................. 5

*Buna v. Pac. Far E. Line, Inc.*,
  441 F. Supp. 1360 (N.D. Cal. 1997) ................................................................................. 1

*Cano v. Davis*,
  193 F. Supp. 2d 1177 (C.D. Cal. 2002) ............................................................................ 4

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) .......................................................................................................... 9

*City of Las Vegas v. Foley*,
  747 F.2d 1294 (9th Cir. 1984) .......................................................................................... 4

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) .......................................................................................................... 3

*Eng v. Cnty. of L.A.*,
  2007 WL 9729101 (C.D. Cal. Apr. 2, 2007) .................................................................... 8

*Fabbrini v. City of Dunsmuir*,
  2008 WL 2523550 (E.D. Cal. June 19, 2008) .................................................................. 9

*Florida v. United States*,
  625 F. Supp. 3d 1242 (N.D. Fla. 2022) ............................................................................ 8

*Freedom from Religion Found. v. Abbott*,
  2017 WL 4582804 (W.D. Tex. Oct. 13, 2017) .............................................................. 8, 9

*FTC v. Warner Commc'ns, Inc.*,
   742 F.2d 1156 (9th Cir. 1984) ................................................................................... 10

*Faulk v. Union Pac. R. Co.*,
   449 F. App'x 357 (5th Cir. 2011) ................................................................................... 5

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) ................................................................................ 6, 7, 9

*In re Toma*,
   2023 WL 8167206 (9th Cir. Nov. 24, 2023) ................................................................. 1

*In re Uehling*,
   2014 WL 1577459 (E.D. Cal. Apr. 17, 2014) ............................................................... 5

*Kaminsky v. N.Y. Life Ins. Co.*,
   2023 WL 6787777 (C.D. Cal. Sept. 25, 2023) ............................................................. 1

*K.N. v. Tacoma Sch. Dist. No 10*,
   2020 WL 13575117 (W.D. Wash. Aug. 14, 2020) ................................................... 6, 8

*League of United Latin Am. Citizens v. Abbott*,
   2022 WL 2866673 (W.D. Tex. July 6, 2022) ............................................................ 7, 9

*Lee v. City of L.A.*,
   908 F.3d 1175 (9th Cir. 2018) .................................................................................. 4, 6

*Mi Familia Vota v. Fontes*,
   2023 WL 8183557 (D. Ariz. Sept. 14, 2023) .................................................... 1, 2, 3, 4

*Mi Familia Vota v. Hobbs*,
   2023 WL 4595824 (D. Ariz. July 18, 2023) ................................................................. 6

*N. Pacifica, LLC v. City of Pacifica*,
   274 F. Supp. 2d 1118 (N.D. Cal. 2003) .................................................................. 9, 10

*Powell v. Ridge*,
   247 F.3d 520 (3d Cir. 2001) ......................................................................................... 2

*Puente Arizona v. Arpaio*,
   314 F.R.D. 664 (D. Ariz. 2016) .................................................................................... 6

*S.C. State Conf. of NAACP v. McMaster*,
   584 F. Supp. 3d 152 (D.S.C. 2022) .............................................................................. 6

*Singleton v. Merrill*,
   576 F. Supp. 3d 931 (N.D. Ala. 2021) ...................................................................... 2, 3

*State of Ariz. v. State of Cal*,
 283 U.S. 423 (1931)..................................................................................................... 3

*Tenney v. Brandhove*,
 341 U.S. 367 (1951)..................................................................................................... 4

*Toma v. U.S. Dist. Ct. for the Dist. of Ariz.*,
 144 S. Ct. 443 (2023)................................................................................................... 2

*U.S. v. Carrillo-Lopez*,
 68 F.4th 1133 (9th Cir. 2023) .................................................................................. 4, 9

*U.S. Football League v. Nat'l Football League*,
 842 F. 2d 1335 (2d Cir. 1988) ..................................................................................... 5

*U.S. v. Irvin*,
 127 F.R.D. 169 (C.D. Cal. 1989) ................................................................................. 9

*U.S. v. Nixon*,
 418 U.S. 683 (1974)..................................................................................................... 3

*U.S. v. O'Brien*,
 391 U.S. 367 (1968)..................................................................................................... 4

*U.S. v. RMI Co.*,
 599 F.2d 1183 (3d Cir. 1979) ...................................................................................... 5

*U.S. v. Town of Colo. City*,
 2014 WL 5431222 (D. Ariz. Oct. 27, 2014).............................................................. 10

*Union Elec. Co. v. Mo. Dep't of Conservation*,
 366 F.3d 655 (8th Cir. 2004) ....................................................................................... 5

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*,
 429 U.S. 252 (1977)..................................................................................................... 3

**INTRODUCTION**

Intervenor-Defendants' opposition totally misses the mark. By voluntarily intervening in Plaintiffs' case, zealously defending the Ban, and seeking broad discovery from Plaintiffs, Intervenor-Defendants have waived legislative privilege. Intervenor-Defendants try to evade depositions and document production by relying on irrelevant, lofty rhetoric regarding the history of legislative independence and inapposite cases that largely do not examine the legislative privilege at all and do not involve intervention.

Intervenor-Defendants cannot have it both ways: they cannot insert themselves into this litigation by choice, fervently defend the unconstitutionality and illegality of the Ban, and serve dozens of discovery requests on Plaintiffs, all while shielding some of their own documents from discovery and immunizing themselves from depositions. That is neither fair nor reasonable, nor consistent with the most relevant caselaw actually considering legislative privilege claims where legislators have voluntarily intervened in cases as here. None of the other privileges or doctrines Intervenor-Defendants assert are proper and, to the extent they are, they are also overcome here.

Plaintiffs are plainly entitled to discovery, including depositions, and the Court should grant Plaintiffs' Motion to Compel.

**ARGUMENT**

**I.    Intervenor-Defendants Have Waived Legislative Privilege.**

   **1.    *Mi Familia Vota* Is Squarely on Point.**

Intervenor-Defendants largely ignore *Mi Familia Vota v. Fontes*, 2023 WL 8183557 (D. Ariz. Sept. 14, 2023), which considered precisely the same issues with the same parties in the same district and concluded that the Intervenor-Defendants waived the legislative privilege. The Court should follow *Mi Familia Vota*,[1] which the Ninth Circuit upheld. *See In re Toma*, 2023 WL 8167206, at *1 (9th Cir. Nov. 24, 2023)

---

[1] "[J]udges of the same district court customarily follow a previous decision of a brother or sister judge upon the same question except in unusual or exceptional circumstances." *Kaminsky v. N.Y. Life Ins. Co.*, 2023 WL 6787777, at *2 (C.D. Cal. Sept. 25, 2023) (quoting *Buna v. Pac. Far E. Line, Inc.*, 441 F. Supp. 1360, 1365 (N.D. Cal. 1997) (alteration omitted)).

("The district court did not clearly err in determining that Petitioners waived their legislative privilege by voluntarily intervening and putting their intent at issue by denying Plaintiffs' allegations"), *stay pending appeal denied by Toma v. U.S. Dist. Ct. for the Dist. of Ariz.*, 144 S. Ct. 443 (2023). To the extent Intervenor-Defendants attempt to distinguish *Mi Familia Vota*, they fail for the reasons stated in Plaintiffs' opening brief. (*See* Mot. at 8, Dkt. No. 191.) *First*, any "heightened" interest that Intervenor-Defendants may have in this case at best relates to their heightened interest in intervention, *not* in maintaining their privilege. *Second*, Intervenor-Defendants have meaningfully participated in this litigation and their actions demonstrate an intent to continue to do so.[2] That they have not participated in exactly the same way as they did in *Mi Familia Vota* is irrelevant for waiver purposes,[3] and Intervenor-Defendants cite no case law to the contrary. *Third*, *Mi Familia Vota* properly considered the full scope of the legislative privilege's purpose in reaching its decision and appropriately ordered the discovery of "communications *sent or received* by" Intervenors. 2023 WL 8183557, at *3.

### 2. Intervenor-Defendants' Arguments Regarding Legislator Motives Are Irrelevant.

Unable to distinguish *Mi Familia Vota*, Intervenor-Defendants cite irrelevant law regarding whether inquiry into legislator motives are proper. (Opp. at 4–5,

---

[2] In their opposition to Plaintiffs' Motion for a Protective Order, Intervenor-Defendants argue that "[b]y not deposing Plaintiffs or any other party, [they] have avoided the sword and shield issue that concerned the courts in *Powell* [*v. Ridge*, 247 F.3d 520, 526 (3d Cir. 2001) (rejecting state legislators' claim of legislative privilege)] and *Singleton* [*v. Merrill*, 576 F. Supp. 3d 931, 941 (N.D. Ala. 2021)]." (Dkt. 199 at 7-8.) But that ignores the extensive other discovery that Intervenor-Defendants have sought, including 21 Requests for Admission, 10 Interrogatories, and five Requests for Production on each Plaintiff. Therefore, even without depositions, Intervenor-Defendants clearly attempt to "seek discovery, but not respond to it." *Powell*, 247 F.3d at 522.

[3] Intervenor-Defendants assert that "[n]o party, including Plaintiffs, identified [them] as witnesses in initial disclosures." (Opp. at 8.) However, Plaintiffs' initial disclosures included "other current and former employees and staff of the Arizona Department of Education ("ADOE") and *the Arizona State Legislature not yet known to Plaintiffs*." (Dkt. 198-1, Ex. E, at 3 (emphasis added).)

2

Dkt. No. 198.) All of these arguments fail.

*First*, as in *Mi Familia Vota*, the information Plaintiffs seek goes "to the heart" of Plaintiffs' claims, 2023 WL 8183557, at *2, which requires examination of "the Act's actual purposes," (Dkt. 127 ¶ 151; *see* Mot. at 7). The discovery Plaintiffs seek is also critical to understand the Ban's legislative history, as well as Intervenor-Defendants' defenses that the Ban is substantially related to the governmental objectives of "redress[ing] pas[t] discrimination against women in athletics" and "promot[ing] equality of athletic opportunity between the sexes" in school sports. (Dkt. 82 at 12.) Plaintiffs' Requests for Production Nos. 1, 2, 5, 6, 7, and 8 seek information related to these defenses, and Intervenor-Defendants have raised legislative privilege objections to them all.[4] Intervenor-Defendants cannot intervene and "put in issue factual and legal defenses that depend on their assertions about their intent and motives during the legislative process" but "refuse to participate in any discovery that would allow [Plaintiffs] to challenge those assertions." *Singleton*, 576 F. Supp. 3d at 941.

*Second*, none of Intervenor-Defendants' case law is relevant to the question before the Court. Many of the cited cases do not even examine the legislative privilege, but instead consider the propriety of "[i]nquiries into legislative motives" in completely different contexts.[5] (Opp. at 4.) Of the few cases Intervenor-Defendants cite in which

---

[4] *See* Exs. 3 & 4 to the Declaration of Rachel H. Berg, Dkt. 191-2 (raising legislative privilege objections to RFP No. 1 (documents and communications concerning the governmental interests allegedly advances by the Ban), RFP No. 2 (documents, policies, and communications concerning the participation of transgender students in school sports), RFP No. 5 (documents concerning sex-based separation in school sports in Arizona); RFP No. 6 (reports and research concerning any impact the participation of transgender students in sports has had on non-transgender students including as related to opportunity, fairness, and safety), RFP No. 7 (documents and communications with any representatives of certain advocacy organizations), and RFP No. 8 (documents and communications supporting each asserted governmental interest)).

[5] *See, e.g.*, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253–54 (2022) (discussing the weight to give "statements made by a few supporters" who were not voting legislators of 19th century laws criminalizing abortion); *U.S. v. Nixon*, 418 U.S. 683, 705 (1974) (President Nixon's attempt to quash a subpoena for tape recordings with his advisors); *State of Ariz. v. State of Cal*, 283 U.S. 423, 455 (1931) (inter-state water rights dispute decided prior to the creation of heightened

3

the legislative privilege was at issue, none involves intervention, and thus, those courts did not consider how intervention interacts with the legislative privilege. *See, e.g., Lee v. City of L.A.*, 908 F.3d 1175, 1187–88 (9th Cir. 2018) (finding that the district court did not abuse its discretion in denying the plaintiffs' attempt to depose legislators who were not named as defendants and did not intervene); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297–98 (9th Cir. 1984) (directing district court to grant protective order prohibiting depositions of non-intervening city officials); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (plaintiff sued California legislators and there accordingly was no legislative intervention).

Accordingly, the Court should find that, given the circumstances of this case, Intervenor-Defendants' voluntary intervention and vigorous defense of the Ban amounts to a waiver of legislative privilege for discovery purposes.

**3.   The Information Requested Is Within The Scope of Intervenor-Defendants' Waived Privilege.**

Intervenor-Defendants' argument that they cannot waive the privilege for other legislators (Opp. at 10–11) is irrelevant because Plaintiffs do not seek that. Instead, Plaintiffs seek only documents received by or sent to Intervenor-Defendants. *Mi Familia Vota*, 2023 WL 8183557, at *3 (ordering discovery of "communications *sent or received* by" intervenors) (emphasis added). As for Intervenor-Defendants' deposition testimony, a legislator may testify "to his own motivations, his opinion regarding the motivation of the body as a whole, the information on which the body acted, the body's knowledge of alternatives, [] deviations from procedural or substantive rules typically employed," as well as "his own legislative acts and statements" without waiving the

---

scrutiny); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (passing statement about situations in which a legislator may be called to give testimony); *U.S. v. O'Brien*, 391 U.S. 367, 383 (1968) (declining to examine legislative motive in case without intervenors or depositions about the constitutionality of a law prohibiting the destruction of draft registration certificates); *U.S. v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023) (discussing the role motive plays in strict scrutiny analysis without mention of depositions or intervening legislators).

4

legislative privilege of other members. *Cano v. Davis*, 193 F. Supp. 2d 1177, 1179 (C.D. Cal. 2002); *see also U.S. Football League v. Nat'l Football League*, 842 F. 2d 1335, 1374–75 (2d Cir. 1988) (permitting senator to testify about his own experience with the relevant lobbying issue).

### 4. Intervenor-Defendants' Additional Arguments Fail.

Intervenor-Defendants further attempt to muddy the waters with lofty rhetoric about legislative independence, as well as various straw man arguments about Arizona law, other privileges, and their own conduct. (Opp. at 3, 6–9.) Plaintiffs do not dispute the importance of legislative independence, nor do they contend that Intervenor-Defendants' intervention was unlawful, that Arizona law includes an explicit waiver of privilege, or that Intervenor-Defendants' non-intervention conduct waived privilege. Moreover, comparisons to other privileges, including the executive privilege, are inapt and peripheral.[6] *None* of these arguments undermines Plaintiffs' assertion that Intervenor-Defendants' voluntary intervention and vigorous defense of the Ban operate as a waiver of legislative privilege.

## II. The Legislative Privilege Is Otherwise Overcome.

Even if not waived, the legislative privilege would be easily overcome for the reasons articulated in Plaintiffs' Motion. (Mot. at 9–11.) *See, e.g., Bethune-Hill v. Va.*

---

[6] None of the cases Intervenor-Defendants cite remotely corresponds to their behavior. (Opp. at 8–9.) Unlike *Faulk v. Union Pac. R. Co.*, 449 F. App'x 357 (5th Cir. 2011), where the State was forced to intervene and did so "expressly reserv[ing] its immunity," Intervenor-Defendants voluntary intervened without invoking or reserving legislative immunity. *Id.* at 363; *see also Union Elec. Co. v. Mo. Dep't of Conservation*, 366 F.3d 655, 660 (8th Cir. 2004) (Attorney General's application to intervene was not waiver because its stated aim was "to argue for dismissal of the case on . . . Eleventh Amendment grounds.") The rules governing *qui tam* actions, where the government intervenes to stand in the plaintiff's shoes, are also wholly irrelevant to the circumstances here. *See In re Uehling*, 2014 WL 1577459, at *5 (E.D. Cal. Apr. 17, 2014) (noting the "joint prosecution privilege" between the government and relator that is waived neither by the government's intervention nor "when a relator produces documents to the [Department of Justice]"). So are instances where a private party explicitly intervenes to assert privilege, which Intervenor-Defendants did not do. *See, e.g., U.S. v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979).

*State Bd. of Elections*, 114 F. Supp. 3d 323, 339–44 (E.D. Va. 2015) (finding factors favored disclosure in racial gerrymandering case where state legislators asserted the legislative privilege over legislative redistricting process); *see also, e.g.*, *S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d 152, 163–66 (D.S.C. 2022) (same); *Benisek v. Lamone*, 263 F. Supp. 3d 551, 553–55 (D. Md. 2017) (same).

Intervenor-Defendants mistakenly dismiss the established five-factor balancing test under which courts traditionally analyze whether the legislative privilege is overcome. (Opp. at 11.) But, as courts in this District have found, that balancing test is consistent with controlling Ninth Circuit precedent. *See Mi Familia Vota v. Hobbs*, 2023 WL 4595824, at *8 n.7 (D. Ariz. July 18, 2023) (noting that the balancing test is "widely used by federal courts and is consistent with the Ninth Circuit's indication . . . that the state legislative privilege is a qualified privilege that may be overcome in certain extraordinary circumstances" (citing *Lee,* 908 F.3d at 1187–88)); *see also Puente Arizona v. Arpaio*, 314 F.R.D. 664, 671–72 (D. Ariz. 2016) (applying the five-factor balancing test to legislative privilege assertion).

### III.  The *Morgan* Doctrine Does Not Protect Intervenor-Defendants.

Intervenor-Defendants' invocation of the *Morgan* doctrine fails.

*First*, the *Morgan* doctrine applies to high-ranking *executive,* not legislative, officials. Accordingly, courts in this Circuit routinely and solely consider the doctrine's application to high-ranking executive officials. *See, e.g.*, *Andrich v. Dusek*, 2019 WL 2775472, at *2 (D. Ariz. July 2, 2019) (discussing "[h]eads of government agencies"); *Barlow v. Washington*, 2021 WL 5910485, at *1 (W.D. Wash. Jan 4, 2021) (analyzing *Morgan* doctrine for state university president); *K.N. v. Tacoma Sch. Dist. No 10*, 2020 WL 13575117, at *1 (W.D. Wash. Aug. 14, 2020) (same for district superintendent). *In re U.S. Department of Education* ("*DoE*"), 25 F.4th 692 (9th Cir. 2022), upon which Intervenor-Defendants rely, is no exception: there the court considered the "significant protection from depositions that cabinet secretaries enjoy" in

1  light of separation-of-powers concerns and the fact that "the executive branch's execution
2  of the laws can be crippled if courts can unnecessarily burden secretaries with compelled
3  depositions." *Id.* at 700–01.

4      *Second*, even if the *Morgan* doctrine applied to legislators, Intervenor-Defendants
5  fail to explain how it would make sense in the context of legislators who *voluntarily*
6  *intervene* in a litigation.[7]  This is unsurprising—the *Morgan* doctrine exists to protect
7  high-ranking executives' time and ability to conduct business that may be impeded by
8  various litigation they may face.  *See, e.g.*, *Union Sav. Bank v. Saxon*, 209 F. Supp. 319,
9  319–20 (D.D.C. 1962) ("The Court recognizes that [the head of an agency of the United
10 States Government's] time and . . . everyday business would be severely impeded if
11 every plaintiff filing a complaint against an agency head, in his official capacity, were
12 allowed to take his oral deposition.").  This concern falls by the wayside here for
13 legislators who specifically decided to engage in a litigation defense.

14     *Third*, even if the *Morgan* doctrine did apply, Plaintiffs show "extraordinary
15 circumstances" to depose Intervenor-Defendants in this case because (1) the Intervenor-
16 Defendants have direct personal factual information pertaining to material issues in an
17 action, and (2) the information to be gained is not available through any other sources.
18 *See Barlow*, 2021 WL 5910485, at *1.  As President of the Arizona Senate and Speaker
19 of the Arizona House of Representatives, Petersen and Toma, respectively, have unique,
20 first-hand knowledge of the facts central to this case, including the Ban's legislative
21 history and the government's purported justifications for passage.  By their own account,
22 "President Petersen was a *co-sponsor* of S.B. 1165" and both Intervenor-Defendants
23 "*personally advocated* and voted" for the Ban and asserted a "unique interest in
24 defending" the Ban upon intervention.  (Dkt. 19 at 1, 3.)  *See Bagley v. Blagojevich*,
25 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007) (allowing deposition of governor where
26 plaintiffs alleged "the Governor was either the ultimate decision maker or at least

---

[7] The single case that Intervenor-Defendants cite is one in which the legislator invoking the privilege had not intervened but was a named defendant. *League of United Latin Am. Citizens ("Lulac") v. Abbott*, 2022 WL 2866673, at *2 (W.D. Tex. July 6, 2022).

personally involved in the decision" that was the subject of the suit); *Freedom from Religion Found. v. Abbott*, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017) (permitting limited deposition of Governor Abbott where his motive was "central" to the case).

And the information sought is not available from other sources. Plaintiffs have vigorously pursued discovery, showing that Plaintiffs "*reasonably* [attempted to] obtain the information sought from a high ranking government official through other means." *Eng v. Cnty. of L.A.*, 2007 WL 9729101, at *8 (C.D. Cal. Apr. 5, 2007). Plaintiffs are entitled to ask questions about Intervenor-Defendants' written responses and documents, as well as their various factual assertions to support the Ban's lawfulness, in a deposition. Intervenor-Defendants have identified no party better situated to speak to these issues because there is none. In fact, they have already admitted that "the Legislative Leaders do not merely speak for themselves; they speak on behalf of their respective houses of the Arizona Legislature as a whole." (Dkt. No. 19 at 7). *See Barlow*, 2021 WL 5910485, at *2 (denying *Morgan* protection even where opposing party "provided documents" naming a "multitude of individuals" involved in the conduct at issue because "the decisionmaker's knowledge is also relevant and cannot be sought elsewhere"); *Tacoma*, 2020 WL 13575117, at *1–2 (allowing deposition where deponent had "personal knowledge of relevant facts.").

*Finally*, Intervenor-Defendants improperly argue that Plaintiffs must show bad faith for any privilege to be waived. But courts analyzing whether the *Morgan*/Apex doctrines apply typically do not require a showing of bad faith.[8] *See, e.g.*, *Barlow*, 2021 WL 5910485, at *1–2 (assessing depositions of government official under *Morgan*/Apex without referencing bad faith); *Tacoma*, 2020 WL 13575117, at *1–2

---

[8] Contrary to Intervenor-Defendants' assertion, courts frequently refer to the Apex and *Morgan* doctrines interchangeably. *See, e.g.*, *Florida v. United States*, 625 F. Supp. 3d 1242, 1245 (N.D. Fla. 2022) (explaining that "*Morgan* [is] the genesis of the apex doctrine" (citing *DoE*, F.4th at 700)); *Andrich*, 2019 WL 2775472 at *2 (explaining that the Apex doctrine comes from the *Morgan* doctrine); *Barlow*, 2021 WL 5910485 at *1 (discussing "the Apex doctrine (also referred to as the *Morgan* doctrine)"); *Tacoma*, 2020 WL 13575117, at *1 (same).

(same); *Abbott*, 2017 WL 4582804, at *10–11 (same); *Andrich*, 2019 WL 2775472, at *2–3 (same); *Lulac*, 2022 WL 2866673, at *1–3 (same).[9]

### IV. The Deliberative Process Privilege Is Inapplicable and Otherwise Overcome.

Intervenor-Defendants' arguments regarding the deliberative process privilege fare no better. As Plaintiffs argued in their opening brief (Mot. at 12), the deliberative process privilege is widely understood to be an executive privilege. And while Intervenor-Defendants cite a handful of cases in which the deliberative process privilege was nevertheless applied to legislators (Opp. at 16), they omit a critical factor: in each case that privilege was either wholly or partially overcome, or narrowly applied to non-legislative materials. *See Fabbrini v. City of Dunsmuir*, 2008 WL 2523550, at *5 (E.D. Cal. June 19, 2008) (applying the deliberative process privilege broadly, including to discussions from a closed city council session, but noting that the discussions "were *not* legislative acts" (emphasis added)); *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1125 (N.D. Cal. 2003) (applying deliberative process privilege to local legislators but finding it largely overcome where potential government misconduct was central to equal protection claim); *U.S. v. Irvin*, 127 F.R.D. 169, 173–74 (C.D. Cal. 1989) (finding that the deliberative process privilege was overridden where it conflicted with the enforcement of federal civil rights laws and "Plaintiff's allegations may implicate intentional or negligent government conduct")).

So too here. Even if the Court found that the deliberative process privilege should apply to legislators, it is overcome for the same reasons the legislative privilege is overcome as discussed in detail in Plaintiffs' opening brief (Mot. at 12–13.) Accordingly, the deliberative process privilege does not shield Intervenor-Defendants

---

[9] The cases Intervenor-Defendants cite regarding bad faith are limited to concerns regarding actions of high-ranking agency heads. *See DoE*, 25 F.4th at 703 (allowing court to depose a cabinet secretary only with a "strong showing of bad faith or improper behavior by the agency" (citation omitted)); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (bad faith necessary for deposing administrative officials). *U.S. v. Carrillo-Lopez* is irrelevant as it does not even involve the *Morgan* doctrine or any invocation of privilege. *See* 68 F.4th 1133 (9th Cir. 2023).

9

from providing Plaintiffs with their requested discovery.[10] Because "the need for disclosure outweighs the need for secrecy," the court should find the legislative privilege overcome here. *U.S. v. Town of Colo. City*, 2014 WL 5431222, at *3 (D. Ariz. Oct. 27, 2014) (citing *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, the Court should grant Plaintiffs' Motion to Compel Intervenor-Defendants to produce documents and information improperly withheld on the basis of the legislative and deliberative process privileges; to revise their privilege log accordingly; and to sit for depositions.

Respectfully submitted this 25th day of March, 2024.

 /s/ Colin M. Proksel
Colin M. Proksel (034133)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

---

[10] The mental process privilege would be overcome for the same reasons. *See N. Pacifica*, 274 F. Supp. 2d at 1122 (stating that the factors "as to whether the deliberative process privilege should be overcome may be used as guidance in determining whether the mental process privilege should be overcome").

10

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.