**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al., | No. CV-23-00185-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Thomas C Horne, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs' Motion to Compel Discovery as to Intervenor-Defendants (Doc. 191) and Motion for a Protective Order (Doc. 196).[1] Both motions are fully briefed. (Doc. 191, 198, 200, 196, 199, 201.) For the following reasons, the Court will grant the Motion to Compel and grant in part and deny in part the Motion for Protective Order.

### I.   BACKGROUND

The Plaintiffs filed suit on April 17, 2023, alleging that A.R.S. § 15-120.02, a law that prohibits transgender girls from competing on girls' school sports teams, violates their rights under the Equal Protection Clause, Title IX, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act (RA). (Doc. 1.) Plaintiffs named five defendants in their Complaint: (1) Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; (2) Laura Toenjes, in her official capacity as

---

[1] The Plaintiffs also filed a Second Motion for Extension of Time to Complete Discovery. (Doc. 205.) The Court granted this request during oral argument on May 7, 2024. (Doc. 207.)

Superintendent of the Kyrene School District; (3) the Kyrene School District; (4) the Gregory School; and (5) the Arizona Interscholastic Association (AIA).[2] (*Id.*)

Before any defendant made an appearance, Senator Warren Peterson, President of the Arizona State Senate, and Representative Ben Toma, Speaker of the Arizona House of Representatives, filed a Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. (Doc. 19.) The Court initially granted President Peterson and Speaker Toma limited intervention and allowed them to present arguments and evidence in opposition to the Plaintiffs' Motion for Preliminary Injunction. (Doc. 79.) Later, the Court amended its decision and allowed President Peterson and Speaker Toma to participate fully as a party in the litigation. (Doc. 111, 142.)

The Intervenor-Defendants have fully participated in this action. On September 12, 2023, in lieu of an answer, Intervenor-Defendants filed a motion to dismiss the complaint for failure to state a claim. (Doc. 146 at 10.) Since October 2023, the Intervenor-Defendants have actively participated in discovery. On October 30, 2023, the Plaintiffs served nine Interrogatories and nine Requests for Production on the Intervenor-Defendants. (Doc. 191 at 8.) On November 13, 2023, the Intervenor-Defendants served twenty-one Requests for Admissions, ten Interrogatories, and five Requests for Production on each Plaintiff. (*Id.*) The Intervenor-Defendants also served three Requests for Production and twelve Interrogatories on AIA. (*Id.*)

The pending motions center on the Intervenor-Defendants' objections to Plaintiffs' discovery requests. In their November 29, 2023 responses, the Intervenor-Defendants objected to several Requests for Production on the basis of legislative privilege and deliberative process privilege. (*Id.*) On February 8, 2024, the Intervenor-Defendants objected to Plaintiffs' requests to depose them on the basis of legislative privilege, the *Morgan* doctrine, and relevance. (Doc. 191-2 at 95-97.)

After the parties conferred, the Plaintiffs filed the instant Motion to Compel requesting that the Court order the Intervenor-Defendants to produce the documents at

---

[2] Laura Toenjes and the Kyrene School District filed a Stipulation in lieu of Answer, informing the Court that they will not be active participants in this case. (Doc. 59 at 2.)

issue and to submit to depositions. (Doc. 191.) In their opposition, the Intervenor-Defendants stated that if this Court grants the Plaintiffs' Motion to Compel, they will seek to depose minor Plaintiffs Jane Doe and Megan Roe. (Doc. 199 at 1.) In response, the Plaintiffs filed their Motion for Protective Order requesting that the Court preclude the Intervenor-Defendants from deposing the minor Plaintiffs, or, in the alternative, set reasonable limits on any depositions. (Doc. 196.)

Oral argument on the Motions was held on May 7, 2024. (Doc. 207.) At the hearing, the parties informed the Court that many disputes had been resolved and issues remain only with respect to the production of five documents,[3] the proposed depositions of the Intervenor-Defendants, and the proposed depositions of the minor Plaintiffs. (*Id.*) The parties requested that the Court conduct an in-camera review of the five contested documents. The Court granted the parties' request and has reviewed the documents in camera.

## II.   DISCUSSION

### A. Motion to Compel

The Intervenor-Defendants oppose the Plaintiffs' discovery requests, arguing that (1) neither the five documents at issue nor their potential testimony are relevant to the Plaintiffs' claims; (2) the documents are protected from disclosure under legislative privilege; (3) Document 15 is also protected by the deliberative process privilege; and (4) the Intervenor-Defendants cannot be deposed due to legislative privilege and the *Morgan* doctrine. (*See* Doc. 198.)

### 1. Legal Standards

Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information about "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The party seeking to compel discovery has the initial burden of

---

[3] The five documents (3, 6, 14, 15, and 18) are described in the Intervenor-Defendants' Privilege Log and consist of emails to Arizona legislators about the enactment of A.R.S. § 15-120.02, one with "talking points" about the Save Women's Sports Act. (Doc. 191-2 at 55-60.)

- 3 -

establishing that the discovery sought is relevant. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). This "is a relatively low bar." *Id*. A party asserting an evidentiary privilege "has the burden to demonstrate that the privilege applies to the information in question." *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 667 (D. Ariz. 2016).

### 2. Relevance

The Plaintiffs argue that the contested documents and the information sought through depositions are highly relevant in determining the Intervenor-Defendants' intent in drafting and supporting A.R.S. § 15-120.02. (Doc. 191 at 14.) The Plaintiffs state that "the 'heart' of this case is determining the [law's] constitutionality, which may involve a determination of what the legislators' motives were in passing [A.R.S. § 15-120.02]." (*Id.* at 12.) The Plaintiffs assert the discovery requests are "reasonably calculated to uncover '[w]hat motivated the Arizona legislature to act.'" (*Id.* at 14 (quoting *Mi Familia Vota v. Hobbs*, 682 F. Supp. 3d 769, 784-85 (D. Ariz. 2023).)

"Legislative motive is relevant in Equal Protection claims." *Vision Church v. Vill. of Long Grove*, 226 F.R.D. 323, 326 (N.D. Ill. 2005); *see also Mi Familia Vota v. Hobbs*, 682 F. Supp. 3d at 784–85 (explaining that the legislature's purpose in enacting state voting laws was "at the heart" of plaintiffs' Equal Protection challenge); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1292 (7th Cir. 1996) ("In an Equal Protection Clause analysis . . . courts often inquire into the motives of legislators or other government actors."); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 339 (E.D. Va. 2015) (proof of legislative intent is "relevant and extremely important as direct evidence."). Courts have recognized the relevance of discovering legislative materials in Equal Protection cases. *See Bethune-Hill*, 114 F. Supp. 3d at 339 ("[A]ny documents containing the opinions and subjective beliefs of legislators or their key advisors would be relevant to the broader inquiry into legislative intent."); *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014) ("Motive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent."); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) ("[C]ontemporary

statements by members of the decisionmaking body, minutes of its meetings, or reports" may be relevant to determining legislative intent).

The Court concludes that the discovery Plaintiffs seek is relevant to their Equal Protection claim. Plaintiffs seek to discover information pertaining to the legislative history of A.R.S. § 15-120.02 and the governmental purpose served by the law. (Doc. 191 at 14.) The email correspondence between legislators directly relates to the adoption of A.R.S. § 15-120.02. *Id.* The Plaintiffs seek to question the Intervenor-Defendants regarding their motives for passing A.R.S. § 15-120.02. *Id.* This discovery may shed light on whether the Arizona legislature acted with a constitutionally permissible purpose in enacting A.R.S. § 15-120.02.

The Intervenor-Defendants argue that the discovery sought is not relevant because the motivation of one legislator cannot be attributed to the whole. (Doc. 198 at 5 ("The statements of a handful of lawmakers" are generally insufficient to show discriminatory intent because they "may not be probative of the intent of the legislature as a whole.") (quoting *United States v. Carillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023).) However, whether a document is discoverable and whether it constitutes probative evidence are two different inquiries guided by different principles. *Carillo-Lopez* considers the probative value of particular types of evidence of legislative intent; it does not address whether evidence of legislative intent is discoverable. *See Carillo-Lopez*, 68 F.4th at 1140-41. Of course "courts must use caution when seeking to glean a legislature's motivations from the statements of a handful of lawmakers," but "that does not mean evidence of an individual legislator's motive is irrelevant to the question of the legislature's motive." *Mi Familia Vota*, 343 F.R.D. at 88; *see also Mi Familia Vota*, 682 F. Supp. 3d at 785 (the fact that statements by individual lawmakers may alone be insufficient to establish the motivation of the legislature does not eliminate the relevance of such statements); *Bethune-Hill*, 114 F. Supp. 3d at 339–40 ("[I]t may be true that 'the individual motivations' of particular legislators may be neither necessary nor sufficient for Plaintiffs to prevail," but "that does not mean that the 'evidence cannot constitute an important part' of the case presented.).

//

### 3. Legislative Privilege

Legislative privilege is a qualified privilege that shields legislators from the compulsory evidentiary process. *Mi Familia Vota*, 682 F. Supp. 3d at 782; *see also Lee v. City of Los Angeles,* 908 F.3d 1175, 1187 (9th Cir. 2018) (holding that depositions of local legislators are barred by legislative privilege even in "extraordinary circumstances."); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1299 (9th Cir. 1984) (holding that a corporation's effort to depose city officials to determine their individual motives for enacting a zoning ordinance was precluded under legislative privilege). Legislative privilege is a personal one and may be asserted or waived by each individual state legislator. *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012). A waiver of legislative privilege need not be explicit or unequivocal, rather, waiver can occur when a party testifies as to otherwise privileged matters, shares privileged communications with outsiders, or through a party's litigation conduct in a civil case. *See Favors*, 285 F.R.D. at 212; *Singleton v. Merrill*, 576 F. Supp. 3d 931, 942 (N.D. Ala. 2021).

The Court concludes that the Intervenor-Defendants waived their legislative privilege by voluntarily participating in this lawsuit and putting their intent at issue. The Court finds *Mi Familia Vota v. Fontes,* 2023 WL 8183557 (D. Ariz. Sept. 14, 2023) persuasive. There, two legislators voluntarily intervened in a lawsuit to defend the state voting laws. *Id.* at *2. In rejecting the legislators' objections to producing documents and sitting for depositions, the court concluded that the legislators could not "actively participate in this litigation yet avoid the burden of discovery regarding their legislative activities." *Id.* The court explained that "the only reasonable inference from the Legislators' litigation conduct is that they have decided to forego [legislative privilege] in pursuit of an opportunity to defend in court their decisions as legislators." *Id.* at *3 (quoting *Singleton*, 576 F. Supp. 3d at 941).

As was the case in *Mi Familia Vota v. Fontes*, the Intervenor-Defendants "are not seeking immunity from this suit," but rather seek to "actively participate in this litigation while avoiding the burden of discovery regarding their legislative activities." *See* 2023 WL 8183557 at *2 (quoting *Powell v. Ridge*, 247 F.3d 520, 525 (3rd Cir. 2001). As in *Mi*

*Familia Vota*, the Plaintiffs did not seek discovery from the Intervenor-Defendants until they intervened in this action. In moving to intervene, the Intervenor-Defendants emphasized their "unique interest in defending the constitutionality of laws duly enacted by the Arizona legislature." (Doc. 19 at 1.) Finally, like *Mi Familia Vota*, the Intervenor-Defendants put their legislative intent at issue in their assertions that (1) the law does not discriminate on the basis of transgender status, (Doc. 82 at 13), and (2) the purpose of the law is to "redress past discrimination against women in athletics" and "promote equality of athletic opportunity between the sexes" in school sports. (Doc. 19 at 12).

The Intervenor-Defendants argue that *Mi Familia Vota* is distinguishable. They claim they had a heightened interest in intervening in this case because the Arizona Attorney General disqualified herself from defending A.R.S. § 15-120.02. The Intervenor-Defendants also argue that they did not put their motives at issue and that the Plaintiffs have not alleged discriminatory intent in this suit. (Doc. 198 at 6, 8.) These arguments are unpersuasive.

Whether the Intervenor-Defendants had an interest or a heightened interest in intervention is of no moment. They intervened in this litigation voluntarily. Under Arizona law, the Speaker and President are "entitled to be heard" "[i]n any proceeding in which a state statute … is alleged to be unconstitutional." A.R.S. § 12-1841(A). The Speaker and President may, in their discretion, (1) intervene as a party, (2) file briefs in the lawsuit, or (3) "*choose not to participate*" in the lawsuit. A.R.S. § 12-1841(D) (emphasis added). The Intervenor-Defendants chose to intervene.[4] Furthermore, although Attorney General Mayes disqualified herself from defending the law, she authorized Defendant Horne, a named defendant in the Plaintiffs' Complaint, to defend the law.[5] At the time intervention

---

[4] While the Intervenor-Defendants have not yet filed an answer in this case, as was the case in *Mi Familia Vota*, they did file a Motion to Intervene (Doc. 19), Response to the Plaintiffs' Motion for Preliminary Injunction (Doc. 82), and a Motion to Dismiss Plaintiffs' claims (Doc. 146).

[5] Under A.R.S. § 41-192(E), in the event that the attorney general is disqualified, "the state agency is authorized to make expenditures and incur indebtedness to employ attorneys to provide the representation or services."

was granted, Defendant Horne had already retained counsel, filed several motions, answered the complaint, and confirmed his intention to vigorously defend this lawsuit. (*See* Doc. 20, 21, 24, 31, 39, 42, 57, 58, 66, 67, 71, 72, 73.)

Whether the Plaintiffs alleged in their Complaint that the legislature acted with discriminatory intent is similarly irrelevant. Legislative purpose and motive is at issue due to the very nature of the claim. In this Equal Protection challenge, the government must establish that its sex-based classification is substantially related to an important government objective. *See Craig v. Boren,* 429 U.S. 190, 197 (1976); *Karnoski v. Trump,* 926 F.3d 1180, 1200–01 (9th Cir. 2019). The Intervenor-Defendants assert that the law is substantially related to "redress[ing] past discrimination against women in athletics" and "promot[ing] equality of athletic opportunity between the sexes" in school sports. (Doc. 82 at 12.) Plaintiffs properly seek evidence in discovery to evaluate the support for the Intervenor-Defendants' assertions.

### 4. Deliberative Process Privilege

The Intervenor-Defendants argue that deliberative process privilege provides an additional basis for precluding the disclosure of Document 15. (Doc. 198 at 15-17.)

Deliberative process privilege is a form of executive privilege that shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc*., 592 U.S. 261, 267 (2021) (quoting *NLRB v. Sears, Roebuck & Co*., 421 U. S. 132, 150 (1975)) (emphasis added). The purpose of deliberative process privilege is to protect government agencies from being "forced to operate in a fishbowl." *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)). Deliberative process privilege does not apply here because it is an executive privilege rendering executive agencies immune from normal disclosure or discovery in civil litigation.

//
//
//

### 5. The *Morgan* Doctrine

The Intervenor-Defendants argue that the *Morgan* doctrine provides an independent basis for denying the Plaintiffs' deposition requests. (Doc. 198 at 12-15.)

The *Morgan* doctrine specifies that a party may not involuntarily depose "a high-ranking government official" absent "exceptional circumstances." *United States v. Morgan,* 313 U.S. 409 (1941). Judges "generally only consider subjecting a high-ranking government official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information." *Freedom from Religion Found., Inc. v. Abbott*, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017). The purpose of the *Morgan* doctrine is to allow high ranking government officials to serve in their official capacities without being "unduly entangled in civil litigation." *In re Gold King Mine Release in San Juan Cnty.,* 2021 WL 3207351, at *2 (D.N.M. Mar. 20, 2021).

The Intervenor-Defendants cite *League of United Latin Am. Citizens v. Abbott*, 2022 WL 2866673, at *2 (W.D. Tex. July 6, 2022), to support their assertion that the *Morgan* doctrine protects them from being deposed. In *Abbott,* the plaintiffs alleged that the redistricting plans adopted by the Texas Legislature violated the Equal Protection Clause and sought to depose the Speaker, General Counsel, and Parliamentarian of the Texas House of Representatives about their motives. *Id.* at *2. The court held that the *Morgan* doctrine prevented plaintiffs from deposing the state legislators because "[c]ourts are supposed to insulate high-ranking government officials 'from the constant distraction of testifying in lawsuits' in part because we need the government to function.'" *Id.* (quoting *Jackson Mun. Airport Auth. v. Reeves*, 2020 WL 5648329, at *3 (S.D. Miss. Sept. 22, 2020).

The *Morgan* doctrine does not apply here because the Intervenor-Defendants voluntarily joined this lawsuit. There is no need to insulate the Intervenor-Defendants from the distraction of this lawsuit because they requested to participate in the action. The purposes underpinning the *Morgan* doctrine simply do not apply when state legislators intentionally insert themselves as a party to the litigation.

In conclusion, the Court holds that (1) the discovery sought by the Plaintiffs is relevant to their Equal Protection claim; (2) the Intervenor-Defendants waived their legislative privilege; (3) deliberative process privilege does not apply to Document 15; and (4) the *Morgan* doctrine does not protect Intervenor-Defendants from being deposed. Accordingly, the Intervenor-Defendants must produce documents 3, 6, 14, 15 and 18 and submit to deposition.

**B. Motion for Protective Order**

Plaintiffs move for a protective order to prevent Intervenor-Defendants from deposing minor Plaintiffs.[6] (Doc. 196 at 2.) In the alternative, Plaintiffs request that the Court set reasonable limits on such depositions. (*Id.*) The Court will allow Intervenor-Defendants to depose minor Plaintiffs but impose limitations.

**1. Intervenor-Defendants may depose minor Plaintiffs.**

Plaintiffs' counsel argues that allowing Intervenor-Defendants to depose minor Plaintiffs would subject them to "embarrassment, oppression, or undue burden." (Doc. 196 at 5.) Plaintiffs' counsel also argues that Intervenor-Defendants can obtain relevant information by deposing the minor Plaintiffs' mothers. (*Id.*) Intervenor-Defendants respond that "it is well settled that a defendant has the right to depose the plaintiff." (Doc. 199 at 3.) Intervenor-Defendants argue that depositions of the minor Plaintiffs are permissible under Rule 26 because the information sought is relevant and non-privileged. (*Id.*)

Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information about "any matter, not privileged, which is relevant to the subject matter involved in the pending action" regardless of its admissibility at trial. Fed. R. Civ. P. 26. Additionally, Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court" subject to the restrictions set forth therein. Fed. R. Civ. P.

---

[6] Intervenor-Defendants asserted that if Plaintiffs are permitted to depose them, then they will seek to depose the minor Plaintiffs. (Doc. 199 at 1.) At hearing on the motions, Intervenor-Defendants stated that they had refrained from deposing Plaintiffs believing it would subject the legislators to being deposed. Intervenor-Defendants explain that if the Court orders their depositions, they wish to proceed with deposing the minor Plaintiffs.

- 10 -

30. Depositions are ordinarily allowed unless it is clear the information sought has no possible bearing on the matter at hand. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1031 (E.D. Cal. 2010).

The court may proscribe or limit discovery to prevent abuse. *See* Fed. R. Civ. P. 26©. Under Rule 26(c), upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The court considers all factors to determine whether the totality of the circumstances justifies the entry of a protective order. *Roberts v. Clark Cnty. Sch. Dist.,* 312 F.R.D. 594, 603 (D. Nev. Jan. 11, 2016).

The Court concludes that Intervenor-Defendants may depose the minor Plaintiffs. *See Edgin on behalf of I.E. v. Blue Valley USD 220,* 2021 WL 1750861, at *2 (D. Kan. May 4, 2021) (permitting the deposition of a minor stating "it's highly unusual to entirely preclude a deposition, particularly of a named party in the case."); *Hamilton v. Southland Christian Sch., Inc.*, 2011 WL 13143561, at *3 (M.D. Fla. Apr. 18, 2011) ("The great weight of the decisions permit a deposition when children are parties or witnesses to the claims in dispute, with reasonable restrictions."); *Kuyper v. Board of County Com'rs of Weld County*, 2010 WL 4038831, *1–2 (D. Colo. Oct. 14, 2010) (allowing deposition of seven year old victim of assault four years earlier by violent foster child placed in victim's home, in suit against county); *Graham v. City of New York*, 2010 WL 3034618, *4–5 (E.D. N.Y. Aug. 3, 2010) (allowing deposition to proceed "cautiously and sensitively" of seven year old child who three years earlier had witnessed police forcibly remove his father from the car, handcuff him, and place him in a police vehicle, leaving child alone, in civil rights suit against police); *Gray v. Howlett Lumber Co.*, 2007 WL 2705748 (Mass. Super. Aug. 9, 2007) (allowing deposition of ten-year-old child, who was principal witness to death of sibling which was the basis for the suit, while imposing reasonable restrictions); *In re Transit Management of Southeast Louisiana, Inc.*, 761 So.2d 1270 (La. 2000) (allowing deposition despite seven-year-old child's physician's opinion that deposition would cause

considerable mental stress, in personal injury action). While the Court agrees that Intervenor-Defendants' depositions of minor Plaintiffs may go forward, the Court will impose reasonable limitations.

### 2. Intervenor-Defendants shall comply with the court-imposed limitations.

If the minor Plaintiffs are to be deposed, Plaintiffs' counsel proposes three limitations:

1. Intervenor-Defendants cannot pursue questioning concerning either the legitimacy or the appropriateness of the minor Plaintiffs' medical and/or mental health treatment;

2. Intervenor-Defendants cannot refer to the minor Plaintiffs' medical records and letters from mental health providers or ask questions about the contents of those records/letters; and

3. Intervenor-Defendants cannot ask questions referencing sexual abuse, assault, or misconduct.

(Doc. 196 at 7-8.)

Intervenor-Defendants oppose Plaintiffs' proposed limitations stating that the limitations would preclude Intervenor-Defendants from obtaining relevant and non-privileged information. (Doc. 199 at 3.) However, at hearing, Intervenor-Defendants could not identify any relevant information that that would be precluded by Plaintiffs' first and third limitations.[7] Thus, the Court will impose proposed limitations 1 and 3.

---

[7] When asked at oral argument to provide examples of some questions that the first limitation would prevent, Intervenor-Defendants responded: (1) You (minor Plaintiff) mentioned that you had difficulty concentrating and thinking, can you just tell us about that? (2) You say gender dysphoria interferes with your neurological functioning, can you explain what that means? (May 7, 2024, Hearing, Unofficial Transcript at 50 ¶¶ 3-6.) Intervenor-Defendants' proffered questions would not be precluded by the first limitation because the questions do not relate to the *legitimacy* or the *appropriateness* of the minor Plaintiffs' medical and/or mental health treatment. As Intervenor-Defendants have not identified any relevant information that would be precluded by the first condition, Intervenor-Defendants are precluded from questioning Plaintiffs about the legitimacy and/or the appropriateness of their medical and/or mental health treatment. As the Court previously noted, the "appropriateness of medical treatment for gender dysphoria is not at issue in this case." (Doc. 127 at 17.)

With respect to limitation 2, Intervenor-Defendants and Defendant AAIA did identify relevant information that they might seek in follow up questions to the minor Plaintiffs.[8] Consequently, the Court will allow Intervenor-Defendants to reference the minor Plaintiffs' medical records and letters from mental health providers to the extent that it is necessary to confirm or clarify the record.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** Plaintiffs' Motion to Compel (Doc. 191) is **granted**.

**IT IS FURTHER ORDERED** Plaintiffs' Motion for Protective Order (Doc. 196) is **granted in part and denied in part**. Intervenor-Defendants may depose minor Plaintiffs, subject to the following limitations:

1. Intervenor-Defendants shall not question minor Plaintiffs about the legitimacy or the appropriateness of the Plaintiffs' medical and/or mental health treatment.
2. Intervenor-Defendants may reference the minor Plaintiffs' medical records and/or letters from mental health providers only to the extent that it is necessary to confirm or clarify the record.
3. Intervenor-Defendants shall not ask the minor Plaintiffs any questions regarding sexual abuse, assault, or misconduct.

//
//

---

[8] Intervenor-Defendants stated that while they do not intend to reference Plaintiffs' medical records, it may become necessary if "somebody denies something and we have to bring it up just to get everyone on the same page." (May 7, 2024, Hearing, Unofficial Transcript at 51 ¶¶ 11-13.) When asked for examples of the types of questions that this limitation might interfere with, Intervenor-Defendants proffered: (1) How tall are you (minor Plaintiff) compared to other people in your grade? (2) What percentile is that vis-à-vis your peers? (3) Do you think being tall gives you an advantage when you are running or playing basketball? (May 7, 2024, Hearing, Unofficial Transcript at 51 ¶25; 52 ¶¶ 1-4.) The Court finds that this line of questioning may be relevant to Intervenor-Defendants' defenses, specifically, whether A.R.S. § 15-120.02 is substantially related to an important government interest. *See Karnoski*, 926 F.3d at 1200–01; *Craig*, 429 U.S. at 197.

**IT IS FURTHER ORDERED** re-setting the remaining case deadlines as follows:

1. Plaintiffs' Disclosure of Rule 26(a)(2) Expert Witnesses Material: August 12, 2024;
2. Close of Fact Discovery: August 20, 2024
3. Disclosure of Lay Witnesses: August 20, 2024
4. Defendants' Disclosure of Rule 26(a)(2) Expert Witnesses Material: September 11, 2024
5. Rebuttal Expert Opinions: October 25, 2024
6. Close of Expert Discovery: December 30, 2024
7. Dispositive Motions: January 28, 2025.

Dated this 20th day of June, 2024.

_____
Jennifer G. Zipps
United States District Judge