D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (314) 562-0031
John.Sauer@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Toma*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*,<br><br>Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**Motion for Stay Pending Appeal and Request for Administrative Stay** |

President of the Arizona State Senate Warren Petersen and Speaker of the Arizona House of Representatives Ben Toma (the "Legislative Leaders") respectfully move this Court for a stay pending appeal of the June 20, 2024 order (Doc. 211) granting Plaintiffs' motion to compel. *See* Fed. R. App. P. 8(a)(1)(A); Fed. R. Civ. P. 62(c). If denied, the Legislative Leaders request an administrative stay to allow time for the Ninth Circuit to consider a motion for stay and request for administrative stay. The Legislative Leaders conferred with Plaintiffs regarding this motion. Plaintiffs oppose the motion to stay the Court's June 20, 2024 order.

**INTRODUCTION**

A stay pending appeal of the Court's order should be entered because the Legislative Leaders satisfy all four stay factors.

First, the Legislative Leaders are likely to prevail on appeal. All five writ petition factors the Ninth Circuit will apply favor the Legislative Leaders. The Legislative Leaders have no other adequate way to obtain relief and will suffer damage and prejudice that cannot be corrected on appeal. The Court clearly erred as a matter of law by overruling the *Morgan* doctrine because it did not apply the binding Ninth Circuit test and found the doctrine waived. The Court also clearly erred by overruling the legislative privilege because it improperly allowed discovery of legislative motives and deemed the privilege waived. Some of these errors are often repeated, while others involve new and important issues.

Second, the Legislative Leaders will be irreparably harmed if a stay is not granted. The Legislative Leaders cannot remedy the harm caused by disclosing the documents and sitting for depositions. The bell cannot be unrung. And the chilling effect on legislators will impose substantial costs on the public that an appeal cannot remedy.

Third, issuance of a stay will not substantially injure any other party interested in the proceeding. No defendant has sought discovery from the Legislative Leaders, and thus no defendant will be injured by a stay. Plaintiffs, the only party to seek discovery from the Legislative Leaders, have secured a preliminary injunction that prevents enforcement of the Save Women's Sports Act as to them. Plaintiffs also have requested multiple discovery extensions, including to allow the court to rule on legislative privilege. Appellate review should be afforded the same courtesy.

Fourth and finally, the public interest strongly favors a stay. The public has an interest in confidential deliberations by their legislators in order to achieve sound public policy. The public also has an interest in exhausting appellate review before allowing the legislative privilege to be pierced.

For these reasons, the Court should enter a stay pending appeal.

**ARGUMENT**

In considering whether to grant a stay pending appeal, "a court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation omitted). These factors favor the Legislative Leaders.

The Ninth Circuit has granted stays pending appeal in similar cases. *See, e.g.*, *In re Toma*, No. 23-70179, 2023 WL 8183567, at *1 (9th Cir. Oct. 12, 2023) (appeal of discovery order involving legislative privilege);[1] *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (appeal of discovery order involving First Amendment privilege). This Court should likewise grant a stay pending appeal in this case.

**I.     The Legislative Leaders Are Likely to Succeed on the Merits.**

The Legislative Leaders satisfy the first factor because they are likely to prevail on appeal. The Legislative Leaders intend to seek a writ of mandamus or prohibition from the Ninth Circuit. The Ninth Circuit has "authority to issue a writ of mandamus under the 'All Writs Act,' 28 U.S.C. § 1651." *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) (citation omitted).

The Legislative Leaders are likely to obtain a writ of mandamus. "Mandamus is appropriate to review discovery orders when particularly important interests are at stake." *Perry*, 591 F.3d at 1156–57 (quoting 16 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3935.3 (2d ed.2009)). The Ninth Circuit may "rely on mandamus to resolve new questions that otherwise might elude appellate review or to protect important or clear claims of privilege." *Id.* at 1157 (citing cases) (internal quotations omitted); *see also In re Perez*, 749 F.3d 849, 854 (9th Cir. 2014). The

---

[1] The Ninth Circuit lifted the stay after oral argument. *In re Toma*, No. 23-70179, 2023 WL 8183568, at *1 (9th Cir. Nov. 16, 2023).

Legislative Leaders appeal important issues relating to the legislative privilege and depositions of high-ranking legislators, which implicate important interests relating to the separation of powers and the functioning of the legislative branch.

The Ninth Circuit considers the five *Bauman* factors before granting a writ:

> (1) the petitioner has no other adequate way to obtain the relief sought; (2) the petitioner will suffer damage or prejudice that cannot be corrected on appeal; (3) the district court clearly erred as a matter of law; (4) the error is often repeated or shows the district court's persistent disregard for the federal rules; and (5) there are new and important issues at stake.

*In re U.S. Dep't of Educ.*, 25 F.4th 692, 697–98 (9th Cir. 2022) (citations omitted).

The Ninth Circuit weighs these five factors "holistically" and not mechanically. *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023). "Not every factor need be present at once." *Perry*, 591 F.3d at 1156. The Ninth Circuit may issue a writ "when fewer than five [factors], or only one, are present." *In re Kirkland*, 75 F.4th at 1041 (internal citation omitted). "In fact, rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable." *Hernandez*, 604 F.3d at 1099 (citation omitted). "Ultimately, whether to issue the writ is within this court's discretion." *In re Perez*, 749 F.3d at 854 (citation omitted).

The Legislative Leaders are likely to obtain a writ of mandamus because the *Bauman* factors weigh heavily in their favor.

**A.**     **The Legislative Leaders have no other adequate way to obtain the relief sought.**

In the Ninth Circuit, a discovery order is "interlocutory and non-appealable under 28 U.S.C. §§ 1292(a)(1) and 1292(b)." *Perry*, 591 F.3d at 1157 (citation omitted); *see also Hernandez*, 604 F.3d at 1101. The Ninth Circuit has not "required a litigant to incur a sanction, such as contempt, before it may seek mandamus relief." *In re Kirkland*, 75 F.4th at 1048 (cleaned up). This is especially true for high-ranking government officials. *See In*

*re U.S. Dep't of Educ.*, 25 F.4th at 705; *In re Perez*, 749 F.3d 849, 855 (9th Cir. 2014). And the "unique features" of the legislative privilege and *Morgan* doctrine "suggest that there is no other adequate means of relief." *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) (granting writ in case involving the presidential communications privilege and the deliberative process privilege).

The Legislative Leaders thus satisfy the first *Bauman* factor because they "lack[] an alternative avenue for relief." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1488 (9th Cir. 1989).

**B.    The Legislative Leaders will suffer damage and prejudice that cannot be corrected on appeal.**

The Legislative Leaders also satisfy the second factor because "once the information is out of the bag, you can't stuff it back in." *Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1108 (9th Cir. 2005). The "inquiry under the second *Bauman* factor is closely related to the first." *In re Kirkland*, 75 F.4th at 1051.

1. The Legislative Leaders will suffer damage and prejudice from "the disclosure itself." *Perry*, 591 F.3d at 1158. The Court order requires the Legislative Leaders to produce documents that they withheld as privileged. Doc. 211, at 10. The Ninth Circuit has repeatedly found discovery orders compelling production of privileged communications caused injury that could not be corrected by appeal. *See Perry*, 591 F.3d at 1157-58; *Barton*, 410 F.3d at 1109; *Admiral Ins. Co.*, 881 F.2d at 1491. This is because "the disclosure cannot be undone, by appeal or otherwise." *Barton*, 410 F.3d at 1109.

2. The Legislative Leaders also will suffer damage and prejudice from "the intrusion of the deposition itself." *In re U.S. Dep't of Educ.*, 25 F.4th at 705. The Court order requires the Legislative Leaders to submit to deposition. Doc. 211, at 10. This "harm is not correctable on appeal, even if [the] testimony is excluded at trial." *Id.*; *see also In re Kirkland*, 75 F.4th at 1051 ("[T]he violation of having to give testimony when the bankruptcy court has no authority to compel them to do so cannot be fully remedied post-judgment").

5

3. The Legislative Leaders will suffer damage or prejudice from "the substantial costs imposed on the public interest." *Perry*, 591 F.3d at 1158. The legislative privilege exists "to enable and encourage a representative of the public to discharge his public trust with firmness and success …" *Tenney v. Brandhove*, 341 U.S. 367, 373 (1951) (quoting II WORKS OF JAMES WILSON (Andrews ed. 1896) 38). Early colonial founders believed state protections for legislative speech and debate were "to support the rights of the people," *id.* at 373-74 (quoting *Coffin v. Coffin*, 1808, 4 Mass. 1, 27), and were "essential to the rights of the people," NEW HAMPSHIRE CONSTITUTION OF 1784, PART I, ART. XXX. The "potential chilling effect" from forcing the Legislative Leaders' disclosure and depositions "is therefore substantial, even if the district court's error were eventually corrected on appeal from final judgment." *Perry*, 591 F.3d at 1158.

The Legislative Leaders will suffer damage and prejudice that cannot be corrected on appeal from the disclosure, the intrusion of the depositions, and the substantial costs imposed on the public interest. The Legislative Leaders satisfy the second *Bauman* factor.

### C. The Court clearly erred as a matter of law.

The Ninth Circuit develops the "firm conviction" necessary to determine a clear error of law "when [the Ninth Circuit] has already directly addressed the question at issue or when similar cases from [the Ninth Circuit], cases from the Supreme Court, cases from other circuits, the Constitution, or statutory language definitively show us that a mistake has been committed." *In re U.S. Dep't of Educ.*, 25 F.4th at 698 (internal quotation omitted). The "necessary 'clear error' factor does not require that the issue be one as to which there is established precedent." *Perry*, 591 F.3d at 1159. When the Ninth Circuit has not "squarely addressed an issue," it can find the district court's ruling clearly erroneous "if contrary to an unbroken string of authorities from other jurisdictions." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (cleaned up). And "where a petition for mandamus raises an important issue of first impression, ... a petitioner need show only ordinary (as opposed to clear) error." *In re Kirkland*, 75 F.4th at 1041–42 (cleaned up).

The Legislative Leaders are likely to prevail in showing clear error in overruling the *Morgan* doctrine and overruling the legislative privilege.[2]

### 1. The Court clearly erred by overruling the *Morgan* doctrine.

The Court should have applied the *Morgan* doctrine to deny Plaintiffs' deposition requests. Under this doctrine, high-ranking government officials may not be deposed unless "extraordinary circumstances" exist. *In re U.S. Dep't of Educ.*, 25 F.4th at 701. "Although district courts have occasionally ordered such depositions, circuit courts have issued writs of mandamus to stop them when asked to, generally finding that the circumstances before them were not extraordinary." *Id.* (citing cases); *see also In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1264 (10th Cir. 2022).

#### i. The Court clearly erred because it did not apply the Ninth Circuit's "extraordinary circumstances" test.

To establish extraordinary circumstances to take a high-ranking government official's deposition, the Ninth Circuit requires Plaintiffs to demonstrate, and the Court to find, "(1) a showing of agency bad faith; (2) the information sought from the [high-ranking official] is essential to the case; and (3) the information sought from the [high-ranking official] cannot be obtained in any other way." *In re U.S. Dep't of Educ.*, 25 F.4th at 702. All three factors must be satisfied. *Id.*

The Court did not discuss any of these factors. *See* Doc. 211. In fact, the Court did not even cite to the Ninth Circuit's seminal decision, *In re U.S. Department of Education*. *See id.* The Ninth Circuit's decision "constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017).

Had the Court examined the factors as it was required to do, the Court would have had to deny Plaintiffs' deposition requests. Plaintiffs did not argue any of the *In re U.S.*

---

[2] Because the Legislative Leaders can show clear error, the Ninth Circuit will not need to address the difference between "clear error" and "ordinary error." *In re Kirkland*, 75 F.4th at 1042. For the reasons that the decision is "clear error," *a fortiori*, it is "ordinary error."

7

*Department of Education* factors in their motion to compel, *see* Doc. 191, and they weakly argued only two of the factors on reply, Doc. 200, at 6-9.[3]  For example, as required by *In re U.S. Department of Education*, 25 F.4th at 704, Plaintiffs did not attempt to demonstrate that they had exhausted other means of discovery.  *See* Doc. 200, at 6-9.  As also required by *In re U.S. Department of Education*, 25 F.4th at 703, Plaintiffs did not argue that bad faith existed.  *See* Doc. 200, at 8-9.  Plaintiffs instead cited to out-of-circuit district court decisions, all but one of which predated the Ninth Circuit's *In re U.S. Department of Education* decision, to erroneously suggest that the factor was not required.  *Id.*  And the Court did not analyze these factors at all.

The Ninth Circuit has held that "it constitute[s] clear error for a district court to disregard a published opinion of this court."  *In re Zermeno-Gomez*, 868 F.3d at 1053 (granting writ of mandamus).  The Court clearly erred by not applying *In re U.S. Department of Education* to Plaintiffs' motion to compel.

### ii. The Court clearly erred by ruling the *Morgan* doctrine did not apply because of the Legislative Leaders' intervention.

The Court ruled the *Morgan* doctrine did not apply because the Legislative Leaders "voluntarily joined this lawsuit."  Doc. 211, at 9.  The Court reasoned that "[t]here is no need to insulate the Intervenor-Defendants from the distraction of this lawsuit because they requested to participate in the action."  *Id.*  According to the Court, "[t]he purposes underpinning the *Morgan* doctrine simply do not apply when state legislators intentionally insert themselves as a party to the litigation."  *Id.*  This was the sole basis for the Court's rejection of the *Morgan* doctrine.

The Court did not cite any authority for its conclusions.  *See id.*  Indeed, no authority has been found in which intervention affected the *Morgan* doctrine's application. To the contrary, a high-ranking official who intervened in a case successfully blocked a deposition.  *See In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020) (writ of mandamus

---

[3] "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

8

granted to intervenor former Secretary of State). The same is true for high-ranking officials of a plaintiff, who also voluntarily brought the lawsuit and inserted themselves as a party. *See In re F.D.I.C.*, 58 F.3d 1055, 1062 (5th Cir. 1995) ("[W]e reject the proposition that an administrative agency subjects its high-level officials to discovery when it brings a declaratory judgment action intended to give effect to an agency decision"). As these decisions demonstrate, the Legislative Leaders did not waive the *Morgan* doctrine's protection by intervening in this case.

As intervenors, the Legislative Leaders are a "party in the litigation." Doc. 211, at 2. Many circuit courts, including the Ninth Circuit, have issued writs of mandamus based on the *Morgan* doctrine to prevent depositions of high-ranking officials of parties. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 706; *In re Off. of the Utah Att'y Gen.*, 56 F.4th at 1264; *In re F.D.I.C.*, 58 F.3d at 1062. The separation of powers and distraction avoidance foundations to the *Morgan* doctrine apply whether the high-ranking official is a plaintiff, a defendant, or an intervenor. *See In re U.S. Dep't of Educ.*, 25 F.4th at 699-701.

The Court thus clearly erred by ruling the *Morgan* doctrine did not apply because the Legislative Leaders intervened.

## 2. The Court clearly erred by overruling the legislative privilege.

The Court should have applied the legislative privilege to deny Plaintiffs' requests for depositions and documents. "Since the Glorious Revolution in Britain, and throughout United States history, the [legislative] privilege has been recognized as an important protection of the independence and integrity of the legislature." *United States v. Johnson*, 383 U.S. 169, 178 (1966) (internal citations omitted). The legislative privilege maintains confidentiality within the legislature and protects the legislative process itself. *See In re N. Dakota Legislative Assembly*, 70 F.4th 460, 464 (8th Cir. 2023).

### i. The Court clearly erred by allowing discovery of legislative motives.

The Supreme Court has repeatedly ruled that courts may not inquire into legislative motives, including of state legislators. The Court has been clear: "[N]o inquiry may be

made concerning the motives or wisdom of a state Legislature acting within its proper powers." *State of Arizona v. State of California*, 283 U.S. 423, 455 (1931) n.7 (citing cases). "No inquiry," *id.*, means no discovery on this question.

Contrary to the Court's findings, Doc. 211, at 4-5, inquiries into legislative motives are prohibited even when, like here, a party alleges discrimination violated the Equal Protection Clause. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *Tenney*, 341 U.S. at 788-89. The Ninth Circuit has specifically rejected attempts in equal protection cases to depose legislators about their motives. *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984). As the *City of Las Vegas* decision noted, "[a]llowing discovery of legislative motives" would "create a major departure from the precedent rejecting the use of legislative motives . . . ." *City of Las Vegas*, 747 F.2d at 1298.

Despite this clear Supreme Court and Ninth Circuit authority, the Court concluded discovery of legislative motives was relevant and "may shed light on whether the Arizona legislature acted with a constitutionally permissible purpose." Doc. 211, at 5. This directly conflicts with binding Ninth Circuit precedent. *See Lee*, 908 F.3d at 1187-88; *City of Las Vegas*, 747 F.2d at 1298 (granting writ of mandamus to block depositions). Thus, the Court clearly erred by allowing discovery of legislative motives.

### ii. The Court clearly erred by ruling the Legislative Leaders waived the legislative privilege by intervening.

The Legislative Leaders did not waive the legislative privilege of other legislators. All documents the Court ordered produced were created by other legislators, *see* Doc. 191-2, Ex. 7, at 13 (PDF p. 81), who hold the legislative privilege for these documents. The legislative privilege "cannot be waived by another member." *United States Football League v. National Football League,* 842 F.2d 1335, 1374–75 (2d Cir. 1988). The Court never addressed how the Legislative Leaders could waive the legislative privilege for other legislators. The Court clearly erred by ordering the privilege of other legislators waived.

The Legislative Leaders also did not waive their own legislative privilege. The

Supreme Court has held that "waiver can be found only after explicit and unequivocal renunciation of the protection." *United States v. Helstoski*, 442 U.S. 477, 491 (1979). Because the legislative privilege exists to protect confidentiality and the legislative process, "a waiver should not be lightly inferred." *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997). Exercising rights provided by legislative rules and state law to defend a state law that the Attorney General declined to defend is not an "explicit and unequivocal renunciation of the protection." *Helstoski*, 442 U.S. at 491. Because privileges are always asserted in litigation, the mere fact of engaging in litigation does not raise a plausible inference of waiving any privilege. A plaintiff does not waive attorney-client privilege by filing a lawsuit, and a legislator does not waive privilege by intervening in one.

The Court's order penalizes the legislative branch for defending its interests. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) ("States possess a legitimate interest in the continued enforcement of their own statutes.") (cleaned up). No court decision has been found in which intervention by an executive branch actor—for example, the United States Department of Justice, a state attorney general, a governor, or government agency—waived the executive privilege or deliberative process privilege. No court decision has been found in which intervention or appellate participation by a judge waived judicial immunity or privilege. The legislative branch is not a lesser branch. *See Helstoski*, 442 U.S. at 491 (the Speech or Debate Clause "preserve[s] the constitutional structure of separate, coequal, and independent branches of government. The English and American history of the privilege suggests that any lesser standard would risk intrusion by the Executive and the Judiciary into the sphere of protected legislative activities.").

The Legislative Leaders retain their legislative privilege when they defend institutional interests and state law. The Court clearly erred by ruling the Legislative Leaders waived the legislative privilege by intervening.

The Legislative Leaders thus satisfy the third *Bauman* factor.

### D. The Court's error is often repeated.

The fourth factor, the error is often repeated, is "rarely, if ever, present at the same

11

time" as the fifth factor. *Admiral Ins. Co.*, 881 F.2d at 1491. But the Court's multiple clear errors discussed above present both often-repeated issues and new and important issues. Numerous circuits, including the Ninth Circuit, have granted writs of mandamus to reverse erroneous decisions permitting depositions of high-ranking officials. *See In re U.S. Dep't of Educ.*, 25 F.4th at 701 (citing decisions by six circuits); *In re Off. of the Utah Att'y Gen.*, 56 F.4th at 1264. Numerous circuits, including the Ninth Circuit, have granted writs of mandamus to reverse erroneous decisions permitting discovery of legislative motives. *See, e.g.*, *City of Las Vegas v. Foley*, 747 F.2d at 1298; *In re N. Dakota Legislative Assembly*, 70 F.4th at 463; *see also Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1345 (11th Cir. 2023) (citing cases). The Legislative Leaders thus satisfy the fourth *Bauman* factor.

### E. New and important issues are at stake.

The fifth factor, for new and important issues, is present with "an important issue implicating constitutional concerns." *In re U.S. Dep't of Educ.*, 25 F.4th at 705-06. Allowing high-ranking legislators to be deposed about their motives because they defended state law implicates the separation of powers on multiple levels. This precedent will chill legislators both when passing legislation and when considering whether to defend it.

The fifth factor is also present when there is a significant question of first impression. *Perry*, 591 F.3d at 1158. The Court cited no authority, and none has been found, holding that the *Morgan* doctrine is waived by voluntarily participating in litigation. *Cf. Admiral Ins. Co.*, 881 F.2d at 1491 ("No circuit has heretofore recognized an exception to the attorney-client privilege based on a party's inability to obtain information from an unprivileged source.").

## II. The Legislative Leaders Will Suffer Irreparable Harm Without a Stay.

For the same reasons discussed with respect to the second *Bauman* factor, *see* Part I.B, *supra*, the Court's order denying the legislative privilege and ordering the Legislative Leaders to produce privileged documents and sit for depositions will irreparably harm the Legislative Leaders.

As already discussed, the Legislative Leaders will suffer irreparable injury from "the disclosure itself." *Perry*, 591 F.3d at 1158. The Legislative Leaders also will suffer irreparable injury from "the intrusion of the deposition itself." *In re U.S. Dep't of Educ.*, 25 F.4th at 705. And the Legislative Leaders will suffer irreparable injury from "the substantial costs imposed on the public interest." *Perry*, 591 F.3d at 1158. The Legislative Leaders thus satisfy the second stay factor.

### III. Issuing a Stay Will Not Substantially Injure the Other Parties Interested in the Proceeding.

Granting a stay will not substantially injury any other interested party. None of the other defendants has even sought documents or depositions from the Legislative Leaders and thus will not be injured by a stay. Only Plaintiffs have sought this discovery, and a stay will not substantially injure them.

A stay would prevent Plaintiffs from obtaining five documents withheld as privileged by the Legislative Leaders and deposing them until appellate review is concluded. The Court has reset the fact discovery deadline to August 20, 2024. Doc. 211, at 14. Depending on the length of appellate review, staying the Legislative Leaders' document production and depositions until the conclusion of appellate review could delay the close of fact discovery as well as other case deadlines.

Any delay will not substantially injure Plaintiffs. The Court granted Plaintiffs' motion for preliminary injunction and enjoined enforcement of the Save Women's Sports Act as to them. Doc. 127, at 35. Because the preliminary injunction remains in effect, Plaintiffs will not be injured by any delay in reaching the merits.[4] For that matter, Plaintiffs already have requested two 60-day extensions of the case deadlines. *See* Docs. 182, 205. Plaintiffs' second extension request sought an extension to allow for a judicial decision followed by additional time to obtain the requested discovery. Doc. 205, at 2. Likewise,

---

[4] The Legislative Leaders opposed a previous case delay because the preliminary injunction is causing ongoing harm to the State. Doc. 185, at 4. Though this harm continues, the Legislative Leaders must vigorously defend the privileges and institutional interests of the legislative branch in addition to defending the merits of the law at issue in this case.

a stay would allow the appellate courts to review before Plaintiffs obtain discovery.

The Legislative Leaders thus satisfy the third stay factor.

## IV. The Public Interest Strongly Favors a Stay.

The final factor, where the public interest lies, also favors the Legislative Leaders. The public has a strong interest in the legislative privilege. Legislative privilege protects state legislators from "deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney*, 341 U.S. at 377. Indeed, "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Spallone v. United States*, 493 U.S. 265, 279 (1990). Protecting legislative privilege facilitates better public policy by "allow[ing] duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box." *Lee*, 908 F.3d at 1187; *see also In re N. Dakota Legislative Assembly*, 70 F.4th at 463 ("Legislative privilege, like legislative immunity, reinforces representative democracy by fostering an environment where public servants can undertake their duties without the threat of personal liability or the distraction of incessant litigation.").

The public also has a strong interest in preventing depositions of high-ranking government officials. Such depositions could affect policy development and decisions by these officials. *See In re U.S. Dep't of Educ.*, 25 F.4th at 705 ("The threat of having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract officials from their duties while in office."). These depositions also could affect who is willing to enter public service or hold legislative leadership positions. *See id.* ("If allowed the minute cabinet secretaries leave office, overwhelming and unnecessary discovery could also discourage them from taking that office in the first place or leaving office when there is controversy.").

Finally, the public has a strong interest in upholding state laws and state choices about its representation. Arizona law expressly authorizes the Speaker and President to be heard in this case because the constitutionality of the Save Women's Sports Act is at issue.

A.R.S. § 12-1841(A); *see also Berger*, 597 U.S. at 185 ("The reasons why a State might choose to proceed this way are understandable enough.").[5]  Removing the Legislative Leaders of their privilege when they exercise their statutory right to defend state law—about legislative motives that are expressly shielded from discovery and not relevant to the case—"would risk allowing a private plaintiff to pick its preferred defendants and potentially silence those whom the State deems essential to a fair understanding of its interests." *Berger*, 597 U.S. at 195.  The public interest is in upholding effective state laws.

The public good is in jeopardy if the legislative privilege is pierced and high-ranking government officials are deposed without full appellate review.  The public interest thus strongly supports a stay.

## CONCLUSION

The Legislative Leaders respectfully request that the Court grant this Motion for Stay Pending Appeal.  In the alternative, should the Court deny this Motion, the Legislative Leaders respectfully request an administrative stay of the order on the motion to compel for 21 days to allow time for the Ninth Circuit to consider a motion to stay and request for administrative stay.  The Legislative Leaders respectfully request a ruling by this Court on this Motion by June 28, 2024, to allow the Legislative Leaders time to seek prompt appellate relief, if necessary.

Dated: June 21, 2024                          Respectfully submitted,

                                                      JAMES OTIS LAW GROUP, LLC

                                                      */s/ Justin D. Smith*
                                                      D. John Sauer, Mo. Bar No. 58721*
                                                      Justin D. Smith, Mo. Bar No. 63253*
                                                      13321 North Outer Forty Road, Suite 300
                                                      St. Louis, Missouri 63017

---

[5] A.R.S. § 12-1841 does not expressly waive any privilege nor do its provisions depend on whether another state official already is participating in litigation.

(816) 678-2103
Justin.Smith@james-otis.com
\* *pro hac vice*

*Attorneys for Intervenor-Defendants President Petersen and Speaker Toma*

### CERTIFICATE OF SERVICE

I hereby certify that, on June 21, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*