1    **WO**

2

3

4

5

6                      **IN THE UNITED STATES DISTRICT COURT**

7                          **FOR THE DISTRICT OF ARIZONA**

8

9    Helen Doe, et al.,                          No. CV-23-00185-TUC-JGZ

10                    Plaintiffs,                 **ORDER**

11   v.

12   Thomas C Horne, et al.,

13                    Defendants.

14   _____

15          Pending before the Court is Intervenor-Defendants' 12(b)(6) Motion to Dismiss.

16   (Doc. 146.) Intervenor-Defendants argue Plaintiffs fail to state ADA and Rehabilitation

17   Act claims in Count III of their Complaint because: (1) gender dysphoria is excluded from

18   ADA coverage under 42 U.S.C. § 12211(b); (2) Plaintiffs do not allege that their gender

19   identity disorder results from a physical impairment; and (3) Plaintiffs do not allege that a

20   major life activity has been substantially limited. (*See id.*)[1] The Motion is fully briefed.

21   (Doc. 146, 150, 157.) For the reasons that follow, the Court will deny the Motion. (Doc.

22   146.) The Court concludes that Plaintiffs plausibly state claims under the ADA and the

23   Rehabilitation Act in their Complaint.

24

25   _____

26   [1] Intervenor-Defendants also argue for dismissal of Plaintiff's Equal Protection Claim
     (Count I) and Title IX Claim (Count II) for the reasons set out in the opposition to
27   Plaintiffs' preliminary injunction motion. (Doc. 146 at 11.) As Intervenor-Defendants
     acknowledge, the Court considered and rejected those arguments in resolving the
28   preliminary injunction motion. (Doc. 127.)  The Court, therefore, will not revisit the
     arguments here.

**BACKGROUND**

Plaintiffs filed this action for declaratory and injunction relief, asserting A.R.S. § 15-120.02 violates their rights under the Equal Protection Clause, Title IX, the Americans With Disabilities Act (ADA), and Section 504 of the Rehabilitation Act (RA). (*See* Doc. 1.) A.R.S. § 15-120.02 provides that interscholastic or intramural "[a]thletic teams or sports designated for 'females', 'women' or 'girls' may not be open to students of the male sex." (Doc. 1 at 2.)  If enforced, A.R.S. § 15-120.02 would prohibit Plaintiffs, two transgender girls, from participating on girls' sports teams.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In considering a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (internal citation omitted).

**DISCUSSION**

**I.    Plaintiffs plausibly allege that A.R.S. § 15-120.02 violates their rights under the ADA and Rehabilitation Act.**

**A.  The ADA and the Rehabilitation Act**

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Generally, the same legal principles govern ADA and Rehabilitation Act claims. *M.R. v. Dreyfus,* 697 F.3d 706, 733 (9th Cir. 2012). "Because the applicable provisions of the ADA and the Rehabilitation Act are 'co-extensive,' [courts] discuss both claims together, focusing on the ADA." *Id.* To establish a discrimination claim under either the ADA or the RA, Plaintiffs must establish that (1) they have a disability; (2) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity; and (3) the exclusion, denial, or discrimination was by reason of their disability. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 860 (9th Cir. 2022) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

**B. Gender dysphoria is not excluded under the ADA.**

Intervenor-Defendants argue that Plaintiffs' gender dysphoria is not a "disability" under the ADA because Section 12211(b) excludes from the definition of disability: "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 42 U.S.C. § 12211(b). Although gender dysphoria is not listed in Section 12211(b), Intervenor-Defendants argue that Congress intended to include gender dysphoria in the list of excluded conditions. (Doc. 146 at 3.) The Fourth Circuit addressed these same arguments in *Williams v. Kincaid,* 45 F.4th 759, 766 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 2414 (2023). The Court agrees with that court's analysis and concludes that gender dysphoria is not excluded from coverage by Section 12211(b).

**1.   Section 12211(b) does not explicitly exclude gender dysphoria.**

The text of Section 12211(b) does not mention "gender dysphoria." *See* 42 U.S.C. § 12211; *see Williams,* 45 F.4th at 766–67 ("Although the ADA specifically lists a number of exclusions from the definition of disability, that list does not include gender

dysphoria."). Adding "gender dysphoria" to the list of ADA exclusions would impermissibly rewrite what Congress has chosen not to rewrite. *See U.S. v. Watkins,* 278 F.3d 961, 965 (9th Cir. 2002) (it is a canon of statutory construction that words should not be added to or read into a statute.)

Intervenor-Defendants argue that "gender dysphoria" is excludable as a "gender identity disorder not resulting from physical impairments." (Doc. 146 at 2-5.) However, this Court finds support for the conclusion that "gender dysphoria" is distinct from the category of "gender identity disorders."

The ADA does not define "gender identity disorders." As such, the Court looks to the meaning of the ADA's "terms at the time of its enactment." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020). The contemporary medical definitions are contained in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM"). When the ADA was enacted in 1990, the DSM-3 did not recognize gender dysphoria as a diagnosis. *See Williams*, 45 F.4th at 767. Rather, the DSM-3 recognized "gender identity disorders," of which the essential feature is "an incongruence between assigned sex and gender identity." *Id.* (citing Am. Psych. Ass'n, Diagnostic and Statistical Manual 71 (3d ed., rev. 1987) (DSM-III-R)).

In 2013, the American Psychiatric Association removed "gender identity disorders" from the DSM-5 and added "gender dysphoria" as a diagnosis. *Williams*, 45 F.4th at 767; *see* Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders 451 (5th ed., 2013) (DSM-5). Intervenor-Defendants argue the term "gender dysphoria" replaced the term "gender identity disorder" and did not create a new diagnosis. (Doc. 157 at 2.) Though the DSM-5's replacement of "gender identity disorder" with "gender dysphoria" reflected a shift in medical understanding, the revision was not simply semantic. Indeed, as the Fourth Circuit noted in *Williams*, such a reading ignores the substantive differences between the two diagnoses. 45 F.4th at 767.

Gender identity disorders and gender dysphoria are characterized by different symptoms. Gender dysphoria is distinct from a "gender identity disorder" because it goes beyond merely identifying with a different gender; the essential element of "gender

dysphoria" is the "clinically significant distress" felt by those who experience an incongruence between their assigned sex and their gender identity. DSM-5 at 451–53. The DSM-5 explains that the distress caused by gender dysphoria may result in intense anxiety, depression, suicidal ideation, and even suicide. DSM-5 at 454–55. Further, when left untreated, gender dysphoria can expose transgender individuals to a serious risk of psychological and physical harm. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 771 (9th Cir. 2019). Prior to the DSM-5, there was no diagnosis for these distress symptoms. *See Williams*, 45 F.4th at 767. Thus, while the DSM-3 "pathologized the very existence of transgender people," the DSM-5 "focuses on the dysphoria as the clinical problem, not identity per se." *Id.* at 768-69 (noting not all transgender individuals will experience distress as a result of gender incongruence, but for some, the incongruence results in gender dysphoria); DSM-5 at 451. Notably, in 2009, Congress amended the ADA, instructing courts that the definition of "disability" "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the [ADA's] terms." 42 U.S.C. § 12102(4)(A).  For all of these reasons, the Court concludes that gender dysphoria does not fall under the category of "gender identity disorders" as conceived at the time of the ADA's enactment.

### 3. Gender dysphoria does not belong in the category of "other sexual behavioral disorders."

Intervenor-defendants argue that Section 12211(b)'s exclusion of "other sexual behavior disorders" shows Congress's intent to prohibit the ADA's application to conditions that are sufficiently similar to the more specific categories of conditions that precede it. (Doc. 146 at 5.) Intervenor-Defendants assert that gender dysphoria is an excluded condition under this catchall provision. (*Id.*) However, there is support for the conclusion that gender dysphoria is not sufficiently similar to "transvestism, transsexualism, pedophilia, exhibitionism, and voyeurism" to be included in the catchall provision. *See* 42 U.S.C. § 12211(b).

The phrase "other sexual behavioral disorders" serves as a qualifier that emphasizes the *behavioral* component of the explicitly excluded "sexual disorders." *See* § 12211

(b)(1); *see also Kozak v. CSX Transportation, Inc.*, 2023 WL 4906148, at *6 (W.D.N.Y. Aug. 1, 2023) ("[A]t the end [of Section 12211] is a qualifier that applies to the entire series: 'or other sexual behavior disorders,'" suggesting that "Section 12211 is a list of behavior disorders," with a "behavioral component."). The essential element of "transvestism" is the urge to cross-dress, *see* DSM-III-R-at 288; the essential element of "transsexualism" is the urge to live as a member of the opposite sex (often accomplished through cross-dress or sex reassignment), *see* DSM-III-R at 74; *see also Kozak*, 2023 WL 4906148, at *6 ("'Transsexualism,' as understood in 1987 . . . involved a behavioral component."); the essential element of "pedophilia" is the urge to engage in sexual activity with a prepubescent child, DSM-III-R at 284; the essential element of "exhibitionism" is the urge to expose one's genitals to a stranger, DSM-III-R 282; and the essential element of "voyeurism" is the urge to observe people who are either naked, disrobing, or engaged in sexual activity, DSM-III-R 289. Gender dysphoria is not characterized as a behavioral disorder. *See* DSM-5; *Kozak*, WL 4906148, at *7 ("Gender dysphoria . . . has no behavioral component" and "cannot be understood as a falling within the broad category of 'sexual behavior disorders.'"). As explained above, the essential element of gender dysphoria is the "clinical distress" resulting from an individual's discordant gender identity. DSM-5 at 451–53. Finally, as noted above, Congress instructed the courts to construe the definition of "disability" in favor of broad coverage in its 2009 amendment. *See* 42 U.S.C. § 12102(4)(A). Thus, this Court finds that gender dysphoria is not included in the catchall category "other sexual behavioral disorders," or excluded as a disability.

**C. Plaintiffs properly allege they have a qualifying disability.**

Intervenor-Defendants dispute Plaintiffs' allegation that they have a qualifying disability under the ADA and RA because they do not specify "which major life activity has been impaired." (Doc. 146 at 8-10.) Intervenor-Defendants assert that "playing sports" is not a substantial life activity. (Doc. 146 at 10.)

A disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102. Major life activities include, but are not limited to, caring for oneself, eating, sleeping, learning, reading, concentrating, thinking,

- 6 -

communicating, and working. 42 U.S.C. § 12102 (2)(A). The applicable regulations instruct: "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2 (j)(1)(i).

Plaintiffs plausibly allege that they have a disability that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(A). Plaintiffs allege that they suffer from gender dysphoria. (*See* Doc. 1 at 12 ("Jane was diagnosed with gender dysphoria when she was seven years old and has lived her life as a girl since she was five years old.") *and* Doc. 1 at 14 ("[Megan] was diagnosed with gender dysphoria when she was 10 years old," and "has been receiving puberty-blocking medication since she was 11 years old," as part of her medically-prescribed treatment).) Gender dysphoria is a condition recognized by the American Psychiatric Association, and is described in the DSM-5 as characterized by "clinically significant distress." DSM-5 at 451. Symptoms of gender dysphoria include anxiety, depression, eating disorders, substance abuse, self-harm, and suicide. (Doc. 1 at 8); *see* DSM-5 at 451-59. These symptoms may substantially limit major life activities including, but not limited to, eating, sleeping, learning, reading, concentrating, thinking, communicating, and working. (Doc. 150 at 12.) In fact, the DSM-5 states that the functional consequences of gender dysphoria include "interfere[nce] with daily activities." DSM-5 at 454-454. Because Plaintiffs suffer from gender dysphoria, and gender dysphoria manifests in symptoms that interfere with daily activities, the Court concludes that Plaintiffs have sufficiently allege that they have a qualifying disability under the ADA.

Intervenor-Defendants' assertion that "playing sports" is not a substantial life activity confuses the analysis. (Doc. 146 at 9.) The ADA and RA do not prohibit discrimination in the provision of "major life activities." Rather, the ADA and RA prohibit covered entities from precluding qualified individuals *with a disability* from participating in a program, service, or activity, or otherwise discriminating against them because of their disability. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019) (emphasis added). The issue is not whether "playing sports" is a major life activity, but rather, whether "playing sports" is an activity from which Plaintiffs have been excluded

- 7 -

based on their disability. The Court finds that Plaintiffs have sufficiently alleged that they suffer from gender dysphoria, and that gender dysphoria qualifies as a disability under the ADA and RA. Accordingly,

**IT IS ORDERED** Intervenor-Defendants' Motion to Dismiss (Doc. 146) is **denied**.

**IT IS FURTHER ORDERED** Intervenor-Defendants must file an Answer to the Complaint on or before **July 15, 2024**.

Dated this 21st day of June, 2024.

Jennifer G. Zipps
United States District Judge