D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
Michael E. Talent, Mo. Bar No. 73339*
Kenneth C. Capps, Mo. Bar No. 70908*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Telephone: (816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Montenegro*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00185-JGZ <br><br> **Reply in Support of Motion to Exclude Expert Testimony and Reports of Dr. Daniel Shumer, M.D., MPH** |

## INTRODUCTION

Plaintiffs' *post hoc* story in response to the serious plagiarism allegations against Dr. Shumer is to claim he copied only himself. This *post hoc* story fails for five reasons.

First, Dr. Shumer testified under oath that he made a mistake by not citing Dr. Safer and Dr. Rosenthal and that he plagiarized their reports under the University of Michigan's plagiarism definition. Plaintiffs' story directly contradicts Dr. Shumer's testimony.

Second, Dr. Shumer's report contains many plagiarized paragraphs that Plaintiffs

do not claim came from an earlier Shumer report.

Third, the report that Plaintiffs claim Dr. Shumer copied was produced after Dr. Safer's initial report in the Idaho case, which Dr. Shumer said he reviewed. Dr. Shumer's report contains identical or virtually identical language to Dr. Safer's Idaho report.

Fourth, Dr. Shumer's rebuttal report contains identical or virtually identical language to Dr. Safer's rebuttal report in the West Virginia case. None of this language is contained in the 2020 Shumer report that Plaintiffs claim Dr. Shumer copied here.

Fifth, if Dr. Shumer's testimony is disregarded, to the extent that any language pre-dated Dr. Rosenthal, there is reason to believe that it also pre-dated the 2020 Shumer report.

Dr. Shumer should be excluded as unreliable because his testimony, which is supported by the evidence, is that he plagiarized other expert reports. Dr. Shumer should also be excluded because Plaintiffs do not dispute that he failed to present the required objective proof demonstrating that his opinions are good science. Plaintiffs also do not dispute that Dr. Shumer failed to independently verify Plaintiff-specific information, which warrants excluding these opinions. Finally, Dr. Shumer should be excluded because he is not qualified to present the sports opinions that he offers.

## ARGUMENT

**I.    Dr. Shumer's plagiarism is extensive, established, and disqualifying.**

**A.    Dr. Shumer's sworn testimony contradicts Plaintiffs' *post hoc* story.**

Plaintiffs completely ignore Dr. Shumer's sworn testimony after he was confronted by language in his expert report that was identical or virtually identical to other experts in other cases. Dr. Shumer testified that "it's clear that some of the words I used were used from other sources without appropriate credit and that that meets [the University of Michigan's] definition [of plagiarism]." Doc. 265-1, at 240:21-24. Dr. Shumer also testified that he "certainly can see through the process of going through some of those paragraphs that some of the words that -- that made up some of the paragraphs were taken from or inspired by the reports from Dr. Safer or Dr. Rosenthal." *Id.* at 234:24-235:3.

Given the many instances of identical and virtually identical language between the

reports, Dr. Shumer admitted that "it's close enough to plagiarism that I wish I would have cited the materials differently." *Id.* at 235:25-236:1. Indeed, Dr. Shumer testified three times that citing the reports by Dr. Safer and Dr. Rosenthal "in my report is something that I should have done." *Id.* at 233:11-13; *see also id.* at 234:1-4, 235:10-11 ("I should have cited the paragraphs that you outlined"). And when asked if he thought it was a mistake to not cite Dr. Safer or Dr. Rosenthal in his expert report, Dr. Shumer unequivocally responded, "Yes. I wish that I had." *Id.* at 234:11-13.

Dr. Shumer's testimony cannot be reconciled with Plaintiffs' *post hoc* story that Dr. Shumer was simply "consistent" with his "own thoughts and ideas" over time. Doc. 272, at 1. But despite ample opportunity to do so, Dr. Shumer did not testify that the language came from his own 2020 declaration in *Roe v. Herrington*, even though that case was discussed earlier in his deposition. Doc. 265-1, at 27:25-28:15. In addition, even though Plaintiffs' counsel retained Dr. Shumer for that case, *id.* at 28:10-12, counsel did not suggest during her deposition questioning of Dr. Shumer that any of his past declarations, whether from *Herrington* or any other case, was the source of the identical or virtually identical language. *See id.* at 249:14-253:23.

Based on his admissions, Dr. Shumer's opinions should be excluded as unreliable. Indeed, by advancing a narrative completely different from Dr. Shumer's testimony, Plaintiffs implicitly agree that Dr. Shumer's testimony cannot be trusted.

**B.    Dr. Shumer's case-specific opinions contradict Plaintiffs' *post hoc* story.**

Plaintiffs do not claim that the plagiarized language in Dr. Shumer's "Sports and Gender" and "Plaintiffs and Arizona's Ban on Transgender Girls in Sports" sections (Doc. 265-2, at ¶¶ 36, 37, 47) comes from an earlier Shumer report. Instead, Plaintiffs concede (at 9) "some limited overlap in structure and themes between Dr. Shumer's 'Sports and Gender' section and the 2022 Safer Declaration."

But Plaintiffs are wrong that "structural similarities" and "overlapping language," *id.* at 9-10, is due to "discussing the same underlying materials and clinical guidelines" and that "overlap when describing accepted principles in the field is expected," *id.* at 10. For

3

example, one of Dr. Shumer's key opinions identified by Plaintiffs is that "[t]he biological driver of average group differences in athletic performance is circulating testosterone, not anatomy or genetics." *Id.* at 3. The language used by Dr. Shumer is virtually identical to the language used by Dr. Safer. *See* Doc. 265-5, at 5-6 (comparing Safer ¶ 25 with Shumer ¶ 37). As Plaintiffs' own chart demonstrates, the Handelsman article does not use language remotely similar to "biological driver," "average group differences in athletic performance," or "anatomy or genetics." *See* Doc. 272-1, at 86-88. Another Shumer opinion that discusses Arizona's law and the biological driver of differences is even less similar to the Handelsman article, *see* Doc. 272-1, at 87-88, but again virtually identical to Dr. Safer's report, *see* Doc. 265-5, at 6 (comparing Safer ¶ 49 with Shumer ¶ 47).

Another key opinion on which Plaintiffs rely (at 3) is that "[t]here is no medical justification for Arizona to exclude Plaintiffs from girls' sports teams." Once again, the "there is no medical justification" language comes from Dr. Safer's report. *Compare* Doc. 265-4, at ¶ 46 *with* Doc. 265-2, at ¶ 41.

Contrary to Plaintiffs' claims (at 11), these are case-specific opinions that "were copied from another source."[1] They are not reliable.

**C.    Dr. Safer's Idaho report contradicts Plaintiffs' *post hoc* story.**

For the other similarities involving Dr. Safer, Plaintiffs contend (at 9) that "most of the language in the earlier sections of Dr. Shumer's report . . . was language Dr. Shumer had already used as early as 2020." Once again, the facts disprove Plaintiffs' story.

After claiming that he never studied the reports in a challenge to a similar Idaho law, or even knew the experts, Doc. 265-1, at 43:17-44:5, Dr. Shumer testified that he believed he had reviewed Dr. Safer's Idaho report. *Id.* at 201:2-14, 203:6-13. Dr. Safer filed his Idaho report in April 2020 (attached as Exhibit 7), more than six months before the *Herrington* report that Plaintiffs' claim that Dr. Shumer copied. The language in Dr.

---

[1] Dr. Shumer testified that both the "Sports and Gender" and "Plaintiffs and Arizona's Ban on Transgender Girls in Sports" sections of his report are "unique to this case," Doc. 265-1, at 14:6-22, and both sections contain language that is identical or virtually identical to Dr. Safer's report. *See* Doc. 265-5, at 5-6.

4

1   Shumer's report that is identical or virtually identical to Dr. Safer's 2022 West Virginia
2   report is also found in Dr. Safer's 2020 Idaho report. To assist the Court, Exhibit 8 contains
3   a counsel-prepared demonstrative that compares both Safer reports, the Shumer *Herrington*
4   report, and Shumer's report in this case.

5   Comparing these reports shows that Dr. Shumer is far more likely to have
6   plagiarized Dr. Safer than himself. Plaintiffs cannot find in Shumer's *Herrington* report
7   language similar to Paragraphs 18 and 19 of Dr. Shumer's report, which are virtually
8   identical to Paragraphs 19 and 20 in Dr. Safer's Idaho and West Virginia reports. *See* Ex.
9   8, at 1-2. For instance, Dr. Shumer's report in this case even contains the same argument
10  as Dr. Safer that "[t]he convention that girls wear pink and have longer hair, or that boys
11  were blue and have shorter hair" are "socially constructed gender roles." *Id.* Despite this
12  identical language, Plaintiffs now claim that Dr. Shumer drew this information from the
13  Endocrine Society Guidelines, Tbl.1, but which they do not claim contains this same
14  language. *See* Doc. 272-1, at 86. Ironically, the largest difference between Dr. Shumer's
15  Paragraph 19 and Dr. Safer's Paragraph 20 is Dr. Shumer's omission of the citation to the
16  Endocrine Society Guidelines. *See* Ex. 8, at 1-2. In addition, Plaintiffs' *post hoc* story is
17  again inconsistent with Dr. Shumer's testimony, which was that he cited all the scientific
18  research he gathered in Footnotes 1-3 of his report. Doc. 265-1, at 15:1-5, 16:1-3. Dr.
19  Shumer did not cite the Endocrine Society Guidelines in these footnotes or anywhere else
20  in his report. *See* Doc. 265-2.

21  Other paragraphs also show that Dr. Shumer plagiarized Dr. Safer, not himself. For
22  example, Paragraph 20 of Dr. Shumer's report in this case is nothing like Paragraph 20 in
23  his *Herrington* report. *See* Doc. 272-1, at 85. However, it is virtually identical to Paragraph
24  21 of Dr. Safer's Idaho and West Virginia reports. *See* Ex. 8, at 2. Likewise, the first
25  sentence of Paragraph 16 of Dr. Shumer's report in this case is identical to Paragraph 17 in
26  Dr. Safer's Idaho and West Virginia reports.[2] *Id.* at 1.

---

[2] The last sentence of Paragraph 16 of Dr. Shumer's report ("Everyone has a gender

Contrary to Plaintiffs' claims, but consistent with Dr. Shumer's testimony, Dr. Shumer plagiarized Dr. Safer, not himself.

### D. Dr. Shumer's rebuttal report contradicts Plaintiffs' *post hoc* story.

Given the serious concerns with Dr. Shumer's report, Plaintiffs cite Dr. Shumer's rebuttal report to provide alternative support for his opinions. *See* Doc. 272-1, at 27-77 (Ex. F). But the rebuttal report contradicts Plaintiffs' claim (at 6) that Dr. Shumer was simply citing "to the same underlying sources" that provide "foundational language" and are "ubiquitous in the field."

Just like his report, Dr. Shumer's rebuttal report contains at least nine different instances of identical or virtually identical language to Dr. Safer's rebuttal report in the West Virginia case (attached as Exhibit 9). To assist the Court, Exhibit 10 contains a counsel-prepared demonstrative of Dr. Shumer's rebuttal report plagiarism.

This copying cannot be attributed to Dr. Shumer's *Herrington* report or similar phrasing of background material. Many of the paragraphs involve Dr. Safer's rebuttal to Dr. Brown in the West Virginia case. For example, Safer rebuttal paragraphs 5, 8, 9, 10, 15, and 17 are replicated in full or in part with minor tweaks in Shumer rebuttal paragraphs 5, 8, 24, 33, 34, 35, 51, and 129. *See* Ex. 10. Furthermore, many of the paragraphs involve sports-specific issues. *See id.* These issues are specific to the issues in this case and West Virginia, which again strongly supports what Dr. Shumer admitted to in his deposition: that they "were taken from … Dr. Safer … ." Doc. 265-1, at 235:2–3.

### E. Earlier legal filings contradict Plaintiffs' *post hoc* story.

Plaintiffs claim (at 7, 9) that identical or virtually identical language found in Dr. Rosenthal's report is "basic methodology or background information" that are actually "his own evidence from 2020." Plaintiffs' story contradicts Dr. Shumer's testimony that this language came from Dr. Rosenthal. *See* § 1.A, *supra*. But to the extent that any language

---

identity") is found in a different Idaho report that also pre-dates Dr. Shumer's *Herrington* report. *See* Doc. 22-2, Expert Declaration of Deanna Adkins, MD, 1:20-cv-00184 (D. Idaho Apr. 30, 2020), at ¶ 15. Adkins Paragraphs 14 and 18 also contain *Herrington* language in Paragraphs 25 and 26 on which Plaintiffs rely.

6

pre-dated Dr. Rosenthal, it also pre-dated Dr. Shumer's *Herrington* report. For example, Dr. Shumer's Paragraph 25, 26, and 29 contain similar language to Paragraphs 22, 26, 27, and 29 in a 2018 complaint filed by some Plaintiffs' counsel. *See* Doc. 1, 6:18-cv-00102 (M.D. Fla. Jan. 19, 2018). Likewise, Dr. Shumer's Paragraphs 23, 25, 26 contain similar language to Paragraphs 20, 27, and 28 of an August 2020 expert report in a case also handled by some Plaintiffs' counsel. *See* Doc. 5-4, 4:20-cv-00335 (D. Ariz. Aug. 6, 2020).

In light of Dr. Shumer's testimony, the plagiarism of Dr. Safer's report and rebuttal report, and the pre-*Herrington* examples of identical or virtually identical language, there is no reason to believe that any of the disputed paragraphs originated with Dr. Shumer.

### F. Dr. Shumer's plagiarism requires his exclusion.

Dr. Shumer's opinions suffer from a systemic plagiarism problem. Plaintiffs' *post hoc* story conflicts with Dr. Shumer's testimony and the factual evidence. It is plagiarism "all the way down,"[3] and the only consistency is a disqualifying "lack of candor . . . ." *Henderson v. Lockheed Martin Corp.*, 723 F. Supp. 3d 1147, 1151 (M.D. Fla. 2024); *see also Thomsen v. NaphCare, Inc.*, 2023 WL 8701971, at *6 (D. Or. Dec. 15, 2023).

Based on this extensive plagiarism, Dr. Shumer should be excluded for at least four reasons. First, as the proponent of Dr. Shumer's testimony, Plaintiffs have "the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." FED. R. EVID. 702 advisory committee's note to 2000 amendments. Plaintiffs have failed to meet that burden by presenting a *post hoc* story for Dr. Shumer's plagiarism—indeed, their story is disproven.

Second, as a matter of law, Plaintiffs' *post hoc* story is insufficient to prevent Dr. Shumer's exclusion. It is the expert who "must explain precisely how [he] went about reaching [his] conclusions and point to some objective source . . . to show that [he has] followed the scientific method." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1318–19 (9th Cir. 1995). If the rationalizations of an attorney can establish reliability, then "[a]n

---

[3] *See Rapanos v. United States*, 547 U.S. 715, 754 n.14 (2006) (plurality opinion) (discussing the saying and its origins).

expert witness … is merely a party's lawyer's avatar [and] contributes nothing useful to the decisional process." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 941 (E.D. Mich. 2014).  It also contradicts the rules of procedure.  Rule 26(a)(2)(B) requires the expert's report to disclose "the basis and reasons for" an expert's opinions as well as "the facts or data" that the expert considered.  The rule does not permit an expert's proponents to supply those items in response to a *Daubert* motion.  Rather, Rule 37(c)(1) forbids it: "If a party fails to provide information … required by Rule 26(a) … the party is not allowed to use that information … to supply evidence on a motion."

Third, Dr. Shumer's concession that his work constituted plagiarism within the meaning of the University of Michigan's Standard Practice Guide, *see* Doc. 265-1, at 240:20–24, is dispositive.  This concession establishes that Dr. Shumer has not employed "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Plaintiffs' applicability argument (at 9 n.5) ignores the Supreme Court's instruction, and Plaintiffs never dispute that this instruction applies to these facts.

Fourth, Dr. Shumer's plagiarism shows a lack of rigor that "is sufficient reason" to exclude an expert. *Henderson*, 723 F. Supp. 3d at 1152 (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 152).  As this briefing has shown, "it is … overwhelming to try to make heads or tails of just what is" Dr. Shumer's work and what is the work of others. *Id.* at 1151.  The plethora of places from which Dr. Shumer's opinions may have come means he has failed to "explain[ ] how he went about reaching his conclusions" or to point "to an objective source demonstrating that his methods and premises [are] generally accepted." *Lust ex rel. Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 597 (9th Cir. 1996).

*Moore v. BASF Corp.*, 2012 WL 6002831 (E.D. La. Nov. 30, 2012), is illustrative and on point.  There, the expert not only plagiarized, but he also "testified that the report he proffered was his original drafting and that he had not reviewed other expert reports." *Id.* at *7.  Only when confronted with his plagiarism did he concede that "he saw [another expert's] report and at the very least took notes." *Id.*  The plagiarism, and subsequent

dissembling of it, rendered the expert's opinions "unreliable." *Id.*

Dr. Shumer's actions and testimony mirror the expert in *Moore*. Doc. 265, at 8-10. Here, as in *Moore*, Dr. Shumer's "[r]eliability is undermined" by his plagiarism and his testimony "that he [did] not review[ ] any other expert reports, despite having copied his conclusions from another expert report . . . ." *Thomsen*, 2023 WL 8701971, at *6 (citing *Moore*, 2012 WL 6002831, at *7).

Plaintiffs have no answer to *Moore*. They instead distinguish (at 12) a different, and irrelevant, part of the opinion. But their failure is broader. Plaintiffs have no principled means of distinguishing the cases that the Legislative Leaders cited. For example, they claim (at 11) that the courts in *Snyder v. Bank of America, N.A.*, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020), and *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 2017 WL 11457208 (M.D. Fla. Apr. 13, 2017), excluded plagiarizing experts because those experts "were unqualified . . . ." But that gets it backwards. Plagiarism "demonstrate[s] the proffered expert's lack of expertise." *Thomsen*, 2023 WL 8701971, at *6 (discussing *Snyder*, 2020 WL 6462400, at *4). Dr. Shumer's plagiarism thus underscores his lack of expertise to opine on a key issue in this case: whether male puberty is the driver of men's athletic advantages over women. *See*, *e.g.*, *infra* Argument § III; Doc. 265, at 11–13. And plagiarism, plus subsequent attempts to conceal it, establishes unreliability. *See Spiral Direct*, 2017 WL 11457208, at *2; *Raymo v. Sec'y of Health & Human Servs.*, 2014 WL 1092274, at *14 (Fed. Ct. Cl. Feb. 24, 2014).

In sum, extensive evidence shows that Dr. Shumer plagiarized key portions of his expert report and rebuttal report. Thus, Dr. Shumer should be excluded as unreliable.

**II.    Dr. Shumer is not reliable because his opinions lack the necessary support.**

Plagiarism is not the only fatal flaw in Dr. Shumer's report. The Legislative Leaders pointed out that Dr. Shumer did not have the objective proof required by the Ninth Circuit demonstrating that his opinions are good science. *See* Doc. 265, at 13-16 (applying *Daubert*, 43 F.3d at 1316). Surprisingly, Plaintiffs have no response. Plaintiffs do not attempt to identify objective proof supporting Dr. Shumer's opinions. Dr. Shumer should

be excluded as unreliable because it is undisputed that he does not have the objective proof required by the Ninth Circuit to support his opinions.

In addition, Dr. Shumer's Plaintiff-specific opinions (Doc. 265-2, at ¶¶ 42-45, 48-49) should be excluded as unreliable for the additional reason that he admitted to not independently verifying any facts. Dr. Shumer testified that he took no steps to independently verify any Plaintiff-specific information, which was entirely provided by Plaintiffs' counsel. Doc. 265-1, at 242:12-242:18. Plaintiffs do not dispute this testimony. *Compare* Doc. 265, at 14 *with* Doc. 272. Because it is undisputed that Dr. Shumer did not independently verify his Plaintiff-specific opinions, these opinions also must be excluded. *See, e.g.*, *Baker v. Firstcom Music*, No. LA 16-CV-08931, 2018 WL 2676636, at *2 (C.D. Cal. May 8, 2018) ("experts are expected to verify the reliability of the data underlying their conclusions independently instead of simply adopting the representations of an interested party") (citing cases); *see also In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999) (excluding medical expert who relied entirely on information provided by counsel rather than a physical examination or medical records).

**III.     Dr. Shumer is not qualified to provide sports-specific expert testimony.**

Plaintiffs' argument (at 12-14) that Dr. Shumer is qualified to provide his sports-specific opinions, and that his opinions on this front are reliable, fares no better. Plaintiffs focus on Dr. Shumer's opinion that "the biological cause of average differences in athletic performance between men and women is the rise in circulating levels of testosterone beginning in endogenous male puberty." *Id.* at 12 (quotations omitted). But Plaintiffs cannot connect Dr. Shumer's experience and qualifications to what is relevant to this case: the source of athletic performance differences between men and women. Dr. Shumer is not an expert in "[e]xtrapolating … how each of those changes [to the body] impact sports performance in various sports." Doc. 265-1, at 143:22–144:1. He has not "observed any of [his] patients … playing sports," seen their athletic abilities like running or jumping, or measured characteristics pertinent to sports performance like muscle mass or grip strength. *Id.* at 142:22–143:17; *see also* Doc. 265, at 12.

Plaintiffs provide nothing else to establish Dr. Shumer's expert qualifications other than the fact that he is a pediatric endocrinologist. *See* Doc. 272, at 12. How that lets him opine that male puberty alone explains the "average differences in athletic performance between men and women" is never explained—yet it must be explained for his testimony to be admissible. *See*, *e.g.*, *Lust*, 89 F.3d at 598 ("It is the proponent of the expert who has the burden of proving admissibility.").

Indeed, Plaintiffs' argument improperly focuses "on the conclusions" of Dr. Shumer's report instead of his "principles and methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). For example, they assert (at 13) that his conclusions are "logical." But that reveals that Plaintiffs cannot show that Dr. Shumer's conclusions rest on something besides "subjective belief or unsupported speculation" untethered from "the methods and procedures of science." *Daubert*, 509 U.S. at 590. Plaintiffs cannot shift their burden to the Legislative Leaders to prove "why performance metrics are required to support" Dr. Shumer's opinions. *See* Doc. 272, at 13. Instead, Plaintiffs needed to show "the scientific [or other methodological] validity" of Dr. Shumer's analysis "and thus the evidentiary relevance and reliability." *Daubert*, 509 U.S. at 594–95. They did not.

## IV. Time is available for a reasoned decision or a *Daubert* hearing.

Finally, Plaintiffs ask the Court for an expedited ruling. Under the current briefing schedule, Plaintiffs' summary judgment opposition and cross-motion are not due until May 30, 2025. Doc. 276, ¶ 6. This schedule does not require an expedited decision. Indeed, time is available for a reasoned decision or, if the Court believes it would be helpful, a *Daubert* hearing. " 'Haste makes waste' is an old adage. It has survived because it is right so often." *Kusay v. United States*, 62 F.3d 192, 195 (7th Cir. 1995).

## CONCLUSION

For these reasons, President Petersen and Speaker Montenegro respectfully request that the Court exclude Dr. Shumer's testimony and reports from this litigation, or, in the alternative, hold a *Daubert* hearing for Dr. Shumer.

| | | |
|---|---|---|
| Dated: March 26, 2025 | | Respectfully submitted, |

JAMES OTIS LAW GROUP, LLC

<u>/s/ Justin D. Smith</u>
D. John Sauer, Mo. Bar No. 58721*
Justin D. Smith, Mo. Bar No. 63253*
Michael E. Talent, Mo. Bar No. 73339*
Kenneth C. Capps, Mo. Bar No. 70908*
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com
* *pro hac vice*

*Attorneys for Intervenor-Defendants President Petersen and Speaker Montenegro*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on March 26, 2025, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<u>/s/ Justin D. Smith</u>