**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona 85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Caitlin B Fitz-Maurice, #039867
admin@wb-law.com

Maria Syms, # 023019
Director of Legal Services
Arizona Department of Education
1535 W Jefferson, BIN #50
Phoenix, AZ 85007
602-542-5240
Maria.Syms@azed.gov

*Attorneys for Defendant Thomas C. Horne*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Jane Doe, by her next friends and parents Helen Doe and James Doe; and Megan Roe, by her next friends and parents; Kate Roe and Robert Roe,**<br><br>Plaintiffs,<br><br>v.<br><br>**Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; Arizona Interscholastic Association, Inc.,**<br><br>Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**DEFENDANT THOMAS C. HORNE'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction ("Defendant Horne"), by and through undersigned counsel hereby moves for summary judgment, and by this motion to dismiss Plaintiffs' Jane Doe and Megan Roe ("Plaintiffs") claims for relief under Title IX, Count II of their Complaint, for the reasons set forth in the accompanying Memorandum of Points and Authorities and the Separate Consolidated Statement of Undisputed Material Facts ("SOF"). Defendant Horne also hereby joins the summary judgment motion filed by President of the Arizona State Senate Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro (referred to as the "Legislative Leaders"), also incorporated in this motion. Based on arguments presented in both motions, the Court shall grant summary judgment against Plaintiffs.

This Motion is brought pursuant to Federal Rules of Civil Procedure, Rule 56, and is supported by the following Memorandum of Points and Authorities, the Motion for Summary Judgment by the Legislative Leaders, and the accompanying SOF.

**RESPECTFULLY SUBMITTED** on April 30, 2025.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Caitlin B. Fitz-Maurice*
Dennis I. Wilenchik, Esq.
Caitlin B. Fitz-Maurice, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

and

Maria Syms
Director of Legal Services
Arizona Department of Education
1535 W Jefferson, BIN #50
Phoenix, AZ 85007
Maria.Syms@azed.gov

*Attorneys for Defendant Thomas C. Horne*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On January 20, 2025, President Trump issued an Executive Order, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*. Pursuant to this Order, the United States Department of Education ("ED") and Office for Civil Rights ("OCR") is enforcing Title IX consistent with President Trump's Order to "enforce all sex-protective laws to promote [the] reality" that there are "two sexes, male and female," and that "[t]hese sexes are not changeable and are grounded in fundamental and incontrovertible reality." Pursuant to the Executive Order, any investigations initiated under the prior 2024 Title IX Rule should be immediately reevaluated to ensure consistency with the 2020 Title IX Rule, which reflects the sentiment that there are two biological sexes, male and female.

On February 5, 2025, President Trump signed an Executive Order, *Keeping Men Out of Women's Sports*. This Order clarifies that the policy of the United States is to rescind all funds from educational programs that deprive women and girls of fair athletic opportunities and that the definitions in the Executive Order 14168 from January 20, 2025, control and apply. The current directive is to define 'sex' by "two sexes, male and female," which are "not changeable." This guidance follows federal court precedent that "ignoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities." *See Tennessee v. Cardona*, 24-cv-00072 at 73 (E.D. Ky. 2024). *See also Kansas v. U.S. Dept. of Education*, 24-cv-04041 at 23 (D. Kan. 2024)(highlighting "Congress' goals of protecting biological women in education").

Further, according to the February Executive Order, actions will be prioritized against such educational institutions that deny female students an equal opportunity to participate in sports, "by requiring them [female students] to compete with or against or to appear unclothed before males." In fact, the Ninth Circuit recently spoke on the importance of this inherent privacy when determining whether legislation was compliant with Title IX: "[t]he privacy interest in avoiding bodily exposure is most strongly implicated in locker rooms and communal shower rooms that

3

lack curtains or stalls." *See Roe v. Critchfield*, No. 23-2807, 2025 WL 865721, at *3 (9th Cir. Mar. 20, 2025)

This Court cannot find that Defendant Horne is in violation of Title IX by enforcing the Save Women's Sports Act, since this legislation is consistent with President Trump's February 5, 2025 directive that under Title IX, "educational institutions receiving Federal funds cannot deny women an equal opportunity to participate in sports."

## II.    RELEVANT BACKGROUND AND FACTS

Plaintiffs' Complaint filed on April 17, 2023, as against Defendant Horne, includes violations of Equal Protection, Title IX, the Americans with Disabilities Act, and the Rehabilitation Act for enforcement of the Save Women's Sports Act ("SWSA"). The SWSA allows any athletic team or sport, sponsored by a public school or a private school whose students or teams compete against a public school, to designate the team based on the biological sex of the students who participate in the team or sport, which includes the two sexes in addition to "coed" or "mixed" teams, which are inclusive of both. Explicitly, the Act states: "Athletic teams or sports designated for 'females', 'women' or 'girls' may not be open to students of the male sex." *See* SOF ¶ *1;* SWSA*,* at § 15-120.02(B).

Plaintiffs are two biological boys who play on girls' sports teams. Plaintiffs' complaint does not contemplate the possibility of either Plaintiff being able to play on a co-ed or mixed team. Plaintiffs' Count II is against all Defendants for a violation of Title IX, 20 U.S.C. § 1681 *et seq.* Plaintiffs allege that under Title IX, "discrimination 'on the basis of sex' encompasses discrimination against individuals because they are transgender." (citing *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022). In a parenthetical, Plaintiffs claim the Court in *Doe v. Snyder* holds that discrimination against transgender individuals violates Title IX.

Title IX provides the exact opposite of what Plaintiffs claim; it protects girls and women to afford them the opportunity to compete and to excel, without facing any harm of having to compete against biological boys.

4

### III. LEGAL ARGUMENT

#### A. SUMMARY JUDGMENT

The Court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* F.R.C.P. 56(a). The nonmoving party must go beyond the pleadings and do more than simply show there is some 'metaphysical doubt' as to the material facts. *See Scott v. Harris*, 550 U.S. 372, 380 (2007)(citing to *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* (citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))(emphasis in original). In short, when there are two different stories, "one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts when ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. For the reasons set forth here, there is no genuine issue for trial as to Plaintiffs' requested relief.

#### B. COUNT II OF PLAINTIFFS' COMPLAINT FOR VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 MUST BE DISMISSED

On June 23, 1972, Congress enacted Title IX of the Education Amendments in response to the discrimination of women in educational programs and activities: "No person in the United States shall, **on the basis of sex**, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance . . . ." *See* 20 U.S.C. § 1681(a)(emphasis added). At Title IX's inception, Senator Birch Bayh of Indiana first introduced the amendment to Senate to end "discrimination against women in the American educational system." 118 Cong. Rec. 5803 (1972). A year before Sen. Bayh's amendment, Representative Edith Green of Oregon had attempted to also introduce a higher education bill to prohibit sex discrimination after a special House Subcommittee on Education regarding discrimination against women. Cong. Rec. H4218 (1997), www.congress.gov/crec/1997/06/23/CREC-1997-06-23-pt1-PgH4218.pdf. The House Education

and Labor Committee had presented a large body of evidence of discrimination against girls and women in our education system. *Id.* The text of Title IX, and the February 5, 2025 Executive Order, further confirms that the purpose behind Title IX was to protect women and girls from discrimination and refer to sex as biological.

By its plain language, Title IX's 'exemptions' refer to sexes as 'one sex', 'one sex only', or 'both sexes' or using the following language: 'girls', 'boys', 'women', 'men', 'son', and 'daughter'. *See* 20 U.S.C. § 1681(a)(5), (a)(A)(2), (a)(6)(A)-(B), (a)(7)-(9), (c). The statute clearly did not contemplate those that identify as transgender when it was enacted. Title IX's enactment was during the women's liberation movement in the 1970s with its purpose to prevent discrimination against women in the educational system. *See* 118 Cong. Rec. 5803 (1972). In addition, almost all "[r]eputable dictionary definitions of 'sex' from the time of Title IX's enactment show that when Congress prohibited discrimination on the basis of 'sex' in education, it meant biological sex." *Adams ex rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc) (citing six dictionaries). Therefore, at the time Congress passed Title IX, everyone understood that "sex, like race and national origin, **is an immutable characteristic determined solely by the accident of birth**." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality opinion) (emphasis added).

While the Supreme Court has found sex discrimination encompasses discrimination based on transgender status under Title VII, Title IX does not leave open the interpretation of 'sex' as defined in the same sense that Title VII does when looking at the statute as a whole. *See Tennessee v. Cardona*, 2024 WL 3453880 *2 (6th Cir. 2024)(referring to *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 660 (2020)). In fact, by its plain text, Title IX only refers to 'individuals' when it refers to 'individuals of one sex only' or refers to educational institutions training individuals for the military, enumerated in its exceptions. *See* 20 U.S.C. § 1681 (a)(4), (a)(9). When interpreting the statutory language, as a whole, Title IX specifically exempts "any program or activity of any secondary school or educational institution specifically for – (i) the promotion of any Boys State conference, Boys Nation Conference, Girls State Conference, or Girls Nation conference." *See id.* at § 1681(a)(7)(Boy or Girl conferences). The statute specifically and unequivocally refers to

<u>gender in the biological sense as male and female.</u> Furthermore, this is consistent with the current executive guidance on Title IX.

Even in light of the rulings in *Grabowski v. Arizona Board of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023) and *Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022), the Court has refused to extend *Bostock*'s reasoning regarding sex discrimination encompassing transgender individuals to "bathrooms, locker rooms, or ***anything else of the kind***." *See Roe by & through Roe v. Critchfield*, No. 23-2807, 2025 WL 865721, at *27-28 (9th Cir. Mar. 20, 2025)(emphasis added). *See c.f. Tennessee v. Cardona,* 2024 WL 3453880 (6th Cir. 2024)("we have been skeptical of attempts to export Title VII's expansive meaning of sex discrimination to other settings."). When Title IX was enacted, the term 'sex' did not contemplate one's gender identity and it was also so assumed that sports teams were separated according to biological sex that it did not warrant further explanation in the statute.

Indeed, Title IX's implementing regulations also expressly permit sex-segregated sports teams. *See* 34 C.F.R. § 106.41(b)–(c); *Williams v. Sch. Dist. of Bethlehem*, 998 F.2d 168, 175 (3d Cir. 1993); *Lafler v. Athletic Bd. of Control*, 536 F. Supp. 104, 106 (W.D. Mich. 1982). While the Ninth Circuit refused to narrowly construe 20 U.S.C. § 1686 to carve out *only* living facilities as able to be separate based on male and female, and not more intimate spaces, like restrooms, locker rooms, and shower rooms, so as here should the Court refuse to narrowly construe the statute to disallow athletic teams to be separate based on biological sex when this was always so assumed since the statute's inception. *See Critchfield,* No. 23-2807, 2025 WL 865721 at 33. The Ninth Circuit further explained that the Supreme Court in *Bostock* failed to address "bathrooms, locker rooms, or anything else of the kind." *Critchfield*, No. 23-2807, 2025 WL 865721 at 28 (quoting 590 U.S. at 681). Thus, *Bostock*'s reasoning regarding Title VII, and the Ninth Circuit's subsequent interpretation in *Doe v. Snyder* regarding sex discrimination in Title VII as consistent with Title IX is not useful, in this instance. There is no binding legal precedent that has interpreted Title IX from precluding separate sports teams based on biological sex as constituting sex discrimination. In fact, there is support for quite the opposite.

As stated, the most recent Executive Order requires that sports teams shall be separated by biological sex as compliant with Title IX. The Ninth Circuit has also upheld the inherent privacy in locker rooms, which should be separate. *See Critchfield*, No. 23-2807, 2025 WL 865721 at 3-3, 19-20 (finding the district court properly concluded that the State's interest in protecting students' bodily privacy is an important objective for purposes of intermediate scrutiny when it reasoned that the State's privacy interest is especially important for school-aged children who are still developing). This is in line with the February 5, 2025 Order that tasks the Secretary of Education with "tak[ing] all appropriate action to affirmatively protect all-female athletic opportunities and all-female locker rooms and thereby provide the equal opportunity guaranteed by Title IX of the Education Amendments Act of 1972."

The SWSA is not in violation of Title IX, and Defendant Horne cannot be in violation of Title IX for enforcing this law. The SWSA furthers the directives on Title IX from the President of the United States and as supported by the U.S. Department of Education and Office of Civil Rights, which is consistent with the statute's legislative intent by designating sports teams by the biological sex of the students who participate, with no other conflicting directives that control on this issue. Title IX, like the SWSA, supports equal opportunity for biological women. In support of this directive, Defendant Horne is not in violation of Title IX for SWSA's enforcement.

## CONCLUSION

For the reasons stated, and in consideration of the Legislative Leaders' motion for summary judgment as incorporated here, Defendant Horne respectfully requests that the Court grant summary judgment on Plaintiffs' claims.

. . .

. . .

. . .

**RESPECTFULLY SUBMITTED** on April 30, 2025.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Caitlin B. Fitz-Maurice*
Dennis I. Wilenchik, Esq.
Caitlin B. Fitz-Maurice, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com

*and*

Maria Syms
Director of Legal Services
Arizona Department of Education
1535 W Jefferson, BIN #50
Phoenix, AZ 85007
Maria.Syms@azed.gov

*Attorneys for Defendant Thomas C. Horne*

### CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

*/s/ Christine M. Ferreira*