Colin M. Proksel (034133)
John S. Bullock (034950)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar No. 034133
Telephone: (602) 640-9000
Facsimile: 602) 640-9050
Email: cproksel@omlaw.com
Email: jbullock@omlaw.com

*Attorneys for Plaintiffs*
*Additional counsel listed in signature block*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br>     Plaintiffs,<br>v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>     Defendants,<br><br>Warren Petersen, in his official capacity as President of the Arizona State Senate, and Steve Montenegro, in his official capacity as Speaker of the Arizona House of Representatives,<br><br>     Intervenor-Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF COACH BLADE AND DR. HILTON**<br><br>**\*ORAL ARGUMENT REQUESTED\*** |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.   COACH BLADE'S REPORT AND TESTIMONY SHOULD BE EXCLUDED ....... 1

    A.   Coach Blade Is Not Qualified to Offer an Opinion in This Case ................... 1

    B.   Coach Blade's Opinions Are Not Relevant ..................................................... 3

    C.   Coach Blade's Opinions Are Unreliable ......................................................... 4

II.  DR. HILTON'S REPORT AND TESTIMONY SHOULD BE EXCLUDED ............. 5

    A.   Dr. Hilton's Opinions Are Not Relevant .......................................................... 5

    B.   Dr. Hilton Is Not Qualified to Offer an Opinion in This Case ....................... 5

    C.   Dr. Hilton's Opinion That Prepubertal Boys Have Athletic Advantages Over Prepubertal Girls Due to Innate Physiology Is Unreliable ........................................................................................................ 7

    D.   Dr. Hilton's Opinions Regarding the Alleged Athletic Advantages of Transgender Girls Who Receive Puberty-Blocking Medication and Gender Affirming Hormones and the Standards of Care for the Medical Treatment of Transgender Adolescents Should Be Excluded ......... 8

CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Avila v. Willits Env. Remediation Tr.*,
  633 F.3d 828 (9th Cir. 2011) .................................................................................. 1, 6

*Azzinaro v. Shyft Grp., Inc.*,
  2023 WL 6059808 (D. Ariz. Sep. 18, 2023) ................................................................... 1

*Clayton v. Heil Co.*,
  2022 WL 17404792 (D. Ariz. Dec. 2, 2022) ................................................................. 2

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ........................................................................................ 3

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ...................................................................................................... 5

*McConnie-Navarro v. Centro de Fertilidad del Caribe, Inc.*,
  2007 WL 7652299 (D.P.R. May 31, 2007) .................................................................. 7

*Pilz v. Inslee*,
  2022 WL 1719172 (W.D. Wash. May 27, 2022) .......................................................... 3

*Scarim v. Ryan*,
  2013 WL 12096528 (D. Ariz. Apr. 16, 2013) .............................................................. 6

*United States v. Holguin*,
  51 F.4th 841 (9th Cir. 2022) ......................................................................................... 4

*United States v. Valencia-Lopez*,
  971 F.3d 891 (9th Cir. 2020) ........................................................................................ 4

**Other Authorities**

Fed. Rule of Evid. 702 ............................................................................................... 1, 4

# INTRODUCTION

Defendant Horne's opposition falls far short of demonstrating that either Coach Linda Blade or Dr. Emma Hilton satisfies Rule 702's requirements for admissible and reliable expert testimony. None of Defendant Horne's arguments establish that Coach Blade or Dr. Hilton has specialized or applicable expertise to offer here, let alone that their opinions are relevant or have a reliable basis. Coach Blade and Dr. Hilton simply lack the necessary qualifications and their opinions fail to meet basic standards for admissible expert evidence. Defendant Horne's argument that Coach Blade's and Dr. Hilton's inadequacies merely reflect "new and emerging" issues is unconvincing and cannot cure their failure to satisfy Rule 702's admissibility requirements. The Court should therefore exclude Coach Blade's and Dr. Hilton's reports and testimony.

# ARGUMENT

## I. COACH BLADE'S REPORT AND TESTIMONY SHOULD BE EXCLUDED

### A. Coach Blade Is Not Qualified to Offer an Opinion in This Case

Defendant Horne's opposition does not—and cannot—demonstrate that Coach Blade has *any* specific knowledge, skill, experience, training, or education regarding transgender girls, let alone (as is relevant here) transgender girls who have not and will not go through male puberty participating on sports teams, such that she is qualified to offer an opinion in this case. Defendant Horne's arguments that she is nevertheless qualified fail.

*First*, Coach Blade's "lack of particularized expertise" (Dkt. 316 ("Opp.") at 4) goes directly to admissibility and not weight because her opinions extend well beyond the "reasonable confines of [her] subject area." *Avila v. Willits Env. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (affirming exclusion of expert with specialties in immunology and toxicology that offered an opinion that waste products that were burned created toxic chemicals where he had no "special training or knowledge regarding metal working industries"); *see Azzinaro v. Shyft Grp., Inc.*, 2023 WL 6059808, at *3 (D. Ariz. Sep. 18, 2023) (excluding expert's opinions in RV design and manufacture because his degree in mechanical engineering and work in forensic engineering did not qualify him as an expert

1  "in other engineering disciplines"); *Clayton v. Heil Co.*, 2022 WL 17404792, at *4 (D. Ariz.
2  Dec. 2, 2022) (finding that expertise in product design does not qualify an expert to testify
3  in the "distinct field" of warning design and placement).  At best, Coach Blade has expertise
4  in coaching techniques or sport administration based on her background as an athlete, coach,
5  and sport administrator, but that experience does not qualify her to offer "physical," "psycho-
6  social," "philosophical," or "institutional or cultural" reasons that it is "unfair for males to
7  compete with females at any age." (Dkt. 92-9, Ex. 42 ("Blade Rep.") at 5–16).  So too with
8  any expertise Coach Blade has in kinesiology (which, in any event, she testified was "very
9  far in the background" of any opinion she was offering). (Dkt. 303-5, Ex. 28 ("Blade Tr.")
10 at 32:6–10, 7:25–8:4.)

11     *Second*, Defendant Horne's attempt to side-step Coach Blade's admitted lack of
12 experience with or expertise regarding transgender individuals by pointing to the fact that
13 she has purportedly coached athletes of "all ages and genders" (Opp. at 5) falls flat.  The fact
14 that Coach Blade cannot "exclude the possibility" that she has unknowingly coached a
15 transgender athlete does not translate into expertise.  (*Id.* at 6.)

16     *Third*, Defendant Horne's assertion that Coach Blade need not have published peer-
17 reviewed articles in a so-called "emerging area" of scientific research (*Id.* at 6–7) to be
18 qualified is irrelevant where Coach Blade possesses no expertise in endocrinology, has no
19 education regarding transgender individuals, and conceded at her deposition that her only
20 publications related to transgender girls' participation in sports—policy pieces and "articles
21 and books regarding fairness for women"—are "not science." (*See* Dkt. at 304 ("Mot.") at
22 9–10; Blade Tr. 20:15–21:1, 22:20–23:1, 41:16–42:6, 138:11–25.)

23     *Finally*, Defendant Horne's argument that "potential bias is for cross-examination,
24 and not a sufficient basis for exclusion" (Opp. at 6) misstates Plaintiffs' argument and the
25 legal standard.  Plaintiffs move to exclude Coach Blade not because she is a self-proclaimed
26 activist, but because she offers *only* personal opinions, based on speculation and ungrounded
27 in professional experience, which are not admissible under the cloak of expert evidence.  *See*
28 *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (excluding expert

2

with "no understandable scientific basis" because "personal opinion, not science, is testifying here").

### B.   Coach Blade's Opinions Are Not Relevant

Defendant Horne's opposition ignores that an "as-applied challenge . . . is wholly fact dependent and involves an examination of the individual circumstances in which the law was applied." *Pilz v. Inslee*, 2022 WL 1719172, at *2 (W.D. Wash. May 27, 2022). Here, Coach Blade fails to consider Plaintiffs' "individual circumstances"—she does not know how old they are, what treatment they have undergone, or what sports they play. (*See* Mot. at 11.) Coach Blade's failure to account for such circumstances renders her opinions irrelevant to Plaintiffs and thus inadmissible expert testimony.[1]

Defendant Horne's insistence that Coach Blade's opinions are relevant because they involved "data related to prepubescent boys" (Opp. at 12) misses the mark because Jane and Megan are not prepubescent boys—they are transgender girls being treated for gender dysphoria, which is not the same thing. None of Coach Blade's opinions can be applied to transgender girls like Jane and Megan, much less to Jane and Megan themselves. (*See* Mot. at 11–12.)

And Defendant Horne has no response—because there is none—to Plaintiffs' argument that "Coach Blade's opinions regarding the 'psycho-social' reasons that transgender girls should not be allowed to play alongside other girls . . . have any relevance to transgender girls like Jane or Megan, who live their lives as the girls they are." (*Id.* at 12.) Coach Blade's speculation that little girls are "intimidated" by little boys or that coaches and

---

[1] In contrast, Plaintiffs' experts offer specific, relevant opinions about transgender girls like Jane Doe and Megan Roe. For example, Dr. Shumer opined that "[b]ecause both Jane and Megan have not experienced increased testosterone levels that accompany male puberty, they do not have the biological characteristics that could, over time, cause them to have an athletic advantage over other girls in some sports." (Dkt. 303-3, Ex. 2 ¶ 48.) Similarly, Dr. Budge offered the opinion that "[f]or transgender girls who are already playing on girls' teams, a law that requires them to be excluded from continued participation on girls' teams would have a further negative impact on their health and well-being[.]" (Dkt. 303-2, Ex. 1 ¶ 41.)

3

spectators "focus" on boy athletes instead of girl athletes has no connection to any "psycho-social" dynamics regarding transgender girls who *live and compete in sports as girls*—as Coach Blade herself admitted at her deposition. (*See id.*; *see also* Blade Tr. 103:9–19.) Defendant Horne has thus conceded that Coach Blade's "psycho-social" reasons for banning transgender girls from girls' sports are irrelevant.

### C. Coach Blade's Opinions Are Unreliable

Defendant Horne's opposition confirms that Coach Blade's testimony is unreliable and should be excluded.

*First*, Defendant Horne does not even attempt to defend Coach Blade's "philosophical" and "institutional or cultural" reasons for banning transgender girls from girls' sports as reliable. Indeed, Defendant Horne says nothing at all about these large portions of Coach Blade's report in response to Plaintiffs' assertions that neither opinion is based on sufficient facts or data, but merely on Coach Blade's unsubstantiated speculation and subjective beliefs. (*See* Mot. at 14–15.) The Court should exclude those sections and any related testimony accordingly.

*Second*, Defendant Horne's argument that so-called "collective renditions from the sentiments expressed by girls" (Opp. at 13) can provide a reliable basis for Coach Blade's "psycho-social reasons" for preventing transgender girls from playing on girls' teams is unavailing. Coach Blade's reliance on her coaching experience to support her opinion does not shield her from Rule 702's reliability requirement. In fact, reliability becomes "more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony." *See United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). Contrary to Defendant Horne's assertions (*id.* at 14), Coach Blade's opinions are nothing like those offered by the law enforcement officers in *United States v. Holguin*, 51 F.4th 841, 856–57 (9th Cir. 2022), who leveraged their "extensive experience" investigating hundreds of gang-related "Mexican Mafia" and "Cantas Ranas" crimes to reliably testify about those organizations' structures and terminology. As discussed *supra*, Coach Blade has no

4

corresponding "extensive experience" with transgender individuals. Defendant Horne's gloss on Coach Blade's report that it is "essentially" Coach Blade's opinion that "it would be considered unsporting . . . to change the rules of a sport to suit one individual's preference" (Opp. at 13) belies any notion that her opinions are based in the "knowledge and experience of [a relevant] discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

*Third*, Defendant Horne does not deny that Coach Blade's "physical" reasons for banning transgender girls from girls' sports are based on observational data that were never intended to compare the athletic performance of prepubertal boys and girls, and instead merely lists the data sources on which she relied. (*See* Mot. at 13.) Nor does Defendant Horne explain why Coach Blade's own concepts of "additive advantage" or her selection of "eleven biomotor abilities" provide any reliable basis for this Court, where she cites no support for either concept. (*Id.*; Blade Rep. at 10.) Such an unreliable foundation cannot support Coach Blade's sweeping proposition that "prepubescent girls as a class will never be able to overcome the performance edge enjoyed by their same-aged male cohorts." (Blade Rep. at 11.)

## II.   DR. HILTON'S REPORT AND TESTIMONY SHOULD BE EXCLUDED

### A.   Dr. Hilton's Opinions Are Not Relevant

Defendant Horne argues that Dr. Hilton's opinion is relevant to this case because of her general opinion that transgender girls have an athletic advantage by virtue of their biological development and that puberty blockers will not remove that advantage. (Opp. at 11.) However, as discussed in Plaintiffs' opening brief (*see* Mot. at 15–16) and above with regard to Coach Blade, Dr. Hilton's general opinion in this case is not relevant given Plaintiffs' as-applied challenge, particularly because Dr. Hilton testified that she did not have a specific opinion about Plaintiffs. (*See* Dkt. 303-5, Ex. 22 ("Hilton Tr.") at 108:2–14.) Accordingly, Dr. Hilton's testimony should be excluded in its entirety as irrelevant.

### B.   Dr. Hilton Is Not Qualified to Offer an Opinion in This Case

Defendant Horne fails to demonstrate that Dr. Hilton's (lack of) qualifications go to weight rather than admissibility. As discussed with Coach Blade above, Defendant Horne

cites *Avila* (Opp. at 7) for the proposition that "[a]s long as an expert stays within the reasonable confines of his subject area, lack of particularized expertise goes to the weight, rather than admissibility, of an expert opinion on a specific subtopic." 633 F.3d at 839. However, this case supports *Plaintiffs* because Dr. Hilton has not stayed within the reasonable confines of her subject area—therefore, her testimony is inadmissible.

In regards to Dr. Hilton's qualifications, Defendant Horne argues that Dr. Hilton is qualified to opine on the alleged differences in the athletic performance of pre-pubertal males and females and the impact of certain hormonal medications on that performance because (*i*) she is "a developmental biologist" who can "opine broadly on how organisms grow and change throughout their lives"; (*ii*) has authored "peer-reviewed pieces regarding transgender women in sport"; (*iii*) is currently drafting a chapter of an academic textbook on disorders of sex development; and (*iv*) teaches sex development. (Opp. at 8–10.) Not so.

*First*, Dr. Hilton is not qualified to render her opinion in this case merely because she is a developmental biologist. As discussed in Plaintiffs' opening brief (*see* Mot. at 17), Dr. Hilton has devoted her entire career to studying the xenopus (a genus of clawed frogs native to sub-Saharan Africa) and how it can be used as a model for human development, particularly the molecular mechanisms underpinning certain genetic disorders in humans. And she does not purport to directly apply her research to her opinions in this case. Just as a medical degree, without more, does not allow an individual to provide an expert opinion on every conceivable medical condition, *see Scarim v. Ryan*, 2013 WL 12096528, at *2 (D. Ariz. Apr. 16, 2013) (excluding expert who offered opinions on specific medical condition where he had an unrelated medical specialty), a Ph.D. in Developmental Biology does not allow an individual to provide an expert opinion on any matter regarding physical development. That Dr. Hilton has spent her entire career studying a particular species of frog is evidence of the level of specialization within the field.

*Second*, Dr. Hilton is also not qualified to render her opinion in this case merely because she has authored peer-reviewed pieces regarding transgender women in sport. Specifically, Dr. Hilton testified at her deposition that she has published two peer-reviewed

publications regarding transgender women competing in sport—the first was a literature review of clinical data regarding transgender women and sport, and the second was a commentary discussing the International Olympic Committee. (Hilton Tr. at 39:24–41:17.) As an initial matter, none of these publications relate to transgender *youth* participation in recreational sports. In addition, an individual's review of scientific literature does not by itself qualify that individual to offer an expert opinion on that subject. *See McConnie-Navarro v. Centro de Fertilidad del Caribe, Inc.*, 2007 WL 7652299, at *13 (D.P.R. May 31, 2007) (excluding expert whose opinions were "based primarily upon a review of certain medical literature undertaken specifically for this case" because "[c]ourts are suspicious of purported expertise premised solely or primarily on a literature review").

*Third*, simply because Dr. Hilton is currently drafting a chapter on disorders of sex development (DSDs) in an academic textbook does not render her qualified to offer an opinion in this case. An incomplete draft book chapter that is not in the record does not prove an individual's qualifications. Moreover, DSDs involve physical variations in sex characteristics, while being transgender refers to having a gender identity that differs from one's sex assigned at birth. These are two different topics entirely.

*Fourth*, Defendant Horne exaggerates Dr. Hilton's current role teaching sex development. Dr. Hilton testified that 99% of her work involves research and 1% of her work involves teaching. (Hilton Tr. at 58:24–59:5.) With regards to sex development, she currently teaches a one-time, one-hour special seminar to undergraduate life science students about sex development. (*Id.* at 57:16–58:9, 59:15–23.) This is clearly insufficient to qualify her as an expert on the alleged differences in the athletic performance of pre-pubertal males and females and the impact of certain hormonal medications on that performance.

### C. Dr. Hilton's Opinion That Prepubertal Boys Have Athletic Advantages Over Prepubertal Girls Due to Innate Physiology Is Unreliable

Dr. Hilton's opinion that prepubertal boys have an athletic advantage over prepubertal girls due to innate physiology is unreliable, and Defendant Horne's argument to the contrary plainly fails. As an initial matter, Defendant Horne does not explain how Dr. Hilton's

7

discussion of individuals nine years and older, observational datasets, and lack of peer-reviewed analysis can provide a reliable basis for her hypothesis that prepubertal boys have an athletic advantage over prepubertal girls. Nor does Defendant Horne provide any argument that Dr. Hilton's opinion that any alleged athletic advantage is caused by innate biology is reliable.

Next, Defendant Horne states that Dr. Hilton's use of old fitness tests records is proper, without any basis for this statement. (Opp. at 14.) As Plaintiffs' expert, Dr. Shannon, has explained, older data from over 30 years ago is not representative of *current* school athletes because female performance has dramatically improved as female athletes have been allowed to participate formally in sports. (Dkt. 303-4, Ex. 13 ¶ 24.) Accordingly, it is statistically unsound to rely on old datasets because they inflate any alleged performance gap. (*Id.*)

Defendant Horne then states, again without any basis to support his position, that it is proper for Dr. Hilton to rely on data from elite competitions. (Opp. at 15.) However, as discussed in Plaintiffs' opening brief (Mot. at 18, 20), this data is not representative of prepubertal athletes in Arizona, and Defendant Horne fails to explain otherwise. Therefore, Dr. Hilton's opinion that prepubertal boys have athletic advantages over prepubertal girls due to innate physiology should be excluded.

### D. Dr. Hilton's Opinions Regarding the Alleged Athletic Advantages of Transgender Girls Who Receive Puberty-Blocking Medication and Gender Affirming Hormones and the Standards of Care for the Medical Treatment of Transgender Adolescents Should Be Excluded

As discussed in Plaintiffs' opening brief and above, Dr. Hilton is a developmental biologist with no direct experience or expertise regarding transgender girls' involvement in sports. (Mot. at 4–5.) Contrary to Defendant Horne's argument that this inapposite experience qualifies her to opine on the alleged athletic advantage of transgender girls who receive puberty-blocking medication and gender affirming hormones (Opp. at 8), Dr. Hilton's background in developmental biology and her publication of a single peer-reviewed literature review regarding transgender women's involvement in sports is plainly

8

insufficient to qualify Dr. Hilton to render an opinion on this topic. Accordingly, Dr. Hilton's opinion regarding the alleged athletic advantage of transgender girls who receive puberty-blocking medication and gender affirming hormones should be excluded.

In addition, Defendant Horne fails to provide any reason why Dr. Hilton is qualified to render an opinion related to medical treatment for transgender youth. This is because she plainly is not. Accordingly, her opinion on this topic should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should exclude Coach Linda Blade's and Dr. Emma Hilton's testimony and reports in their entirety.

Respectfully submitted this 29th day of July, 2025

*s/ John S. Bullock*
Colin M. Proksel (034133)
John S. Bullock (034950)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Fl.
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com
Email: jbullock@omlaw.com

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

| | |
|---|---|
| 1 | Amy Whelan* |
| 2 | Rachel Berg* |
|   | NATIONAL CENTER FOR LGBTQ |
| 3 | RIGHTS |
|   | 870 Market Street, Suite 370 |
| 4 | San Francisco, California 94102 |
|   | Telephone: (415) 343-7679 |
| 5 | Facsimile: (415) 392-8442 |
| 6 | Email: awhelan@nclrights.org |
|   | Email: rberg@nclrights.org |
| 7 | |
| 8 | *Admitted pro hac vice. |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of July, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF System.

*s/ John S. Bullock*