Colin M. Proksel (034133)
John S. Bullock (034950)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
State Bar Nos. 034133 and 034950
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com
Email: jbullock@omlaw.com

*Attorneys for Plaintiffs*
*Additional counsel listed in signature block*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# TUCSON DIVISION

| | |
|---|---|
| Jane Doe, by her next friend and parents Helen Doe and James Doe; and Megan Roe, by her next friend and parents, Kate Roe and Robert Roe,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Thomas C. Horne in his official capacity as State Superintendent of Public Instruction; Laura Toenjes, in her official capacity as Superintendent of the Kyrene School District; Kyrene School District; The Gregory School; and Arizona Interscholastic Association Inc.,<br><br>　　　　　Defendants,<br><br>Warren Petersen, in his official capacity as President of the Arizona State Senate, and Steve Montenegro, in his official capacity as Speaker of the Arizona House of Representatives,<br><br>　　　　　Intervenor-Defendants. | Case No. 4:23-cv-00185-JGZ<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF DR. CARLSON AND DR. BROWN**<br><br>***ORAL ARGUMENT REQUESTED*** |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 1

I.   THE COURT SHOULD EXCLUDE DR. CARLSON'S REPORT AND TESTIMONY ........................................................................................................ 1

    A.   Dr. Carlson Is Not Qualified to Offer an Opinion in This Case .................... 1

    B.   Dr. Carlson's Opinions Are Not Relevant to the Issues Presented in This Case ........................................................................................................ 2

    C.   Dr. Carlson's Opinions Are Unreliable .......................................................... 3

II.  THE COURT SHOULD EXCLUDE DR. BROWN'S REPORT AND TESTIMONY ........................................................................................................ 5

    A.   Dr. Brown's Opinion Is Not Relevant to This Case ...................................... 5

    B.   Dr. Brown Is Not Qualified to Offer the Opinions He Has Advanced .......... 5

    C.   Dr. Brown's Opinions Regarding Prepubertal Children Should Be Excluded Because They Are Not Based on Reliable Methods ...................... 6

CONCLUSION ................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Avila v. Willits Env. Remediation Tr.*,
    633 F.3d 828 (9th Cir. 2011) .................................................................................. 1, 5

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1983) ..................................................................................................... 2

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ....................................................................................... 4

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600 (9th Cir. 2002) .................................................................................. 4, 6

*Elosu v. Middlefork Ranch, Inc.*,
    26 F.4th 1017 (9th Cir. 2022) ..................................................................................... 3

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ..................................................................................................... 8

*Klein v. Meta Platforms, Inc.*,
    766 F. Supp. 3d 956 (N.D. Cal. 2025) ...................................................................... 6

*Massok v. Keller Indus., Inc.*,
    147 F. App'x 651 (9th Cir. 2005) ............................................................................... 6

*Naki v. State*,
    2015 WL 4647915 (D. Ariz. Aug. 5, 2015) ............................................................... 4

*Nelson v. Costco Wholesale Corp.*,
    2022 WL 1638838 (D. Ariz. May 24, 2022) ............................................................. 4

*Pilz v. Inslee*,
    2022 WL 1719172 (W.D. Wash. May 27, 2022) ...................................................... 2

*United States v. Holguin*,
    51 F.4th 841 (9th Cir. 2022) ........................................................................................ 2

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................ 6

# INTRODUCTION

The Court should exclude Dr. Chad Thomas Carlson's and Dr. Gregory Brown's reports and testimony. Neither Dr. Carlson nor Dr. Brown is qualified to give an opinion in this case because neither possesses the requisite knowledge or experience. Neither Dr. Carlson nor Dr. Brown present testimony that is relevant to the issues at hand in this as-applied challenge. And neither Dr. Carlson nor Dr. Brown present testimony upon which the Court can rely. Intervenor-Defendants' attempts to frame the science surrounding these opinions as novel and to frame the issues at play as so broad that they can encompass Dr. Carlson's and Dr. Brown's expertise obfuscate these shortcomings. The Court should therefore exclude the reports and testimony of Dr. Carlson and Dr. Brown in their entirety.

# ARGUMENT

## I. THE COURT SHOULD EXCLUDE DR. CARLSON'S REPORT AND TESTIMONY

### A. Dr. Carlson Is Not Qualified to Offer an Opinion in This Case

Intervenor-Defendants' opposition reinforces that Dr. Carlson is not qualified to offer an opinion in this matter.

*First*, contrary to Intervenor-Defendants' assertion, nowhere do Plaintiffs "insist that Dr. Carlson must have 'treated an individual who was injured by another transgender individual in a competition' to be qualified." (Opp. at 9.) Rather, Dr. Carlson is not qualified because he *neither* has any experience treating transgender individuals *nor any other* relevant specialized experience regarding transgender individuals or athletes. (*See* Dkt. 304, Motion to Exclude Defendants' Experts ("Mot.") at 22–23.)

*Second*, Dr. Carlson's opinions are not "within the reasonable confines of his subject area." (Opp. at 9.); *see Avila v. Willits Env. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (affirming exclusion of expert with specialties in immunology and toxicology who offered an opinion that waste products that were burned created toxic chemicals where he had no "special training or knowledge regarding metal working industries"). Dr. Carlson is a sports medicine doctor whose "practice focuses on the treatment of sports and activity-

1 related injury." (Dkt. 288, Ex. 40 ¶ 4.) Intervenor-Defendants' citation to *United States v. Holguin*, 51 F.4th 841, 856–57 (9th Cir. 2022) is no help to them. Unlike the law enforcement officers in *Holguin*, who had "specialized knowledge" about the specific "gang members and drug dealers" in that case, *id.*, Dr. Carlson has *no* particular knowledge or experience with transgender athletes, transgender girls who have not undergone male puberty, or people allegedly injured by transgender athletes.

       **B.    Dr. Carlson's Opinions Are Not Relevant to the Issues Presented in This Case**

Intervenor-Defendants' opposition ignores that an "as-applied challenge . . . involves an examination of the individual circumstances in which the law was applied." *Pilz v. Inslee*, 2022 WL 1719172, at *2 (W.D. Wash. May 27, 2022). To that end, expert testimony must actually relate to the individual circumstances at issue in the challenge—there must be a valid "connection to the pertinent inquiry" in order for an opinion to be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1983). This is not to say that Dr. Carlson must have examined Plaintiffs or their medical records, but that, at the very least, the opinions that Dr. Carlson proffers must actually apply to Plaintiffs and the circumstances of this case. They do not. Unable to argue that Dr. Carlson offers any specific opinion as to whether Jane's or Megan's participation on girls' sports teams causes any increased risk of injury to their teammates or opponents, or even that he knows what sports they play, Intervenor-Defendants are left only with the weak assertion that Dr. Carlson generally "discusses prepubertal advantages applicable to the sports Plaintiffs play" (such as running, kicking, throwing, and jumping), but these broadbrush assertions are no substitute for a specific opinion regarding Jane and Megan. (Opp. at 12.)

Intervenor-Defendants' response regarding Dr. Carlson's inability to apply his opinions to transgender girls who, *like* Jane and Megan, have taken puberty-blocking medication at the onset of male puberty and gender-affirming hormones misses the point. Plaintiffs do not argue that Dr. Carlson took "data applicable to two separate individuals and tr[ied] to apply them to Plaintiffs" (*id.* at 12); rather, Plaintiffs assert that Dr. Carlson's

2

report—which is based primarily on studies of adult or adolescent elite athletes—has no bearing on transgender girls like Jane and Megan (*see* Mot. at 22). And while "extrapolation" may be appropriate when drawing novel hypotheses, Dr. Carlson's expertise is so distant from his hypotheses that his extrapolation is unreliable. (Opp. at 12.)[1]

Intervenor-Defendants' attempt to turn the tables by suggesting that "Plaintiffs' argument would . . . require exclusion of their own experts" also fails. (*Id.*) Plaintiffs do not and have not argued that Dr. Carlson's opinions are not relevant or useful because he did not speak with or examine Plaintiffs or observe them playing sports. (*See* Mot. at 21–22 (explaining that Dr. Carlson's opinions are not relevant because he does not offer an opinion about Jane and Megan and does not know whether they are being treated for gender dysphoria, and because his report does not contain any studies about transgender girls who are being treated for gender dysphoria).) Instead, Plaintiffs contend that Dr. Carlson's opinion deals solely with irrelevant groups and issues—adults, people who have gone through puberty, elite athletes, transgender people who transitioned after puberty—and thus is not relevant overall.

### C. Dr. Carlson's Opinions Are Unreliable

Intervenor-Defendants' opposition confirms that Dr. Carlson's report has no reliable basis. Each of Intervenor-Defendants' responses to Plaintiffs' arguments fails. Despite their urging to the contrary, there is "too great an analytical gap" between Dr. Carlson's opinion that transgender girls of all ages "create[] significant additional risk of injury" for other girls and the science on which Dr. Carlson relies regarding physiological differences between adult men and women. (Mot. at 24.)

---

[1] Intervenor-Defendants' citation to *Elosu v. Middlefork Ranch*, 26 F.4th 1017 (9th Cir. 2022) is distinguishable. There, the Court allowed a fire inspector who was undisputably qualified as an expert in fire investigation to "extrapolate" from circumstantial evidence and inferences given that "fires routinely destroy all evidence of their origins." *Id.* at 1028. In contrast, Dr. Carlson's proffered opinions rely on inapplicable populations and observational data, which are not a sound basis upon which to extrapolate.

3

Intervenor-Defendants make much of the *quantity* of articles upon which Dr. Carlson purportedly relied when forming his opinion ("more than 150") but ignore the fact that *none* of the studies upon which Dr. Carlson relies provide a reliable basis for the opinions he offers in this case. (*See id.* at 24–25.) The relied-upon studies are connected to Dr. Carlson's opinions only by his own *ipse dixit*; they do not actually provide any pertinent information as to transgender girls who have not undergone puberty and take puberty-suppressing medication and gender-affirming hormones. Even though Dr. Carlson attempts to analogize these studies to the case at hand, Plaintiffs' experts make clear he cannot do so in a scientifically sound way. (*See, e.g.*, Dkt. 303, Plaintiffs' Opposition to Defendants' Statement of Facts and Plaintiffs' Additional Statement of Undisputed Facts ("SOF") ¶¶ 177–81.) His opinions must therefore be excluded as unreliable. *See Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606–07 (9th Cir. 2002) (affirming exclusion of an expert report where "the studies that were cited d[id] not provide support for every necessary link in [the expert's] theory of causation" and where the expert's "propositions d[id] not lead to his conclusion").

Though Intervenor-Defendants argue that Dr. Carlson weighed "known factors along with the inevitable uncertainties" to form his opinion (Opp. at 17), those "known factors" regarding inapposite groups are "inapplicable to [these facts] . . . and are therefore not reliable as applied to the present case." *Naki v. State*, 2015 WL 4647915, at *4 (D. Ariz. Aug. 5, 2015) (excluding opinion that an injury was likely where the opinion was "derived purely from the fact that other injuries [had] occurred" in *other settings*). While there need not be a "precise[] fit" between the studies and Dr. Carlson's claims (Opp. at 17), Dr. Carlson still must "explain precisely how [he] went about reaching [his] conclusions" here. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). Dr. Carlson has not explained how studies regarding adult men and adult women can form a reliable basis for his opinions in this case and therefore his testimony must be excluded. *See Nelson v. Costco Wholesale Corp.*, 2022 WL 1638838, at *2 (D. Ariz. May 24, 2022) (excluding report where

expert architect "reference[d] several building codes" but failed "to analyze whether they apply in this case").

## II. THE COURT SHOULD EXCLUDE DR. BROWN'S REPORT AND TESTIMONY

### A. Dr. Brown's Opinion Is Not Relevant to This Case

Intervenor-Defendants argue that Dr. Brown's opinion is relevant to this case because he has a general opinion that non-transgender boys have an athletic advantage over non-transgender girls before puberty. (Opp. at 11–12.) However, as discussed in Plaintiffs' opening brief and above, Dr. Brown's general opinion in this case is not relevant given Plaintiffs' as-applied challenge, particularly because Dr. Brown testified that he did not have a specific opinion about Plaintiffs apart from the Addendum to his report, which merely compares Jane Doe's track and cross-country times to those of male competitors without coming to a conclusion about whether she has an unfair competitive advantage. (*See* Dkt. 303-5, Ex. 21 at 59:3–20.) Accordingly, Dr. Brown's testimony should be excluded as irrelevant.

### B. Dr. Brown Is Not Qualified to Offer the Opinions He Has Advanced

Contrary to Intervenor-Defendants' assertion (Opp. at 8), Plaintiffs' argument regarding Dr. Brown's qualifications goes to admissibility because Dr. Brown's opinions regarding prepubertal children and the impact of puberty-blocking medication and hormone therapy on athletic performance of transgender girls extend well beyond the "reasonable confines of his subject area." *Avila*, 633 F.3d at 839. Intervenor-Defendants have no response to Plaintiffs' argument that Dr. Brown has no experience working with children or adolescents and is not an expert on puberty. Accordingly, his opinions regarding prepubertal children should excluded.

Intervenor-Defendants also argue that Dr. Brown is qualified to opine that the alleged athletic advantages for transgender girls persist after a transgender girl receives puberty-blocking medication followed by hormone therapy because he has done extensive research on testosterone supplementation for men and women. (Opp. at 9.) These are two different

5

topics entirely. Testosterone supplementation for adults is not an area implicated in this case.

Intervenor-Defendants, citing *Massok v. Keller Indus., Inc.*, 147 F. App'x 651 (9th Cir. 2005), also argue that Dr. Brown need not be officially credentialed in pediatric endocrinology to be qualified as an expert on the impact of these medications on the body of transgender girls. (Opp. at 7.) This misses the mark. Dr. Brown is not a medical doctor, let alone a pediatric endocrinologist. *And* he does not have any other knowledge, skill, experience, training, or education to qualify him as an expert on this topic. As discussed in Plaintiffs' opening brief, he has never conducted primary research regarding transgender individuals generally, nor does he have any experience relating to endocrine treatments for transgender people. (*See* Mot. at 27–28.) There is no literature on the specific topic, and he does not have clinical experience treating transgender girls. Accordingly, Dr. Brown's opinion that any alleged athletic advantage for transgender girls will persist after a transgender girl receives puberty-blocking medication and hormone therapy should be excluded.

**C.    Dr. Brown's Opinions Regarding Prepubertal Children Should Be Excluded Because They Are Not Based on Reliable Methods**

Dr. Brown's opinions regarding prepubertal athletic performance are also not reliable. Intervenor-Defendants' arguments to the contrary fail.

*First*, Intervenor-Defendants argue that Plaintiffs' motion to exclude Dr. Brown's opinion related to prepubertal athletic performance goes to the weight of his testimony, not the admissibility of his testimony. (Opp. at 15.) Not so. Under Federal Rule of Evidence 702(c), scientific, technical, or other specialized knowledge may serve as the basis for expert testimony only if the testimony is the product of reliable principles or methods. An expert's testimony must be reliable at every step to be admissible. *See Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 967 (N.D. Cal. 2025) ("[T]here must be a sound foundation in the evidence to support every step on the way to [an expert's] conclusions."); *see also Domingo*, 289 F.3d at 607 ("The reasoning between steps in a theory must be based

on objective, verifiable evidence and scientific methodology[.]"). Because Dr. Brown's opinion regarding prepubertal children is not based on reliable methods, it must be excluded.

*Second*, Intervenor-Defendants argue that Dr. Brown's opinion is reliable because it is based on a large volume of evidence, such as a 20-page bibliography. (Opp. at 15.) However, the number of sources an expert relies on is not itself determinative of a reliable methodology. Rather, it is how Dr. Brown uses the sources he cites and the content of those sources that is indicative of his methodology. For example, as discussed in Plaintiffs' opening brief, many of the sources Dr. Brown relies on for his assertion that prepubertal boys have an athletic advantage over prepubertal girls involve individuals nine years and older, which necessarily includes some individuals who have gone through male puberty. (*See* Mot. at 28.) And many of the studies Dr. Brown discusses fail to measure statistical significance. These are hallmarks of an unreliable methodology. (*See id.* at 29.)

*Third*, Intervenor-Defendants argue that various peer-reviewed publications, including those authored by Dr. Brown himself, and numerous other scientific articles demonstrate that Dr. Brown's opinion is consistent with the "scientific consensus." (Opp. at 15.) However, the overwhelming scientific consensus is that prepubertal boys do not have an athletic advantage over prepubertal girls. (SOF ¶¶ 49–50.) Dr. Brown's opinion that boys have a prepubertal athletic advantage in recreational sports at all levels and all sports is an outlier view that has no scientific basis to support it. As Dr. Shannon—an expert in statistics and data analysis—has testified, Dr. Brown has presented no scientific evidence proving that prepubertal boys have an athletic advantage over prepubertal girls in the relevant population sample of all grade-school athletes in Arizona. (SOF ¶ 177; Dkt. 303-4, Ex. 13 ("Shannon Rep.") ¶¶ 19–24.)[2]

---

[2] Intervenor-Defendants misrepresent Dr. Shannon's deposition testimony to the Court. (Opp. at 16.) First, they state that Dr. Shannon confirmed that Dr. Brown's opinions are based on sound science. (*Id.*) Intervenor-Defendants provide no citation to support this inaccurate statement, because there is none. As discussed above, Dr. Shannon's testimony is that Dr. Brown has no scientific support for his assertion that boys have a pre-pubertal athletic advantage over girls. (Shannon Rep. ¶¶ 38–39.) That a few articles Dr. Brown cites may have measured for statistical significance is of no moment when there are other

7

*Fourth*, Intervenor-Defendants try to sidestep Dr. Brown's failure to support his opinion that the alleged athletic advantage of prepubertal boys is caused by innate biology by asserting that Plaintiffs' argument on this issue goes to weight, not admissibility. (Opp. at 16.)  Again, where, as here, an expert has no scientific basis for his opinion, it must be excluded.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").  Intervenor-Defendants provide no other response to Plaintiffs' argument on this topic.  Accordingly, the Court should exclude Dr. Brown's opinion that the alleged athletic advantage of prepubertal boys is caused by innate biology.

## CONCLUSION

For the reasons set forth herein, the reports and testimony of Dr. Carlson and Dr. Brown should be excluded in their entirety.

Respectfully submitted this 29th day of July, 2025

*s/ John S. Bullock*
Colin M. Proksel (034133)
John S. Bullock (034950)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Fl.
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
Facsimile: (602) 640-9050
Email: cproksel@omlaw.com
Email: jbullock@omlaw.com

---

reasons why those articles cannot be used to support Dr. Brown's thesis, as discussed by Dr. Shumer and Dr. Shannon (*See id.* ¶¶ 17–29, 32–37; Dkt. 62-2, Shumer Rebuttal Rep. ¶¶ 24–29, 39.)  In addition, contrary to Intervenor-Defendants' assertion (Opp. at 16), Dr. Shannon's report does not state that Dr. Brown relied on journal articles that were not peer-reviewed.  Rather, the critique was that Dr. Brown's original analysis based on the data in those articles had not been published or peer-reviewed. (Shannon Rep. ¶ 34; Dkt. 286-5, Ex. 25 at 113:19–114:10; 130:13–131:9.)

8

Jyotin Hamid*
Justin R. Rassi*
Amy C. Zimmerman*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
Email: jrassi@debevoise.com
Email: azimmerman@debevoise.com

Amy Whelan*
Rachel Berg*
NATIONAL CENTER FOR LGBTQ RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
Telephone: (415) 343-7679
Facsimile: (415) 392-8442
Email: awhelan@nclrights.org
Email: rberg@nclrights.org

*Admitted pro hac vice.

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing and served on counsel of record via the Court's CM/ECF System.

*s/ John S. Bullock*