Justin D. Smith, Mo. Bar No. 63253*
Kenneth C. Capps, Mo. Bar No. 70908*
James Otis Law Group, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
Telephone: (816) 678-2103
Justin.Smith@james-otis.com

*Attorneys for Intervenor-Defendants President Petersen and Speaker Montenegro*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 4:23-cv-00185-JGZ |
| Thomas C. Horne, in his official capacity as State Superintendent of Public Instruction, *et al.*, | **Joint Reply of Intervenor-Defendants and Defendant Horne in support of their Motion to Strike the Testimony and Opinions of Plaintiffs' Experts Dr. Budge and Dr. Shannon** |
| Defendants. | **Oral Argument Requested** |

Plaintiffs admit that their experts, Dr. Budge and Dr. Shannon, do not have opinions relating to biological differences between boys and girls and whether those differences translate to athletic differences and competitive fairness issues. In addition to opinions on other issues lacking relevance, Plaintiffs cannot overcome the severe qualification and reliability issues affecting their expert opinions.

Plaintiffs offer opinions from Dr. Budge about medical treatments causing physiological changes, including as to Plaintiffs. However, Dr. Budge lacks the qualifications to offer these opinions because she is not a medical doctor and never attended medical school. As such, Dr. Budge also never medically examined Plaintiffs, never

1    reviewed Plaintiffs' medical records, could not meaningfully opine on these records as a

2    non-medical doctor, and does not know Plaintiffs' relevant hormone levels at any given

3    time.  Dr. Budge is thus not qualified to offer opinions relating to the effects from medical

4    treatments.

5         Other opinions from Dr. Budge are unreliable.  Plaintiffs do not dispute the

6    differences between Dr. Budge's opinions and the sources that Dr. Budge cites to as

7    "authoritative."  Plaintiffs also do not dispute evidence that disproves key WPATH

8    assertions.  Accordingly, Dr. Budge's opinions are unreliable and should be excluded.

9         As for Dr. Shannon, Plaintiffs concede that he failed to perform any independent

10   research.  Due to this lack of independent research, Dr. Shannon criticized defense experts

11   without knowing what the peer-reviewed literature said on a topic or what key terms he

12   used meant.  Dr. Shannon also made significant errors in his report, errors to which he

13   admitted in his deposition.  Dr. Shannon's opinions thus are unreliable and should be

14   excluded.

15                                **ARGUMENT**

16   **I.    Dr. Budge's Testimony Should Be Excluded as Irrelevant and Unreliable**

17        Plaintiffs do not dispute that Dr. Budge does not assist the trier of fact on the key

18   issues in this case: "the biological differences between males and females" and the

19   "competitive fairness of transgender girls competing on girls' teams."  Opp'n at 3-4.

20   Plaintiffs also do not dispute that Dr. Budge testified that she "do[es] not have expertise in

21   these areas."  LL Ex. 24, at 214:12-23.  Because Dr. Budge does not have any opinions

22   relevant to what she considered "the central issue in this case," *id.* at 214:24-215:7, Dr.

23   Budge's testimony is not "relevant to the task at hand," *Daubert v. Merrell Dow Pharm.,*

24   *Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).  Her testimony thus should be stricken.

25        Despite these concessions, Plaintiffs continue to rely on Dr. Budge's opinions to

26   support their arguments relating to physiological changes in the Plaintiffs.  These opinions

27   should be excluded because Dr. Budge does not have the relevant qualifications,

28   knowledge, or experience to render them.  Her opinions should also be excluded because

1  they are not reliable.

2      **A.    Dr. Budge is unqualified to testify about physiological changes.**

3      Plaintiffs rely on Dr. Budge to support their erroneous assertion that "[t]ransgender

4  girls who receive hormone therapy after receiving puberty-blocking medication develop

5  the same skeletal structure, fat distribution, muscle and breast development, and circulating

6  levels of estrogen and testosterone typical of other girls." Pls.' SOF, at ¶ 52; *see also* Opp'n

7  at 4 n.1.  This assertion contains many points not supported by Dr. Budge's expert report.

8  *Compare* Pls.' Ex. 1, ¶ 29.  For those components that are reflected in her expert report,

9  Dr. Budge is not qualified to offer those opinions.

10     Dr. Budge is not qualified to opine on physiological differences, puberty, or the

11  effects of medical treatments like puberty blockers or hormone therapy.  Dr. Budge

12  admitted that she is not a medical doctor and never attended medical school. LL Ex. 24, at

13  11:15-25, 12:3-5.  Dr. Budge cannot prescribe medication.  *Id.* at 11:22-23.  In addition,

14  Dr. Budge denied any formal or professional training in developmental biology aside from

15  a psychopharmacology course.  *Id.* at 14:4-19.  And Dr. Budge testified that she does not

16  see patients under the age of 12.  *Id.* at 12:19-21.

17     Plaintiffs do not dispute any of these facts.  *See* Opp'n.  Plaintiffs also do not identify

18  any qualifications that allow Dr. Budge to opine on physiological differences in children,

19  puberty, or the effects of medical treatments like puberty blockers or hormone therapy.  *See*

20  Opp'n at 1-2, 5.  Instead, Plaintiffs point exclusively to Dr. Budge's mental health

21  education and psychological counseling experience for support, which is insufficient.  *See*

22  *id.*

23     Dr. Budge's education and experience on mental health and psychological issues do

24  not provide the necessary qualifications to opine on physiological differences, puberty, or

25  the effects of medical treatments like puberty blockers or hormone therapy.  For these

26  reasons and those discussed, *infra*, Dr. Budge is also not qualified to opine about

27  physiological changes experienced by Plaintiffs.  *See* Pls.' SOF, at ¶¶ 56, 64.

28

3

1      **B.      Dr. Budge is unqualified to testify about Plaintiffs.**

2      Plaintiffs rely on Dr. Budge to assert that Jane Doe "has not and does not expect to

3  experience any of the physiological changes associated with male puberty."  Pls.' SOF, at

4  ¶ 56.  Plaintiffs further rely on Dr. Budge to assert that Megan Roe's "hormone treatment

5  has caused her to develop many of the physiological changes associated with puberty in

6  females."  *Id.* at ¶ 64.  Finally, Plaintiffs rely on Dr. Budge to argue that failure to play on

7  female teams would be detrimental to Plaintiffs' physical and mental health.  Pls.' SOF, at

8  ¶¶ 119, 130, 134, 147, 150; Pls.' MSJ at 11-12, 27, 29, 41-42; Opp'n at 4-5.

9      Dr. Budge is not qualified to offer these opinions because she never medically

10  examined Plaintiffs, never reviewed Plaintiffs' medical records, never knew Plaintiffs'

11  testosterone levels at any point, and never observed Plaintiffs playing sports.  *See* LL Ex.

12  24, at 9:8-22, 12:15-21, 17:12-17.  Plaintiffs do not contest these facts.  Instead, Plaintiffs'

13  only response is to fall back on Dr. Budge's "deep clinical experience" and "deep research

14  and academic experience."  Opp'n at 5.  But no matter how "deep" Dr. Budge's general

15  psychological experience may be, Dr. Budge cannot offer opinions about Plaintiffs without

16  examining them, reviewing their records, or even knowing important medical information

17  like testosterone levels and individualized treatment.  Dr. Budge's background is

18  insufficient to assist the factfinder with any meaningful opinion related to the relevant

19  issues presented in this case.  Plaintiffs offer no legal authority suggesting otherwise.[1]

20      **C.      Dr. Budge relied upon scientifically invalid principles.**

21      **1.      Dr. Budge's opinions are refuted by her own sources.**

22      Plaintiffs do not substantively contest the significant differences between Dr.

23

24  [1] Dr. Budge would not survive Plaintiffs' arguments to exclude Defendants' experts.  *See,*
25  *e.g.*, Doc. 326, at 6 (arguing "Coach Blade … does not know how old [Plaintiffs] are, what
   treatment they have undergone, or what sports they play" such that "her opinions [are]
26  irrelevant to Plaintiffs and thus inadmissible"); *id.* at 8 (arguing Dr. Hilton's opinion are
   inadmissible because "she did not have a specific opinion about Plaintiffs"); Doc. 327, at
27  5 (arguing "the opinions that Dr. Carlson proffers must actually apply to Plaintiffs"); *id.* at
   8 (arguing "Dr. Brown has no experience working with children or adolescents" such that
28  "his opinions regarding prepubertal children should [be] excluded").  Plaintiffs fail to
   explain why their experts should be held to a different standard.

4

1   Budge's opinions and the sources that she relies upon as "authoritative." *Compare* Opp'n

2   at 5-6 *with* LL Ex. 24, at 58:7-9, 73:14-16. As Defendants explained, the Endocrine Society

3   concluded that "[b]iological sex is separate from gender identity," and that "[a] clear

4   causative biological underpinning of gender identity remains to be demonstrated." *See*

5   Doc. 322, at 11-12. Similarly, the DSM-5-TR defines biological sex and gender identity

6   separately. *See id.* These sources, upon which Dr. Budge relies, directly refute her

7   opinions that support a biological connection to gender identity. *Compare* Pls.' Ex. 1, at

8   ¶¶ 20-22.

9           Plaintiffs do not dispute these discrepancies. *See* Opp'n at 5-6. In fact, Plaintiffs

10   concede that "slight differences" do exist. *Id.* Because of these differences, which are

11   significant, Plaintiffs attempt to reframe their issue to a "larger point" that "gender

12   dysphoria is a medical condition caused by biological factors that is 'highly treatable.'"

13   Opp'n at 6 (citing Budge Report). Summarizing Dr. Budge's opinions to show that her

14   opinions are reliable is not enough. This is a textbook *Daubert* failure. *Daubert*, 43 F.3d

15   at 1319 ("We've been presented with only the expert's qualifications, their conclusions and

16   their assurances of reliability. Under *Daubert*, that's not enough."). Dr. Budge's opinions

17   should be excluded as unreliable.

18                    **2.      Dr. Budge's reliance on WPATH demonstrates that her opinions**

19                    **are unreliable.**

20           Defendants demonstrated that Dr. Budge's reliance on WPATH renders her

21   opinions unreliable. Doc. 322, at 13-16. Plaintiffs do not refute evidence showing that

22   claims of endorsements of the WPATH SOC were inaccurate. *Id.* at 13 (SOC's lead author

23   admitting that "I have no idea how it was ever said that so many medical organizations

24   have endorsed SOC 7"); *id.* (AMA declining to endorse the SOC, despite Dr. Budge's

25   contrary claim). Plaintiffs do not contest that WPATH suppressed the unfavorable

26   systematic review it commissioned, announcing instead that "a systematic review … is not

27   possible." Doc. 322, at 14; *United States v. Skrmetti*, 145 S. Ct. 1816, 1847 (2025)

28   (Thomas, J., concurring) (observing WPATH's "concerns, echoed by the social justice

5

1    lawyers [they] spoke with, is that [it would] put[] us in an untenable position in terms of

2    affecting policy or winning lawsuits.").  Plaintiffs do not dispute that WPATH (and the

3    Endocrine Society) rode a "circularity" phenomenon which artificially manufactured an

4    apparent "consensus" on gender dysphoria standards "despite the evidence being poor."

5    Doc. 322, at 15; *id.* (SOC lead author "painfully aware that there are *many gaps* in research

6    to back up our recommendations").  Finally, Plaintiffs have no answer to WPATH's

7    apparent failure to mitigate conflicts of interest when promulgating its SOC, which even

8    Dr. Budge admitted could "call into question the reliability" of the SOC.  *Id.* at 15-16; LL

9    Ex. 24, at 188:12-18.  In light of this uncontested evidence, the sources upon which Dr.

10   Budge relied do not represent "sound science."  *Daubert*, 43 F.3d at 1316.

11        Plaintiffs fail to diminish the importance of this evidence.  Instead, Plaintiffs argue

12   that "the safety and efficacy of medical treatment for transgender youth is not an issue in

13   this case," Opp'n at 6, even though they offered Dr. Budge to testify on "the safety and

14   efficacy of the medical treatment for gender dysphoria in adolescence," Opp'n at 2.  In

15   addition, Plaintiffs argue that the evidence relied upon by Justice Thomas and Defendants

16   is "outside the record in this case and has no relevance here."  Opp'n at 7.  But Defendants

17   cited to evidence from Dr. Budge's deposition that is directly relevant to the reliability of

18   WPATH.  Plaintiffs also contend that the WPATH SOC is "considered safe and effective

19   by the medical community of the United States" by citing to the unsupported expert reports

20   of their retained experts.  Opp'n 6.  In essence, Plaintiffs use their paid experts to support

21   other paid experts.  These are precisely the sort of "unadorned assertions" and "assurances

22   of reliability" rejected in *Daubert*.  *See Daubert*, 43 F.3d at 1319.  Plaintiffs' opinions are

23   also clearly inaccurate.  *See* Doc. 322, at 13-16; *Skrmetti*, 145 S. Ct. at 1840 (Thomas, J.,

24   concurring) (finding "no medical consensus" as it relates to this issue).

25        Defendants have demonstrated that Dr. Budge's opinions are unreliable because

26   they rely upon insufficient evidence and sources not "generally accepted in the scientific

27   community," and because they rely on otherwise "[un]sound science."  *Daubert*, 43 F.3d

28   at 1316; *see also Skrmetti*, 145 S. Ct. at 1847 (Thomas, J., concurring); *Cooper v. Brown*,

510 F.3d 870, 942 (9th Cir. 2007). Dr. Budge's opinions and testimony should be excluded.

**II.     Dr. Shannon's Testimony Should Be Excluded as Irrelevant and Unreliable**

Plaintiffs concede that Dr. Shannon is not an expert in the areas of "difference in athletic performance between prepubertal boys and girls," whether any societal encouragement disparities exist and relate to athletic performance, or "whether transgender girls should be excluded from girls' sports teams."[2] Opp'n at 7. Plaintiffs instead argue that Dr. Shannon was retained to "examine the articles and data that Defendants' experts attempt to use to support their opinions," and that he "was not retained to address any other opinion of Defendants' experts." Opp'n at 3. Thus, Dr. Shannon's opinions beyond this scope should be excluded. His opinions within that scope should be excluded as well as irrelevant, unreliable, and unnecessary.

**A.     Dr. Shannon failed to perform independent research or verify the data presented to him by Plaintiffs' counsel.**

Plaintiffs concede that Dr. Shannon "failed to perform any independent research" and did not "attempt to design the appropriate analysis that should be done." *Compare* Doc. 322, at 18 (citing LL Ex. 25, at 19:11-15, 54:14-55:7, 96:1-2) *with* Opp'n at 9. Instead, Plaintiffs deflect by focusing on the accuracy of the information that Dr. Shannon received. Opp'n at 9.

Dr. Shannon's lack of independent research and analysis demonstrates the unreliability of his critiques. For example, Dr. Shannon criticized the use of "observational" and "descriptive" data. *See* Pls.' Ex. 13, ¶¶ 17-18. However, Dr. Shannon does not know of any peer-reviewed articles that conclude that observational and descriptive data cannot be used in sports performance, exercise physiology, or kinesiology studies. LL Ex. 25, at 53:4-54:3. Dr. Shannon also criticized Dr. Brown's datasets as "not representative of the relevant population." Pls.' Ex. 13, § II. But Dr. Shannon knew

---

[2] Similar to Dr. Budge, *supra* footnote 1, Plaintiffs' criticisms of defense experts apply to Dr. Shannon, who they concede also "has no knowledge of Plaintiffs." Opp'n at 8.

nothing about the scope or size of the relevant population, LL Ex. 25, at 74:23-76:15, or the relevant differences with other populations, *id.* at 78:25-79:23, 80:15-81:9, 81:22-82:7, 90:8-20. This forced Dr. Shannon to rely on Plaintiffs' counsel for key definitions. *Id.* at 77:10-22.

Dr. Shannon's "testimony, coupled with the aforementioned biased selection of data," should "give[] the Court great pause." *In re Incretin-Based Therapies Prods. Liability Litig.*, 524 F. Supp. 3d 1007, 1037 (S.D. Cal. 2021) (citing *Daubert*, 43 F.3d at 1317). Dr. Shannon never conducted independent research or analysis, which is not "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Unable to demonstrate that Dr. Shannon relied on complete or otherwise accurate information, Plaintiffs cannot meet their "burden of proving admissibility,"[3] *Cooper*, 510 F.3d at 942 (quoting *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)), as it relates to the opinion solely focused on examining "the articles and data that Defendants' experts attempt to use to support their opinions," Opp'n at 3.

**B.      Dr. Shannon's admitted errors render his opinions unreliable.**

Defendants demonstrated the inherent unreliability of Dr. Shannon's opinions due to the admitted errors and mistakes contained in his rebuttal report. Doc. 322, at 19. Of particular concern is Dr. Shannon's erroneous claim that certain data relied upon by Dr. Brown was not published or peer-reviewed. *Id.*; LL Ex. 25, at 107:19-108:4, 109:6-15, 113:19-24; Pls.' Ex. 13, ¶ 25. Dr. Shannon did not even check to determine if a journal was peer-reviewed before rendering his opinion that the data was not peer-reviewed. LL Ex. 25, at 108:1-4. Considering Dr. Shannon's retention was solely "to examine the articles

---

[3] Plaintiffs cite a single unpublished opinion, *Mighty Enterprises, Inc. v. She Hong Industrial Co.*, to argue that Dr. Shannon's inability to verify the information provided to him is immaterial. Opp'n at 9. But in that case, the expert merely "parroted certain costs" and "had been informed" as to "resale value" of certain inventory, which was insufficient to warrant reversal of admissibility under the "abuse of discretion" standard. 745 F. App'x 706, 709 (9th Cir. 2018). Here, however, Dr. Shannon did not verify the information forming the basis for the opinions he offered, a fundamental reliability problem.

and data that Defendants' experts attempt to use to support their opinions," Opp'n at 3, Dr. Shannon's erroneous interpretation of those articles and data presents a fundamental reliability problem that Plaintiffs cannot overcome.

In a footnote, Plaintiffs make a perfunctory attempt to rehabilitate Dr. Shannon's admission of error. *Id.* at 9 n.4 (claiming that Dr. Shannon's testimony is that *Dr. Brown's analysis* has not been published or peer-reviewed). Plaintiffs' attempt fails. First, almost every paragraph cited by Dr. Shannon contained peer-reviewed data, not analysis by Dr. Brown. *See, e.g.*, Pls.' Ex. 13, ¶ 25 (citing Brown Decl. ¶¶ 117, 120, 123, 125, 130, 134, 135); LL Ex. 25, at 125:9-12 ("Q: Do you believe that the analysis and figures in Paragraph 123 have been published and peer reviewed? A: I would say yes."). Plaintiffs' interpretation to the contrary would make no sense. This is why, when confronted at his deposition, Dr. Shannon admitted that he made "a mistake" and "an error." LL Ex. 25, at 107:19-108:4, 109:6-15, 113:19-24. Second, Dr. Shannon confirmed during the deposition that he was not claiming that Dr. Brown's interpretation should have been published and peer reviewed. *Id.* at 131:5-132:15 ("Q: You're disputing Dr. Brown's conclusions and not the data that he analyzed, right? A: I'm disputing his interpretation, his flawed interpretations of threshold data from papers … Q: And it's that interpretation that you think should have been published and peer reviewed? A: No."). Third and finally, if Plaintiffs' theory were correct, Dr. Shannon's critique would be pointless, because he would be faulting Dr. Brown for the unremarkable fact that a litigation expert report was not published or peer-reviewed. *See id.* at 131:15-16 (Dr. Shannon acknowledging his own report is not published or peer-reviewed).

Given the asserted limited scope to Dr. Shannon's testimony, Dr. Shannon's errors are significant. Plaintiffs insist that Dr. Shannon's testimony is only admissible for assessing the data analysis undergirding the opinions of Defendants' experts on the issue of prepubertal male athletic advantage. Opp'n at 2, 7-8. However, Dr. Shannon's errors—which he admitted making—relate to this precise limited purpose and thus render his opinions inherently unreliable. Plaintiffs have failed to show that Dr. Shannon's opinions

1    "fall[] within the range of accepted standards governing how scientists conduct their

2    research and reach their conclusions," *Daubert*, 43 F.3d at 1317.

3          Therefore, Dr. Shannon's testimony and opinions should be excluded.

4                                          **CONCLUSION**

5          Defendants respectfully ask the Court to exclude the opinions and testimony of

6    Plaintiffs' experts, Dr. Budge and Dr. Shannon, from this case.

7

8    Dated: August 5, 2025                    Respectfully submitted,

9                                             JAMES OTIS LAW GROUP, LLC

10
                                             */s/ Justin D. Smith*
11                                           Justin D. Smith, Mo. Bar No. 63253*
                                             Kenneth C. Capps, Mo. Bar No. 70908*
12                                           530 Maryville Centre Drive, Suite 230
13                                           St. Louis, Missouri 63141
                                             (816) 678-2103
14                                           Justin.Smith@james-otis.com
                                             * *pro hac vice*
15

16                                           *Attorneys for Intervenor-Defendants President*
17                                           *Petersen and Speaker Montenegro*

18                                           */s/ Caitlin B. Fitz-Maurice*
19                                           Dennis I. Wilenchik
                                             Caitlin B. Fitz-Maurice
20                                           WILENCHIK & BARTNESS PC
                                             2810 North Third Street Ste 103
21                                           Phoenix, Arizona  85004
22                                           602-606-2810
                                             Email: admin@wb-law.com
23

24                                           Maria Syms
                                             ARIZONA DEPARTMENT OF EDUCATION
25                                           1535 W Jefferson St., BIN 50
26                                           Phoenix, AZ 85007
                                             602-542-5240
27

28                                           *Attorneys for Defendant Thomas C. Horne*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 5, 2025, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*