IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Doe, et al., | No. CV-23-00185-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Thomas C Horne, et al., | |
| Defendants. | |

On July 3, 2025, the Supreme Court granted petitions for a writ of certiorari in two cases in which transgender plaintiffs challenge state laws that prevent them from playing on girls' and women's sports teams. *See B.P.J. by Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024), *cert. denied sub nom. W. Va. Secondary Sch. Activities Comm'n v. B.P.J. Next Friend Jackson*, 145 S. Ct. 568 (2024), *and cert. granted sub nom. W. Va. v. B. P. J.*, No. 24-43, 2025 WL 1829164 (U.S. July 3, 2025); *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024), *as amended* (June 14, 2024), *cert. granted*, 145 S. Ct. 2871 (2025). Because the Supreme Court will decide legal issues that will likely have a significant, if not dispositive, effect on this case, the Court will require the parties to provide their positions on whether a stay should be issued pending the Supreme Court's decision.

In *B.P.J.*, the Fourth Circuit reversed the district court's grant of summary judgment to the state defendants on both the plaintiff's Equal Protection Clause ("EPC") and Title IX claims. 98 F.4th at 555. The court remanded with instructions to grant plaintiff summary judgment on her Title IX claim and to conduct further proceedings on the EPC claim. *Id.*

Regarding the EPC claim, the Fourth Circuit held: (1) the West Virginia law[1] was subject to intermediate scrutiny because it discriminated on the basis of gender identity and sex; (2) the plaintiff properly raised an as-applied challenge to the law; and (3) a genuine dispute of fact existed regarding whether excluding the plaintiff, who had not undergone male puberty, from the teams she sought to join was substantially related to important governmental interests in participant safety and competitive fairness. *Id.* at 557–62. The Fourth Circuit also held the plaintiff had been excluded from participation in school sports on the basis of sex under Title IX. *Id.* at 563. In so holding, the court relied on its determination that discrimination based on gender identity is discrimination on the basis of sex under Title IX. *Id.*

In *Hecox*, the Ninth Circuit affirmed the district court's grant of preliminary injunctive relief to the plaintiff because Idaho's "Fairness in Women's Sports Act" likely violated the EPC. 104 F.4th at 1068. The court held that the law was subject to heightened scrutiny because it classified on the basis of transgender status (and sex) and the district court's finding that the law purposefully discriminated against transgender girls and women was not clearly erroneous. *Id.* at 1074–80. The court held that "categorically banning transgender women and girls from all female athletic teams" likely was "not substantially related to, and in fact undermine[d]," the state's asserted objectives in furthering women's equality and promoting fairness in female athletic teams. *Id.* at 1081.

In its opening brief to the Supreme Court, West Virginia argues its law complies with Title IX because "sex" in the Title IX context is binary, Title IX does not prohibit gender identity discrimination, and the law is a permissible sex-based distinction. Brief for Petitioners at 18–33, *W. Va. v. B.P.J.*, No. 24-43 (U.S. Sept. 12, 2025). West Virginia argues its law satisfies the EPC because it treats similarly situated students equally, does not classify or purposefully discriminate based on gender identity, and separating sports teams by biological sex satisfies intermediate scrutiny. *Id.* at 33–41. West Virginia also

---

[1] Like the Arizona statute at issue here, the West Virginia law is titled the "Save Women's Sports Act" and limits participation on girls' sports teams to individuals whose biological sex, as determined at birth, is female. *B.P.J.*, 98 F.4th at 550.

argues the Fourth Circuit erred in analyzing the plaintiff's individual circumstances and emphasizes the need for judicial deference to legislative choices. *Id.* at 42–47.

This case is factually and legally similar to *B.P.J.* Like the plaintiff in *B.P.J.*, Jane and Megan began taking puberty blockers and gender-affirming hormones at the onset of Tanner stage 2 and have not undergone male puberty. Whether a categorical ban on transgender girls from girls' sports teams comports with the EPC is at issue in both cases. Also like the plaintiff in *B.P.J.*, Plaintiffs raise an as-applied challenge under the EPC. Additionally, Arizona's Save Women's Sports Act is materially similar, in language, purpose, and effect, to West Virginia's Save Women's Sports Act.

Many of the issues raised in the parties' summary judgment briefing in this case will likely be decided by the Supreme Court in *B.P.J.* and *Hecox*. For example:

- Whether *Bostock*'s holding that Title VII prohibits discrimination based on transgender status extends to the Title IX context?
- Whether "sex" as defined in Title IX is binary?
- Whether transgender status is a suspect or quasi-suspect class?
- Whether a state law classifying sports teams according to biological sex, effectively banning transgender girls and women from playing on sports teams consistent with their gender identity, are subject to rational basis review or intermediate scrutiny?
- Under either level of scrutiny, whether such a law is constitutional under the EPC?
- In what circumstances does a plaintiff properly raise an as-applied challenge under the EPC?

A district court, pursuant to its inherent docket management authority, may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *In re PG&E Corp. Secs. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (internal quotation marks omitted) (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)). The independent proceedings "do not need to be 'necessarily controlling of the action before the district court.'" *Id.* at 1086 (cleaned up) (quoting *Leyva v. Certified Grocers of Cal., Ltd.* 593 F.2d 857, 863–64 (9th Cir. 1979)). Courts consider three non-exclusive factors when deciding whether to issue a docket management stay: (1)

the possible damage which may result from granting a stay; (2) the hardship or inequity a party may suffer in being required to go forward; and (3) judicial efficiency, i.e., the orderly course of justice in terms of simplifying or complicating issues, proof, or questions of law. *Id.* at 1085.

Accordingly,

**IT IS ORDERED:**

1. No later than **October 1, 2025,** Plaintiffs, Defendant Horne, and Intervenor-Defendants shall submit their positions on whether they will suffer prejudice as a result of a stay and the extent to which the interest of judicial efficiency would be served by issuance of a stay.

2. Each party's written position shall not exceed 5 pages.

Dated this 23rd day of September, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge